UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH N. GIELATA,<br><br>                    Plaintiff,<br><br>          v.<br><br>SEAN P. LUGG, individually and in his official capacity as Deputy Attorney General for the State of Delaware, THE STATE OF DELAWARE, ANDREA L. ROCANELLI, individually and in her official capacity as Chief Counsel of the Office of Disciplinary Counsel for the Supreme Court of Delaware, and THE OFFICE OF DISCIPLINARY COUNSEL FOR THE SUPREME COURT OF DELAWARE,<br><br>                    Defendants. | Civil Action No. _____<br><br><br><br>**EMERGENCY<br>*EX PARTE* MOTION<br>for TEMPORARY<br>RESTRAINING ORDER and<br>ORDER TO SHOW CAUSE** |

**"Sed quis custodiet ipsos custodes?"  - Juvenal, *Satire VI***

**("But who shall keep watch over the guardians?")**

Plaintiff moves this Court for an *ex parte* temporary restraining order preserving the *status quo ante* and an order to show cause why a preliminary injunction should not issue restraining and enjoining the State of Delaware (the "State"), Sean P. Lugg ("Lugg"), individually and in his official capacity as Deputy Attorney General for the State, the Office of Disciplinary Counsel for the State's Supreme Court (the "ODC"), and Andrea L. Rocanelli ("Rocanelli"), individually and in her official capacity as Chief Counsel of the ODC (together, "Defendants") from continuing to engage in a bad faith criminal prosecution of Plaintiff (the "Prosecution"), which is designed to incapacitate Plaintiff's ability to practice law through an automatic suspension of Plaintiff's law license under Rule 16 of the Delaware Lawyers' Rules of Disciplinary Procedure (the

"Suspension Proceeding").  At this very moment, unless a temporary restraining order issues, Plaintiff's law practice will be shut down within days and he will face irreparable personal and financial devastation and his clients will be stripped of their chosen counsel.

## FACTUAL BACKGROUND

A private citizen disembarks an airplane, unaware that armed government agents await him.  He is summarily detained, searched, and interrogated without explanation, and little does he know that the government has already plotted his complete destruction. Eventually, the citizen is placed in a cage and his assets are first frozen and then confiscated by judicial fiat.  Although the government does not articulate any specific wrongdoing by the private citizen, his liberty and property are both annihilated in a show trial.  All this, simply because *the citizen angered the wrong state official*.

The world recently witnessed such a disturbing spectacle in Russia, where the Kremlin "took out" a prominent businessman suspected of political aspirations.  *See Profile: Mikhail Khodorkovsky*, BBC News, June 16, 2004 (attached hereto as Exhibit A); *Rundown of the Yukos Saga*, The Wall Street Journal, May 31, 2005 (attached hereto as Exhibit B).

Shockingly, a similar series of events is today unfolding in Delaware, despite its obligations to citizens under the United States Constitution.  Plaintiff is an attorney who represents individuals against some of the most powerful corporations in the world, including some of the State's largest employers.  Until last week, he has never been accused of any crime, nor has any client of his ever expressed dissatisfaction with his services.  However, Plaintiff's efforts to hold powerful companies accountable have

resulted in a retaliatory campaign to smear and destroy him, including a meritless and bad faith indictment by the State.

In particular, Plaintiff has been singled out by defendant Rocanelli, the State's chief regulator of attorneys. For over a year, Rocanelli has furiously harassed Plaintiff with multiple bogus probes and lobbied for his indictment, however flimsy or invalid, in order to immediately disable Plaintiff's ability to practice law. Her extraordinary vindictiveness is directly attributable to Plaintiff's involvement in litigation adversely affecting her husband, her former law firm, and her former colleagues.

On July 15, Plaintiff advised Rocanelli that he would be out of the country visiting family between July 25 and August 9. Defendants immediately seized this opportunity to strike quickly and strike hard. On July 25, the State indicted Plaintiff (the "Indictment") (attached hereto as Exhibit C). The lack of any specificity in the two-page Indictment is astonishing. The absence of a jury foreperson signature also casts doubts upon its validity. As Plaintiff's complaint demonstrates in excruciating detail, the Indictment leaves out numerous crucial facts concerning the underlying legal controversies. In effect, defendants Lugg and the State have conjured a felony out of nothing more than a contractual dispute between an individual and a corporation. However, ***the Indictment states no crime.***

On July 27, Rocanelli, on behalf of the ODC, petitioned for an immediate suspension of Plaintiff's law license. Upon discovering this blitzkrieg of State actions, Plaintiff rushed back to the United States, arriving July 30, only to be detained by armed agents with the Department of Homeland Security as a direct result of the Indictment.

