IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| THOMAS J. MURPHY and JUDITH M. MURPHY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. 03C-04-271-PLA |
| CORRECTIONAL MEDICAL SERVICES, INC., DELAWARE DEPARTMENT OF CORRECTIONS, DR. MOHAMMED RIZWAN, and DEFENDANTS JOHN DOE 1 THROUGH 5 | ) ) ) ) ) ) | |
| Defendants. | ) | |

Submitted: August 17, 2005
Decided: August 19, 2005

UPON DEFENDANT DELAWARE DEPARTMENT OF CORRECTIONS
MOTION FOR SUMMARY JUDGMENT
**GRANTED**

UPON DEFENDANTS
CORRECTIONAL MEDICAL SERVICES, INC. AND DR. MOHAMMED RIZWAN'S
MOTIONS FOR PARTIAL SUMMARY JUDGMENT
**GRANTED IN PART / DENIED IN PART**

Bartholomew J. Dalton, Esquire, Dalton & Associates, P.A., Wilmington, Delaware, Attorney for Plaintiffs.

Kevin J. Connors, Esquire, Marshall Dennehey Warner Coleman & Goggin, Wilmington, Delaware, Attorney for Defendants Correctional Medical Services, Inc. and Dr. Mohammed Rizwan.

Thomas H. Ellis, Esquire, Deputy Attorney General, Wilmington, Delaware, Attorney for Defendant Delaware Department Of Corrections.

ABLEMAN, JUDGE

An inmate allegedly received sub-standard medical care from a prison physician. On four motions, one for summary judgment and three for partial summary judgment, the Department of Corrections has shown that the State of Delaware has not waved its sovereign immunity for that agency. Summary judgment for the Delaware Department of Corrections is therefore **GRANTED**. The plaintiffs have also failed to produce evidence in discovery to show that the defendant physician acted in bad faith or in willful and wanton misconduct, or was grossly negligent or deliberately indifferent to the inmate's medical needs. Partial summary judgment will therefore be **GRANTED** for the physician. The plaintiffs have, however, adduced evidence sufficient to support a claim that the company contracted to run the prison medical service was deliberately indifferent to the inmate's medical needs. Partial Summary judgment will therefore be **DENIED** for the health care service company.

### Facts

On February 20, 2001, while incarcerated at Gander Hill Prison[1] on a drug dealing charge, Plaintiff Thomas Murphy had a heart attack. Murphy was treated at Christiana Hospital and released five days later. The hospital doctors allegedly prescribed Coumadin and Plavix to assist Murphy's recovery.

Gander Hill prison is operated by Defendant Delaware Department of Corrections ("DOC"), an agency of the State of Delaware. At the time, DOC had contracted with Defendant Corrections Medical Services, Inc. ("CMS"), a

---

[1] It seems to have become DOC habit to rename this prison every few years. While its current appellation is the Howard Young Correction Institution, it was called Gander Hill during the relevant time period and is still well known in Delaware by that name.

2

Missouri corporation, to perform medical services at its prisons. Defendant Dr. Mohammed Rizwan (with CMS, the "Medical Defendants"), a resident of Missouri, was an employee of CMS and treated Murphy at the prison after his heart attack.

Sometime in August 2001, Dr. Rizwan discontinued Murphy's Coumadin medication. Murphy seems to have developed a bleeding problem, evidenced by blood seeping from his gums. Coumadin, a blood thinner, can be dangerous if taken in combination with a bleeding disorder. In October 2001, Murphy suffered a significant stroke. The Complaint alleges that DOC personnel did not immediately recognize Murphy's stroke as such, and delayed for some period before conducting him to an off-site hospital, which was accomplished by a prison van instead of an ambulance. The stroke allegedly caused Murphy various permanent injuries.

### **Purported Grounds for Relief**

Plaintiffs make six claims. Count One alleges that all defendants were grossly negligent in their treatment of Murphy after his heart attack. This argument has two parts: (1) that Dr. Rizwan caused the stroke by discontinuing the Coumadin, and the remaining defendants are (presumably, the Complaint is unclear) vicariously liable for that decision; and (2) the failure of DOC staff to immediately recognize the stroke as such exacerbated Murphy's damages.

