**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **JOSEPH N. GIELATTA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-567-GMS** |
| | ) | |
| **ANDREA L. ROCANELLI, individually and** | ) | |
| **in her Official capacity as Chief Counsel of the** | ) | |
| **Office of Disciplinary Counsel for the Supreme** | ) | |
| **Court of Delaware;  THE STATE OF** | ) | |
| **DELAWARE, and THE OFFICE OF** | ) | |
| **DISCIPLINARY COUNSEL FOR THE** | ) | |
| **SUPREME COURT OF DELAWARE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' OPENING BRIEF
IN SUPPORT OF THEIR MOTION TO DISMISS**

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

Richard W. Hubbard  (I.D. #2442)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8308

Attorney for the Defendants

Date:  January 13, 2006

## **TABLE OF CONTENTS**

**Page:**

TABLE OF CITATIONS ................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ......................................... 1

STATEMENT OF FACTS ......................................... 3

SUMMARY OF ARGUMENT ......................................... 5

ARGUMENT:

      I.     THE COMPLAINT FAILS TO STATE A JUSTICIABLE CLAIM AGAINST THE STATE OF DELAWARE ..................... 7

      II.    THE COMPLAINT FAILS TO STATE A JUSTICIABLE CLAIM AGAINST THE OFFICE OF DISCIPLINARY COUNSEL (ODC) ........................... 9

      III.   THE COMPLAINT FAILS TO STATE A JUSTICIABLE CLAIM AGAINST ANDREA ROCANELLI .............................. 11

      IV.   NONE OF THE ALLEGED CLAIMS STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED .......................... 24

      V.    THE COMPLAINT FAILS TO ALLEGE A JUSTICIABLE STATE LAW CLAIM ................................ 27

CONCLUSION.................................................................. 29

## TABLE OF CITATIONS

**Cases:**                                                                          **Page:**

*Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam) ..........................................................7

*Alston v. Hudson, Jones, Jaywork, Williams and Liguori*, 1999 WL 743671

       at *2 n.7 (Del.Super.) ..........................................................................................9,27

*Arizona v. California*, 460 U.S. 605 (1983)..........................................................................21

*Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718 (6th Cir. 1993)........................5,9,12

*Biener v. Calio*, 361 F.3d 206 (3d Cir. 2004) ....................................................................26

*Blake v. Papadakos*, 953 F.2d 68 (3d Cir. 1992) ..............................................................14

*Borough of West Mifflin v. Lancaster*, 45 F.3d 780 (3d Cir. 1995) ..................................28

*Boyce v. Dembe*, 47 Fed.Appx. 155 (2002) ......................................................................14

*Brooks v. New Hampshire Supreme Court*, 80 F.3d 633 (1st Cir. 1996) ...............5,6,19,20

*Callahan v. City of Philadelphia*, 207 F.3d 668 (3d Cir. 2000) ........................................11

*Carroll v. Gross*, 984 F.2d 392 (11th Cir. 1993) .........................................................5,9,12

*Centifanti v. Nix*, 865 F.2d 1422 (3d Cir. 1989) ......................................................14,15,16

*Childs v. Reynoldson*, 777 F.2d 1305, (8th Cir. 1985)................................................5,10,12

*Clulow v. Oklahoma*, 700 F.2d 1291 (10th Cir. 1983) ....................................................5,12

*Cohn v. Bracy*, 28 F.3d 1213 WL 328302 (6th Cir. 1994) ................................................12

*Cory v. White*, 457 U.S. 85 (1982)...................................................................................9,11

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 483 (1983) ........................13

*Doe v. Cates*, 499 A.2D 1175 (Del. 1985).........................................................................27

*Federal Deposit Insurance Corporation v. Mallen*, 486 U.S. 230 (1988) ...........6,16,17,25

*Flast v. Cohen*, 392 U.S. 83 (1968) ..................................................................................23

**Cases:**                                                                                              **Page:**

*Forman v. Ours*, 804 F.Supp. 864 (E.D.La. 1992) ..............................................................12

*Frankel v. The Disciplinary Board of the Supreme Court of Pennsylvania*,

    2005 WL 2994354 at *1 (E.D.Pa.) ...................................................................10,11

*Getty v. Reed*, 674 F.2d 568 (6th Cir. 1982) .......................................................................19

*Gilbert v. Homar*, 520 U.S. 924 (1997) .........................................................................6,17,25

*Ginter v. State Bar of Nevada*, 625 F.2d 829 (9th Cir. 1980) .......................................10,12

*Hafer v. Melo*, 502 U.S. 21 (1991) ...........................................................................5,10,11

*Hamilton v. Civigenics*, 2005 WL 418023 (D.Del.) ......................................................8,10,11

*Hamilton v. Messick*, 2005 WL 736684 (D.Del.) ................................................................8

*Hunter v. Supreme Court of New Jersey*, 951 F.Supp. 1161 (D.N.J. 1996) ..............6,11,25

*Johnson v. State of New Jersey*, 869 F.Supp. 289 (D.N.J. 1994)................................5,10,11

*Kentucky v. Graham*, 476 U.S. 159 (1985).......................................................................11

*Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981)...........................................................7

*Law Offices of Christopher S. Lucas and Associates v. Disciplinary Board of the*

    *Supreme Court of Pennsylvania*, 320 F.Supp.2d 291 (M.D.Pa. 2004).................11

*Marran v. Marran*, 376 F.3d 143 (3d Cir. 2004)...............................................................14

*Mattas v. Supreme Court of Pennsylvania*, 576 F.Supp. 1178 (W.D. 1983)....................10

*Middlesex County Ethics Committee v. Garden State Bar Association*,

    457 U.S. 423 (1982)...........................................................................1,5,18,19,20

*Nextel Communications of the Mid-Atlantic, Inc. v. City of Margate*,

    305 F.3d 188 (3d Cir. 2002)..............................................................................6,23

*Nix v. Sawyer*, 466 A.2d 407 (Del.Super. 1983)..............................................................26

**Cases:** **Page:**

*O'Neill v. City of Philadelphia*, 32 F.3d 785 (3d Cir. 1994) .............................................20

*Ospina v. Dep't of Corr.*, 749 F. Supp. 572, 579 (D.Del. 1990) ........................................7

*Pauley v. Reinoehl*, 848 A.2d 569 (Del. 2004) ..................................................................27

*Pawlak v. Pennsylvania Board of Law Examiners*, 1995 WL 517646

       at *14-*15 (E.D.Pa.) .................................................................................................14

*Pawlek v. Nix*, 1996 WL 560360 at n. 15 (E.D.Pa.) ....................................................10,12

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984)...................5,8,9,27

*Perry v. Barnard*, 745 F.Supp. 1394 (S.D.Ind. 1989).......................................................11

*Perry v. Barnard*, 911 F.2d 736 (7th Cir. 1990) ...............................................................11

*Roesch v. Otarola*, 980 F.2d 850 (2d Cir. 1992).................................................................26

