# TAB E

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
John H. HAMILTON, Plaintiff,
v.
Earl MESSICK, Rick Kearney, Department of Corrections, Dr. Burns, and First Correctional Medical, Defendants.
**No. Civ.A. 03-807-GMS.**

March 31, 2005.

John H. Hamilton, Farmington, DE, pro se.
Daniel L. McKenty, McCullough & McKenty, P.A., Wilmington, DE, for Defendants.

MEMORANDUM ORDER

**SLEET**, J.
***1** John H. Hamilton ("Hamilton") is a *pro se* litigant who was incarcerated at the Sussex Correctional Institution ("SCI") located in Georgetown, Delaware. His SBI number is 316350. Hamilton has filed this action pursuant to 42 U.S.C. § 1983, and requested leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

I. STANDARD OF REVIEW

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Reviewing complaints filed pursuant to 28 U.S.C. § 1915 is a two-step process. First, the court must determine whether Hamilton is eligible for pauper status. On August 26, 2003, the court granted Hamilton leave to proceed *in forma pauperis,* assessed $42.60 as the initial partial filing fee and ordered him to file an authorization form within thirty days, or the case would be dismissed. Hamilton filed the required authorization form on September 16, 2003.

Once the pauper determination is made, the court must then determine whether the action is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1). [FN1] If the court finds that Hamilton's complaint falls under any of the exclusions listed in the statutes, then the court must dismiss the complaint.

FN1. These two statutes work in conjunction. Section 1915(e)(2)(B) authorizes the court to dismiss an *in forma pauperis* complaint at any time, if the court finds the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief. Section 1915A(a) requires the court to screen prisoner complaints seeking redress from governmental entities, officers or employees before docketing, if feasible and to dismiss those complaints falling under the categories listed in § 1915A(b)(1) .

When reviewing complaints pursuant to 28 U.S.C. § § 1915(e)(2)(B)-1915A(b)(1), the court must apply the standard of review set forth in Fed.R.Civ.P. 12(b)(6). *See Neal v. Pennsylvania Bd. of Prob. & Parole,* No. 96-7923, 1997 WL 338838 (E.D.Pa. June 19, 1997) (applying Rule 12(b)(6) standard as appropriate standard for dismissing claims under § 1915A). Thus, the court must "accept as true factual allegations in complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996) (citing *Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir.1993)). *Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

his claim which would entitle him to relief." ' *Haines v. Kerner,* 404 U.S. 519, 520-521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

The United States Supreme Court has held that as used in § 1915(e)(2)(B), the term "frivolous" when applied to a complaint, "embraces not only the inarguable legal conclusion but also the fanciful factual allegation." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). [FN2] Consequently, a claim is frivolous within the meaning of § 1915(e)(2)(B) if it "lacks an arguable basis either in law or in fact." *Id.* As discussed below, Hamilton's complaint has no arguable basis in law or in fact, and shall be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1).

> FN2. *Neitzke* applied § 1915(d) prior to the enactment of the Prisoner Litigation Reform Act of 1995 (PLRA). Section 1915(e)(2)(B) is the re-designation of the former § 1915(d) under the PLRA. Therefore, cases addressing the meaning of frivolous under the prior section remain applicable. *See* § 804 of the PLRA, Pub.L. No. 14-134, 110 Stat. 1321 (April 26, 1996).

## II. DISCUSSION

### A. The Complaint and the Amendment

***2** Hamilton filed this complaint on August 13, 2003. (D.I.2) Hamilton names the following defendants: Earl Messick ("Messick"), Rick Kearney ("Kearney"), and the Department of Corrections ("DOC"). (*Id.* at 3) Hamilton alleges that Messick, Kearney and the DOC have violated his Fourteenth Amendment rights "by opening his mail and then holding it for approximately six weeks before contacting him about the issue." (*Id.*) Specifically, Hamilton alleges that on two separate occasions, he sent mail to his mother marked "legal mail." (*Id.* at 4) Hamilton avers that he mailed a motion to dismiss which he intended to file in a pending criminal case. (*Id.*) Hamilton asserts that because his "legal mail" was intercepted, the court did not receive the motion and "they had no choice but to convict him of the charge." (*Id.*) Hamilton also alleges that the letters to his mother contained prescription medication, which Messick confiscated. (*Id.*) Hamilton requests that the court award him unspecified punitive damages, as well as all legal fees. (*Id.* at 4) He further requests that the court order "[a] full investigation into how inmate's mail is processed in and out of the penal system." ( *Id.*)

On October 1, 2003, Hamilton filed a "Motion for Amending CA 03-807-GMS" which the court construes as an amended complaint pursuant to Fed.R.Civ.P. 15(a). (D.I.6) Here, Hamilton adds Dr. Burns ("Burns"), and First Correctional Medical, Inc. as defendants. (*Id.* at 4) In the amended complaint, Hamilton alleges that on July 21, 2003, his "medication of singulair and albuterol was abruptly stopped from being prescribed [sic]." (*Id.* at 2) Hamilton alleges that he filed a grievance, and was told at the resulting hearing that his medication was stopped because he mailed his medication to his mother. (*Id.*) Hamilton further alleges that he explained that the medication he mailed to his mother was "extra," and that he mailed it, to avoid getting in trouble for having contraband. (*Id.*) Hamilton alleges that he mailed the medication to his mother "for personal use at a later date." (*Id.*)

On July 1, 2004, Hamilton filed a second "Motion Amending C.A. No. 03-807-GMS." (D.I.11) Hamilton avers that he is amending the complaint to "add eighth amendment violations," and "to explain the allegations against the defendants in a more precise manner." (*Id.* at 2) "After amending once or after an answer has been filed, the plaintiff may amend only with leave of the court or the written consent of the opposing party, but 'leave shall be freely given when justice so requires." ' *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir.2000) (quoting Fed.R.Civ.P. 15(a)). The court shall grant Hamilton's motion. [FN3]

> FN3. On May 3, 2004, Hamilton filed a Motion for Interrogatories. (D.I. 15)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Because the court finds that the complaint is frivolous, the motion is moot.

In the second amended complaint, Hamilton alleges that he mailed his legal documents and his "extra" medication to his mother on June 11, 2003. (*Id.*) He further alleges that when his mother did not receive the mail, he submitted different documents to the Courts. (*Id.*) Next, Hamilton alleges that August 15, 2003, he was told "my medication was discontinued with no apparent reason." (*Id.* at 3) Hamilton also alleges that he met with Burns at the "end of August 2003" and she "immediately put me back on the albuterol inhaler." (Id.) Hamilton further alleges that Burns called him back a week later and prescribed singulair. (*Id.*)

C. Analysis

1. Hamilton's Claim Regarding "Legal Mail"

*3 Hamilton alleges that Messick has violated his Fourteenth Amendment rights by confiscating his outgoing "legal" mail, addressed to his mother. Prisoners have a limited liberty interest in their mail under the First Amendment. *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Martin v. Brewer,* 830 F.2d 76, 77 (7th Cir.1987). But prisons may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations or practices are "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The *Turner* standard applies to regulations and practices concerning all correspondence between prisoners, and to regulations concerning incoming mail received by prisoners from non-prisoners. *See Thornburgh,* 490 U.S. at 413. Although legal mail must be treated more cautiously, prison officials may institute procedures for inspecting it. *See Wolff v. McDonnell,* 418 U.S. 539, 576-77, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Thus, as a general rule, prisoner non-legal mail can be opened and read outside the inmate's presence, and does not violate the prisoner's constitutional rights. *See Witherow v. Paff,* 52 F.3d 264, 265-66 (9 th Cir.1995) (upholding inspection of outgoing mail); *Smith v. Boyd,* 945 F.2d 1041, 1043 (8th Cir.1991) (upholding the inspection of incoming mail); *Gaines v. Lane,* 790 F.2d 1299, 1304 (7th Cir1986) (upholding the inspection of outgoing and incoming mail); *see also Cherry v. Litscher,* No. 02-C-71-C, 2002 WL 32350051 at *14 (W.D.Wis. Apr.1, 2002) (citing *Martin v. Brewer,* 830 F.2d at 77). In this case, Hamilton clearly alleges that Messick intercepted mail Hamilton directed to his mother. (D.I. 2 at 3; D.I. 6; D.I. 11) Although Hamilton included a motion to be filed in a state court with the letter, this inclusion doesn't transform his mail into "legal" mail. Legal mail is mail sent between attorneys and prisoners. *See Wolff v. McDonnell,* 418 U.S. 576-77. Consequently, Messick could open Hamilton's mail addressed to his mother and inspect it for contraband. *See Turner v. Safley,* 482 U.S. at 89. Therefore, Hamilton's claim that Messick violated his First Amendment rights by interfering with his "legal" mail has no arguable basis in law or in fact.

To the extent that Hamilton is alleging that Messick violated his First Amendment rights by interfering with his access to the courts, his claim also fails. Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). However, in order for plaintiff to state a claim that interception of his legal materials has denied him access to the courts, he must show some *actual injury. See Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (emphasis added).

Specifically, Hamilton must show that a " nonfrivolous legal claim had been frustrated or impeded" by the interception of his legal material. *Id.* at 355. In other words, Hamilton must show that his nonfrivolous claim was effectively impeded because he was unable to mail his legal material to his mother, not that the interception itself was unreasonable. *See Reynolds v. Wagnor,* 128 F.3d 166, 183 (3d Cir.1997). First, Hamilton alleges that he was convicted because the court did not receive his motion. (D.I. 2 at 4) However, Hamilton also

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

alleges that once he realized that his mother did not receive his letter, he mailed "other documents" directly to the court. (D.I.11) Hamilton has failed to allege that the interception of his legal material impeded his pursuit of a nonfrivolous claim. Absent an allegation of how his access to the courts was adversely affected, the court concludes that to the extent Hamilton is alleging that Messick denied him access to the courts, his claim has no arguable basis in law or in fact.

2. Hamilton's Vicarious Liability Claims

*4 Hamilton avers that he is not attempting to hold Kearney vicariously liable for Messick's conduct. (D.I. 11 at 8) Hamilton alleges that as the Warden of SCI, Kearney has personal knowledge of his allegations because Kearney initialed Hamilton's grievance. (*Id.* at 6) Nonetheless, Hamilton's claim against Kearney must fail because it rests solely on a theory of vicarious or supervisory liability. Supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. *See Monell v. Dep't. of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

In order for a supervisory public official to be held liable for a subordinate's constitutional tort, the official must either be the "moving force [behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the person deprived." *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir.1989) (citing *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Hamilton has attached the grievance as evidence of Kearney's personal knowledge. (D.I. 11 at 11-11a) The court notes however, that the grievance is signed only by the Inmate Grievance Chairperson, and there is no indication on the copy provided that Kearney ever reviewed it. (*Id.*) Nothing in the complaint indicates that Kearney was the "driving force [behind]" Hamilton's allegations, or that Kearney remained "deliberately indifferent" to his plight. *Sample v. Diecks,* 885 F.2d at 1118. Consequently, Hamilton's claim against Kearney has no arguable basis in law or in fact.

Hamilton has also named First Correctional Medical, Inc. as a defendant, but has failed to raise any specific allegations regarding the it. It appears that Hamilton has named First Correctional Medical, Inc. as a defendant based solely on its role as the contracted medical service provider for the DOC, and as such, Dr. Burns' employer. Hamilton's claim against First Correctional Medical, Inc. rests solely on a theory of vicarious or supervisory liability. For the reasons discussed above, Hamilton's claim against First Correctional Medical, Inc. has no arguable basis in law or in fact.

3. Hamilton's Claim against the DOC

Hamilton's claim against the DOC must also fail. The DOC is an agency of the State of Delaware. To state a claim under 42 U.S.C. § 1983, Hamilton must allege "the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled in part on other grounds not relevant here by, *Daniels v. Williams,* 474 U.S. 327, 330-31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). "[T]he Supreme Court has held that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Ospina v. Dep't of Corrections, State of Delaware,* 749 F.Supp. 572, 577 (D.Del.1991) (citing *Wills v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).

*5 Furthermore, "[a]bsent a state's consent, the **Eleventh Amendment** bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981) (citing *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (*per curiam* )). The State of Delaware has not waived its sovereign **immunity** under the **Eleventh Amendment**. *See Ospina v. Dep't of Corrections,* 749 F.Supp. at 579. Consequently, Hamilton's claim against the DOC has no arguable basis in law.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

4. Hamilton's Claim against Burns

It is undisputed that prisoners are entitled to reasonable medical care and may hold prison officials liable under the Eighth Amendment if such care is inadequate. *Estelle v. Gamble,* 429 U.S. 97, 104-105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). However, in order to establish an Eighth Amendment violation a plaintiff must allege that he has endured a sufficiently serious deprivation, and that the defendant has acted with deliberate indifference to the plaintiff's plight. *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble,* 429 U.S. at 104-05. Thus, in order to prove that stopping Hamilton's prescription medication for a two week period violates the Eighth Amendment, Hamilton must prove that Burns knew that stopping the medication could cause Hamilton serious harm and deliberately ignored the risk.

Hamilton avers that he mailed 92 singulair pills and 1 albuterol inhaler to his mother. (D.I. 11 at 2) Hamilton also contends that Burns knew he had a medical need for the prescriptions, and deliberately cancelled them "for no apparent reason." (D.I. 11 at 3) Tellingly, Hamilton fails to explain how he obtained the "extra" medication that he mailed to his mother. However, he does allege that the prescription was in his name, and thus not contraband. (*Id.*) Absent some other explanation, it seems reasonable to conclude that Hamilton could only obtain "extra" medication in his own name, by not taking his medications every day. Burns likely deduced the same upon learning that Hamilton had mailed his "extra" medication to his mother. Under the circumstances, Hamilton is hard pressed to argue that Burns knew that stopping his medication could cause Hamilton serious harm and deliberately ignored the risk.

Furthermore, the court notes Hamilton's allegations regarding the suspension of his medication are inconsistent. On the one hand, he alleges that, "I was without this much needed life saving treatment for 30+ days, even after several complaints to medical staff ..." (D.I. 11 at 7) Yet, on the other hand, he alleges that "from the time I mailed the medication, until I was readministered the same meds., I had medication from previous med pick ups." (*Id.* at 3)

***6** There is no indication from the facts, as alleged, that Burns knew Hamilton faced a serious risk of harm and deliberately ignored the risk. As presented, Hamilton's claim against Burns has no arguable basis in law or in fact.

III. CONCLUSION

For the above stated reasons, the court finds that Hamilton's claims against the defendants are frivolous within the meaning of 28 U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1).

ORDER

NOW THEREFORE, this 31st day of March, 2005, IT IS HEREBY ORDERED that:

1. Hamilton's "Motion Amending C.A. No. 03-807-GMS" (D.I.11) is GRANTED.

2. Hamilton's Motion for Interrogatories (D.I.15) is MOOT.

3. Hamilton's complaint is DISMISSED in accordance with the provisions of 28 U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1).