Plaintiff finally returned to Pennsylvania and, for the reasons below, respectfully requests that the Court enter the attached temporary restraining order and order to show cause.

## ARGUMENT

Plaintiff has a constitutionally protected property interest in his license to practice law. *See Bell v. Burson*, 402 U.S. 535 (1977).  However, as a result of the Indictment, Defendants are poised to suspend Plaintiff's license indefinitely.  The Complaint alleges in painstaking detail that the Prosecution is being conducted in bad faith and that the Suspension Proceeding denies Plaintiff his constitutionally due process of law.  Without the issuance of a temporary restraining order, the Prosecution and related Suspension Proceeding will soon cause Plaintiff and clients immediate irreparable harm.

## I.  Plaintiff Has Raised Colorable Claims.

Plaintiff does not have any adequate opportunity to raise his federal claims in the Suspension Proceeding.  The sole purpose of a proceeding under Rule 16 is simply to ask whether the ODC has satisfied procedural niceties prior to divesting the indicted attorney of his law license.  There will be no meaningful opportunity for Plaintiff to raise and/or litigate his constitutional claims.  Indeed, the State, Rocanelli, and the ODC were originally prepared to proceed against Plaintiff *yesterday* despite his anticipated absence from the country.  Although an emergency continuance was obtained, the State's Supreme Court is presently scheduled to suspend Plaintiff's law license on August 11.

Equally important, Plaintiff has presented compelling facts strongly indicating that the Prosecution was commenced in bad faith.  In particular, Rocanelli directed the

AG Office to commence the Prosecution in an effort to disable Plaintiff from litigating actions in which her husband and former colleagues might be adversely affected. It is difficult to imagine a clearer example of a state proceeding brought in bad faith.

## II.     Plaintiff Will Suffer Immediate Irreparable Harm Without a Temporary Restraining Order.

In order to obtain injunctive relief, the moving party must show:

> "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured pendente lite if relief is not granted to prevent a change in the status quo." Moreover, while the burden rests upon the moving party to make these two requisite, showings, the district court "should take into account, when they are relevant, (3) the possibility of harm to other disinterested persons from the grant or denial of the injunction, and (4) the public interest."

*Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (citations omitted). Further, to prove irreparable harm, the moving party "must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following trial.'" *Id.* (citations eliminated).

In this case, Plaintiff will suffer extreme and immediate irreparable harm within days unless the Defendants are restrained from suspending Plaintiff's law license through a bad-faith indictment. The Suspension Proceeding is presently scheduled for August 11, 2005. Despite its quasi-criminal nature, the Suspension Proceeding does not meet even the most minimum constitutional standards for due process, as will be more fully briefed in Plaintiff's motion for a preliminary injunction. For instance, under Rule 16, no evidence is necessary, other than the Indictment itself, to suspend Plaintiff's law license. Plaintiff is not aware of any petition for interim suspension, based on an indictment, that

the State's Supreme Court has denied.  As will be shown in Plaintiff's motion for a preliminary injunction, Rule 16's procedures merely *masquerade* as due process.  In fact, by force of the Indictment alone, the State, upon the ODC's petition, will immediately incapacitate Plaintiff and strip his clients of their chosen counsel.

The rights of thousands of persons, asserted in representative actions prosecuted by Plaintiff, will be abandoned or substantially abridged.  Thus, Plaintiff's clients, and the thousands whose interests he asserts in class actions, will be harmed irreparably.  *See Acierno*, 40 F.3d at 653 (noting that the court should take into account the possibility of harm to disinterested persons).  If Plaintiff's law license is suspended, then his clients will suffer by being deprived of their chosen counsel.  *See Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 441 (1985) (Brennan, J., concurring) ("A fundamental premise of the adversary system is that individuals have the right to retain the attorney of their choice to represent their interests in judicial proceedings."); *see also id.* at 442 (Stevens, J., dissenting) ("Everyone must agree that the litigant's freedom to choose his own lawyer in a civil case is a fundamental right.").  Unnamed beneficiaries in multiple representative actions will also suffer harm because an unrelenting advocate for their rights will be swiftly and forcibly removed from the arena.  To the extent that Plaintiff's creative advocacy and unique legal insights are irreplaceable, no amount of money will be able to restore the *status quo ante*.