Count Two is a claim for medical negligence against Dr. Rizwan and his employer, CMS. It is a simple allegation that Dr. Rizwan's course of treatment

did not meet the applicable medical standard of care, and that CMS is (again, presumably) vicariously liable for that failure.

Count Three alleges that CMS and Dr. Rizwan, by their alleged indifference to Murphy's medical condition, violated his right to be free from cruel and unusual punishment. Plaintiffs' authority to bring this claim rests on 42 U.S.C. § 1983.

Count Four invokes 11 Del. C. § 6536, which requires DOC to "establish reasonable health, medical, and dental services," for Delaware's prisons. It is not specified how DOC violated this standard, except to suggest that it is vicariously liable for the conduct of CMS and Dr. Rizwan.

Count Five is a simple negligence allegation against all defendants, alleging improper supervision of employees and breach of their duty to protect Murphy from a foreseeable risk of harm while he was incarcerated.

Finally, Count Six is a simple loss of consortium claim on behalf of Murphy's wife, Plaintiff Judith Murphy.

## Standard of Review

The standard for summary judgment motions pursuant to Superior Court Civil Rule 56 is, considering all facts in a light most favorable to the non-moving party, whether there is a genuine dispute of material fact that requires a trial.[2]

---

[2] See. e.g. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## Discussion

The only issue DOC raises on its motion for summary judgment is whether Delaware has waived its sovereign immunity under the Eleventh Amendment for the type of action the plaintiffs have filed. The Medical Defendants, piggy-backing on DOC's argument, allege that they hold qualified immunity from suit as an extension of the State's sovereign immunity. The Medical Defendants' Motions For Partial Summary Judgment also argue that, since the experts slated to testify in this case do not agree on whether Dr. Rizwan's decision to discontinue the Coumadin breached the applicable standard of care, Dr. Rizwan's actions cannot reasonably be termed "malicious," and therefore cannot support a demand for punitive damages. Finally, the Medical Defendants argue that Plaintiffs have not produced evidence that could meet the standard for their constitutional claims.

A.   Sovereign Immunity and DOC

The Eleventh Amendment to the Federal Constitution prohibits courts from hearing actions naming a state as a defendant. This immunity from suit extends to agencies exercising the authority of a state, such that, if the agency is sued, it is the state that will end up paying. The states can, however, choose to waive this important tenant of federalism and separation of powers, and all

have done so for a wide variety of possible claims.[3] There are also several federal actions involving civil rights to which sovereign immunity has been held not to apply.

DOC is clearly a state agency. It was created via an enabling statute, is supported by state tax dollars, and exists solely to regulate the activities of Delaware's criminals, i.e. as a principle arm of the State's police power. As such, it cannot be sued unless the State has waived its sovereign immunity either for the agency or for a particular class of actions.

The Complaint makes three claims against DOC: gross negligence, simple negligence, and violation of a state statute requiring DOC to establish health care services within its prisons. All of these claims invoke only state law. The plaintiffs argue that the State waived its sovereign immunity for these claims by enacting 10 Del. C. § 4001, the State Tort Claims Act. Section 4001 protects the State and its employees from suit provided that their actions (1) arose from official duties; (2) were done in good faith; and (3) without gross or wanton negligence.

Despite its seemingly broad language, both the Delaware Supreme Court and the federal courts have held that the State Tort Claims act does not by itself waive sovereign immunity for state agencies whenever its three-part test is not met.[4] Instead, there must be statutory evidence that the State intended

---

[3] *See e.g.* 18 Del. C. § 6511, which waives Delaware's sovereign immunity for any action covered by the State Insurance Program.

[4] *State of Delaware Department of Health and Social Services v. Sheppard*, 2004 WL 2850086 (Del. Supr.); *Doe v. Cates*, 499 A.2d 1175 (Del. 1985); *Space Age Products, Inc. v. Gilliam*, 488 F. Supp. 775 (D. Del. 1980).