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)............................................................13

*Schall v. Joyce*, 885 F.2d 101 (3d Cir. 1989).....................................................................20

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ..................................................8

*Slavin v. Curry*, 574 F.2d 1256 (5th Cir.) ........................................................................12

*Slavin v. Curry*, 583 F.2d 779 (5th Cir. 1978) .................................................................12

*Soliman v. Taylor*, 2005 WL 2429886 (D.Del.) at *9.......................................................7,10

*Sparks v. Character and Fitness Committee of Kentucky*, 859 F.2d 428

       (6th Cir. 1988).........................................................................................................12

*Stern v. Nix*, 840 F.2d 208 (3d Cir. 1988)...........................................................5,13,14,15

*Stump v. Sparkman*, 435 U.S. 349 (1978)......................................................................5,13

*Tackett v. State Farm Fire and Casualty Ins. Co.*, 653 A.2d 254 (Del. 1995) .................26

*Taylor v. Kentucky State Bar Ass'n*, 424 F.2d 478 (6th Cir. 1970) ....................................1

**Cases:**                                                                                    **Page:**

*Thomas v. Kadish*, 748 F.2d 276 (5th Cir. 1984)............................................................10,12

*Thompson v. Kramer*, 1994 WL 725953 (E.D.Pa.) ...........................................................12

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1996)........................................................28

*United States v. Fruehauf*, 365 U.S. 146 (1961)...............................................................24

*White v. Judicial Inquiry and Review Board of Pennsylvania, supra,*

     744 F. Supp. at 669 ...............................................................................................15

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)............................................5,8

*Younger v. Harris*, 401 U.S. 37 (1971)...........................................................1,2,5,18,19,21

*Zahl v. Harper*, 282 F.3d 204 (3d Cir. 2002)..................................................................20


**Statutes and Rules:**

10 Del.C. §161 ...................................................................................................................9

18 Del.C. §6511 ................................................................................................................7

28 U.S.C. §§ 1257, 2283 ..................................................................................................1

42 U.S.C. §1983................................................................................................1,5,7,8,10

Federal Rule of Civil Procedure 12(b)(1) ........................................................................15

Federal Rule of Civil Procedure 12(b)(6) ........................................................................15

Sup. Ct. R. 64....................................................................................................................9,12

## NATURE AND STAGE OF THE PROCEEDINGS

On or about August 2, 2005, plaintiff filed the complaint in this action in the

United States District Court for the Eastern District of Pennsylvania.  The complaint

named as defendants Deputy Attorney General Sean P. Lugg, the State of Delaware,

Andrea Rocanelli, and the Office of the Disciplinary Counsel ("ODC") for the Supreme

Court of Delaware.  The complaint presented multiple claims under 42 U.S.C. § 1983,

alleging violations of plaintiff's procedural and substantive due process rights and right to

equal protection, malicious prosecution, and intentional infliction of emotional distress.

Plaintiff sought compensatory damages in the amount of five billion dollars as well as

preliminary and permanent injunctive relief enjoining his criminal prosecution and the

related ODC disciplinary proceeding.

On August 2, 2005, United States District Judge Norma L. Shapiro issued an

order (copy attached at Tab A of the Appendix) dismissing Sean Lugg and the State of

Delaware as defendants, refusing to enjoin the criminal prosecution on the grounds of the

*Younger v. Harris*, 401 U.S. 36 (1971) abstention doctrine, finding that the court had

jurisdiction over the claim against the state bar disciplinary proceeding because it was not

a "state proceeding" under 28 U.S.C. § 2283,[1] and transferring the venue of the action to

the District of Delaware on the basis that most of the parties and witnesses are located in

Delaware.

---

[1] This finding by Judge Shapiro is clearly erroneous.  The court relied on *Taylor v. Kentucky State Bar Ass'n*, 424 F.2d 478, 482 (6th Cir. 1970), which preceded *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982). In *Middlesex* the Supreme Court explicitly reversed the Third Circuit Court of Appeals on this point.  457 U.S. at 429, 432.

On August 16, 2005, plaintiff filed in this Court a motion for reconsideration (D.I. 8) of the August 2, 2005 order with respect to its dismissal of the State of Delaware. The motion for reconsideration did not seek a reconsideration of the dismissal of Deputy Attorney General Sean Lugg, nor did it seek reconsideration of the finding that *Younger* abstention applied to the criminal prosecution. On August 24, 2005, the defendants filed their opposition to plaintiff's motion for reconsideration. (D.I. 10). Also on August 24, 2005, plaintiff filed a motion to strike the affidavit of Debra Lawhead, which was an exhibit to the defendants' opposition to plaintiff's motion for reconsideration. (D.I. 11). On September 2, 2005, defendants filed their opposition to plaintiff's motion to strike. (D.I. 12). On September 8, 2005, plaintiff filed a reply to the defendants' opposition to his motion to strike. (D.I. 13).

On November 30, 2005, plaintiff filed returns of service for his service upon the Office of Disciplinary Counsel and the waiver of service executed by Andrea Rocanelli. (D.I. 15, 16). By order dated December 8, 2005, the Court granted the defendants an enlargement of time, until January 13, 2006, in which to file a responsive pleading to the complaint. This is the opening brief in support of the defendants' motion to dismiss, filed simultaneously with this brief.

## STATEMENT OF FACTS

For the purpose of this motion, and only for this purpose, the defendants assume the facts alleged in the complaint are true.

The complaint alleges that plaintiff entered into a contract with an entity entitled "PayPal" and subsequently got into a dispute with PayPal.  (Complaint, ¶¶ 20-35).  In March 2004 plaintiff sued PayPal in a Delaware Justice of the Peace Court, but subsequently agreed to dismiss the action.  (Complaint, ¶¶ 32, 35).   Plaintiff also drafted but never submitted an objection to a class action settlement involving PayPal in the United States District Court for the Northern District of California.  (Complaint, ¶¶ 36-40).  In August 2004, after receiving a complaint against plaintiff from a Delaware law firm, Chief Counsel of the Delaware ODC Andrea Rocanelli made a written inquiry to plaintiff.   (Complaint, ¶ 41). Plaintiff believes that Rocanelli was once associated with the law firm that filed the complaint against him.  (Complaint, ¶ 41).  Rocanelli agreed to meet with plaintiff at his request immediately after he received the inquiry letter.  (Complaint, ¶ 42).   Rocanelli expressed no opinion as to plaintiff's objections to the PayPal class action settlement.  (Complaint, ¶ 42).  She did advise him to obtain counsel.  (Complaint, ¶ 42).  Rocanelli also advised the law firm employing plaintiff of the existence of the inquiry, and the firm placed plaintiff on a leave of absence.  (Complaint, ¶ 43).  Rocanelli also notified the Attorney General's Office of a possible criminal offense by the plaintiff.  (Complaint, ¶ 43).