4. The Clerk of the Court shall cause a copy of this Memorandum and accompanying Order to be mailed to Hamilton.

D.Del.,2005.
Hamilton v. Messick
Slip Copy, 2005 WL 736684 (D.Del.)

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 7 of 7

Slip Copy

Page 6

Slip Copy, 2005 WL 736684 (D.Del.)
**(Cite as: Slip Copy)**

• 1:03cv00807 (Docket) (Aug. 13, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B00558000000... 1/9/2006

# TAB F

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
John HAMILTON, et al., Plaintiffs,
v.
CIVIGENICS, et al., Defendants.
**No. Civ.A. 03-826 GMS.**

Feb. 22, 2005.

John H. Hamilton, Georgetown, DE, Pro se.
Joseph S. Wigate, Georgetown, DE, Pro se.
Andre L. Parker, Georgetown, DE, Pro se.
Juan Martinez, Jr., Georgetown, DE, Pro se.
Lee Ross, Georgetown, DE, Pro se.
Thomas Norwood, Georgetown, DE, Pro se.
James Colemen, Georgetown, DE, Pro se.
Christopher Gibbs, Georgetown, DE, Pro se.
Enrico D. Bates, Georgetown, DE, Pro se.
Trevor Moncrief, Georgetown, DE, Pro se.
Michael Lewis, Georgetown, DE, Pro se.
Danny Lee Parker, Georgetown, DE, Pro se.
Larry Reich, Georgetown, DE, Pro se.
Stefan Brittingham, Georgetown, DE, Pro se.
Alex Justice, Laurel, DE, Pro se.
Benjamin McKenzie, Georgetown, DE, Pro se.
Andre Hackett, Georgetown, DE, Pro se.
John D. Rickards, Georgetown, DE, Pro se.
Richard Jones, Georgetown, DE, Pro se.
Jacquie Reynolds, Georgetown, DE, Pro se.
Kevin Williams, Georgetown, DE, Pro se.
Lennie F. Childress, Georgetown, DE, Pro se.
Billy A. Winn, New Castle, DE, Pro se.
Timothy C. Duval, Sr., Georgetown, DE, Pro se.
Mitchell Hubis, Georgetown, DE, Pro se.
Darrel D. Stanley, Georgetown, DE, Pro se.
David Fowler, Georgetown, DE, Pro se.
Curtis G. Elliott, Georgetown, DE, Pro se.
Collidge Frazier, Georgetown, DE, Pro se.
Calvin L. Allen, Georgetown, DE, Pro se.
Jeremy Geiger, Georgetown, DE, Pro se.
Shawn Hopkins, Georgetown, DE, Pro se.
Edward A. Clark, Georgetown, DE, Pro se.
Daniel M. Prouse, Georgetown, DE, Pro se.
George R. Anthony, Jr., Georgetown, DE, Pro se.
Ronald Benton, Georgetown, DE, Pro se.
Eric S. Huffstutler, Georgetown, DE, Pro se.
Dedrick Chase, Georgetown, DE, Pro se.
Virgil Sudler, Georgetown, DE, Pro se.
Eric Tilghman, Georgetown, DE, Pro se.
Clifford T. Donnes, II, Georgetown, DE, Pro se.
Francis Worrell, Georgetown, DE, Pro se.
Alvin Wilson, Georgetown, DE, Pro se.
Barry L. Griffith, Georgetown, DE, Pro se.
Linwood Eley, Georgetown, DE, Pro se.
Vence D. Byrd, Georgetown, DE, Pro se.
Ronald Lofland, Georgetown, DE, Pro se.
Mark A. Mulrooney, Georgetown, DE, Pro se.
Jamaal Layne, Georgetown, DE, Pro se.
Deshawn Butter, Georgetown, DE, Pro se.
Michael P. Brown, Georgetown, DE, Pro se.
Louis J. Rizzo, Jr., Reger & Rizzo, LLP, and Aaron R. Goldstein, Wilmington, DE, for Defendants.

MEMORANDUM

**SLEET, J.**

I. INTRODUCTION

*1 On August 21, 2003, John Hamilton ("Hamilton" ) filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, on behalf of himself and ninety-eight inmates (collectively, the "plaintiffs") incarcerated in the Sussex Correctional Institution (" SCI"), located in Georgetown, Delaware. FN1 The complaint alleges that the State of Delaware Department of Corrections (the "DOC"), Rick Kearney ("Kearney"), in his capacity as warden, Civigenics ("Civigenics"), Allen Nesbit ("Nesbit"), a Civigenics employee, in his capacity as program coordinator of the KEY Program, and Civigenics employees Russell Buskirk ("Buskirk"), Dawn Burton ("Burton"), Theresa Evans Carter ("Carter" ), and Michelle Reeves ("Reeves") violated the plaintiffs' First, Eighth, and Fourteenth Amendment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

rights. [FN2]

FN1. Hamilton was incarcerated at the time he initiated this lawsuit. On or about October 14, 2004, Hamilton was released from incarceration.

FN2. The KEY Program is part of the KEY Therapeutic Community, a drug rehabilitation program for incarcerated addicts that is administered by Civigenics, under contract with the State of Delaware.

Presently before the court are several motions: (1) Hamilton's motions to amend; [FN3] (2) the DOC's motion to dismiss; (3) Kearney's motion to dismiss; and (4) the Civigenics defendants' motion to dismiss. For the following reasons, the court will deny the motions to amend and grant the motions to dismiss.

FN3. At present, fifty-three plaintiffs are still involved in the litigation. Hamilton is the only plaintiff that has responded to the defendants' motions to dismiss. However, Hamilton asserts that he is "the spokesperson for all the plaintiffs," and that "[h]is motion[s] not only serve[ ] him, but all the plaintiffs." (D.I. 77 ¶ 1.) Neither the defendants nor the remaining plaintiffs oppose Hamilton's assertions. The court, therefore, will treat Hamilton as the spokesperson for all of the plaintiffs.

## II. BACKGROUND

The plaintiffs allege that Kearney, Nesbit, and Civigenics violated their First, Eighth, and Fourteenth Amendment rights by "allowing inmates to have authority over them in violation of federal court mandates." The complaint alleges that since entering the KEY Program, on July 10, 2003, the plaintiffs have been given directives to keep their mouths shut. According to the plaintiffs, the directives violate their freedom of speech rights under the First Amendment.

The plaintiffs also allege violations of their Eighth Amendment rights. Specifically, the complaint alleges that the plaintiffs have been deprived of sleep since their first night in the KEY Program because of "listen ups" that are called during the night. The complaint further alleges that the plaintiffs must lift "substantially heavy" locker boxes of other inmates during their daily cleaning requirements, and that they are required to "stand or sit tight" throughout the day. These requirements cause the plaintiffs great pain and anguish to their bodies. In addition, the complaint alleges that the plaintiffs are constantly screamed at and ridiculed by other inmates who serve as their supervisors. The plaintiffs contend that these acts constitute cruel and unusual punishment.

Lastly, the plaintiffs allege that their sentencing to the KEY Program violates their Fourteenth Amendment right to due process. The complaint alleges that if the plaintiffs choose not to participate in the KEY Program they are sent to the "hole," given a "write up" that adds points to their classification record, and lose all privileges for ninety days. The plaintiffs also allege that allowing inmates to supervise them violates their due process rights.

## III. STANDARD OF REVIEW

### A. Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure permits a party to amend the complaint by leave of court or by written consent of the adverse party. Leave to amend a complaint should be "freely given when justice so requires." FED. R. CIV. P. 15(a). The court has discretion to deny leave to amend when there exists undue delay, bad faith, dilatory motive or undue prejudice to the opposing party, or when the amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). Specifically, an amendment would be futile for purposes of Rule 15(a) if, accepting all the well pleaded facts as true, the amended complaint fails to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

state a claim upon which relief may be granted. *See Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington,* 646 F.Supp. 118, 120 (D.Del.1986). In other words, "the court should apply the same standards as are applied to Rule 12(b)(6) motions to dismiss." *Id.*

B. Motion to Dismiss

1. Rule 12(b)(1)

***2** A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. *Mortensen v. First Fed. Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). The present motion makes a facial challenge to the complaint because the defendants' arguments are based solely upon the application of legal principles to the facts as alleged in the complaint. Such a motion requires the court to consider the allegations of the complaint as true and to make all reasonable inferences in the plaintiffs' favor. *See id.*

2. Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz,* 1 F.3d 183 (3d Cir.1993). Thus, as in the case of a Rule 12(b)(1) motion, the court must accept the factual allegations of the complaint as true. *See Graves v. Lowery,* 117 F.3d 723, 726 (3d Cir.1997); *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer. " *Colburn v. Upper Darby Tp.,* 838 F.2d 663, 666 (3d Cir.1988). However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3rd Cir.1997). A court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Graves,* 117 F.3d at 726; *Nami,* 82 F.3d at 65 (both citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). However, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." ' *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

IV. DISCUSSION

A. Motion to Amend

Hamilton has filed two motions to amend (D.I.47, 72). The first amended complaint asserts a claim for retaliation. Hamilton alleges that he was unjustly removed from the Civigenics KEY Program in retaliation for filing this lawsuit. FN4 Hamilton further alleges that, before he was dismissed from the KEY Program, Carter yelled and screamed at him calling him the "ringleader of the lawsuit," and asked what steps he had taken in terms of the state prisoner grievance procedure. He also alleges that SCI retaliated against him by placing his home phone number on its "visitors sheet," which was then circulated to all of the prisoners.

FN4. The court notes that Hamilton now complains that he was removed from the KEY Program. However, in his original complaint, Hamilton alleges that being sentenced to the KEY program violates his right to due process.

In *Rauser v. Horn,* the Third Circuit defined the elements of a prisoner's cause of action for retaliation and the burden he must carry to succeed in that claim. *See Rauser v. Horn,* 241 F.3d 330 (3d Cir.2001). The court established a three prong test for determining whether retaliation has occurred. First, the prisoner must prove that the conduct

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

which led to the alleged retaliation was constitutionally protected. *See id.* at 333 (citing *Thaddeus-X v. Blatter,* 175 F.3d 378, 389 (6th Cir.1999)); *see also Drexel v. Vaughn,* Civ.A.No. 96-3918, 1998 WL 15178, at * 7 (E.D.Pa. Apr. 2, 1998) (determining that prisoner had engaged in constitutionally protected conduct before proceeding with retaliation inquiry). Next, the prisoner-plaintiff must show that he has suffered some adverse action at the hands of prison officials. *See Rauser,* 241 F.3d at 333 (citing *Allah v. Sieverling,* 229 F.3d 220, 225 (3d Cir.2000)). A prisoner-plaintiff can satisfy this prong by demonstrating that the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See id.* The last *Rauser* prong requires a prisoner-plaintiff to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. The court employs a burden-shifting regime to determine whether a causal link exists. The prisoner-plaintiff bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. *See id.* (citing *Mount Healthy Bd. of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity. *See id.* If the defendants prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action. *See id.* at 334.

***3** In the present case, Hamilton has a constitutional right to pursue civil redress in federal court under § 1983. Therefore, Hamilton meets the first prong of the *Rauser* test. Hamilton, however, does not satisfy the second prong of *Rauser.* As previously stated, in the first sought after amendment, Hamilton has alleged that he was removed from the KEY Program, yelled at by Carter, and that his home phone number was circulated throughout the prison building. The court finds that these events would not negatively sway a reasonable prisoner from pursuing redress in the court. As a result, the court finds that these allegations are insufficient to survive a motion to dismiss, thus rendering the amendment futile. Accordingly, the court will deny Hamilton's motion to amend. FN5

FN5. The court does not reach the third prong of the *Rauser* test because Hamilton has not satisfied the second prong.

The second amended complaint alleges a Double Jeopardy claim. Hamilton alleges that forcing inmates to participate in the KEY Program and giving them institutional "write ups" and sanctions, in addition to program sanctions, violates the plaintiffs' Fifth Amendment rights. The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy Clause affords three protections to the criminal defendant. The first two protect against a second prosecution for the same offense after acquittal, and against a second prosecution for the same offense after conviction. *Jones v. Thomas,* 491 U.S. 376, 381, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989). The third protection is against " 'multiple punishments for the same offense' imposed in a single proceeding." *Id.* (citing *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)). It ensures that the sentencing court does not exceed the total punishment authorized by the legislature. *See Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).

With these protections in mind, the court turns to Hamilton's Double Jeopardy claim. The court concludes that the DOC's disciplinary guidelines do not raise a due process issue because the DOC is neither a prosecutor nor a sentencing court. Furthermore, Hamilton's complaints are not related to any judicial proceeding. Thus, Double Jeopardy does not prevent the DOC from imposing treatment program sanctions, as well as institutional sanctions or disciplinary action for the same misconduct. Hamilton's amended complaint, therefore, would not withstand a 12(b)(6) motion to dismiss and would, again, be futile. Given the foregoing, the court will deny this motion to amend.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

B. Motion to Dismiss

1. Sovereign **Immunity**

a. The DOC and Warden Kearney

The plaintiffs' complaint seeks to hold the DOC and Kearney liable in their official capacities. The plaintiffs assert that the DOC is a municipality or local government entity and not the State of Delaware. According to Hamilton, the DOC operates much like the Mayor of a town in that it has the authority to regulate and set standards for the penal institutions as well as the probation and parole authorities within the State of Delaware. Thus, the DOC is a "person" under § 1983. Hamilton also asserts that Kearney is a "person" under § 1983 because the warden is "responsible once a person is entrusted to that institution [SCI]." (D.I. 73, at 2.) The court disagrees and concludes that the doctrine of sovereign **immunity** bars any claims against the DOC and Kearney.

***4** The DOC is a state agency that exists pursuant to the laws of Delaware. *See* Del.Code Ann. tit. 11 §§ 6501, 6520. Kearney, as warden of the Sussex Correctional Institute, is a state official acting under color of state law. *See Cespedes v. Coughlin,* 956 F.Supp. 454, 465 (S.D.N.Y.1997). A suit against a state agency or state official in his or her official capacity is treated as a suit against the state. *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). This is so because neither a state nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). While a state is normally entitled to sovereign **immunity**, Congress may have abrogated the state's **immunity** through a valid exercise of its power, or the state itself may have waived its **immunity**. *See Lavia v. Commonwealth of Pennsylvania,* 224 F.3d 190, 195 (3d Cir.2000).

Neither of the two above-mentioned sovereign **immunity** exceptions are relevant here. First, the state has not waived its **Eleventh Amendment** **immunity**. A waiver will be found only where it has been stated "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Space Age Products, Inc. v. Gilliam,* 488 F.Supp. 775, 780 (D.Del.1980) (citing *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). Such an express waiver may be made through clear constitutional or statutory language. *See Lavia,* 224 F.3d at 195. Neither the constitution nor any Delaware statute expressly waives Delaware's **Eleventh Amendment** sovereign **immunity**. *See Ospina v. Dept. of Corr.,* 749 F.Supp. 572, 579 (D.Del.1990). Therefore, Delaware has not clearly waived its **immunity**.