### III.    *Younger* Abstention is Inapplicable.

As the United States Supreme Court recognized in *Younger v. Harris*, 401 U.S. 37 (1971), a federal district court should not abstain from interfering with state court

proceedings if those proceedings have been brought in bad faith. *See also Herz v. Degnan*, 648 F.2d 201, 209-10 (3d Cir. 1981) (state Attorney General's institution of license revocation proceeding on grounds for which no authority existed strongly suggested that bad faith exception to *Younger* principle would apply, if *Younger* were relevant to proceeding in question). Plaintiff submits that the incontrovertible evidence already presented in his moving papers, including the highly-telling chronology of events, provides abundant proof that the Prosecution and Suspension Proceeding were commenced (and continue to be prosecuted) in bad faith. Where a state proceeding appears to have been commenced for an improper purpose, as is the case here, abstention serves no purpose because a state and its officials cannot have a legitimate interest in discouraging the exercise of constitutional rights, or, equally, in continuing actions otherwise brought in bad faith. Although the present record amply supports a finding of bad faith for purposes of *Younger*, any material factual issues found by this Court should be addressed at an evidentiary hearing. *See Kern v. Clark*, 331 F.3d 9 (2d Cir. 2003) (holding that district court was required to hold evidentiary issue before rejecting the plaintiff's allegations of bad faith prosecution).

A district court should not abstain where a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass. *Cullen v. Fliegner*, 18 F.3d 96, 103-04 (2d Cir. 1994). In such cases, a showing of retaliatory or bad faith prosecution establishes irreparable injury for the purposes of the *Younger* doctrine, and the expectations for success of the party bringing the action need not be relevant. *Id.* (citations omitted).

**IV.    The Balance of Hardships Favors Plaintiff.**

The balance of hardships favors granting the requested relief.  For the reasons stated, Plaintiff will suffer irreparable injury if his law license is suspended under Rule 16.  This temporary restraining order will merely preserve the *status quo* until the Court can determine the constitutionality of Rule 16.  If, as alleged, the Prosecution and Suspension Proceeding are unconstitutional, Defendants cannot be harmed by the avoidance of this constitutional injury.  *See Coalition for Economic Equity v. Wilson*, 122 F.3d 692 (9th Cir.), *cert. denied*, 522 U.S. 963 (1997).

**V.    The Public Interest Will Be Served by Granting the Requested Relief.**

Plaintiff seeks a temporary restraining order to prevent Defendants from taking the first step in a course of action that will lead to a violation of 42 U.S.C. § 1983.  The fundamental purpose of Section 1983 is to protect the civil rights of the citizens of the United States. *Mitchum v. Foster*, 407 U.S. 225, 243 (1972); *Owen v. City of Independence*, 445 U.S. 622, 636 (1980).  Accordingly, the federal courts have been authorized by Congress to effectuate this fundamental purpose by awarding injunctive relief against violations of Section 1983.  This Court's grant of a temporary restraining order against Defendants would thus be consistent with and further the public interest in enforcing the federal civil rights laws.

Indeed, in this application, Plaintiff only seeks a temporary restraining order to preserve the status quo.  As the federal courts have observed, there is always a significant "public interest in preserving the status quo ante litem until the merits of a serious

controversy can be fully considered by a trial court." *Blackwelder Furniture Co. of Statesville v. Selig Manufacturing Co.*, 550 F.2d 189, 197 (4th Cir. 1977).

## VI.    Adequate Notice Has Been Given.

The specific facts set forth in Plaintiff's verified pleadings show that the Plaintiff will suffer immediate and irreparable injury if the Defendants are not restrained from continuing the Prosecution and incapacitating Plaintiff at the Suspension Proceeding. Because the Defendants have already begun their efforts to dismantle Plaintiff's law practice, irreparable injury will result to the Plaintiff before the Defendants or their attorneys can be heard in opposition. Plaintiff has attempted to give written notice (by facsimile) to all Defendants. In the event the Defendants or their attorneys cannot be heard in opposition at an emergency hearing (if necessary) on Plaintiff's Motion for Temporary Restraining Order, then, for the reasons set forth above, this Court should enter a temporary restraining order without notice. Rule 65(b) provides that a temporary restraining order may be granted under these circumstances without written or oral notice to the adverse party or that party's attorney.

## CONCLUSION

Through meritless and bad-faith felony charges of theft and criminal conspiracy, the Defendants are poised to destroy Plaintiff. Those charged with doing justice in the State have seized upon a contractual dispute, which they have tortuously transmogrified into multiple alleged felonies. Defendants have *no hope* of securing a *valid* conviction. Abstention under these facts would leave Plaintiff in the grip of tyranny, and his clients without effective representation. A temporary restraining order must issue.

Dated:   August 2, 2005                    Respectfully submitted,


                                    By:   /s/ Joseph N. Gielata
                                          Joseph N. Gielata, Esq., *pro se*
                                          501 Silverside Road, Suite 90
                                          Wilmington, Delaware 19809
                                          (302) 798-1096