6

to waive its sovereign immunity for a particular agency.[5] For example, in *Sandt v. Delaware Solid Waste Authority*,[6] the Supreme Court held that the State had waived sovereign immunity for the Delaware Solid Waste Authority by statutorily granting that agency the power "to sue or to be sued."[7] Moreover, intent to allow the agency to be sued was evidenced by purchasing insurance that covered the type of negligence alleged in that case.[8]

Similarly, in *Space Age Products, Inc. v. Gilliam*,[9] the District Court of Delaware rejected the argument that the State Tort Claims Act broadly eliminated the State's traditional sovereign immunity. Judge Stapleton's interpretation of the General Assembly's intent in enacting § 4001 is particularly instructive:

> Plaintiff argues that this legislation was intended to waive Delaware's Eleventh Amendment immunity from suit in the federal courts. I reach a contrary conclusion. It is true that Section 4001 contemplates a situation in which a plaintiff in a civil action, by proving the absence of one of the enumerated elements, may recover against the State. It does not follow, however, that the legislative intent behind this section was to waive sovereign immunity and to expose the State to liabilities which would not otherwise exist. Such a reading is not required because federal and other state statutes do waive sovereign immunity in specified situations and the recoveries against the State contemplated by Section 4001 may be those in cases involving those situations. Moreover, a reading which implies a waiver of sovereign immunity would seem to conflict with the legislative Synopsis as well as with the title chosen by the General Assembly for Section 4001. The Synopsis indicates that the General Assembly had two purposes in mind: to codify what it felt to be the existing law of official immunity and to provide indemnification in those limited situations where a damage recovery is possible despite the

---

[5] *Id.*
[6] 640 A.2d 1030 (Del. 1994).
[7] *Id.* at 1034.
[8] *Id.* at 1031; *see also* 18 Del. C. § 6511 ("The defense of sovereign immunity is waived and will not be asserted as to any risk or loss covered by the state insurance program...").
[9] *Space Age Products, Inc.*, 488 F. Supp. 775.

7

presence of good faith. Section 4001 was drafted to accomplish the former purpose, a purpose consistent with its title "Limitation of Liability", but inconsistent with the purpose of increasing the State's exposure to damage liability. [10]

In other words, the purpose of the State Tort Claims Act was not to increase the State's potential for liability, but rather to remove the risk that such liability could be expanded via judge-made common law, and to codify the rights of State employees to indemnification. It is a shield, not a sword. The Delaware Supreme Court approved Judge Stapleton's reasoning in *Doe v. Cates*,[11] and recently reaffirmed that reasoning in *State of Delaware Department of Health and Social Services v. Sheppard*,[12] and *Pauley v. Reinhoehl*.[13]

Unlike in *Sandt*, there is no language in the statutes that created DOC that indicates intent to waive sovereign immunity. Also unlike *Sandt*, the State has not purchased DOC insurance to protect from suits of this type; any award against DOC must therefore be paid directly by the State.[14] These facts indicate intent by the General Assembly to allow DOC to rely on sovereign immunity to protect it from paying for the negligence of its employees and agents. As the Delaware Supreme Court has repeatedly indicated, any doubt on this question must be resolved in favor of the State.[15]

---

[10] *Id.* at 780.
[11] 499 A.2d 1175 (Del. 1985).
[12] 2004 WL 2850086 at 1.
[13] 848 A.2d 569 (Del.2004).
[14] Def. Dept. of Corr. Mot. for Summ. J. Ex. A., Affidavit of Debra Lawhead (an affidavit from the State Insurance Coverage administrator indicating that the State does not carry insurance to protect against this type of claim.).
[15] *See e.g. Department of Community Affairs and Economic Development v. M. Davis & Sons, Inc.*, 412 A.2d 939, 942 (Del. 1980).

8

Plaintiffs' Opposition to DOC's Motion does not offer any statutory or legislative history evidence other than the plain text of § 4001 to suggest that Delaware waived its sovereign immunity regarding the actions of DOC. Cases such as *Sandt*, *Space Age Products*, and, especially *Cates*, show that § 4001 alone is insufficient to support this type of action.

The two cases cited by Plaintiffs, *Woulard v. Food Service*[16] and *Wier v. Barnes*,[17] do not advance their argument. In *Woulard*, the plaintiff sued various DOC personnel for their alleged indifference to his medical need for a special diet. The issue in the case was whether those DOC employees were protected by the qualified statutory immunity granted by § 4001. DOC was not a defendant, and the Court had no occasion to determine whether Delaware had waived its sovereign immunity regarding that agency.

The same is true in *Wier*. The plaintiff in that case sued the DNREC park rangers that had arrested him for drunk driving for excessive use of force. Again, DNREC was not named as a defendant, and the court did not decide whether Delaware had waived its sovereign immunity for that agency.