Plaintiff also sued J.P. Morgan Chase & Company and MBNA Corporation.  (Complaint, ¶¶ 51-61).  Plaintiff believes that Rocanelli is married to an employee of MBNA.  (Complaint, ¶ 60).  On July 25, 2005, a grand jury indicted plaintiff for felony

theft and conspiracy to commit theft. (Complaint, ¶ 70).  An arrest warrant was issued

for plaintiff, who was outside the country.  (Complaint, ¶ 73).

ODC Rule[2] 16 (copy attached at Tab B) requires an automatic suspension of an

attorney's license to practice law if he or she is charged with or convicted of a felony. [3]

(Complaint, ¶ 75).  Pursuant to this rule, Rocanelli filed a petition against plaintiff in the

Delaware Supreme Court after the indictment was issued.   (Complaint, ¶ 75).  Rocanelli

agreed to a continuance of the hearing on the petition upon learning that plaintiff was out

of the country.   (Complaint, ¶ 78).

On August 9, 2005, at a pre-hearing conference with a panel of the Delaware

Supreme Court, plaintiff agreed to an indefinite stay of the interim suspension proceeding

in exchange for notifying his clients of the existence of the criminal indictment against

him.[4]  Thus, he faces no immediate sanction, and the outcome of the suspension

proceeding is dependent on the outcome of the criminal prosecution.

---

[2] The ODC rules are entitled, "Delaware Lawyers' Rules of Disciplinary Procedure," but
are sometimes referred to in this brief as "ODC Rules" for the purpose of brevity.

[3] Though the complaint asserts that suspension is "automatic," the Court may read Rule
16 for itself and realize that only the filing of the petition is automatic.  The rule provides
for notice and a hearing, and the interim suspension determination is in the discretion of
the Delaware Supreme Court.

[4] Plaintiff has not alleged this in the complaint, but a certified transcript of the conference
is attached at Tab C in the Appendix.

## **SUMMARY OF ARGUMENT**

The State of Delaware is protected by Eleventh Amendment immunity and must be dismissed from this action.  The Office of the Disciplinary Counsel ("ODC") is a state agency and an arm of the Delaware Supreme Court.  Like the State, it is entitled to Eleventh Amendment  immunity and must be dismissed from this action.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 119-120 (1984).  Neither the State nor the ODC is a "person" for purposes of 42 U.S.C. § 1983.  *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989).

In her official capacity, Andrea Rocanelli is also protected by Eleventh Amendment immunity.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  In her individual capacity, Rocanelli is protected by quasi-judicial absolute immunity from any damages action.  *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993);  *Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 722 (6th Cir. (1993);  *Childs v. Reynoldson*, 777 F.2d 1305, 1306 (8th Cir. 1985);  *Clulow v. Oklahoma*, 700 F.2d 1291, 1298 (10th Cir. 1983).  This absolute immunity extends to claims of malice or bad faith.  *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Johnson v. State of New Jersey,*  869 F.Supp. 289, 293(D.N.J. 1994).

With respect to plaintiff's claim for injunctive relief, the *Rooker-Feldman* abstention doctrine applies here because plaintiff is seeking to reverse a state court action.  *Stern v. Nix*, 840 F.2d 208 (3d Cir. 1988).   Additionally, abstention under the doctrine of *Younger v. Harris,* 401 U.S. 37 (1971), applies to state bar disciplinary proceedings.  *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423 (1982).  Though there is a bad faith exception, plaintiff's allegations of bad motive fail to

constitute the extraordinary case sufficient to meet this exception. *Brooks v. New Hampshire Supreme Court*, 80 F.3d 633 (1st Cir. 1996). Notably, plaintiff has agreed to the current status of the disciplinary proceeding, which has been indefinitely stayed.

Because there is an agreement and plaintiff's license has not been suspended, this case is not ripe for adjudication as it does not meet the Article III "case or controversy" requirement. *Nextel Communications of the Mid-Atlantic, Inc. v. City of Margate,* 305 F.3d 188, 192 (3d Cir. 2002).

None of the alleged claims states a claim upon which relief may be granted. ODC Rule 16 provides for prior notice and a hearing, and therefore is constitutionally sound. *Hunter v. Supreme Court of New Jersey*, 951 F.Supp. 1161, 1180 (D.N.J. 1996). An indictment for a felony is a constitutionally permissible basis on which to base an interim suspension of an attorney's license. *See Federal Deposit Insurance Corporation v. Mallen,* 486 U.S. 230 (1988); *Gilbert v. Homar*, 520 U.S. 924 (1997). For this reason, there is a rational basis under the equal protection clause for the Delaware Supreme Court and its agents to take a discriminatory action against attorneys under indictment for a felony. Plaintiff's claims of malicious prosecution and intentional infliction of emotional distress fail to allege necessary elements of those claims.

The defendants enjoy sovereign immunity under Delaware law, and Rocanelli has absolute immunity against all forms of relief under Rule 10 of the Delaware Lawyers' Rules of Disciplinary Procedure, issued by the Delaware Supreme Court.

The complaint should be dismissed in its entirety.

## ARGUMENT

I.    **THE COMPLAINT FAILS TO STATE A JUSTICIABLE CLAIM AGAINST THE STATE OF DELAWARE.**

   A.    **Claims against the State are precluded by Eleventh Amendment immunity.**

Absent a state's consent, the Eleventh Amendment bars a civil rights action in federal court that names a state as a defendant. *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978) (*per curiam*)). As this Court has repeatedly held, and as recently as September 30, 2005, the State of Delaware has not consented to waive its Eleventh Amendment immunity. *Soliman v. Taylor*, 2005 WL 2429886 at *9 (D.Del.) (Tab D). As the Court noted in *Soliman*:

> A waiver will be found only where it has been stated "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." Such an express waiver may be made through clear constitutional or statutory language. Neither the constitution nor any Delaware statute expressly waives Delaware's Eleventh Amendment sovereign immunity. Therefore, Delaware has clearly not waived its immunity.

*Id. See also, Ospina v. Dep't of Corr.*, 749 F.Supp. 572, 579 (D.Del. 1990). Moreover, as the Court also noted in *Soliman*, Congress has not abrogated the states' immunity for claims under 42 U.S.C. § 1983. *Id.*

In the instant action, plaintiff argued in his Motion for Reconsideration of August 2, 2005 Order Dismissing Claims Against the State of Delaware (D.I. ) that the State has waived its immunity in 18 Del.C. § 6511. Plaintiff in *Soliman* made this identical argument in reliance upon § 6511, and the Court dismissed it in a footnote. *Id.* at *9 n.5. This holding in *Soliman* is buttressed by the Court's identical holdings earlier this year in

*Hamilton v. Messick*, 2005 WL 736684 (D.Del.) (Tab E), and in *Hamilton v. Civigenics*, 2005 WL 418023 (D.Del.) (Tab F).