Finally, Congress has not abrogated the states' **immunity** for claims under Section 1983. *See Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Since Delaware's **immunity** has not been waived or abrogated, the court will dismiss the plaintiffs' claims against the DOC and Kearney in their official capacities.

b. Civigenics and Its Employees

The plaintiffs assert that Civigenics and its employees are not state actors. The plaintiffs further assert if the court finds that Civigenics and its employees were acting "under color of law," then they have waived sovereign **immunity** under Del.Code Ann. tit. 10 § 4012(2) and/or Del.Code Ann. tit. 18 § 6511. The court is not persuaded by either of the plaintiffs' assertions. First, Civigenics and its employees are state actors because they are employed by the State of Delaware to provide treatment to inmates and, therefore, acted under color of law for purposes of § 1983 when undertaking their duties in treating the plaintiffs' addictions. *See West v. Atkins,* 487 U.S. 42, 48-54, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (holding that a physician who is under contract with the State to provide medical services to inmates at a state-prison hospital on a part-time basis acts " under color of state law" within the meaning of § 1983).

***5** Moreover, Civigenics and its employees have

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not waived sovereign **immunity** because Del.Code Ann. tit. 10 § 4012(2) and Del.Code Ann. tit. 18 § 6511 are inapplicable to these defendants. Section 4012(2) states that a governmental entity will be liable for negligent acts or omissions causing property damage, bodily injury, or death "[i]n the construction, operation or maintenance of any public building or the appurtenances thereto ..." Because Civigenics and its employees are not involved in the construction, operation, or maintenance of SCI, this provision does not apply to them. Similarly, section 6511 has no relevance to this litigation. While section 6511 expressly consents to suits against the State in state court, the Delaware courts have held that section 6511 does not waive sovereign **immunity** to suits in federal court. *See Ospina,* 749 F.Supp. 572; *Kardon v. Hall,* 406 F.Supp. 4 (D.Del.1975). As such, Civigenics and its employees are state actors and have not waived sovereign **immunity**. Accordingly, the court will dismiss the plaintiffs' claims against these defendants in their official capacities.

2. Individual Liability under 42 U.S.C. § 1983

It is not clear from Hamilton's complaint whether he seeks to hold the defendants liable in their individual capacities. However, because Hamilton is a *pro se* plaintiff and because he has stated in response to the defendants' motions to dismiss that he is suing the defendants in both their official and individual capacities, the court will address Hamilton's claims against the defendants individually. *See Manchester v. Rzewnicki,* 777 F.Supp. 319, 324 (D.Del.1991) (noting how *"pro se* complaints are read with less stringent scrutiny than formal [one]s drafted by lawyers"). In order to recover against the defendants individually, the plaintiffs must show that they were deprived of a constitutional right by a person acting under the color of state law. *See* 42 U.S.C. § 1983. As previously discussed, the defendants were acting under color of state law. Thus, the only question raised by the motions to dismiss is whether the defendants' actions violated any of the plaintiffs' rights.

The plaintiffs allege that the defendants have violated their First, Eighth, and Fourteenth Amendment rights. The complaint, however, fails to indicate any personal involvement by any of the defendants. [FN6] At most, the complaint alleges that Kearney and Nesbit violated the plaintiffs' rights in their supervisory roles. [FN7] Thus, Hamilton's claims against the defendants are premised on the doctrine of *respondeat superior.* It is well established, however, that absent some sort of personal involvement in the allegedly unconstitutional conduct, a § 1983 defendant cannot be held liable under a *respondeat superior* theory. *See Fagan v. City of Vineland,* 22 F.3d 1283, 1291 (3d Cir.1994); *Gay v. Petsock,* 917 F.2d 768 (3d Cir.1990). Because the plaintiffs have failed to allege any act or omission by the defendants that violated their constitutional rights, they cannot hold the defendants liable individually. Accordingly, the court will dismiss the plaintiffs' claims against the defendants in their individual capacities.

FN6. For example, the plaintiffs allege that their First Amendment freedom of speech rights were violated when they were told to keep their mouths shut, but do not allege which, if any, of the defendants told them to keep their mouths shut.

FN7. Buskirk, Burton, Carter, and Reeves are not listed as defendants in the complaint's caption. Nor do any of the plaintiffs' claims allege any personal involvement by these defendants.

V. CONCLUSION

***6** After reviewing Hamilton's proposed amendments, the record, and the relevant case law, the court concludes that the amendments are futile because they would not survive a motion to dismiss. Therefore, the court will deny Hamilton's motions to amend. The court further concludes that the plaintiffs cannot prove any set of facts in support of their claims that would entitle them to relief. Thus, the court will grant the defendants' motions and dismiss the present case in its entirety.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The plaintiffs' Motions to Amend (D.I.47, 72) are DENIED.
2. The defendants' Motions to Dismiss (D.I.50, 67, 78) are GRANTED.
3. All claims in the plaintiffs' complaint (D.I.5) are DISMISSED with prejudice.
4. The plaintiffs' ten outstanding motions (D.I.27, 29, 31, 38, 40, 42, 88, 103, 104) are DENIED as moot.
5. The State defendants' Motion to Stay Discovery (D.I.107) is DENIED as moot.

D.Del.,2005.
Hamilton v. Civigenics
Slip Copy, 2005 WL 418023 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03cv00826 (Docket) (Aug. 21, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB G

the Delaware Bar, each
ıry Review Committee.
ıointed by the Court for
tions of the members of
:'s records and proceed-
nbers of the Bar and 1
'e Bar. No Preliminary
years. Vacancies on the
Court.
iles for the conduct of
to the approval of the
:aphic and other assis-
per. Rules of the Board
ourt.
. (Added, effective July
; Jan. 1, 1987; Jan. 22,
22, 1993; Aug. 18, 1994;
Oct. 22, 1999, effective

i "$55.00" for "$40.00" in (5).
mendment, effective May 26,
sentence of (c), substituted
ıbers of the Preliminary Re-
ɔ coordinate the assignment
nels" for "the membership of
:om that membership, shall
chairman"; and deleted the
.
ı amendment, effective Nov.
st sentence of (c) substituted
' for "3."
nendment, effective Aug. 18,
15" for "13" and "6" for "4" in
ıf (a).
: amendment, effective Jan.
ıe title to this rule; deleted
edesignated the remaining
ingly; deleted (g) and (h);
ı and (e).
ment, effective July 1, 1995,

ıdment, effective July 22,
irst sentence in both (a) and

ment, effective October 15,
l "and Vice Chair" following
:h sentence and deleted the
ce; and deleted the former
.

ioard on Professional
l on issuance, and no
review. However, any
'e the Court may move
ı would normally be
ıefore the Court. The

provisions of Rule 18 shall govern any such motion. (Added, effective Feb. 6, 1986.)

**Revisor's note.** — Former Rule 63, relating to the duties and powers of the Professional Responsibility and Censor Committee, was repealed effective July 1, 1984.

**Rule 64. Office of Disciplinary Counsel.**

(a) *Appointment.* There shall be an Office of Disciplinary Counsel, consisting of a chief disciplinary counsel, one or more deputy disciplinary counsel, and as necessary or appropriate, one or more special disciplinary counsel. Each such disciplinary counsel shall be an attorney admitted to practice in this State and shall be appointed by the Court. Each such disciplinary counsel shall serve at the pleasure of the Court.

(b) *Chief disciplinary counsel.* The attorney appointed by the Court as chief disciplinary counsel shall be the full-time director of the Office of Disciplinary Counsel, and in such capacity shall be responsible for the management and administration of the Office. The chief disciplinary counsel shall prepare budgets, reports, and other proposals as necessary or appropriate for the operation of the Office. The chief disciplinary counsel shall be responsible for liaisons with the Court, the Board on Professional Responsibility, the Board on the Unauthorized Practice of Law, the Lawyers' Fund for Client Protection, the Delaware State Bar Association, the National Organization of Bar Counsel, and other related agencies. The chief disciplinary counsel shall be responsible for the supervision of all other persons serving the Office. The chief disciplinary counsel shall also have such powers and duties as described in subsection (e) below.

(c) *Deputy disciplinary counsel.* The attorney or attorneys appointed by the Court as deputy disciplinary counsel shall constitute, with the chief disciplinary counsel, the full-time legal staff of the Office, with such powers and duties as described in subsection (e) below. Deputy disciplinary counsel shall also assist the chief disciplinary counsel with management or administrative tasks, as necessary or appropriate, under the supervision of the chief disciplinary counsel.

(d) *Special disciplinary counsel.* The Court may, as necessary or appropriate, appoint on a part-time basis one or more special disciplinary counsel for specific matters which cannot, for whatever reason, be handled by the chief disciplinary counsel or deputy disciplinary counsel. An attorney acting as special disciplinary counsel shall have the powers and duties as described in subsection (e) below and shall be subject to the supervision of the Court.

(e) *Powers and duties of disciplinary counsel.* Each disciplinary counsel, as described in this rule, shall have the following general powers and duties, to the extent necessary or appropriate to carry out disciplinary counsel's designated role:

(1) Screen and evaluate all information coming to the attention of the Office relating to conduct by a lawyer and/or the practice of law in the State of Delaware;

(2) Investigate when necessary or appropriate all information coming to the attention of the Office which might be grounds for discipline or other action regarding the practice of law in the State of Delaware;

(3) Make such recommendations as to discipline or other action regarding the practice of law in the State of Delaware to the Court, the Board on

Professional Responsibility, the Preliminary Review Committee, the Board on the Unauthorized Practice of Law, the Lawyers' Fund for Client Protection, and any other related agency;

(4) Prosecute cases for disciplinary or other action before the Court, the Board on Professional Responsibility, and the Board on the Unauthorized Practice of Law;

(5) Employ, subject to the budgetary limitations set by the Court, and supervise non-legal staff as necessary or appropriate for the operation of the Office;

(6) Promptly notify the complainant and the respondent of the disposition of each matter;

(7) Notify each jurisdiction in which a lawyer is admitted of any public discipline, reinstatement, transfer to or from disability inactive status, or other official action, as appropriate;

(8) When a lawyer is convicted of a serious crime (as defined in the Rules of the Board on Professional Responsibility) in this State, forward a certified copy of the judgment of conviction to the disciplinary agency in each jurisdiction in which the lawyer is admitted;

(9) Maintain permanent records of discipline, disability, and unauthorized practice matters, and compile statistics to aid in the administration of the system; and

(10) Pursuant to directions from the Court, or as necessary or appropriate to the purposes of the regulation of the practice of law in this State, undertake any other tasks or investigations as so required.

(f) *Expenses.* The expenses of counsel and staff, administrative costs, and all other expenses relating to disciplinary matters shall be paid in accordance with subsection (g) of this rule. An audit of all funds entrusted to the Board and the Office of Disciplinary Counsel shall be filed with the Court on a yearly basis.

(g) *Funding.* The annual expenses of the Office of Disciplinary Counsel shall be paid out of assessments made annually against the active members of the Bar of this Court, and from other such sources as are determined by the Court. As a condition of continuing membership in the Bar of this Court, every active member, except judges disqualified from practicing law, shall pay to the Court a sum in accordance with the assessment schedule set forth below. The assessment is due and payable on January 1 of each year and delinquent if not paid by February 1 of that year.

ASSESSMENT SCHEDULE

(1) Admitted to the Delaware Bar more than 10 years as of the January 1 upon which the assessment becomes payable — $235.00.

(2) Admitted to the Delaware Bar more than 5 years but less than 10 years as of the January 1 upon which the assessment becomes payable — $145.00.

(3) Admitted to the Delaware Bar less than 5 years as of the January 1 upon which the assessment becomes payable — $90.00.

(4) Presently employed by government or corporation on a full-time basis and maintaining no private practice whatsoever, regardless of year admitted to the Delaware Bar — $70.00. (Added June 6, 1995, effective July 1, 1995; Dec. 30, 1996.)

e, the Board on
ient Protection,

the Court, the
e Unauthorized

the Court, and
operation of the

the disposition of

ed of any public
active status, or

ed in the Rules of
d a certified copy
ch jurisdiction in

nd unauthorized
inistration of the

or appropriate to
State, undertake

ative costs, and all
aid in accordance
d to the Board and
Court on a yearly

nary Counsel shall
ve members of the
ined by the Court.
Court, every active
ll pay to the Court
forth below. The
d delinquent if not

as of the January 1

t less than 10 years
payable — $145.00.
the January 1 upon

on a full-time basis
s of year admitted to
e July 1, 1995; Dec.

**COMMENT**

This rule is intended to establish the Office of Disciplinary Counsel as an independent arm of the Supreme Court dealing with the conduct of lawyers and the practice of law in the State. As specifically recommended in the American Bar Association's Report of the Commission on Evaluation of Disciplinary Enforcement (known as the "McKay Report"), adopted by the House of Delegates in 1992, the highest court in the jurisdiction should appoint and remove disciplinary counsel and should provide sufficient authority for prosecutorial independence and discretion. Accordingly, this rule separates the Office of Disciplinary Counsel from those adjudicative boards of the Court before which it prosecutes both disciplinary and unauthorized practice matters.

This rule also recognizes that in practice there have been three distinct roles traditionally played by "disciplinary counsel," namely, that of "chief disciplinary counsel," who acts as the full-time administrative head of the Office in addition to being a prosecutor, that of "deputy disciplinary counsel," who prosecutes cases in a similar fashion to the chief disciplinary counsel, but who does not have the same administrative or supervisory responsibilities, and that of "special disciplinary counsel" who has been appointed by the Court from time-to-time on an *ad hoc* basis to handle special matters which cannot be handled by full-time disciplinary counsel.

The description of the powers and duties of disciplinary counsel has been adopted from former Board on Professional Responsibility Rule 3, and has been updated to conform with actual practice as it has evolved since the creation of the Office of Disciplinary Counsel in 1984.

The text of this subsection (g), with some minor revisions, was taken from former Rule 62(e).

---

**Effect of amendments.** — The 1996 amendment, effective Dec. 30, 1996, in the assessment schedule of (g), substituted "$235.00" for "$205.00" in (1), "$145.00" for "$115.00" in (2), "$90.00" for "$60.00" in (3), and "$70.00" for "$40.00" in (4).

### Rule 65. Interest on Lawyer Trust Accounts.

(a) *Committee.* There shall be a Supreme Court Advisory Committee on the Interest on Lawyer Trust Accounts Program (IOLTA). The Committee shall consist of six members appointed by the court for three year, staggered terms, or until such time as their successors shall be appointed, or such other terms as may from time to time be fixed by the Court. The Court shall appoint the Chair and any other officers of the committee. The Court may appoint additional *ex officio* members of the Committee as it may deem appropriate who shall serve at the pleasure of the court. A justice of the Court may be designated as an *ex officio* member of the committee.