The difference between cases such as *Standt* and *Space Age Products* from cases like *Woulard* and *Wier* is subtle, but crucial. If a plaintiff sues a state employee, such as a policeman, park ranger, or prison doctor, that employee is entitled to only the qualified, statutory immunity established by § 4001. If the employee is found liable, it will be because he acted in bad faith or

---

[16] 294 F. Supp. 2d 596 (D. Del. 2003).
[17] 925 F. Supp. 1079 (D. Del. 1996).

with gross negligence, in which case the State is not required to indemnify the employee.

A suit against the State or one of its agencies, however, raises a much more serious concern. If a State is liable at all, it must be vicariously liable for the conduct of its employees and agents, as it has no power to act otherwise. Bringing in a State as a "deep pocket" means that public money must be diverted from the useful purposes that legislatures intend to benefit a single person or small class. This would make the judiciary the final arbitrator of state tax dollars, robbing the States of an essential element of the sovereignty guaranteed them by both the federal constitution and state constitutions.[18] While such a drastic judicial blow to state power may be necessary to support certain core federal constitutional rights, it is not necessary for traditional common law actions such as negligence. Even though the States may choose to waive their sovereign immunity from such common law claims, the Court will not presume that they have done so absent a compelling legislative statement to that effect. All claims against DOC therefore fail, and its summary judgment motion must be granted.

B.  Claims Against CMS

The first of the Medical Defendants' three motions seeks summary judgment on Count IV: the claim that the allegedly substandard care violated the Eighth Amendment. The Medical Defendants argue that Plaintiffs have not

---

[18] *Cates*, 492 A.2d at 1181 (holding that sovereign immunity is a constitutional, not a judicially created, doctrine).

produced evidence to meet the exacting standard for such a claim. This argument is correct as to Dr. Rizwan, but fails as to CMS.

For a medical malpractice allegation to reach the level of a constitutional violation, a plaintiff must demonstrate: (1) deliberate indifference (2) to a serious medical issue.[19] "An incidence of negligence or malpractice does not violate the Eighth Amendment. Similarly, a difference of medical opinion between the prison's medical staff and the inmate as to the latter's course of treatment does not support a claim of cruel and unusual punishment."[20] Instead, deliberate indifference is an intentional refusal to provide medical care, or a delay of necessary care for non-medical reasons.[21]

Moreover, a § 1983 claim cannot be based on a theory of *respondeat superior*, but rather requires a degree of personal involvement.[22] An Eighth Amendment claim for medical treatment against a prison health care service therefore requires the plaintiff to prove "a policy or custom that demonstrates deliberate indifference" to serious medical needs.[23]

Plaintiffs have adequately supported this claim as to CMS. Plaintiffs' Opposition to this motion attaches four medical grievances filed by Murphy

---

[19] *Estelle v. Gamble*, 429 U.S. 97 (1976)
[20] *Miller v. Correctional Medical Systems*, Inc., 802 F.Supp. 1126, 1131 (D. Del. 1992), *citing Estelle*, 429 U.S. at 97 *and Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir.1989.).
[21] *Miller v. Correctional Medical Systems*, Inc., 802 F.Supp. 1126, 1131, *citing Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir.1987).
[22] *Heine v. Receiving Area Personnel*, 711 F.Supp. 178, 185 (D.Del.1989) ("[T]raditional concepts of *respondeat superior* do not apply to civil rights actions brought pursuant to 42 U.S.C. § 1983.").
[23] *Miller*, 802 F.Supp. at 1131, *citing Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978).

while he was imprisoned.[24] Plaintiffs claimed at oral argument that there are others, although the Court has not yet seen them. The Court is aware from other case law that these grievances are handled by CMS.[25] Also attached is a letter from DOC to CMS making a very strong demand that CMS cease its "unacceptable" delays in giving Murphy his medicine.[26] This letter indicates that CMS was aware of previous issues with Murphy's care, and did not act to correct them.

The Court is satisfied that this evidence, if admissible (it has not been the subject of an objection or motion *in limine*), presents an issue of fact as to whether it was CMS policy to treat Murphy's medical requirements with indifference. DOC seems to believe that that was the case, and took action to intervene in a province usually assigned to CMS.[27] While a close call, it is the Court's opinion that there might be enough evidence for a reasonable jury to find deliberate indifference. If the trial does not turn out to yield that evidence, CMS is, of course, free to move for judgment as a matter of law.