B.         **The State of Delaware is not a "person" for purposes of § 1983.**

An additional reason why the State of Delaware is not amenable to suit in this civil rights action is that the State is not a "person" for purposes of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989). Because § 1983 applies only to "persons," it may not be a basis for an action against a state even in its own courts, where the Eleventh Amendment would not otherwise provide immunity. Further, as the dissent in *Will* argued, even if a state were to consent to suit, because it is not a "person" under § 1983 it still may not be made a defendant. *Will*, 491 U.S. at 85 (Brennan, J., dissenting).

C.         **The Eleventh Amendment is jurisdictional and protects the State from suit regardless of the form of relief plaintiff seeks.**

Eleventh Amendment immunity is a limit on the jurisdiction of the federal courts. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 119-120 (1984) ("The Eleventh Amendment is an explicit limitation on the judicial power of the United States. . . . It deprives a federal court of power to decide certain claims against States that otherwise would be within the scope of Art. III's grant of jurisdiction." (Citation omitted)).

Regardless of the form of relief plaintiff seeks--whether damages, declaratory or injunctive relief--the Eleventh Amendment protects the State against suit and requires dismissal. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) ("[W]e have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."); *Pennhurst State*

8

*School & Hospital v. Halderman*, 465 U.S. 89, 120 (1984) ("[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim."); *Cory v. White*, 457 U.S. 85 (1982) ("Thus, the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction, a remedy available only from equity.").

For the foregoing reasons, the State of Delaware should be dismissed as a defendant in this action with respect to all claims and all forms of relief requested by plaintiff.

## II.    THE COMPLAINT FAILS TO STATE A JUSTICIABLE CLAIM AGAINST THE OFFICE OF DISCIPLINARY COUNSEL (ODC).

### A.    ODC is an arm of the Supreme Court of the State of Delaware.

The Office of Disciplinary Counsel ("ODC") is an arm of the Supreme Court of the State of Delaware. It is established by Rule 64 of the Delaware Supreme Court Rules (copy attached at Tab G). The chief disciplinary counsel and deputy disciplinary counsel are appointed by the Delaware Supreme Court and serve at the pleasure of the Delaware Supreme Court. (Rule 64(a)). *See also Alston v. Hudson, Jones, Jaywork, Williams and Liguori,* 1999 WL 743671 at *2 n.7 (Del.Super.) (copy at Tab H) ("[T]he Office of the Disciplinary Counsel is created by Rule 64 of the Supreme Court Rules pursuant to 10 Del.C. § 161, and as such, is also a State agency."). Plaintiff admits in his complaint that ODC is an arm of the Delaware Supreme Court. (Complaint at ¶ 19).

It is generally recognized that state boards of law examiners and disciplinary boards are agents of the state courts. *See, e.g., Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (holding that Florida Disciplinary Committee was agent of Florida Supreme Court); *Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 722 (6th Cir. (1993) (state

9

bar disciplinary committee was agent of state supreme court); *Childs v. Reynoldson*, 777 F.2d 1305, 1306 (8th Cir. 1985) (Iowa Board of Law Examiners acts as arm of the Supreme Court of Iowa); *Thomas v. Kadish*, 748 F.2d 276, 282 (5th Cir. 1984) (Texas Board of Law Examiners was agent of the Texas Supreme Court); *Ginter v. State Bar of Nevada,* 625 F.2d 829, 830 (9th Cir. 1980) (state bar association held as arm of the state and not subject to suit under Eleventh Amendment); *Pawlek v. Nix*, 1996 WL 560360 at n. 15 (E.D.Pa.) (copy at Tab I).

    **B.**    **ODC is protected by Eleventh Amendment immunity.**

As an arm of the Delaware Supreme Court, and thus a state agency, the ODC is protected by Eleventh Amendment immunity to the same extent as the State of Delaware's immunity. It is well established that state agencies receive Eleventh Amendment protection identical to that of the States themselves. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Soliman, supra,* 2005 WL 2429886 at *9. This principle has been frequently applied to protect state disciplinary counsel boards and officials from suit in federal court. *See, e.g., Mattas v. Supreme Court of Pennsylvania,* 576 F.Supp. 1178, 1182 (W.D. 1983); *Johnson v. State of New Jersey,* 869 F.Supp. 289, 298 (D.N.J. 1994); *Frankel v. The Disciplinary Board of the Supreme Ccourt of Pennsylvania,* 2005 WL 2994354 at *1 (E.D.Pa.) (Tab J); *Pawlik v. Nix, supra,* 1996 WL 560360 at *7.

    **C.**    **As an agency of the State of Delaware, ODC is not a "person" for purposes of § 1983.**

For the reasons set forth in section I.B. above, the State of Delaware is not a "person" for purposes of 42 U.S.C. § 1983. This principle applies equally to state agencies, just as Eleventh Amendment immunity applies equally to state agencies. *Soliman v. Taylor*, *supra,* 2005 WL 2429886 at *9; *Hamilton v. Civigenics*, *supra,* 2005

WL 418023 at *4.  Therefore, ODC--being an arm of the Delaware Supreme Court and a state agency--is not a "person" for purposes of § 1983.  *See also, Callahan v. City of Philadelphia*, 207 F.3d 668, 673 (3d Cir. 2000) (holding that Pennsylvania courts are not "persons" within meaning of § 1983); *Law Offices of Christopher S. Lucas and Associates v. Disciplinary Board of the Supreme Court of Pennsylvania*, 320 F.Supp.2d 291, 296 (M.D.Pa. 2004).

> **D.    As an agency of the State of Delaware, ODC is not subject to injunctive relief ordered directly against it.**

For the reasons set forth in section I.C. above, Eleventh Amendment immunity protects the State of Delaware against all claims in federal court brought by a Delaware citizen, regardless of the form of relief requested.  This principle applies equally to state agencies, such as the Delaware ODC.  *Cory v. White, supra*, 457 U.S. at 90;  *Johnson v. State of New Jersey,*   869 F.Supp. 289, 298 n.9 (D.N.J. 1994);  *Perry v. Barnard*, 745 F.Supp. 1394, 1403 (S.D.Ind. 1989), *aff'd*, 911 F.2d 736 (7th Cir. 1990).

## III.    THE COMPLAINT FAILS TO STATE A JUSTICIABLE CLAIM AGAINST ANDREA ROCANELLI.

> **A.    Official capacity:   Rocanelli is protected by Eleventh Amendment immunity.**

Plaintiff is not entitled to relief in any form against defendant Rocanelli in her official capacity, as the State is the real party in interest and Eleventh Amendment immunity applies.  *Hafer v. Melo*,  *supra,* 502 U.S. at 25; *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Hunter v. Supreme Court of New Jersey,* 951 F.Supp. 1161, 1179 (D.N.J. 1996) ("a suit against state officers in their official capacities is a suit against the state itself");  *Perry v. Barnard*, 745 F.Supp. 1394, 1403 (S.D.Ind. 1989), *aff'd*, 911 F.2d 736 (7th Cir. 1990); *Frankel v. The Disciplinary Board of the Supreme Court of*

*Pennsylvania, supra,* 2005 WL 2994354 at *2; *Pawlik v. Nix, supra,* 1996 WL 560360 at *7.