(b) *Function.* It shall be the function and responsibility of the Committee:

(i) To oversee and monitor the operation of the Delaware Interest on Lawyers Trust Accounts Program, as established pursuant to Rule 1.15 of the Delaware Lawyers' Rules of Professional Conduct;

(ii) To offer, solicit, receive and consider comments thereon from members of the Bar, the Bench, the Delaware Bar Foundation and others and, where appropriate, to recommend to the Court changes in the Delaware IOLTA program;

(iii) To consult with and advise the Court from time to time with respect to the IOLTA program;

(iv) To prepare and submit a report to the Court on an annual basis concerning the status of the program and the work of the Committee; and

(v) To undertake such additional assignments and responsibilities in this regard as the Court may direct. Provided, however, that it shall remain the exclusive responsibility of the Delaware Bar Foundation, subject to the supervision and approval of the Court, to hold and to disburse all funds

# TAB H

Westlaw.

Not Reported in A.2d

Page 1

Not Reported in A.2d, 1999 WL 743671 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**H**

Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
Jerry Lee ALSTON, Plaintiff,
v.
HUDSON, JONES, JAYWORK, WILLIAMS AND LIGUORI; Morris, Hitchens and Williams; Delaware States Attorneys Office; Office of the Prothonotary, Kent County and Office of **Disciplinary Counsel**, State of Delaware; William Hudson; James Semple; Michael J. Rich; Unemployment Insurance Appeal Board, Defendants.
**No. 99C-05-010 WLW.**

Aug. 13, 1999.

Upon Consideration of Defendant Hudson, Jones, Jaywork, Williams & Liguori, et. al.'s Motion to Dismiss Plaintiff's Complaint Granted.
Upon consideration of Defendants Michael J. Rich and the Unemployment Insurance Appeal Board's Motion to Dismiss Plaintiff's Complaint Granted.

MEMORANDUM OPINION

WITHAM, J.

*1 Presently before this Court are two motions to dismiss Plaintiff's Complaint. One motion was filed on behalf of Defendants: the law firm of Hudson, Jones, Jaywork, Williams, and Liguori; the law firm of Morris, James, Hitchens, and Williams; William Hudson; David Pryor; Laura Redding; and James Semple, (hereinafter collectively referred to as " Hudson, Jones, *et. al.*"). In a separate application, the Office of the Attorney General has filed a motion to dismiss on behalf of Michael J. Rich as State Solicitor, the Office of the Prothonotary for Kent County, the Office of the **Disciplinary Counsel**, and the Unemployment Insurance Appeal Board ("State Defendants").

I. FACTS AND PROCEDURAL HISTORY

This civil action arises from the events of a prior case in which Plaintiff filed an appeal from the Unemployment Insurance Appeals Board's ("UIAB" or "Board") decision to disqualify the Plaintiff from unemployment benefits eligibility. [FN1] In reaching its decision, the Board concluded that Plaintiff's employment was terminated due to his willful and wanton misconduct, rather than an inability to perform his job functions. Upon review of Plaintiff's appeal, Judge Terry ultimately determined that there was no substantial evidence in the record below to support a finding that Plaintiff's alleged job deficiencies were the result of willful or wanton misconduct; nor was there substantial evidence to support a finding that Plaintiff was discharged for just cause. Accordingly, the Superior Court reversed the Board's decision and remanded the matter for the purpose of awarding Plaintiff unemployment benefits.

FN1. *Alston v. Diamond State Machining, et al.*, Del.Super., C.A. No. 97A-03-001-NMT, Terry, J. (February 13, 1998)(Mem Op.).

Plaintiff subsequently filed the instant Complaint against Hudson, Jones, *et al.* and the State Defendants. With respect to both sets of Defendants, Plaintiff also asserts various civil claims purportedly sounding in tort. In addition, Plaintiff asserts a civil rights claim against the State Defendants, ostensibly on the basis that these Defendants acted in concert in denying him the free exercise of filing an unobstructed complaint. Plaintiff seeks damages in the amount of $21 million.

In response, Hudson, Jones, *et al.* has filed a Motion to Dismiss the Complaint pursuant to Superior Court Rules 12(b)(2); (4); (5); (6); Rule 4(f) and an alternative application pursuant to Rule

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=A00558000000... 1/5/2006

Not Reported in A.2d

Page 2

Not Reported in A.2d, 1999 WL 743671 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

12(e). On behalf of the State Defendants, the State has also filed a motion to dismiss for insufficient service of process pursuant to Superior Court Rule 12(b)(5) and for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). In turn, Plaintiff has filed the following memoranda: (1) Notice of Objection and Answers to Defendants' Motions; (2) Objection to Defendants' Motion to Dismiss; (3) Objection and Answers to Defendants' Motion for a More Definite Statement; and (4) Motion for Summary Judgment. FN2

FN2. It should be noted procedurally that the memoranda and applications filed by Plaintiff essentially regurgitate the allegations advanced in the Complaint. It is specifically worth noting that Plaintiff incorrectly cites Rule 56 in connection with his Motion for Summary Judgment, contending that he is entitled to summary judgment as to Hudson, Jones, *et. al.* on the basis that the Defense, having filed a motion for dismissal pursuant to Superior Court Civil Rule 12(b)(2), failed to provide an affidavit of defense, supporting affidavits, or deposition testimony. This is an incorrect statement of the law and a misinterpretation of Rule 12(b)(2).

## II. DISCUSSION

### A. Hudson, Jones, *et al.'s* Motion to Dismiss Complaint

Hudson, Jones, *et al.* move for dismissal on several grounds. Initially, however, it is necessary to determine whether Plaintiff has complied with Superior Court Civil Rule 4(f) because if there has been no compliance, this Court lacks personal jurisdiction over the above-referenced Defendants; in that case, it would not be necessary for the Court to reach the substantive grounds for dismissal. Accordingly, I turn now to the service of process issue. The critical facts pertaining to this issue are as follows. On or about May, 7, 1999, a Summons was filed with the Kent County Sheriff for service on the Defendants. On May 11, 1999, the writ was returned to the Prothonotary, indicating that Defendants William Hudson, David Pryor and Laura Redding were served on May 10, 1999 by serving the summons and complaint upon two receptionists at the law office of Hudson, Jones, Jaywork, Fisher & Ligouri. On May 14, 1999, a writ was returned to the Prothonotary, indicating that James Semple was served on May 10, 1999 by serving a receptionist at the Dover office of the law firm of Morris, James, Hitchens & Williams. Superior Court Civil Rule 4(f) provides that service of process shall be made:

***2** [u]pon an individual other than an infant or an incompetent person by delivering a copy of the summons, complaint and affidavit, to that individual personally or by leaving copies therof at that individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering copies thereof to an agent authorized ... to receive service of process.

In *Betlyon v. Shy,* the District Court of Delaware made clear that attempted service upon Defendants by serving copies to a secretary not authorized to accept such service is improper and does not qualify as effective service of process under Rule 4(f). FN3 Here, as in *Betlyon,* the receptionists were not authorized to receive service of process. Given this, Plaintiff has failed to serve the moving Defendants either personally or at their usual place of abode, and accordingly, service of process as to these Defendants was insufficient.

FN3. *Betlyon v. Shy,* D. Del., 573 F.Supp. 1402 (1983)(holding plaintiff's attempt to effectuate service by serving secretary of defendant's employer at his place of employment was improper). *But see Carter v. Three Unknown Police Officers of the Wilmington Police Department,* D. Del., 112 F.R.D. 48, 50 (1986). In *Carter,* Judge Longobardi cautioned that "nothing in the *federal* rules mandates that every technical defect in service of process should result in dismissal of a complaint. Considerations such as prejudice to the parties, good faith excuse for failure to effect proper service, and actual notice of the suit by the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=A00558000000... 1/5/2006

Not Reported in A.2d Page 3

Not Reported in A.2d, 1999 WL 743671 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

defendant militate against the drastic result of dismissal (quoting *Borzeka v. Heckler,* 739 F.2d 444, 447 (9th Cir.1984) (emphasis added). Judge Longobardi further added: "[t]he use of judicial discretion regarding dismissal is particularly important in a case such as this one, where the Plaintiff is acting *pro se* ".

It should also be noted that Plaintiff has neglected to move for enlargement of time to make service. Such an application, if made more than 120 days after the filing of the summons, will be granted only upon a showing of good cause. [FN4] In light of Plaintiff's failure to apply for an extension, however, this issue is not before me.

FN4. *Wass v. Calloway,* Del.Super., C.A. No., 94C-11-010, Ridgely, P.J., (February 21, 1996).

Accordingly, I find that Plaintiff has failed to comply with Superior Court Civil Rule 4(f), and as such, this Court lacks personal jurisdiction over Hudson, Jones, *et al.* Accordingly, the Court need not consider the additional grounds cited in support of dismissal.

B. State Defendants' Motion to Dismiss Complaint

The State Defendants move for dismissal pursuant to Superior Court Civil Rule 12(b)(5) and (6). As to the service of process question, the State in its moving papers fails to provide any factual basis in support of dismissal for insufficient service of process. Even if the Plaintiff can establish effective service of process, the State's Rule 12(b)(6) argument is dispositive.

Rule 12(b)(6) provides for dismissal of a complaint which fails to state a claim upon which relief may be granted. Upon consideration of a motion to dismiss under this Rule, all allegations in the complaint must be accepted as true. [FN5] In so doing, the complaint will not be dismissed unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof. [FN6]

FN5. *Itek Corp. v. Chicago Aerial Indus., Inc.,* Del.Super., 257 A.2d 232 (1969), aff'd, Del.Supr., 274 A.2d 141 (1971).

FN6. *Battista v. Chrysler Corp.,* Del.Super., 454 A.2d 286, 287 (1982).

As a threshold matter in the instant case, the above-named State Defendants are State "agencies" and "officials" under the Tort Claims Act of Title 10 of the Delaware Code. [FN7] Accordingly, the provisions of the Tort Claims Act control the discussion of Plaintiff's claim for money damages against the State Defendants.

FN7. The UIAB is an agency of the State of Delaware pursuant to 10 Del. C. ch. 31. The Office of the Kent County Prothonotary is an agency of the State of Delaware pursuant to 19 Del. C. ch. 90A. Likewise, the Office of the **Disciplinary Counsel** is created by Rule 64 of the Supreme Court Rules pursuant to 10 Del. C. § 161, and as such, is also a State agency. Michael J. Rich, as State Solicitor, is employed by the Department of Justice of the State of Delaware, a State agency pursuant to 29 Del. C. § 2505(b), and therefore, Mr. Rich is a State official within the meaning of the Statute.

It is well settled in Delaware that the doctrine of sovereign immunity operates as an absolute bar to any action against the State of Delaware, its subdivisions and officials, unless waived by the Legislature. [FN8] With respect to tort liability, the State is immunized unless it insures against a particular risk and the action in question is performed in bad faith or with gross negligence. [FN9] These principles extend to suits brought against state officials acting within their official capacity pursuant to 10 *Del. C.* § 4001. [FN10] The Act contains three elements of immunity: (1) judges, the Attorney General and Deputy Attorney Generals, and members of the General Assembly

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=A00558000000... 1/5/2006

Not Reported in A.2d

Page 4

Not Reported in A.2d, 1999 WL 743671 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

are *absolutely immune* for civil claims founded upon an act or omission arising out of the performance of an official duty; (2) all other state officials have *qualified immunity* from liability in any civil suits; and (3) the Plaintiff has the burden of proving the absence of one or more of the elements of this criteria. [FN11] In the present case, Plaintiff has failed to show the absence of any of the above elements and therefore, the State Defendants are entitled to immunity from money damages.

FN8. *See Turnbull v. Fink,* Del.Supr., 668 A.2d 1370, 1374 (1995); *Wilmington Housing Authority v. Williamson,* Del.Supr., 228 A.2d 782, 786 (1976).

FN9. *Doe v. Cates,* Del.Supr., 499 A.2d 1175, 1181 (1985).

FN10. *Smith v. New Castle County Vocational-Technical Sch. Dist.,* 574 F.Supp. 813 (D.Del.1983).

FN11. *Vick v. Haller,* Del.Super., 512 A.2d 249 (1986), aff'd, Del.Supr., 514 A.2d 782 (1986).

***3** Turning to the allegations made pursuant to Section 1983 of Title 42 of the United States Code ( " § 1983"), while I am mindful that the claims asserted are federal in nature, I am equally cognizant of the rule that State and Federal courts have concurrent jurisdiction over claims arising under § 1983 [FN12]:

FN12. *Division of Family Services v. Barras,* Del.Fam., C.A. No. CK96-4457, 96-28835, Nicholas, J. (Aug. 6, 1998). In *Morgan v. Powell/DFS,* Del.Fam., C.A. No. JN91-2642, James, J. (Sept. 20, 1994), for instance, the Court quoted *Martinez v. California,* 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7 (1980): "where the same type of claim, arising under state law, would be enforced in state courts, the state courts are generally not free to refuse enforcement of the federal claim."

[i]ndeed, there is no federal statute conferring upon federal courts exclusive jurisdiction over cases arising under the federal constitution, it would seem apparent that under the oath of office of every Delaware judge to uphold the United States Constitution and the Constitution of the State of Delaware such action should be entertained if otherwise within the jurisdiction of the court. [FN13]

FN13. *Burge v. City of Dover,* Del. Ch., Allen, Chancellor (June 8, 1987) (Mem.Op.).

Here, the Defendants have made no objection to this Court's jurisdiction over these claims and there is no suggestion that this matter is not otherwise properly before me. Having determined that this Court has jurisdiction over Plaintiff's § 1983 claim, I now move to the issue of whether there is an enforceable right upon which such relief can be granted.

First, 10 *Del. C.* § 4001 does not insulate defendants from civil liability under under 42 U.S.C. § 1983. Nonetheless, even without this shield, the United States Supreme Court has made clear that states, state subdivisions, and state officials are not "persons" within the ambit of § 1983. [FN14] Moreover, the spirit of § 1983 has always been: "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." [FN15] In the case at bar, the record is devoid of any evidence which suggests that any of the aforementioned State Defendants have utilized their "badge of authority" as a means of divesting Plaintiff of any civil or constitutional liberties.

FN14. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989)(declining to extend the rule that municipalities are persons to states and state subdivisions).

FN15. *Wyatt v. Cole,* 112 S.Ct. 1287, 1830 (1992)(citing *Carey v. Phiphus,* 435 U.S. 247, 254-57 (1978)).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=A00558000000... 1/5/2006

Not Reported in A.2d

Page 5

Not Reported in A.2d, 1999 WL 743671 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

As to Mr. Rich, he cannot be sued under § 1983 in his official capacity. FN16 Here, the charge against Mr. Rich is that in his capacity as State Solicitor he declined to process what Plaintiff perceived to be legitimate civil rights complaints. There is no evidence in the record before me, however, to support the notion that the decision not to prosecute was made outside of the scope of his official capacity as State Solicitor. Stated another way, Mr. Rich's denial of Plaintiff's request to initiate a criminal prosecution against a number of the Defendants in this case on the ground that there was no "sufficient factual basis" FN17 to do so, was directly related to his responsibilities as State Solicitor, and thus, clearly within the parameters of his "traditional prosecutorial function". FN18 Likewise, as to the viability of a § 1983 suit against Mr. Rich in his individual capacity, the Complaint fails to state sufficient ground upon which he could be liable.