This finding also decides the other two motions before the Court as to CMS. In the second motion for partial summary judgment, the Medical Defendants have argued that they are protected from the § 1983 claims by qualified immunity pursuant to § 4001. The State Tort Claims Act, however, does not provide immunity for conduct springing from gross negligence or bad

---

[24] Pl. Op. to Def. Mot. for Part. Summ. J., Ex. C.
[25] *Miller*, 802 F.Supp. at 1128.
[26] Pl. Op. to Def. Mot. for Part. Summ. J., Ex. C.
[27] *Id.*

faith. A policy of deliberate, i.e. intentional, indifference to legal duties is functionally the same as bad faith. CMS' qualified immunity argument therefore fails.

The third motion is to preclude punitive damages, again, for lack of evidence of "willful or wanton misconduct." It is the Court's opinion that this standard for punitive damages encompasses the "deliberate indifference" supporting the § 1983 claim.

Because the Court has found enough evidence to raise a material issue of fact as to whether CMS was deliberately indifferent to Murphy's medical needs, all three motions for partial summary judgment are denied as to CMS.

C.  Dr. Rizwan

Unfortunately for the plaintiffs, the same logic does not apply to Dr. Rizwan. For some unfathomable reason, the plaintiffs failed to depose this defendant within the year-long period they were given, and it is now too late to do so.[28] There is therefore nothing in the record to suggest that Dr. Rizwan knew of Murphy's difficulty getting his medicine from CMS, or that he bore any responsibility for those problems. The only act or omission tied to Dr. Rizwan is his medical decision to discontinue Murphy's Coumadin.

The record does not support the contention that this decision was the product of deliberate indifference to Murphy's medical needs, willful or wanton misconduct, bad faith, or gross negligence. Dr. Rizwan made this decision

---

[28] Oddly, Defendants did not point out in their written motions that the discovery deadline had already passed. It was not until oral argument that the Court became aware of this fact, which presents a significant procedural problem for plaintiffs, at least with regard to Dr. Rizwan.

13

because he was worried about blood seeping from Murphy's gums. Murphy did not complain about this decision, even though he obviously had no trouble with the grievance process.[29] Each side has a standard of care expert to argue whether discontinuing Coumadin because of those symptoms was malpractice. In other words, reasonable experts differ on whether gum bleeding is sufficient cause to discontinue Coumadin in a cardiac patient. Dr. Rizwan's decision may have been malpractice, but the plaintiffs have utterly failed to support their contention that it was anything worse.

Since the plaintiffs have failed to adduce any evidence showing deliberate indifference, willful and wanton misconduct, bad faith, or gross negligence on the part of Dr. Rizwan, all claims against him except simple medical negligence fail, and partial summary judgment must be granted for that defendant.

## Conclusion

Because DOC holds sovereign immunity as an agency of the State, and because Delaware has not waived that immunity, Department of Corrections' Motion for Summary Judgment is **GRANTED**. Because the plaintiffs have produced enough evidence to create a material issue of material fact as to whether CMS acted with deliberate indifference to Murphy's medical needs, all three Motions for Partial Summary Judgment are **DENIED** as to CMS. Because the plaintiffs have failed to produce evidence linking Dr. Rizwan to CMS' omissions regarding Murphy's medication, and because there is a reasonable

---

[29] Pl. Op. to Def. Mot. for Part. Summ. J., Ex. B, Excerpt from the Deposition of Thomas Murphy.

dispute among experts as to whether Dr. Rizwan's conduct breached the applicable medical standard of care, there is no evidence to support the allegation that Dr. Rizwan acted with deliberate indifference to Murphy's medical needs. All three Motions for Partial Summary Judgment are therefore **GRANTED** as to Dr. Rizwan.

**IT IS SO ORDERED**.

                                          */s/ Peggy L. Ableman*
                                          Peggy L. Ableman, Judge

Original to Prothonotary – Civil
**cc:**   Bartholomew J. Dalton, Esquire
        Kevin J. Connors, Esquire
        Thomas H. Ellis, Esquire