     **B.     Individual capacity--damages: Rocanelli is entitled to absolute immunity in any damages action against her.**

It is well established that a state disciplinary counsel is entitled to absolute quasi-judicial immunity in any damages action where the office of disciplinary counsel is an arm of the state court system. *See, e.g., Cohn v. Bracy,* 28 F.3d 1213, 1994 WL 328302 (6th Cir. 1994) (Tab J); *Carroll v. Gross,* 984 F.2d 392, 393 (11th Cir. 1993) (holding that Florida Disciplinary Committee was agent of Florida Supreme Court); *Berger v. Cuyahoga County Bar Ass'n,* 983 F.2d 718, 722 (6th Cir. (1993) (state bar disciplinary committee was agent of state supreme court); *Childs v. Reynoldson,* 777 F.2d 1305, 1306 (8th Cir. 1985) (Iowa Board of Law Examiners acts as arm of the Supreme Court of Iowa); *Clulow v. Oklahoma,* 700 F.2d 1291, 1298 (10th Cir. 1983); *Thomas v. Kadish,* 748 F.2d 276, 282 (5th Cir. 1984) (Texas Board of Law Examiners was agent of the Texas Supreme Court); *Ginter v. State Bar of Nevada,* 625 F.2d 829, 830 (9th Cir. 1980) (state bar association held as arm of the state and not subject to suit under Eleventh Amendment); *Slavin v. Curry,* 574 F.2d 1256, 1266 (5th Cir.), *modified on other grounds on rehearing,* 583 F.2d 779 (5th Cir. 1978); *Sparks v. Character and Fitness Committee of Kentucky,* 859 F.2d 428, 432-33 (6th Cir. 1988); *Forman v. Ours,* 804 F.Supp. 864 (E.D.La. 1992); *Thompson v. Kramer,* 1994 WL 725953 (E.D.Pa.) (Tab K); *Pawlek v. Nix, supra,* 1996 WL 560360 at n. 15.

As noted in section II.A. above, the ODC is an arm of the Delaware Supreme Court, as plaintiff admits in his complaint. (Complaint at ¶ 19). Delaware Supreme Court Rule 64 establishes the Office of the Disciplinary Counsel, and ODC Rule 10

(copy attached at Tab L), issued by the Delaware Supreme Court, creates absolute immunity for counsel and members of the ODC staff. Thus, it is only logical that defendant Rocanelli receive judicial or quasi-judicial immunity, which protects her even against claims of malice.

The instant complaint alleges that defendant Andrea Rocanelli received a complaint against plaintiff, investigated the complaint, notified the Attorney General's Office of a possible criminal violation, and upon learning the plaintiff had been indicted, filed a petition against plaintiff in the Supreme Court of Delaware as required by ODC Rule 16, seeking an interim suspension of plaintiff's license as an attorney. These acts all constitute quasi-judicial actions by disciplinary counsel and are all entitled to absolute immunity under the authorities cited above. Judicial and quasi-judicial absolute immunity applies even to allegedly malicious acts. *Stump v. Sparkman*, 435 U.S. 349 356 (1978); *Johnson v. State of New Jersey, supra,* 869 F.Supp. at 293.

### C. Individual capacity--injunctive relief: *Rooker-Feldman* abstention applies.

In *Stern v. Nix*, 840 F.2d 208 (3d Cir. 1988), the Third Circuit Court of Appeals applied the *Rooker-Feldman* abstention doctrine[5] to dismiss a disbarred attorney's complaint attacking the Pennsylvania Supreme Court's order. This abstention doctrine is based on 28 U.S.C. § 1257, which mandates that only the United States Supreme Court may review decisions made by a state's highest court. The *Stern* court held that the plaintiff was essentially seeking a reversal of the state order in federal district court, and this was barred by *Rooker-Feldman*. Although parts of the complaint were couched as a

---

[5] This doctrine had its genesis in two United States Supreme Court opinions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 483 (1983).

general challenge to state administrative procedures, which would not have been in violation of the doctrine, the Third Circuit appeals court found it "a skillful attempt to mask the true purpose of the action . . . ." *Stern*, 840 F.2d at 212.

The *Rooker-Feldman* abstention doctrine applies to a final adjudication by a state's highest court, but it has been also applied to decisions of lower state courts and to non-final court actions where the federal claim is "inextricably intertwined" with issues in the state judicial proceeding. Almost any claim that is actually litigated will meet the "inextricably intertwined" test. *Marran v. Marran*, 376 F.3d 143, 149 (3d Cir. 2004). Where a plaintiff has available defenses in the state court proceeding that he chooses not to pursue, preferring to file an action in federal court, the *Rooker-Feldman* doctrine applies and bars federal consideration of the claim. *Pawlak v. Pennsylvania Board of Law Examiners*, 1995 WL 517646 at *14-*15 (E.D.Pa.) (Tab M). It also extends to allegedly unconstitutional "acts" and "practices" of the state judiciary. *Boyce v. Dembe*, 47 Fed.Appx. 155, 160 (2002); *Blake v. Papadakos*, 953 F.2d 68, 72 (3d Cir. 1992) (abstention applies to an "adjudicative act").

To determine whether *Rooker-Feldman* applies, and whether plaintiff seeks to reverse or negate a state court adjudication or challenge a rule of general applicability, courts look to see the level of factual specificity in the complaint and the relief requested. *See Centifanti v. Nix*, 865 F.2d 1422, 1428 n.7, 1429 (3d Cir. 1989); *Boyce v. Dembe*, *supra,* 47 Fed.Appx. at 160. Where plaintiff seeks protection from some action taken against him and provides in the complaint extensive factual development of the matter as it pertains to him, *Rooker-Feldman* abstention will apply. *Id.*

**1.    Plaintiff seeks to enjoin the particular suspension proceeding against him.**

14

Applying the foregoing test to the instant action, it is apparent that the plaintiff seeks to reverse the state court proceeding against him.  In his prayer for relief he asks that this Court enjoin the defendants from both the criminal prosecution and the suspension proceeding; that ODC Rule 16 as applied be found a violation of due process, and that compensatory damages be awarded to him.  (Complaint at 48).   Moreover, the complaint itself is an extraordinarily detailed, emotionally overheated narrative of what actions the agents of the Delaware Supreme Court have taken against the plaintiff.  These two factors--the relief requested and the specificity of the complaint as to plaintiff's particular circumstances--weigh strongly in favor of abstention.  *See White v. Judicial Inquiry and Review Board of Pennsylvania, supra,* 744 F.Supp. at 669 (complaint focused on plaintiff's treatment by defendants showed that case was closer to *Stern, supra,* than to *Centifanti, supra*).

> **2.      Even if the complaint is construed as a justiciable challenge to ODC Rule 16, ODC Rule 16 is facially valid.**

Because *Rooker-Feldman* abstention applies, this Court lacks subject matter jurisdiction to entertain this action and should dismiss it under Federal Rule of Civil Procedure 12(b)(1).  Additionally, the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted.