FN16. *Will v. Michigan Dep't of State Police, supra. See also Doe v. Phillips,* 81 F.3d 1204 (2nd Cir.1996)(holding prosecutor has **absolute immunity** from a claim for damages for commencing a prosecution as well as for his performance of tasks as an advocate in the conduct of the prosecution).

FN17. In a March 3, 1998 letter to Plaintiff, State Solicitor Rich advised Plaintiff of the denial of Plaintiff's request that the Department of Justice initiate civil rights proceedings against the Defendants.

FN18. *See Doe v. Phillips, supra,* wherein the Court explained that to determine whether a prosecutor was acting in his " official capacity", the Court must first determine whether his actions were within the scope of a prosecutor's "traditional functions".

Accordingly, after drawing all reasonable inferences in favor of the Plaintiff, it is clear that the doctrine of sovereign immunity applies to the State Defendants, and I am therefore satisfied that under no conceivable set of circumstances which could be proved to support the claim asserted would the Plaintiff be entitled to relief.

## III. CONCLUSION

*4 For the forgoing reasons, both Motions to Dismiss are GRANTED. THEREFORE, IT IS ORDERED that Plaintiff's Complaint is dismissed *without prejudice* as to Hudson, Jones, *et al.* and dismissed *with prejudice* with respect to the State Defendants.

Del.Super.,1999.
Alston v. Hudson, Jones, Jaywork, Williams and Liguori
Not Reported in A.2d, 1999 WL 743671 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=A00558000000... 1/5/2006

# TAB I

Westlaw.

Not Reported in F.Supp. Page 1

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents

United States District Court,E.D. Pennsylvania.
Elizabeth J. PAWLAK
v.
Chief Justice Robert N.C. NIX, Jr.; Justice Ralph J. Cappy; Justice Nicholas P. Papadakos; Justice Stephen A. Zappala; Justice John P. Flaherty; Justice Frank J. Montemuro; Justice Rolf Larsen; Justice Ronald Castille, Christine L. Donahue; John S. Manos; Judge Eugene H. Clarke, Jr.; Judge James M. Munley; Michael F. Defino; Gordon J. Daghir; Harold Rosenn; Rebecca G. Sturchio; Patrick Tassos; Charles W. Johns; and, William G. Corey; in their official and personal capacities; Carl W. Brueck, Jr., in his official and personal capacities and as past president of the Pennsylvania Bar Association; the Pennsylvania Board of Law Examiners; Disciplinary Board of the Supreme Court of Pennsylvania; the American Bar Association; the National Conference of Bar Examiners; and, the Pennsylvania Bar Association.
**Civil Action No. 95-5265.**

Sept. 30, 1996.
As Amended Oct. 25, 1996.

Elizabeth J. Pawlak, Greenbelt, MD, Pro Se.
Howard M. Holmes, Administrative Office of PA Courts; H. Robert Fiebach, Marc S. Zamsky, Cozen and O'Connor; John E. McKeever, Schnader, Harrison, Segal & Lewis, Philadelphia, PA; Robert A. Burgoyne, Jacqueline R. Depew, Fulbright and Jaworski, L.L.P., Washington, DC, and L. Suzanne Forbis, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Defendants.

*MEMORANDUM*

DuBOIS, District Judge.
*1 Plaintiff, Elizabeth J. Pawlak, seeks redress from numerous individuals and organizations which she alleges conspired and discriminated against her in order to prevent her from practicing law in the Commonwealth of Pennsylvania. As a result, she asks this Court to award her compensatory damages for lost income and equitable relief. Presently before this Court are Defendants' Motions to Dismiss Plaintiff's Complaint, or in the Alternative, for Summary Judgment. Because this Court concludes that it lacks subject matter jurisdiction over plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1), Defendants' Motions to Dismiss will be granted and Defendants' Alternative Motions for Summary Judgment will be denied as moot.

**I. Background**

Plaintiff is not a stranger to this Court. The catalyst for all of her litigation began over four years ago when she sat for the July, 1992, Pennsylvania bar examination and received a score below the minimum passing score required by the Pennsylvania Board of Law Examiners ("Board").
As explained in more detail in this Court's prior Memoranda, FN1 after receiving her insufficient examination score, plaintiff, a graduate of the Georgetown University Law Center, Medical School of Gdansk, in Poland, and the University of Vienna, in Austria, petitioned the Board for special medical accommodation for the February, 1993, Pennsylvania bar examination. She explained that during the July, 1992, examination she suffered from a first-time "coughing attack" which negatively affected her score. In response the Board informed plaintiff of the procedures with which she would have to comply before the Board would grant her a medical accommodation.
Plaintiff refused to follow these procedures; instead, according to the Executive Director of the Board, Patrick Tassos, plaintiff threatened to disrupt the February, 1993, examination unless she was granted the accommodation she requested. As a result, not only was plaintiff's petition for special

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B00558000000... 1/5/2006

Not Reported in F.Supp. Page 2

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

accommodation denied, but the Board also refused her application to sit for the February, 1993, bar examination, finding her threatening conduct incompatible with the character qualifications required for members of the Commonwealth's bar. The Board also refused her application to sit for the July, 1993, Pennsylvania bar examination until her application to sit for the February, 1993, bar examination was resolved. In a subsequent hearing granted to plaintiff, the Board reaffirmed that she lacked requisite character to sit for Pennsylvania bar examinations.

Plaintiff then petitioned the Supreme Court of Pennsylvania for review. The Court denied plaintiff's petitions seeking relief, including her Special Petition Seeking an Order for a Stay, a Permanent Injunction and a Dismissal and a Quash of the Decisions and Actions of The Board of Law Examiners, dated April 15, 1993, ("Special Petition" ) and her Petition for Expedited Review of the Adjudication Rendered by the Pennsylvania Board of Law Examiners, dated May 21, 1993, ("Petition for Expedited Review"). These petitions challenged the actions of the Board, *inter alia,* on the basis that they violated her rights under the Pennsylvania and United States Constitutions. Specifically, plaintiff maintained that members of the Board conspired and discriminated against her. Plaintiff's Application for Reargument was denied by the Supreme Court of Pennsylvania. The United States Supreme Court denied plaintiff's petition for a Writ of Certiorari.

This Court has rejected plaintiff's previous claims in Civil Action No. 93-2724 and Civil Action No. 93-1998. In those actions, plaintiff challenged the decisions of the Board denying her permission to sit for the February, 1993, and July, 1993, bar examinations. She sought declaratory, injunctive and compensatory relief against the Board, its members and affiliates, and the Justices of the Supreme Court of Pennsylvania. By Memorandum and Order dated August 30, 1995, this Court dismissed the complaints in both cases, finding that it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine. [FN2] Additionally, by Memorandumnally, by Memorandum and Order dated December 1, 1995, Misc. No. 94-211, this Court denied plaintiff's petition for a hearing on her fitness to practice law before this Court, and an order permitting her to apply to be admitted generally as an attorney of this Court although she is not a member of the Supreme Court of Pennsylvania.

## II. Proceedings in the Instant Case

*2 Plaintiff initiated the instant case on August 16, 1995. Her Complaint names numerous state officials, state agencies, and national organizations as defendants. Specifically, plaintiff sues present and former members of the Supreme Court of Pennsylvania in both their official and personal capacities, including Chief Justice Robert N.C. Nix, Jr., Justice Ralph J. Cappy, then-Justice Nicholas P. Papadakos, Justice Stephen A. Zappala, Justice John P. Flaherty, then-Justice Frank J. Montemuro, then-Justice Rolf Larsen, and Justice Ronald Castille. Plaintiff also sues the Board as an entity and the present and former members of the Board in their official and personal capacities, including Christine L. Donahue, John S. Manos, Carl W. Brueck, Jr., Judge Eugene H. Clarke, Jr., Judge James M. Munley, [FN3] Michael F. DeFino, Gordon J. Daghir and Harold Rosenn. Additionally, plaintiff sues Rebecca G. Sturchio, counsel to the Board, Patrick Tassos, Executive Director of the Board, Charles W. Johns, Prothonotary of the Supreme Court of Pennsylvania, and William G. Corey, Deputy Prothonotary of the Supreme Court of Pennsylvania, in their official and personal capacities. Plaintiff also sues the Disciplinary Board of the Supreme Court of Pennsylvania (" Disciplinary Board"), [FN4] the American Bar Association ("ABA"), the National Conference of Bar Examiners ("NCBE"), and the Pennsylvania Bar Association ("PBA"). Further, plaintiff names Brueck in his capacity as past president of the PBA. Only the ABA, the NCBE, the PBA, the Disciplinary Board and the Prothonotaries are new parties to the litigation in this Court; all of the other defendants were named as defendants in the actions dismissed by this Court's Memorandum and Order of August 30, 1995. [FN5]

Plaintiff's Complaint alleges five causes of action.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B00558000000... 1/5/2006

In Count I, she maintains that defendants have conspired, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (1994), to artificially limit the number of attorneys licensed by the Pennsylvania state bar and to prevent foreign-born and foreign-educated individuals from practicing law. As a result, plaintiff alleges, *inter alia,* that she cannot practice law in Pennsylvania and that her reputation, both locally and abroad, has been " irreversibly devastated." Her Complaint states only that all defendants took part in the conspiracy; she offers no description of how any specific defendant contributed to the conspiracy or what agreements constituted the conspiracy.

*3 In Count II plaintiff claims that through their conspiracy, all defendants have monopolized the rendering of legal services in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (1994). Again, plaintiff's Complaint is devoid of any mention of how any single defendant contributed to this violation or any detail of how the monopoly was formed. For the violations of the Sherman Act which plaintiff alleges in Counts I and II plaintiff seeks compensatory damages. Specifically, she requests redress for lost past and future income, and injury to her person.

Plaintiff's third claim is that defendants violated Section 1962(c) of the Racketeering-Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (1994). [FN6] She alleges that an " association in fact" between the Justices, members of the Board, the Board itself, the ABA, the NCBE and the PBA constitutes a RICO enterprise. She further alleges that "the enterprise served as a vehicle for defendants' predicate acts of racketeering," including, obstruction of justice, perjury, and fraud. Except for alleging that defendants Tassos, Daghir, Donahue, Brueck, DeFino, Manos, Sturchio, Clarke and Rosenn committed perjury, her Complaint does not specify which defendants were responsible for which predicate acts nor how the predicate acts were accomplished. No specific request for redress is made in this claim.

Plaintiff's fourth claim, based on 42 U.S.C. §§ 1981 & 1985(3) (1994), names only members of the Board and affiliates of the Board as defendants. [FN7] Plaintiff charges that the Application for Admission to the Bar of the Commonwealth of Pennsylvania is a discriminatory device aimed at excluding applicants who are not " 'our own' and hence 'unworthy' " of bar membership. She maintains that Board members used the information requested in the application to discriminate against her on account of her ethnicity and alienage. As redress for this discrimination, plaintiff seeks compensatory and declaratory relief for loss of past and future income. Additionally, she seeks to enjoin the members of the Board from, *inter alia,* utilizing the application in the future.

Finally, in a fifth claim, plaintiff alleges under 42 U.S.C. §§ 1983 & 1985(3) (1994) that the Prothonotary of the Supreme Court of Pennsylvania denied her equal protection of the laws by consolidating two petitions submitted to the Pennsylvania state Supreme Court. She does not seek damages under this claim.

**III. Discussion**

This Court will dismiss plaintiff's claims against all defendants because it lacks jurisdiction under the *Rooker-Feldman* doctrine. [FN8] Principles of immunity-Eleventh Amendment sovereign immunity, judicial immunity, and quasi-judicial immunity-provide alternative grounds for dismissing plaintiff's claims for compensatory and declaratory relief against the Board of Law Examiners and the Disciplinary Board of the Supreme Court of Pennsylvania, as entities, and the Justices of the Supreme Court of Pennsylvania, members of the Board, and others associated with the state judicial system, in both their official and personal capacities. With respect to the claims against the other defendants, the ABA, the NCBE, the PBA, and Carl W. Brueck, Jr. in his capacity as past president of the PBA, the Court concludes, in the alternative, that Plaintiff's Complaint fails to state claims upon which relief can be granted.

**A. Rooker-Feldman Doctrine**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***4** A federal district court is one of original jurisdiction; as such, it lacks subject matter jurisdiction to entertain appeals from state courts. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1314-15, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). The *Rooker-Feldman* doctrine, which reflects these principles, is transgressed if the claim before the district court has already been determined by the state court or is "inextricably intertwined" with a prior state court decision. *Marks v. Stinson,* 19 F.3d 873, 886 n. 11 (3d Cir.1994). In either scenario, "federal relief can only be predicated upon a conviction that the state court was wrong, [and] it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgement." *Centifanti v. Nix,* 865 F.2d 1422, 1430 (3d Cir.1989) (quoting *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)). District Courts, however, do "have subject matter jurisdiction over general challenges to state-bar rules ... which do not require review of a final state court judgment in a particular case." *Feldman,* 460 U.S. at 486, 103 S.Ct. at 1317.

Last year this Court concluded that the claims raised by plaintiff in this Court were inextricably intertwined with the decision of the Supreme Court of Pennsylvania to dismiss her petition challenging the Board's determination that she was unfit to sit for the bar exam. *Pawlak v. Pennsylvania Bd. of Law Examiners,* 93-1998 & 93-2724, 1995 WL 517646 (E.D.Pa. Aug. 30, 1995). The Court thus held that it lacked subject matter jurisdiction over plaintiff's claims for declaratory, injunctive and compensatory relief arising out of the Board's decision to not allow her to sit for the February, 1993 and July, 1993 bar examinations. *Id.* at *12-*16. In looking beyond the superficial differences in legal theories to the similarity of the events spurring these theories, *see Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 960, 963 (3d Cir.1991), this Court now holds that plaintiff's present Complaint is another attempt to seek review of the Supreme Court of Pennsylvania's decision. [FN9]

A manufactured effort to redefine the relief sought cannot circumvent the *Rooker Feldman* bar. *Guess v. Board of Med. Examiners of State of North Carolina,* 967 F.2d 998, 1005 (4th Cir.1992); *Stern v. Nix,* 840 F.2d 208, 212 (3d Cir.) ("Despite this genuflecting to the *Rooker-Feldman* doctrine, closer consideration convinces us that Stern's complaint is simply a skillful attempt to mask the true purpose of the action, which essentially is to reverse the judicial decision of the Supreme Court of Pennsylvania."), *cert. denied,* 488 U.S. 826 (1988); *Kirby v. City of Phila.,* 905 F.Supp. 222, 227-28 (E.D.Pa.1995) (holding that "plaintiffs' requests for relief are clearly focused on reversing the outcome of their unsuccessful state court appearance"); *Triffin v. Nix,* 93-5519, 1994 WL 156695, *5 (E.D.Pa.1994) (explaining that Triffin's attack against the Board's policy as arbitrary and capricious as applied to him and his request for an injunction to prevent the Board from applying its rules to him were simply attempts to get federal court review of the Board's decision denying his bar application), *aff'd,* 43 F.3d 1463 (3d Cir.1994). After study of Plaintiff's Complaint and the proceedings before the Board and the Supreme Court of Pennsylvania, this Court concludes that plaintiff's present action is a manufactured effort to circumvent the *Rooker-Feldman* doctrine.