The complaint alleges bad motives by the defendants *ad nauseum,* but it fails to allege particular facts that would demonstrate a constitutional violation of any sort.  It alleges that defendant Rocanelli received a complaint against plaintiff, investigated the complaint, notified the Attorney General's Office of a possible criminal offense by

15

plaintiff, met with plaintiff, continued a hearing date at the request of plaintiff's counsel, and upon learning that the plaintiff had been indicted filed a petition in the Delaware Supreme Court, as required by ODC Rule 16, seeking an interim suspension of plaintiff's license. Regardless of motive, these actions are of the sort to be expected of any disciplinary counsel and cannot reasonably be found to constitute a constitutional violation.

To the extent that plaintiff would argue his complaint comes within the *Centifanti* exception for challenges to general rules, his claims must fail because ODC Rule 16 (copy at Tab B) is facially valid.

Plaintiff's most substantive claim in his complaint is an attack on the "automatic" suspension under Rule 16 when an attorney is indicted for a felony. Plaintiff views this as a violation of his due process rights. (Complaint at 42, ¶79).

Plaintiff's assertions are contrary to the holdings of the United States Supreme Court on this issue. In *Federal Deposit Insurance Corporation v. Mallen,* 486 U.S. 230 (1988), the Court reversed a lower court's injunction against the FDIC where the agency had prohibited an indicted bank official from participating in bank affairs. With respect to the indictment as a basis for the FDIC order, the Court stated:

> . . . [T]here is little likelihood that the deprivation is without basis. The returning of the indictment establishes that an independent body has determined that there is probable cause to believe that the officer has committed a crime punishable by imprisonment for a term in excess of one year. This finding is relevant in at least two ways. First, the finding of probable cause by an independent body demonstrates that the suspension is not arbitrary. Second, the return of the indictment itself is an objective fact that will in most cases raise public concern that the bank is not being managed in a responsible manner.

486 U.S. at 244-45.   Similarly, in the instant action, we have a finding of probable cause by an independent body that plaintiff has committed a felony, and we have an objective fact likely to cause public concern about the integrity of the legal system.

In *Gilbert v. Homar*, 520 U.S. 924 (1997), the Supreme Court issued an even stronger holding on this point when it held that an employee was not entitled under the due process clause to notice and hearing prior to his suspension without pay based on his arrest on drug-related charges.   The Court stated:

> In *Mallon*, we concluded that an "*ex parte* finding of probable cause" such as a grand jury indictment provides adequate assurance that the suspension is not unjustified.  The same is true when an employee is arrested and then formally charged with a felony. . . . It is true, as respondent argues, that there is more reason to believe an employee has committed a felony when he is indicted rather than merely arrested and formally charged;  but for present purposes arrest and charge give reason enough.  They serve to assure that the state employer's decision to suspend the employee is not "baseless or unwarranted," in that an independent third party has determined that there is probable cause to believe the employee committed a serious crime.

520 U.S. at 934 (citations omitted).   In the instant action, the independent third party finding of probable cause of a felony committed by plaintiff was made by a grand jury, which as the Court stated provides "more reason to believe" a felony was committed.

As plaintiff's due process claim forms the gist of his complaint and is clearly based on an erroneous legal theory, the Court should dismiss the complaint under *Rooker-Feldman* abstention and due to its failure to state a claim upon which relief may be granted.

**D.      Individual capacity--injunctive relief: *Younger v. Harris* abstention applies.**

In addition to *Rooker-Feldman* abstention (which is jurisdictional in nature), the *Younger v. Harris*[6] abstention doctrine (which is not jurisdictional but based on principles of federalism and comity) also applies.  In *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423 (1982), the Supreme Court held that *Younger v. Harris* abstention applies to state bar disciplinary proceedings.  The Court adopted a tripartite analysis to determine whether to apply *Younger* abstention to state bar disciplinary proceedings: 1) whether the state bar hearing constitutes an ongoing state judicial proceeding; 2) whether the proceeding implicate important state interests, and 3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges.  457 U.S. at 432.  Applying this test to the New Jersey bar disciplinary proceedings, the Court found that they were judicial in character and warranted deference by the federal courts, important state interests were at stake in the proceeding, and that the plaintiff had an adequate opportunity to present his constitutional challenge in the state proceeding.  The Court found that *Younger* abstention was required.  457 U.S. at 437.

**1.      The complaint fails to allege facts with particularity showing bad faith or harassment.**

In *Middlesex*, the Court recognized an exception to the routine application of *Younger* abstention: where plaintiff is able to show bad faith or harassment.  However, the Court noted that it would require an "extraordinary circumstance" for *Younger* not to apply to state bar disciplinary proceedings.  *Id.,* at 435.  Applying *Middlesex*, the lower

---

[6] This doctrine originated with the Supreme Court's opinion in *Younger v. Harris*, 401 U.S. 37 (1971).

federal courts have emphasized the limited and extraordinary nature of this exception. *See, e.g., Getty v. Reed*, 674 F.2d 568, 569 (6th Cir. 1982) ("relief from state disbarment proceedings can only be had in unusual and limited circumstances--and then only upon proof of federal constitutional violation"). The instant complaint fails to allege particular facts that would trigger this exception to the application of *Younger* abstention.

It is common for plaintiffs to show dexterity in drafting their complaints to try to avoid the application of *Younger* abstention. The federal courts have been alert to this fact and have not permitted the bad faith exception in *Middlesex* to swallow the general rule. Thus, in *Brooks v. New Hampshire Supreme Court*, 80 F.3d 633 (1st Cir. 1996), the First Circuit Court of Appeals rejected an attempt to circumvent *Younger* abstention through allegations of bias. The court stated:

> Judicial bias is a recognized basis for derailing *Younger* abstention, but the claim requires more than the frenzied brandishing of a cardboard sword. Brooks' claim is pasted together from various bits and pieces of marginally relevant information. . . . We think that such snippets, individually and collectively, are insufficient to show cognizable bias.

80 F.3d at 639 (citation omitted). The First Circuit also stated that "the baseline showing of bias necessary to trigger *Younger*'s escape mechanism requires the plaintiff to offer some evidence that abstention will jeopardize his due process right to an impartial adjudication." *Id.,* at 640. In the instant action, as the disciplinary proceeding against plaintiff will be determined by the justices of the Delaware Supreme Court, based on the indictment and outcome of the criminal proceeding against him, it is clear that abstention here will not jeopardize plaintiff's due process rights. Rocanelli's personal relationship with an MBNA employee or a former law firm have no relevance to the integrity of the

Delaware Supreme Court's disciplinary proceeding, the application of ODC Rule 16, or the grand jury's determination that plaintiff committed a felony.