***5** First, plaintiff has simply revised her state court petition as a federal action. The essence of Pawlak's action before this Court, although dressed in the different guises of antitrust, RICO, and discrimination claims, is that the Board and all others who she alleges play any role in licensing applicants for the Pennsylvania bar conspired to deny her membership to that bar through a scheme of discriminatory bias. *See* Complaint ¶¶ 24, 27 (alleging a conspiracy to prevent foreign-born and foreign-educated individuals, including plaintiff, from practicing law in Pennsylvania); ¶¶ 32-33 (claiming a conspiracy to monopolize regulation of the bar so as to exclude applicants, including plaintiff); ¶ 34 (avowing that defendants engaged in an enterprise, which among other violations, conspired to defraud plaintiff of admission to bar); ¶¶ 45-46 (alleging that defendants formed a conspiracy against plaintiff and denied her admission to the bar through a discriminatory

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

application); ¶ 50 (claiming discrimination against plaintiff through consolidation of two petitions). Plaintiff's argument mimics the unsuccessful contention she made in her petition to the Supreme Court of Pennsylvania, in which she alleged that the Board found that she lacked requisite character because they conspired to discriminate against and harass her. *See* Special Petition, ¶¶ 64-72 (asserting that members of the Board violated plaintiff's civil rights and right to equal protection of the laws); Petition for Expedited Review, ¶ 28 (alleging that the Board's decision was the result of invidious discrimination and harassment), ¶¶ 30-35 (maintaining that the Board and its members conspired to violate plaintiff's civil rights and deprive her membership in the state bar). The Court believes that through this action plaintiff is once again trying to succeed at that in which she has been frustrated-overturning the decisions denying her permission to sit for the Pennsylvania bar examination. *See Stern,* 840 F.2d at 212. Her claims before this Court are therefore inextricably intertwined with the state court proceeding. FN10

Second, although a casual reading of Plaintiff's Complaint may suggest that her federal action is completely divorced from her state proceeding, as the Third Circuit noted in *Stern,* "[d]espite this genuflecting to the *Rooker-Feldman* doctrine, closer consideration" reveals that the true purpose of this federal action is to reverse the decision of the state supreme court. 840 F.2d at 212. In attempting to avoid a determination that her present federal action is unrelated to the state proceedings plaintiff fails to state in her Complaint that she was not permitted to sit for the February, 1993, and July, 1993, Pennsylvania bar examinations or that she petitioned the Supreme Court of Pennsylvania for review. Moreover, while plaintiff alleges in her Complaint that she was injured, she does not reveal *how* she was injured. In not alleging such facts plaintiff appears to be attempting to avoid the conclusion of the Third Circuit in *Stern* that an extensive exposition of the specific facts of the claimant's case would signal that the federal action was essentially entwined with the state action. *See Stern,* 840 F.2d at 212-13; *Triffin,* 1994 WL at *5. FN11 Similarly, Pawlak's request for monetary damages also reveals that the true nature of her action is to have this Court reverse the decisions of the Board and the Supreme Court of Pennsylvania denying plaintiff permission to sit for the Pennsylvania bar examination. *See Centifanti,* 865 F.2d at 1429-30; *Stern,* 840 F.2d at 212. As this Court noted in dismissing her previous action for money damages, "[b]ecause such relief focuses on past actions of the Board and the Supreme Court of Pennsylvania and requires plaintiff to prove specific injury to herself," plaintiff's claim is barred by *Rooker-Feldman. Pawlak,* 1995 WL at *12. Finally, that plaintiff professes to act on behalf of other bar applicants who allegedly have been the subjects of the same conspiracy and discrimination does not transform the essence of her Complaint from one seeking a re-evaluation of the state court judgment to a general challenge to state bar rules. *Stern,* 840 F.2d at 212.

***6** Accordingly, this Court concludes that Pawlak's action is simply another effort to seek review of the state court judgment that she was unfit to practice law in Pennsylvania and thereby avoid the bar of *Rooker-Feldman.* Her claim is inextricably intertwined with the state court's judgment: in order for this Court to determine that her claims had merit it would have to rule that the Supreme Court of Pennsylvania erred in refusing to question the Board's decision about plaintiff's character. *See Lal v. Nix, et al.,* 935 F.Supp. 578, 582-83 (E.D.Pa.1996) (holding that claims of discrimination based on race, ethnicity, national origin and age raised in district court were barred by *Rooker-Feldman* because in order to grant plaintiff relief requested court would have to conclude that he was not denied admission because of character deficiencies but because of discrimination). Therefore, this Court lacks subject matter jurisdiction and will dismiss Pawlak's Complaint under Fed.R.Civ.P. 12(b)(1). FN12

**B. Immunity**

Even if plaintiff's action were not barred by *Rooker-Feldman,* this Court holds that principles of immunity would bar plaintiff's claims for compensatory and declaratory relief against all individual defendants (in both their official and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

personal capacities), FN13 the Board and the Disciplinary Board. The Eleventh Amendment deprives this Court of jurisdiction over all of plaintiff's claims against the Board of Law Examiners and the Disciplinary Board of the Supreme Court of Pennsylvania, as entities, and against all of the individuals sued in their official capacities. Thus, in the alternative, the claims against these defendants will be dismissed for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) pursuant to the Eleventh Amendment. And, plaintiff's claims for damages and declaratory relief against the Justices of the Supreme Court of Pennsylvania, the members of the Board of Law Examiners, and others affiliated with the state court system sued in their individual capacities, are barred under principles of judicial and quasi-judicial immunity. As a result, in the alternative, such claims against these defendants will be dismissed under Fed.R.Civ.P. 12(b)(6).

**1. *Eleventh Amendment Immunity As Applied to the Pennsylvania Board of Law Examiners and the Disciplinary Board of Pennsylvania***

While the Eleventh Amendment FN14 does not, by its terms, bar suits in federal court against a state by its own citizens, the Supreme Court has consistently held that an unconsenting state is immune from such suits in federal court. *Seminole Tribe of Florida v. Florida,* ---U.S. ----, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The bar is not limited to suits expressly brought against the state; rather, the bar also operates whenever "the state is the real, substantial party in interest." *Edelman v. Jordon,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). Similarly, the Eleventh Amendment bars actions against state officials sued in their official capacities when the state is the real party in interest. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985).

*7 Under the Eleventh Amendment this Court does not have jurisdiction over claims against the Board of Law Examiners or the Disciplinary Board because these entities are surrogates of the Supreme Court of Pennsylvania. "There is no doubt that a state's highest court is an Eleventh Amendment state entity." *Robinson v. Court of Common Pleas of Philadelphia County,* 827 F.Supp. 1210, 1211-12 (E.D.Pa.1993). Pennsylvania state law recognizes the state Supreme Court as an arm of the judicial branch. *See* Pa. Const. Art. 5, s. 1 ("The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court...."); 42 Pa.C.S.A. § 102 (1981 & Supp.1996) (defining "Commonwealth government" as including the courts...."); *see also Reiff v. Philadelphia County Court of Common Pleas,* 827 F.Supp. 319, 323 (E.D.Pa.1993) (concluding that the Court of Common Pleas of Philadelphia County is an arm of the state and therefore entitled to Eleventh Amendment immunity).

As this Court has already recognized, "the Board [of Law Examiners] has no independent authority and acts on the Supreme Court's behalf." *Pawlak,* 1995 WL *14. As such, it also is an arm of the state and is protected from suit by the Eleventh Amendment. *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1355-56 (stating that state entities are protected by Eleventh Amendment); *Ford Motor Co. v. Department of Treasury of State of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350-51, 89 L.Ed. 389 (1945) (stating that when the action is in reality one against the state the Eleventh Amendment bar applies). Similarly, the Disciplinary Board of the Supreme Court of Pennsylvania is an arm of the state, and therefore is immune from suit in federal court. *See Mattas v. Supreme Court of Pennsylvania,* 576 F.Supp. 1178, 1182 (W.D.Pa.1983) (holding that the Supreme Court of Pennsylvania and the Pennsylvania Office of **Disciplinary Counsel**, as entities, are arms of the state and therefore cannot be sued in federal court because of the Eleventh Amendment); *Perry v. Barnard,* 745 F.Supp. 1394, 1403 (S.D.Ind.1989) (finding that in suit for injunctive relief against members of Commission on Judicial Qualifications and the Disciplinary Commission of the Supreme Court of Indiana, the real party in interest was the state and thus action was barred under Eleventh Amendment), *aff'd,* 911 F.2d 736 (7th Cir.1990). FN15

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For these reasons, this Court holds that these two state entities are protected by Eleventh Amendment immunity. Thus, in the alternative, the Court will dismiss all claims against such entities. Furthermore, in the alternative, the Court will dismiss the claims against the individual defendants sued in their official capacities, as such suits are another way of pleading an action against the state of which an officer is an agent. *Graham,* 473 U.S. at 165-66, 105 S.Ct. at 3104-05. Thus, all claims against the following persons in their official capacities will be dismissed: Chief Justice Nix, Justice Cappy, Justice Papadakos, Justice Zappala, Justice Flaherty, Justice Montemuro, Justice Larsen, Justice Castille, Christine L. Donahue, John S. Manos, Carl W. Brueck, Jr., Judge Eugene H. Clarke, Jr., Judge James M. Munley, Michael F. DeFino, Harold Rosenn, Gordon J. Daghir, Rebecca G. Sturchio, Patrick Tassos, Charles W. Johns [FN16] and William G. Corey. Because the Eleventh Amendment bar does not apply to suits against individuals in their individual capacities, *Hafer v. Melo,* 502 U.S. 21, 31, 112 S.Ct. 358, 364-65, 116 L.Ed.2d 301 (1991); *Winn v. Lynn,* 941 F.2d 236, 241 (3d Cir.1991), this Court will address other aspects of immunity with regard to the individual defendants sued in their individual capacities.

### 2. *Judicial Immunity as Applied to Justices of the Supreme Court of Pennsylvania and Members of the Board of Law Examiners*

#### a. Justices of the Supreme Court of Pennsylvania

***8** The scope of judicial immunity is broad. " Judicial immunity arose because it was in the public interest to have judges who were at liberty to exercise their independent judgment about the merits of a case without fear of being mulcted for damages should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption." *Dennis v. Sparks,* 449 U.S. 24, 31, 101 S.Ct. 183, 188, 66 L.Ed.2d 185 (1980). A judge is only subject to a suit for money damages if the judge's actions were not "judicial" or were clearly in the " absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356-57, 98 S.Ct. 1099, 1104-05, 55 L.Ed.2d 331 (1978).

Neither exception applies to the Justices of the Supreme Court of Pennsylvania in this case. Pennsylvania law authorizes the Justices of the Supreme Court to review final orders from the Board of Law Examiners. 42 Pa.C.S.A. § 725(4) (1981 & Supp.1996). Thus, such an act is a judicial function, *see Stump,* 435 U.S. at 362, 98 S.Ct. at 1107-08 (noting that acts normally performed by a judge are a judicial function), [FN17] within their jurisdiction, *see Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 352, 20 L.Ed. 646 (1871) *cited in Stump,* 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7 . (explaining the broad contours of acts within a judge's jurisdiction). In the alternative, the suits against the Justices in their individual capacities are therefore barred and must be dismissed.

#### b. Members of Board of Law Examiners

Judicial immunity is not limited to judges: quasi-judicial immunity is available to those who " perform functions closely associated with the judicial process". *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985); *see also Henig v. Odorioso,* 385 F.2d 491, 494 (3d Cir.1967) (holding that judiciary employees executing judicial orders are immune from suits for money damages), *cert. denied,* 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166 (1968). Thus, members of the Board of Law Examiners, like the Justices for whom they are surrogates, also are protected from suits for monetary relief against them in their individual capacities. *See Sparks v. Character and Fitness Committee of Kentucky,* 859 F.2d 428, 432-33 (6th Cir.1988) (concluding that the act of considering an application to the bar is a judicial act, even if performed by nonjudicial officers, and that the Kentucky Board of Bar Examiners are entitled to judicial immunity), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989); *Childs v. Reynoldson,* 777 F.2d 1305 (8th Cir.1985) (holding that members of the Iowa Board of Law Examiners were entitled to absolute quasi-judicial immunity because they acted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 8

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

as surrogates of the Supreme Court); *Richardson v. McFadden,* 563 F.2d 1130, 1132 (4th Cir.1977) (concurring opinion) (persons who judge the fitness of applicants to practice law perform a judicial function), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978). Under like reasoning, Sturchio, counsel for the Board, and Tassos, Executive Director of the Board, also are immune from suits for money damages in their individual capacities. Similarly, Johns, the Prothonotary, and Corey, the Deputy Prothonotary, are immune from suits for money damages in their individual capacities. *Lockhart v. Hoenstine,* 411 F.2d 455, 460 (3d Cir.) (holding that prothonotary, acting under court direction, was immune from suit), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969).

*9 In sum, principles of immunity afford this Court with alternative grounds for dismissing most of plaintiff's claims. Plaintiff's claims against state entities, and members of such entities in their official capacities, must be dismissed because this Court lacks jurisdiction under the Eleventh Amendment. Judicial and quasi-judicial immunity precludes all claims for monetary damages against all other individuals sued in their personal capacities. However, because principles of quasi-judicial immunity do not bar claims for injunctive relief, *see Pulliam v. Allen,* 466 U.S. 522, 541-42, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984) (concluding that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity"), plaintiff's single claim for injunctive relief against only the members of the Board is not barred by quasi-judicial immunity. [FN18] The Court finds, however, that plaintiff's claims for declaratory relief [FN19] are barred by principles of judicial immunity as they are "no more than an implicit predicate to h[er] request for damages." *Hansen v. Ahlgrimm,* 520 F.2d 768, 770 (7th Cir.1975); *see also Iseley v. Bucks County,* 549 F.Supp. 160, 166 (E.D.Pa.1982) . Thus, in the alternative, plaintiff's claims for compensatory and declaratory relief against the Board of Law Examiners and the Disciplinary Board of the Supreme Court of Pennsylvania, as entities, and the Justices of the Supreme Court of Pennsylvania, members of the Board, and others associated with the state judicial system, in both their official and personal capacities will be dismissed on immunity grounds under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**c. Failure to State a Claim Upon Which Relief Can Be Granted Under Fed.R.Civ.P. 12(b)(6)**

Similarly, even if plaintiff's action were not barred by *Rooker-Feldman,* plaintiff's claims which would not be barred under immunity principles-the claims against the ABA, the NCBE, the PBA and Carl W. Brueck in his capacity as past president of the PBA-would be subject to dismissal because plaintiff has failed to state claims upon which relief can be granted against those defendants. *See* Fed.R.Civ.P. 12(b)(6). The only claims against the ABA, the NCBE, the PBA and Brueck in his capacity as past president of the PBA are set forth in Counts I and II and the unnumbered third cause of action of Plaintiff's Complaint. [FN20] The Court now concludes that, in the alternative, these Defendants' Motions to Dismiss the Antitrust and RICO claims against them will be granted.