Since having its opinion in *Middlesex* reversed by the Supreme Court, the Third Circuit Court of Appeals has applied *Younger* abstention routinely where there are ongoing state civil or administrative proceedings. *See, e.g., Zahl v. Harper*, 282 F.3d 204 (3d Cir. 2002) (affirming district court's dismissal of complaint, which challenged state medical administrative proceeding as federally preempted, on *Younger* abstention basis); *O'Neill v. City of Philadelphia*, 32 F.3d 785 (3d Cir. 1994) (district court's failure to abstain, where complaint challenged municipal administrative parking ticket board procedure on due process claim, held to be abuse of discretion); *Schall v. Joyce,* 885 F.2d 101 (3d Cir. 1989) (affirming district court's abstention in suit challenging Pennsylvania's confession of judgment procedures).

The instant complaint fails to allege particular facts that would trigger the bad faith exception to the application of *Younger* abstention.  Although it avers bad faith repeatedly and in an emotionally dramatic manner, it is like the plaintiff's complaint in *Brooks, supra*: a "frenzied brandishing of a cardboard sword."  As in *Brooks*, the plaintiff here tries to paste together a showing of bad faith with numerous bits and pieces of marginally relevant information, but he fails to make a cognizable case.  After all, Rocanelli only filed a petition with the Delaware Supreme Court as required by ODC Rule 16, and the justices of the Delaware Supreme Court are the decision-makers.  As plaintiff agreed to an indefinite stay of the interim suspension in exchange for notifying

his clients of the indictment, he faces no jeopardy other than the criminal proceeding against him.[7]

> ## 2. Defendant Rocanelli was required under Rule 16 to file a petition in the Delaware Supreme Court for interim suspension of plaintiff's license to practice law.

The only real action taken by Rocanelli against plaintiff, as alleged in the complaint, is the filing of the petition for an interim suspension of plaintiff's license pursuant to ODC Rule 16. (In plaintiff's hyperbolic style, this action is characterized as "the death blow"). Rocanelli's personal feelings or motives are irrelevant, however, as she had no choice but to do what she did. Rule 16(a) states the following:

> (a) *Transmittal of Evidence.* Upon receipt of sufficient evidence demonstrating that a lawyer subject to the disciplinary jurisdiction of the Court (i) has been charged with or convicted of a felony, (ii) has been charged with or convicted of other criminal conduct which demonstrates that the lawyer poses a significant threat of substantial harm to the public or to the orderly administration of justice, or (iii) has otherwise engaged in professional misconduct which demonstrates that the lawyer poses a significant threat of substantial harm to the public or to the orderly administration of justice, the ODC **shall** transmit such evidence to the Court together with a petition and proposed order for the lawyer's immediate interim suspension pending the disposition of disciplinary proceedings as otherwise described in these Rules. The ODC shall also take all appropriate steps to process the matter through the disciplinary system as otherwise described in these Rules. The ODC's filing of a petition for interim suspension, and all subsequent proceedings, shall be confidential unless otherwise ordered by the Court.

*Delaware Lawyers' Rules of Disciplinary Procedure* (2005), Rule 16(a) (emphasis added). It is apparent that what plaintiff views as an actionable "deathblow" was simply

---

[7] *Younger* abstention was applied to the state criminal proceeding by the August 2, 2005 order of the District Court for the Eastern District of Pennsylvania, and plaintiff has failed to challenge that part of the court's order--he has not requested reconsideration of that ruling or the dismissal of prosecutor Sean Lugg from the action. These rulings now constitute the law of the case. The Supreme Court has held that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618 (1983).

Rocanelli doing her job. The filing of the petition pursuant to Rule 16 cannot reasonably be viewed as a constitutional violation.

### E. Plaintiff's claim against Rocanelli is non-justiciable as there is no current injury or dispute.

This Court lacks subject matter jurisdiction in this matter because there is no sufficiently adversarial claim on plaintiff's part that is ripe for adjudication, and because plaintiff's requested relief is in part a request for an advisory opinion.

#### 1. As plaintiff agreed to notify his clients of the indictment against him in exchange for a stay of the interim suspension proceeding, this matter is not ripe for adjudication.

Currently, plaintiff and the Delaware Supreme Court are in agreement as to the status of his license to practice law: the interim suspension is indefinitely stayed while plaintiff agrees to keep his clients informed of the indictment against him. This agreement was expressly confirmed by plaintiff at a pre-hearing conference on August 9, 2005. After Justice Berger recited the conditions to plaintiff, she asked if he agreed:

Justice Berger: Is this something that, Mr. Gielata, you would accept as a condition of postponing the hearing?

Mr. Gielata: I would accept these conditions.

(Transcript, Tab C, at 25). Plaintiff later restated his agreement:

Justice Berger: So subject to any comments by other members of this panel, I think it would not be appropriate to provide any of your own view on the merits of the indictment.

Mr. Gielata: I understand.

Justice Berger: All right.

Mr. Gielata: And I hereby agree to those conditions.

22

(Transcript, Tab C, at 26-27).

Thus, there is no current dispute about the disciplinary proceeding, and this matter is not ripe for federal court adjudication.

The ripeness doctrine is rooted in Article III of the United States Constitution, which only empowers the federal judiciary to decide "cases and controversies." The ripeness doctrine has two dimensions: a jurisdictional component, where a minimum of adversarial conflict is required by the Constitution, and a non-jurisdictional prudential dimension which may counsel restraint. *Nextel Communications of the Mid-Atlantic, Inc. v. City of Margate,* 305 F.3d 188, 192 (3d Cir. 2002). In the *Nextel* context, the Third Circuit panel looked at three factors: whether the agency action is final, whether the issue presented is one of law requiring no further factual development, and whether further administrative action is needed to clarify the agency's position. 305 F.3d at 193.

In the instant action, the three *Nextel* factors counsel against a finding there is an actual case or controversy ripe for adjudication. There is no final action, there must be further factual development in light of the outcome of the criminal proceeding, and the Delaware Supreme Court has not taken a position as to the plaintiff's fitness to practice law. Most importantly, there is no dispute at this time as to the suspension proceeding.

> **2.    Plaintiff's request for declaratory relief with respect to the terms of the PayPal contract is a request for an advisory opinion.**

Related to the ripeness doctrine, and also rooted in Article III's "cases and controversies" requirement, is the non-justiciability of advisory opinions. The rule against advisory opinions has been said to be the oldest and most consistent thread in the federal law of justiciability. *Flast v. Cohen*, 392 U.S. 83, 96 (1968). The rule against

advisory opinions recognizes that such suits often "are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaced situation embracing conflicting and demanding interests." *Id.* at 96-97, quoting *United States v. Fruehauf,* 365 U.S. 146, 157 (1961).