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). In evaluating such a motion, the court must accept the truth of a plaintiff's allegations. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). However, the court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Kost,* 1 F.3d at 183. "[T]he complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court should not ask whether the plaintiff will ultimately prevail, but rather whether the plaintiff can prove any set of facts that will entitle her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984). Finally, the Court notes that it will liberally construe a *pro se* plaintiff's complaint. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595-96, 30 L.Ed.2d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B00558000000... 1/5/2006

652 (1972). FN21

### 1. *Plaintiff Has Failed to State a Claim Under the Sherman Act*

***10** Counts I and II allege that defendants have violated the Sherman Act. Plaintiff claims that defendants conspired to limit the number of licensed attorneys in violation of 15 U.S.C. § 1 (1994) FN22 and monopolized the rendering of legal services in violation of 15 U.S.C. § 2 (1994). FN23 Plaintiff does not specify how the ABA, the NCBE, the PBA, or Brueck allegedly conspired to do so. In fact, none of these defendants is mentioned specifically in Counts I or II. Even in liberally construing Plaintiff's Complaint, *see Haines,* 404 U.S. at 520, 92 S.Ct. at 595-96 (stating that no matter how inartfully pleaded, *pro se* complaints shall be held to a less stringent standard than those drafted by licensed attorneys), plaintiff has not stated a cause of action upon which relief can be granted under Sections 1 or 2 of the Sherman Act for at least two reasons.

First, plaintiff has not demonstrated that injuries were caused by the private actions of the ABA, the NCBE, the PBA or Brueck, rather than by independent state conduct. The Sherman Act applies only to private conduct. In *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court held that states and state entities cannot be held liable under the Sherman Act for restraining trade or commerce. *Id.* at 350, 63 S.Ct. at 313; *see also Hoover v. Ronwin,* 466 U.S. 558, 573, 104 S.Ct. 1989, 1997-98, 80 L.Ed.2d 590 (1984) (applying *Parker* and holding that the Arizona Supreme Court and the Arizona Committee on Examinations and Admissions were immune fro m antitrust liability under the state action exception). Thus, "where a restraint upon trade and monopolization is the result of a valid governmental action as opposed to private action, no violation of the [Sherman] Act can be made out." *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 136, 81 S.Ct. 523, 529, 5 L.Ed.2d 464 (1961) cited in *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,* 937 F.Supp. 435, 439-40 (E.D.Pa.1996). In such situations, it is the state and not the private party which injures the plaintiff. *Lawline v. American Bar Ass'n,* 956 F.2d 1378, 1384 (7th Cir.1992), *cert. denied,* 510 U.S. 992, 114 S.Ct. 551, 126 L.Ed.2d 452 (1993); *Massachusetts School of Law,* 937 F.Supp. at 439-40 (explaining that when a plaintiff's alleged injury is proximately caused by the government, a private party defendant is not a cause of the injury).

The claimed anticompetitive and monopolistic injuries to Pawlak are directly attributable to decisions made by state entities. The Supreme Court of Pennsylvania and the Board of Law Examiners, to whom it has lawfully delegated its authority, have the exclusive power to regulate admission to the bar. FN24 Penn. Const. art. V, § 10(c); *Murphy v. State Bd. of Law Examiners for Commonwealth of Pa.,* 429 F.Supp. 16, 17 (E.D.Pa.1977); *Appeal of Murphy,* 482 Pa. 43, 47-48, 393 A.2d 369, 371 (1978), *cert. denied sub nom., Murphy v. Pennsylvania State Bd. of Bar Examiners,* 440 U.S. 901, 99 S.Ct. 1204, 59 L.Ed.2d 449 (1979). Thus, when a trade or professional association or individual does not induce state regulators to follow its recommendations or take certain action, the private actor is not liable under the antitrust laws. *Sessions Tank Liners, Inc. v. Joor Mfg., Inc.,* 17 F.3d 295 (9th Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 66, 130 L.Ed.2d 23 (1994) (explaining that when the government adopted recommendations of private standard-setting organization, injuries to plaintiff were not attributable to defendant but to government action); *Schachar v. American Academy of Opthalmology, Inc.,* 870 F.2d 397 (7th Cir.1989) (holding that because independent trade association had no authority over state licensing boards its recommendations were not subject to antitrust liability); *Massachusetts School of Law,* 937 F.Supp. at 440-42 (holding that any alleged injury stemmed from state rules governing bar admission because it is the states who decide who can sit for their bar examinations; ABA, in accrediting law schools, only makes recommendations concerning who should sit); *see also Zavaletta v. American Bar Ass'n,* 721 F.Supp. 96 (E.D.Va.1989); *Patel v. Amer. Bd. of Psychiatry and Neurology, Inc.,* 89-1751, 1989 WL 152816,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 10

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

*3 (N.D.Ill. Nov. 21, 1989). Accordingly, because plaintiff has not alleged that any of these independent associations or Brueck has required or induced the Supreme Court of Pennsylvania, the Pennsylvania Board of Law Examiners, or any state officials to refuse bar admission to plaintiff, her antitrust claims against the ABA, the NCBE, the PBA and Brueck must be dismissed under Fed.R.Civ.P. 12(b)(6).

***11** Second, plaintiff has not alleged the type of injury the antitrust laws were designed to prevent. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (explaining that the antitrust laws were enacted for the protection of competition not competitors). Her Complaint does not describe an injury to competition; rather, plaintiff alleges only an injury to herself. She claims that her opportunity to practice law has been frustrated. That is not by itself, however, an antitrust problem. *See Town Sound and Custom Tops, Inc. v. Chrysler Motors,* 959 F.2d 468, 495 (3d Cir.) (holding that an injury to plaintiff's business, without an injury to competition, did not amount to an injury to competition in violation of the antitrust laws), *cert. denied,* 506 U.S. 868, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992). The Court finds that despite plaintiff's "attempts to couch" her injury in terms of an injury to competition, FN25 "the harm alleged by [plaintiff] is essentially harm to [her]self only. From the standpoint of the consumer, there has been no meaningful change in the market." *Mathews v. Lancaster General Hosp.,* 883 F.Supp. 1016, 1045 (E.D.Pa.1995), *aff'd,* 87 F.2d 624, 641 (3d Cir.1996) (affirming district court finding of no injury to competition because services were still easily available to the consumer when one surgeon was denied hospital privileges); *see also Gilliam v. National Com'n for Certification of Physician Assistants, Inc.,* 727 F.Supp. 1512, 1514 (E.D.Pa.1989) (holding that health care professional had not suffered an injury of the type which the antitrust laws were designed to prevent when he was denied a license by the Pennsylvania Board of Medicine after failing a test given by defendant, a national testing service), *aff'd,* 898 F.2d 140 (3d Cir.), *cert. denied,* 495 U.S. 920, 110 S.Ct. 1950, 109 L.Ed.2d 312 (1990). Accordingly, in the alternative, plaintiff's antitrust claims against the ABA, the NCBE, the PBA and Brueck fail to state a claim upon which relief can be granted and therefore will be dismissed. FN26

2. *Plaintiff Has Failed to State a Claim Under RICO*

Claims brought under RICO are tested under the same Rule 12(b)(6) standard as other claims. *Jordan v. Berman,* 758 F.Supp. 269, 272 (E.D.Pa.1991) (citing *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). There are four essential elements of a claim under 18 U.S.C. § 1962(c) (1994): "(1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the enterprise; and (4) that he or she participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts." *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1165 (3d Cir.1989). Section 1962(c) requires that a defendant participate in *some* way in the operation or management of the enterprise as a prerequisite to liability. *See Reves v. Ernst & Young,* 507 U.S. 170, 179, 113 S.Ct. 1163, 1170, 122 L.Ed.2d 525 (1993). "No defendant can be liable under RICO unless he participates in two or more predicate offenses sufficient to constitute a pattern." *Banks v. Wolk,* 918 F.2d 418 (3d Cir.1990).

***12** Plaintiff's RICO claims must be dismissed because she has not alleged that the ABA, the NCBE, the PBA or Brueck participated in any way in the enterprise, or that any of these entities participated in any predicate acts. Plaintiff's list of predicate acts in ¶ 34 of her Complaint is devoid of any reference to the ABA, the NCBE, the PBA or Brueck. Plaintiff's only reference to these entities merely alleges that these defendants were associated with the enterprise. *See* Complaint, ¶ 36. Such an allegation, however, is distinct from alleging a participatory role in the enterprise through predicate acts. As such, in the alternative, plaintiff's § 1962(c) claim against the ABA, the NCBE, the PBA and Brueck fails to state a claim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B00558000000... 1/5/2006

upon which relief can be granted. *See Banks,* 918 F.2d at 421 (affirming district courts granting motion to dismiss RICO claim by defendants against whom only one predicate act was alleged); *Teleprompter of Erie, Inc. v. City of Erie,* 537 F.Supp. 6, 13 (W.D.Pa.1981) (dismissing plaintiff's RICO claim because plaintiff only pled one predicate act).

The Court further notes that no matter how liberally it construes Plaintiff's Complaint, there is no set of facts that would allow plaintiff to allege that the ABA, the NCBE, the PBA or Brueck have participated in the predicate acts. None of these organizations nor Brueck has any control over regulating admission to Pennsylvania's bar. Rather, the Supreme Court of Pennsylvania, with the aid of the State Board of Law Examiners, has the exclusive power to regulate admission to the bar. FN27 Penn. Const. art. V, § 10(c); *Murphy,* 429 F.Supp. at 17; *see also Appeal of Murphy,* 482 Pa. at 47-48, 393 A.2d at 371 (explaining that fact that admission to the Pennsylvania bar was conditioned upon applicant possessing a law degree from a law school accredited by the ABA did not mean that the Supreme Court had unconstitutionally delegated its judicial function, for Supreme Court was the exclusive regulator of the bar). Accordingly, in the alternative, plaintiff's RICO claims against the ABA, the NCBE, the PBA and Brueck fail to state claims upon which relief may be granted and therefore will be dismissed.

**IV. Conclusion**

Defendants' Motions to Dismiss will be granted. FN28 Defendants' Alternative Motions for Summary Judgment will be denied as moot.

An appropriate order follows.

***ORDER***

**AND NOW,** to wit, this 30th day of September, 1996, upon consideration of Plaintiff's Complaint (Document No. 1), Defendant National Conference of Bar Examiners' Motion to Dismiss (Document No. 3), Motion to Dismiss Or, In The Alternative, For Summary Judgment, On Behalf of Defendants Chief Justice Robert N.C. Nix, Jr.; Justice Ralph J. Cappy; Justice Stephen A. Zappala; Justice John P. Flaherty; Justice Ronald Castille; Christine L. Donahue; Carl W. Brueck, Jr.; Michael F. DeFino; Honorable Gordon J. Daghir; Patrick Tassos; John S. Manos; Honorable Eugune H. Clarke, Jr.; Charles W. Johns; The Disciplinary Board of the Supreme Court of Pennsylvania, (Incorrectly Sued As "Bar of Commonwealth of Pennsylvania, A/K/A The Disciplinary Board of The Supr. Ct. Pa"), and Honorable James M. Munley (Document No. 6), Plaintiff's Opposition to Defendant National Conference of Bar Examiners' Motion to Dismiss (Document No. 7, duplicate filed and docketed as Document No. 12), Defendant National Conference of Bar Examiners' Praecipe to Substitute Signature Page of the Declaration of Erica Moeser (Document No. 8), Plaintiff's Opposition to Motion to Dismiss Or, In The Alternative, For Summary Judgment, On Behalf of Defendants: Robert N.C. Nix, Jr., Ralph J. Cappy, Stephen A. Zappala, John P. Flaherty, Ronald Castille, Christine L. Donahue, Carl W. Brueck, Jr., Michael F. DeFino, Gordon J. Daghir, James M. Munley, Eugene H. Clarke Jr., Charles W. Johns, Harold Rosenn, Patrick Tassos, John S. Manos, and the Bar of Commonwealth of Pennsylvania a/k/a The Disciplinary Board of The Supreme Court of Pennsylvania (Document No. 11, duplicate filed and docketed as Document No. 13), Motion of Defendants, Pennsylvania Bar Association and Carl W. Brueck, Jr., in His Capacity as Past President of the Pennsylvania Bar Association to Dismiss or, in the Alternative, for Summary Judgment (Document No. 15), Motion to Dismiss of Defendant American Bar Association (Document No. 17), Supplemental Memorandum of Law in Support of the American Bar Association's Motion to Dismiss (Document No. 20), and Praecipe to Substitute Original Executed Affidavit as Exhibit "A" to Supplemental Memorandum of Law In Support of the American Bar Association's Motion to Dismiss (Document No. 21), for the reasons set forth in the accompanying Memorandum, **IT IS ORDERED** that Defendants' Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(1) **ARE GRANTED** on the ground that this Court lacks subject matter

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 12

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

jurisdiction under the *Rooker-Feldman* doctrine, and that Defendants' Alternative Motions for Summary Judgment **ARE DENIED AS MOOT.**

***13 IT IS FURTHER ORDERED,** in the alternative, that the Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(1) filed by the Board of Law Examiners, the Disciplinary Board of the Supreme Court of Pennsylvania, and all individuals in their official capacities, **ARE GRANTED** on the ground that this Court lacks subject matter jurisdiction under the Eleventh Amendment.

**IT IS FURTHER ORDERED,** in the alternative, that the Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by all individual defendants in their personal capacities **ARE GRANTED** with respect to plaintiff's claims for compensatory and declaratory relief on the grounds that judicial immunity and quasi-judicial immunity bar such claims.

**IT IS FURTHER ORDERED,** in the alternative, that the Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by the American Bar Association, the National Conference of Bar Examiners, the Pennsylvania Bar Association, and Carl W. Brueck in his capacity as past president of the Pennsylvania Bar Association, **ARE GRANTED** on the grounds that plaintiff has failed to state claims upon which relief can be granted.

FN1. *See* Memorandum dated August 30, 1995, in *Pawlak v. Pennsylvania Bd. of Law Examiners,* 93-1998 & 93-2724, 1995 WL 517646 (E.D.Pa.1995) and Memorandum dated Dec. 1, 1995, in *In re Pawlak,* 94-211, 1995 WL 723177 (E.D.Pa.1995), for a more thorough description of the substantive and procedural history of the disputes between plaintiff and the Board.

FN2. Under the *Rooker-Feldman* doctrine United States District Courts do not have subject matter jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 1317, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

FN3. Judge Munley is not identified in the caption of Plaintiff's Complaint; he is identified only in paragraph 5. Complaint, ¶ 5.

FN4. Although the Disciplinary Board is named as a defendant in the caption to Plaintiff's Complaint, it is not specifically mentioned anywhere else in the Complaint. The Disciplinary Board was incorrectly sued as "Bar of Commonwealth of Pennsylvania a/k/a The Disciplinary Board of the Supr.Ct.PA."