Plaintiff's request for declaratory relief interpreting his contract with PayPal is a transparent request for an advisory opinion. PayPal is not a party to this action. PayPal did not indict plaintiff, nor does it threaten to revoke plaintiff's license to practice law. Plaintiff was not indicted for entering into a contract with PayPal. Apparently, to judge from the complaint, plaintiff was indicted for theft by false pretenses and conspiracy in connection with a business transaction with PayPal. Plaintiff's confused perception causes him to believe that the contract with PayPal, the indictment and the suspension proceeding are one large, seamless conspiracy against him concocted by Rocanelli and her husband, Sean Lugg, Rocanelli's former law firm, PayPal, E-Bay, and MBNA, among others. Viewed objectively, they are discrete entities and events. The request for declaratory relief is in reality a request for an impermissible advisory opinion.

## IV.  NONE OF THE ALLEGED CLAIMS STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

The complaint purports to allege nine claims, but four of the nine claims are requests for particular forms of relief rather than alleged violations of federal law. There are actually five claims contained in the complaint: procedural due process, substantive due process, equal protection, malicious prosecution, and intentional infliction of emotional distress. The first three claims are exclusively federal in nature, the fourth can arise under both federal and state law, and the fifth is a state law claim.

24

### A.    Procedural due process

Plaintiff's claims of procedural and substantive due process violations are based upon an alleged "automatic suspension" under ODC Rule 16.  However, on its face Rule 16 shows that prior notice and a hearing are required.  The respondent at the hearing is entitled to counsel, may cross examine witnesses, and may present evidence. (Rule 16(d)).  This rule is transparently in compliance with all notions of required due process. *See Hunter v. Supreme Court of New Jersey*, 951 F.Supp. 1161, 1180 (D.N.J. 1996).

### B.    Substantive due process

The "automatic suspension" claimed by plaintiff is not automatic at all.  Under Rule 16, only the filing of the petition is automatic.  Whether a suspension occurs is dependent upon the discretion of the justices of the Delaware Supreme Court after notice and a hearing.  To the extent that plaintiff believes that a grand jury indictment of him on a felony charge, prior to a conviction, may not lawfully be the basis for a suspension, he is incorrect.  *Federal Deposit Insurance Corporation v. Mallen,* 486 U.S. 230 (1988); *Gilbert v. Homar*, 520 U.S. 924 (1997).

### C.    Equal protection

Plaintiff fails to allege that he is being discriminated against due to a constitutionally suspect classification, or that a fundamental constitutional right is being infringed by the classification.  (Nor could he: there is no authority which holds that practicing law as a profession is a fundamental constitutional right).  Hence, a rational basis test applies rather than strict scrutiny.  *Biener v. Calio*,  361 F.3d 206, 215 (3d Cir. 2004).  Applying a rational basis test, it is entirely rational for the Delaware Supreme Court to want to protect the Delaware public from presumptively unscrupulous attorneys

by not allowing them to practice law while under felony indictment. The reasonableness of this rule was affirmed by the United States Supreme Court in *Mallon, supra,* and *Homar, supra.*

### D.    Malicious prosecution

Whether plaintiff's malicious prosecution claim is brought under federal or state law, a required element of this claim is that the underlying charges were terminated in plaintiff's favor. *Roesch v. Otarola*, 980 F.2d 850, 853 (2d Cir. 1992); *Nix v. Sawyer*, 466 A.2d 407, 411 (Del.Super. 1983). In the complaint, plaintiff fails to allege that either the criminal proceeding or the suspension proceeding has been terminated in his favor.

### E.    Intentional Infliction of Emotional Distress

This is a claim under state law. In addition to Rocanelli's absolute immunity, this claim must be dismissed because the complaint fails to allege the necessary elements of this state law claim. In Delaware, to state such a claim a plaintiff must allege either physical injury or a special relationship of trust owed to the plaintiff, such as the attorney-client relationship. *Tackett v. State Farm Fire and Casualty Ins. Co.,* 653 A.2d. 254, 265 (Del.1995). Here, plaintiff alleges neither.

26

## V.     THE COMPLAINT FAILS TO ALLEGE A JUSTICIABLE STATE LAW CLAIM.

### A.     The State of Delaware and the ODC are protected by sovereign immunity under state law.

In *Alston v. Hudson, Jones, Jaywork, Williams and Liguori,* 1999 WL 743671 at *2 n.7 (Del.Super.) (copy at Tab H), the Delaware Superior Court found that the Delaware ODC is a state agency protected by sovereign immunity, and therefore granted its motion to dismiss on those grounds.  The continuing vitality of Delaware's  sovereign immunity doctrine is also supported in numerous Delaware Supreme Court decisions. *See, e.g., Doe v. Cates,* 499 A.2d 1175 (Del. 1985); *Pauley v.  Reinoehl,* 848 A.2d 569, 576 (Del. 2004).   Defendants have already filed in this action an affidavit from Debra Lawhead, the Delaware Insurance Coverage Administrator, swearing that the State has no insurance coverage for the type of risk and liability plaintiff's complaint presents.  (D.I. 10).

### B.     A federal court may not enjoin a state, state official or state agency on the basis of state law.

In addition to the protection of sovereign immunity, the defendants are not subject to any injunctive relief issued by a federal district court on the basis of an alleged violation of state law.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 120-125 (1984).

### C.     Rocanelli is absolutely immune under Delaware law.

Rule 10 of the *Delaware Lawyers' Rules of Disciplinary Procedure* (2005), issued by the Delaware Supreme Court, states that "members of the ODC and staff . . . shall be immune from civil suit for any conduct in the discharge of their official duties."  This

absolute immunity is consistent with the absolute immunity recognized in the federal court opinions cited above in section III.B.  However, absolute immunity is even broader in Rule 10 as it creates an immunity from "civil suit," not just from a damages action. Thus, it clearly extends to all forms of relief.

>   **D.    Supplemental state law claims should be dismissed when the federal law claims are dismissed.**

It is well established that if the basis for federal jurisdiction in federal district court fails, then absent extraordinary circumstances, any supplemental state law claims should also be dismissed.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("Under *Gibbs* jurisprudence, where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").  In the instant action, as the federal claims should be dismissed for the foregoing reasons, the state law claims should be dismissed as well.

## <u>CONCLUSION</u>

For the above-stated reasons, the Defendants respectfully request that this Honorable Court issue an order granting their motion to dismiss the complaint for lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, and under principles of federalism and comity.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Richard W. Hubbard
_____
Richard W. Hubbard (ID# 2442)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8308

Date:  January 13, 2006

Attorney for the Defendants

## <u>CERTIFICATE OF MAILING AND/OR DELIVERY</u>

The undersigned certifies that on January 13, 2006, he caused the foregoing

document to be delivered to the following persons in the form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT(S):**

Joseph N. Gielata, Esquire
501 Silverside Road, Ste. 90
Wilmington, DE  19809

**MANNER OF DELIVERY:**

<u>x</u>  One true copy by electronic delivery.

__One true copy by facsimile transmission to each recipient

__Two true copies by first class mail, postage prepaid, to each recipient

__Two true copies by Federal Express

__Two true copies by hand delivery to each recipient

/s/  Richard W. Hubbard
_____
Richard W. Hubbard, I.D. # 2442