FN5. Defendants Papadakos, Larsen, Montemuro, Daghir, Rosenn, Sturchio and Corey were no longer employed as justices, officers or employees of their respective entities at the time Pawlak attempted to serve process in this action. As a result, they contend that service of the summons and complaint on them at their prior places of employment was improper under Fed.R.Civ.P. 4(e). *See* Motion to Dismiss or, in the Alternative, for Summary Judgment, on Behalf of Defendants Chief Justice Robert N.C. Nix, Jr., et al., at 2 n. 3. Because the Court concludes that it lacks jurisdiction over plaintiff's claims, it need not address this issue.

FN6. Neither this cause of action nor the two causes of action that follow are separately numbered in the Complaint.

FN7. Plaintiff's Complaint states: "This count is brought against defendants Donohue, Daghir, Brueck, DeFino, Manos,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B00558000000... 1/5/2006

Not Reported in F.Supp. Page 13

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

Clarke, Sturchio and Tassos in their individual (personal) capacity." Complaint, ¶ 43. It should be noted that paragraph 49, which refers to the same claim, also includes Harold Rosenn as a defendant. Complaint, ¶ 49.

FN8. In considering a motion to dismiss a suit for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may consider evidence beyond the facts alleged in the complaint. *Berardi v. Swanson Memorial Lodge No. 48 of the Fraternal Order of Police,* 920 F.2d 198, 200 (3d Cir.1990); *Delaware Valley Toxics Coalition v. Kurz-Hastings, Inc.,* 813 F.Supp. 1132 (E.D.Pa.1993). The Court must convince itself that it has the power to hear the case. *Boyle v. Governor's Veterans Outreach & Assistance Center,* 925 F.2d 71, 74 (3d Cir.1991). In concluding that this Court lacks subject matter jurisdiction the Court has considered Plaintiff's Special Petition, Plaintiff's Petition for Expedited Review, and Adjudication and Order of the Pennsylvania Board of Law Examiners, attached as Exhibit D-17 to Defendants' Supplement Motion to Dismiss submitted Aug. 10, 1995. *See Lal v. Nix, et al.,* 935 F.Supp. 578, 579-80 (E.D.Pa.1996) (dismissing claims under *Rooker-Feldman* doctrine and stating that court may consider transcripts of plaintiff's Board hearing and state court's order); *Lal v. Borough of Kennett Square,* 935 F.Supp. 570, 572 n. 1 (E.D.Pa.1996) (dismissing claims under *Rooker-Feldman* and immunity doctrines and noting that court may consider published opinions and other public records); *see also Iacaponi v. New Amsterdam Cas. Co.,* 379 F.2d 311, 312 (3d Cir.1967) (affirming district court which took judicial notice of state court proceedings and dismissed action on basis of res judicata), *cert. denied,* 389 U.S. 1054, 88 S.Ct. 802, 19 L.Ed.2d 849 (1968).

FN9. This Court reiterates its prior holding that the *England* reservation does not apply and that plaintiff has not reserved the right to have her federal claims heard by this Court notwithstanding the *Rooker-Feldman* bar. In *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), the United States Supreme Court stated that if a federal court abstains from hearing a plaintiff's claims that plaintiff may preserve her right to return to federal court after her state court proceedings by so informing the state court. *Id.* at 421, 84 S.Ct. at 467-68. However, as this Court held in its Memorandum dated August 30, 1995, the reservation is inapplicable to plaintiff's situation because this Court did not abstain from deciding the case at bar. *See Pawlak,* 1995 WL at *10 (E.D.Pa.1995).

FN10. That plaintiff's proceeding before the state supreme court was held pursuant to that court's power to regulate the bar, and was not a full trial, does not frustrate application of the *Rooker-Feldman* jurisdictional bar. For even if plaintiff could not have brought her claims in the same posture in state court as she could in this court, this Court can nevertheless find that the claims before it are inextricably intertwined with the state court proceeding and that such claims therefore are barred by the *Rooker-Feldman* doctrine. *See Marks v. Stinson,* 19 F.3d 873, 886 n. 11 (3d Cir.1994) (stating that *Rooker-Feldman* did not bar the court from hearing claims before it "because these claims had not been determined by the state court, nor were they inextricably intertwined with a prior state court decision"); *accord FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 841-42 (3d Cir.1996) (same); *see also Lal v. Nix, et al.,* 935 F.Supp. 578, 582-83 (E.D.Pa.1996) (holding that even though plaintiff had not raised his present claims of discrimination by the Board and Justices of the Supreme Court of Pennsylvania

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B00558000000... 1/5/2006

Not Reported in F.Supp. Page 14

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

before the Board or state Supreme Court, because such claims were inextricably intertwined with the state court proceedings, they were still barred by *Rooker-Feldman* doctrine); *Lal v. Borough of Kennett Square,* 935 F.Supp. 570, 576 (E.D.Pa.1996) (determining that claims brought in federal court but not raised in state court were barred under *Rooker-Feldman* because they were inextricably intertwined with the state court decision as the district court judge would be forced to rule that the state court was wrong in order to grant relief on those claims). Similarly, that plaintiff now brings her charges against numerous defendants who were not parties to the state court action is irrelevant. *See Rooker,* 263 U.S. at 414, 44 S.Ct. at 149-50 (holding that the district court does not have jurisdiction over challenges to state court actions even though two federal defendants were not parties to the state action).

FN11. The Court also notes that plaintiff's attempt to avoid the *Rooker-Feldman* doctrine has backed her into a tenuous position regarding her standing to sue. However, in light of the Court's holding that it lacks jurisdiction over plaintiff's claims, the Court does not address this issue.

FN12. Some defendants raised the defenses of claim and issue preclusion. The Court notes that although the *Rooker-Feldman* doctrine "has a close affinity" to the principles of res judicata, *Valenti v. Mitchell,* 962 F.2d 288, 296-97 (3d Cir.1992), application of the principles of res judicata and the *Rooker-Feldman* doctrine do not yield the same results in this case. Because this Court holds that it lacks jurisdiction over plaintiff's claims under the *Rooker-Feldman* bar, it need not address defendants' res judicata arguments.

FN13. The Court notes that Carl W. Brueck was sued in his official and personal capacities as a member of the Board and in his personal capacity as a former president of the PBA. Principles of immunity bar suits against him as a member of the Board, in either capacity. *See infra.* However, immunity principles do not insulate him from suit in his capacity as past president of the PBA, a nonprofit corporation. Nevertheless, the claims against Brueck in his capacity as past president are, in the alternative, subject to dismissal because plaintiff has failed to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) . *See infra, Part III.C.*

FN14. "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amed. XI.

FN15. A number of courts have recognized that state boards of law examiners and disciplinary boards are agents of the state courts. *See, e.g., Carroll v. Gross,* 984 F.2d 392, 393 (11th Cir.1993) (holding that Florida Disciplinary Committee was agent of Florida Supreme Court), *cert. denied,* 510 U.S. 893, 114 S.Ct. 254, 126 L.Ed.2d 206 (1993); *Berger v. Cuyahoga County Bar Ass'n,* 983 F.2d 718, 722 (6th Cir.) (state bar disciplinary committee was agent of state supreme court), *cert. denied,* 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993); *Childs v. Reynoldson,* 777 F.2d 1305, 1306 (8th Cir.1985) (Iowa Board of Law Examiners acts as an arm of the Supreme Court of Iowa); *Thomas v. Kadish,* 748 F.2d 276, 282 (5th Cir.1984) (the Texas Board of Law Examiners exercised authority on behalf of the Texas Supreme Court and was an agent of the state court system), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3531, 87 L.Ed.2d 655 (1985); *Ginter v. State Bar of Nevada,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B00558000000... 1/5/2006

625 F.2d 829, 830 (9th Cir.1980) (recognizing State Bar association as an arm of the State and thus not subject to suit under the Eleventh Amendment); *Slavin v. Curry,* 574 F.2d 1256, 1266 (5th Cir.) (members of state bar grievance committee immune form suit because they acted as arm of state supreme court), *modified on other grounds,* 583 F.2d 779 (1978), *overruled in part on other grounds, Sparks v. Duval County Ranch Co.,* 604 F.2d 976, 978 (1979) (en banc), *aff'd sub nom., Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). *See also Hoover v. Ronwin,* 466 U.S. 558, 573, 104 S.Ct. 1989, 1997-98, 80 L.Ed.2d 590 (1984) (explaining that the conduct of the Arizona Supreme Court Committee on Examinations and Admissions was "in reality that of the Arizona Supreme Court" as the Arizona Supreme Court had delegated the administration of the admissions process to the Committee; the Court held that such conduct was immune from anti-trust liability under the state-action doctrine).
That surrogates of state supreme courts may not be completely or directly funded by the state does not preclude them from being state entities subject to Eleventh Amendment immunity. *Reiff,* 827 F.Supp. at 322-23 (relying on *Urbano v. Board of Managers,* 415 F.2d 247 (3d Cir.1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970), and holding that because the state would be constitutionally responsible for any judgement against lower state courts, such courts were protected by Eleventh Amendment immunity notwithstanding that most funding did not come from the state); *Robinson,* 827 F.Supp. at 1213-16 (same).

FN16. The Court notes that plaintiff's fifth claim, asserted only against Prothonotary Johns in his official capacity and based on 42 U.S.C. § 1983, is barred for an additional reason: state entities and officials acting in their official capacities are not "persons" subject to suit under § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

FN17. *Compare Forrester v. White,* 484 U.S. 219, 228-30, 108 S.Ct. 538, 544-46, 98 L.Ed.2d 555 (1988) (explaining that judicial immunity should not be afforded to judges who act in administrative manners in making hiring decisions or in promulgating a code of conduct for attorneys-"acts that simply happen to be have been done by judges") *with Marin v. Hazelton,* 89-35747 & 90-35136, 1990 WL 157128 (9th Cir. Oct. 16, 1990) (" Determining whether a particular individual is suited to be member of the bar is inherently a judicial function, one closely tied to the process of resolving the cases these members of the bar will be presenting to the courts."), *cert. denied,* 502 U.S. 888, 112 S.Ct. 249, 116 L.Ed.2d 203 (1991); *Sparks v. Character and Fitness Committee of Kentucky,* 859 F.2d 428, 432-33 (6th Cir.1988) (distinguishing *Forrester* and concluding that judicial immunity was appropriate for the " historically judicial function of determining eligibility for, and the composition of, the state bar."), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989); *Childs v. Reynoldson,* 777 F.2d 1305, 1306 (8th Cir.1985) (holding that actions taken by Iowa Supreme Court Justices in denying applicant's admission to practice law in Iowa are judicial acts within their subject matter jurisdiction and that the justices are entitled to **absolute immunity**).

FN18. Plaintiff asks this Court to enjoin defendants from, *inter alia,* distributing and requiring applicants to execute an allegedly discriminatory " 'Authorization and Release.' " *See* Complaint, ¶ 49(b).

FN19. Plaintiff asks this Court to declare that the "questionnaire designated as an '

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Application for Admission to the Bar of the Commonwealth of Pennsylvania,' " is discriminatory. *See* Complaint ¶ 49(a). She further asks the Court to declare that defendants deprived her of "contractual rights protected under 42 U.S.C. § 1981," *id.*, ¶ 49(c), and that "defendants deprived plaintiff of the rights protected under 42 U.S.C. § 1985(3)," *id.*, ¶ 49(d).

FN20. The Court notes that Carl W. Brueck is sued as a past president of the PBA. Complaint ¶ 12. Personal liability for corporate officers only applies when the officer actually participates in the wrongful acts. *Wilks v. Milzoco Builders, Inc.*, 503 Pa. 614, 621-22, 470 A.2d 86, 90 (1983). Thus, in analyzing whether plaintiff states a claim upon which relief can be granted against Brueck, the Court must determine whether plaintiff alleges that Brueck participated in the acts that injured her. Further, the Court questions how Brueck, who was PBA President during 1988 and 1989, can be responsible for events which allegedly took place a number of years later.

FN21. Although defendants have submitted affidavits with their motions to dismiss, the Court relies only upon the Plaintiff's Complaint and matters of public record in deciding this Rule 12(b)(6) motion. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (3d Cir.1994) (stating courts can look to the complaint and matters of public record in determining whether to grant a 12(b)(6) motion (citing 5A Wright & Miller, *Federal Practice and Procedure: Civil 2d,* § 1357)); *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1197 (3d Cir.1993) (collecting cases in which documents were considered public records because the public had unqualified access to them), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994).

FN22. In order to prevail in a cause of action arising under Section 1 of the Sherman Act plaintiff must establish four elements:
(1) that the defendants contracted, combined or conspired among each other; (2) that the combination or conspiracy produced adverse, anti-competitive effects within the relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiffs were injured as a proximate result of that conspiracy.
*Englert v. City of McKeesport, Pa.*, 872 F.2d 1144, 1149 (3d Cir.1989) (citing *Arnold Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 572 (3d Cir.1986)).

FN23. In order to establish a claim of monopolization under Section 2 of the Sherman Act plaintiff must prove "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 890-91, 122 L.Ed.2d 247 (1993).

FN24. The Court references this matter of public record in addressing the Motions to Dismiss under Rule 12(b)(6). *See supra* n. 21.

FN25. In Count I plaintiff states: " Defendants' practices have harmed and threaten to continue to harm the general public by interfering with the orderly practice of law in the community by both artificially reducing the number and kind of lawyers practicing in the community, and by depriving people of the freedom to choose plaintiff as their lawyer." Complaint, ¶ 28. With respect to Count II plaintiff alleges that acts by defendants " were in restraint of trade and commerce among the states in the United States."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 17

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

Complaint, ¶ 32.

FN26. Because the Court finds that plaintiff's Counts I and II fail to satisfy at least two elements requisite for claims based on the Sherman Act, the Court need not address whether, in general, these two claims-which lack specific facts but have a surplus of vague conclusions-can withstand a motion to dismiss. *See Black and Yates v. Mahogany Ass'n,* 129 F.2d 227, 231 (3d Cir.1941), (explaining that plaintiffs in an antitrust complaint must plead sufficient facts constituting the conspiracy), *cert. denied,* 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942); *Burns v. Cover Studios, Inc.,* 818 F.Supp. 888, 891 (W.D.Pa.1993) ("In determining whether to dismiss an antitrust claim pursuant to Fed.R.Civ.Pro. 12(b)(6), the district court must accepts as true all of the factual allegations of the complaint, but may disregard allegations of conclusions without supporting facts."); *Kalmanovitz v. G. Heileman Brewing Co., Inc.,* 595 F.Supp. 1385, 1401 (D.Del.1984) (same), *aff'd,* 769 F.2d 152 (3d Cir.1985).

FN27. The Court references this matter of public record in addressing the Motions to Dismiss under Rule 12(b)(6). *See supra* n. 21.

FN28. Even if the Court did have jurisdiction it concludes that it would not grant plaintiff leave to amend because it can conceive of no set of facts upon which plaintiff could state a cause of action upon which relief could be granted.

E.D.Pa.,1996.
Pawlak v. Nix
Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711

Briefs and Other Related Documents (Back to top)

- 2:95cv05265 (Docket) (Aug. 16, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B00558000000... 1/5/2006