# TAB H

*Westlaw.*

Not Reported in A.2d

Not Reported in A.2d, 1999 WL 743671 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**H**
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
Jerry Lee ALSTON, Plaintiff,
v.
HUDSON, JONES, JAYWORK, WILLIAMS
AND LIGUORI; Morris, Hitchens and Williams;
Delaware States Attorneys Office; Office of the
Prothonotary, Kent County and Office of
**Disciplinary Counsel, State of Delaware; William**
Hudson; James Semple; Michael J. Rich;
Unemployment Insurance Appeal Board,
Defendants.
**No. 99C-05-010 WLW.**

Aug. 13, 1999.

Upon Consideration of Defendant Hudson, Jones,
Jaywork, Williams & Liguori, et. al.'s Motion to
Dismiss Plaintiff's Complaint Granted.
Upon consideration of Defendants Michael J. Rich
and the Unemployment Insurance Appeal Board's
Motion to Dismiss Plaintiff's Complaint Granted.

MEMORANDUM OPINION

WITHAM, J.
**\*1** Presently before this Court are two motions to
dismiss Plaintiff's Complaint. One motion was filed
on behalf of Defendants: the law firm of Hudson,
Jones, Jaywork, Williams, and Liguori; the law firm
of Morris, James, Hitchens, and Williams; William
Hudson; David Pryor; Laura Redding; and James
Semple, (hereinafter collectively referred to as "
Hudson, Jones, *et. al.*"). In a separate application,
the Office of the Attorney General has filed a
motion to dismiss on behalf of Michael J. Rich as
State Solicitor, the Office of the Prothonotary for
Kent County, the Office of the **Disciplinary**
**Counsel**, and the Unemployment Insurance Appeal
Board ("State Defendants").

I. FACTS AND PROCEDURAL HISTORY

This civil action arises from the events of a prior
case in which Plaintiff filed an appeal from the
Unemployment Insurance Appeals Board's ("UIAB"
or "Board") decision to disqualify the Plaintiff
from unemployment benefits eligibility. [FN1] In
reaching its decision, the Board concluded that
Plaintiff's employment was terminated due to his
willful and wanton misconduct, rather than an
inability to perform his job functions. Upon review
of Plaintiff's appeal, Judge Terry ultimately
determined that there was no substantial evidence in
the record below to support a finding that Plaintiff's
alleged job deficiencies were the result of willful or
wanton misconduct; nor was there substantial
evidence to support a finding that Plaintiff was
discharged for just cause. Accordingly, the Superior
Court reversed the Board's decision and remanded
the matter for the purpose of awarding Plaintiff
unemployment benefits.

> FN1. *Alston v. Diamond State Machining,*
> *et al.,* Del.Super., C.A. No.
> 97A-03-001-NMT, Terry, J. (February 13,
> 1998)(Mem Op.).

Plaintiff subsequently filed the instant Complaint
against Hudson, Jones, *et al.* and the State
Defendants. With respect to both sets of
Defendants, Plaintiff also asserts various civil
claims purportedly sounding in tort. In addition,
Plaintiff asserts a civil rights claim against the State
Defendants, ostensibly on the basis that these
Defendants acted in concert in denying him the free
exercise of filing an unobstructed complaint.
Plaintiff seeks damages in the amount of $21
million.

In response, Hudson, Jones, *et al.* has filed a
Motion to Dismiss the Complaint pursuant to
Superior Court Rules 12(b)(2); (4); (5); (6); Rule
4(f) and an alternative application pursuant to Rule

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                   Page 2

Not Reported in A.2d, 1999 WL 743671 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

12(e). On behalf of the State Defendants, the State has also filed a motion to dismiss for insufficient service of process pursuant to Superior Court Rule 12(b)(5) and for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). In turn, Plaintiff has filed the following memoranda: (1) Notice of Objection and Answers to Defendants' Motions; (2) Objection to Defendants' Motion to Dismiss; (3) Objection and Answers to Defendants' Motion for a More Definite Statement; and (4) Motion for Summary Judgment. [FN2]

> FN2. It should be noted procedurally that the memoranda and applications filed by Plaintiff essentially regurgitate the allegations advanced in the Complaint. It is specifically worth noting that Plaintiff incorrectly cites Rule 56 in connection with his Motion for Summary Judgment, contending that he is entitled to summary judgment as to Hudson, Jones, *et. al.* on the basis that the Defense, having filed a motion for dismissal pursuant to Superior Court Civil Rule 12(b)(2), failed to provide an affidavit of defense, supporting affidavits, or deposition testimony. This is an incorrect statement of the law and a misinterpretation of Rule 12(b)(2).

## II. DISCUSSION

### A. Hudson, Jones, *et al.'s* Motion to Dismiss Complaint

Hudson, Jones, *et al.* move for dismissal on several grounds. Initially, however, it is necessary to determine whether Plaintiff has complied with Superior Court Civil Rule 4(f) because if there has been no compliance, this Court lacks personal jurisdiction over the above-referenced Defendants; in that case, it would not be necessary for the Court to reach the substantive grounds for dismissal. Accordingly, I turn now to the service of process issue. The critical facts pertaining to this issue are as follows. On or about May, 7, 1999, a Summons was filed with the Kent County Sheriff for service on the Defendants. On May 11, 1999, the writ was

returned to the Prothonotary, indicating that Defendants William Hudson, David Pryor and Laura Redding were served on May 10, 1999 by serving the summons and complaint upon two receptionists at the law office of Hudson, Jones, Jaywork, Fisher & Ligouri. On May 14, 1999, a writ was returned to the Prothonotary, indicating that James Semple was served on May 10, 1999 by serving a receptionist at the Dover office of the law firm of Morris, James, Hitchens & Williams. Superior Court Civil Rule 4(f) provides that service of process shall be made:

*2 [u]pon an individual other than an infant or an incompetent person by delivering a copy of the summons, complaint and affidavit, to that individual personally or by leaving copies therof at that individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering copies thereof to an agent authorized ... to receive service of process.

In *Betlyon v. Shy,* the District Court of Delaware made clear that attempted service upon Defendants by serving copies to a secretary not authorized to accept such service is improper and does not qualify as effective service of process under Rule 4(f). [FN3] Here, as in *Betlyon,* the receptionists were not authorized to receive service of process. Given this, Plaintiff has failed to serve the moving Defendants either personally or at their usual place of abode, and accordingly, service of process as to these Defendants was insufficient.

> FN3. *Betlyon v. Shy,* D. Del., 573 F.Supp. 1402 (1983)(holding plaintiff's attempt to effectuate service by serving secretary of defendant's employer at his place of employment was improper). *But see Carter v. Three Unknown Police Officers of the Wilmington Police Department,* D. Del., 112 F.R.D. 48, 50 (1986). In *Carter,* Judge Longobardi cautioned that "nothing in the *federal* rules mandates that every technical defect in service of process should result in dismissal of a complaint. Considerations such as prejudice to the parties, good faith excuse for failure to effect proper service, and actual notice of the suit by the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                        Page 3

**Not Reported in A.2d, 1999 WL 743671 (Del.Super.)**
**(Cite as: Not Reported in A.2d)**

defendant militate against the drastic result of dismissal (quoting *Borzeka v. Heckler,* 739 F.2d 444, 447 (9th Cir.1984) (emphasis added). Judge Longobardi further added: "[t]he use of judicial discretion regarding dismissal is particularly important in a case such as this one, where the Plaintiff is acting *pro se* ".

It should also be noted that Plaintiff has neglected to move for enlargement of time to make service. Such an application, if made more than 120 days after the filing of the summons, will be granted only upon a showing of good cause. [FN4] In light of Plaintiff's failure to apply for an extension, however, this issue is not before me.

> FN4. *Wass v. Calloway,* Del.Super., C.A. No., 94C-11-010, Ridgely, P.J., (February 21, 1996).

Accordingly, I find that Plaintiff has failed to comply with Superior Court Civil Rule 4(f), and as such, this Court lacks personal jurisdiction over Hudson, Jones, *et al.* Accordingly, the Court need not consider the additional grounds cited in support of dismissal.

### B. State Defendants' Motion to Dismiss Complaint

The State Defendants move for dismissal pursuant to Superior Court Civil Rule 12(b)(5) and (6). As to the service of process question, the State in its moving papers fails to provide any factual basis in support of dismissal for insufficient service of process. Even if the Plaintiff can establish effective service of process, the State's Rule 12(b)(6) argument is dispositive.

Rule 12(b)(6) provides for dismissal of a complaint which fails to state a claim upon which relief may be granted. Upon consideration of a motion to dismiss under this Rule, all allegations in the complaint must be accepted as true. [FN5] In so doing, the complaint will not be dismissed unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances

susceptible of proof. [FN6]

> FN5. *Itek Corp. v. Chicago Aerial Indus., Inc.,* Del.Super., 257 A.2d 232 (1969), aff'd, Del.Supr., 274 A.2d 141 (1971).

> FN6. *Battista v. Chrysler Corp.,* Del.Super., 454 A.2d 286, 287 (1982).

As a threshold matter in the instant case, the above-named State Defendants are State "agencies" and "officials" under the Tort Claims Act of Title 10 of the Delaware Code. [FN7] Accordingly, the provisions of the Tort Claims Act control the discussion of Plaintiff's claim for money damages against the State Defendants.

> FN7. The UIAB is an agency of the State of Delaware pursuant to 10 Del. C. ch. 31. The Office of the Kent County Prothonotary is an agency of the State of Delaware pursuant to 19 Del. C. ch. 90A. Likewise, the Office of the **Disciplinary Counsel** is created by Rule 64 of the Supreme Court Rules pursuant to 10 Del. C. § 161, and as such, is also a State agency. Michael J. Rich, as State Solicitor, is employed by the Department of Justice of the State of Delaware, a State agency pursuant to 29 Del. C. § 2505(b), and therefore, Mr. Rich is a State official within the meaning of the Statute.

It is well settled in Delaware that the doctrine of sovereign immunity operates as an absolute bar to any action against the State of Delaware, its subdivisions and officials, unless waived by the Legislature. [FN8] With respect to tort liability, the State is immunized unless it insures against a particular risk and the action in question is performed in bad faith or with gross negligence. [FN9] These principles extend to suits brought against state officials acting within their official capacity pursuant to 10 *Del. C.* § 4001. [FN10] The Act contains three elements of immunity: (1) judges, the Attorney General and Deputy Attorney Generals, and members of the General Assembly

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 1999 WL 743671 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 4

are *absolutely immune* for civil claims founded upon an act or omission arising out of the performance of an official duty; (2) all other state officials have *qualified immunity* from liability in any civil suits; and (3) the Plaintiff has the burden of proving the absence of one or more of the elements of this criteria. [FN11] In the present case, Plaintiff has failed to show the absence of any of the above elements and therefore, the State Defendants are entitled to immunity from money damages.

> FN8. *See Turnbull v. Fink*, Del.Supr., 668 A.2d 1370, 1374 (1995); *Wilmington Housing Authority v. Williamson*, Del.Supr., 228 A.2d 782, 786 (1976).

> FN9. *Doe v. Cates*, Del.Supr., 499 A.2d 1175, 1181 (1985).

> FN10. *Smith v. New Castle County Vocational-Technical Sch. Dist.*, 574 F.Supp. 813 (D.Del.1983).

> FN11. *Vick v. Haller*, Del.Super., 512 A.2d 249 (1986), aff'd, Del.Supr., 514 A.2d 782 (1986).

*3 Turning to the allegations made pursuant to Section 1983 of Title 42 of the United States Code ( " § 1983"), while I am mindful that the claims asserted are federal in nature, I am equally cognizant of the rule that State and Federal courts have concurrent jurisdiction over claims arising under § 1983 [FN12]:

> FN12. *Division of Family Services v. Barras*, Del.Fam., C.A. No. CK96-4457, 96-28835, Nicholas, J. (Aug. 6, 1998). In *Morgan v. Powell/DFS*, Del.Fam., C.A. No. JN91-2642, James, J. (Sept. 20, 1994), for instance, the Court quoted *Martinez v. California*, 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7 (1980): "where the same type of claim, arising under state law, would be enforced in state courts, the state courts are generally not free to refuse enforcement of the federal claim."

[i]ndeed, there is no federal statute conferring upon federal courts exclusive jurisdiction over cases arising under the federal constitution, it would seem apparent that under the oath of office of every Delaware judge to uphold the United States Constitution and the Constitution of the State of Delaware such action should be entertained if otherwise within the jurisdiction of the court. [FN13]

> FN13. *Burge v. City of Dover*, Del. Ch., Allen, Chancellor (June 8, 1987) (Mem.Op.).

Here, the Defendants have made no objection to this Court's jurisdiction over these claims and there is no suggestion that this matter is not otherwise properly before me. Having determined that this Court has jurisdiction over Plaintiff's § 1983 claim, I now move to the issue of whether there is an enforceable right upon which such relief can be granted.

First, 10 *Del. C.* § 4001 does not insulate defendants from civil liability under under 42 U.S.C. § 1983. Nonetheless, even without this shield, the United States Supreme Court has made clear that states, state subdivisions, and state officials are not "persons" within the ambit of § 1983. [FN14] Moreover, the spirit of § 1983 has always been: "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." [FN15] In the case at bar, the record is devoid of any evidence which suggests that any of the aforementioned State Defendants have utilized their "badge of authority" as a means of divesting Plaintiff of any civil or constitutional liberties.

> FN14. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)(declining to extend the rule that municipalities are persons to states and state subdivisions).

> FN15. *Wyatt v. Cole*, 112 S.Ct. 1287, 1830 (1992)(citing *Carey v. Phiphus*, 435 U.S. 247, 254-57 (1978)).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                          Page 5

Not Reported in A.2d, 1999 WL 743671 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

As to Mr. Rich, he cannot be sued under § 1983 in his official capacity. [FN16] Here, the charge against Mr. Rich is that in his capacity as State Solicitor he declined to process what Plaintiff perceived to be legitimate civil rights complaints. There is no evidence in the record before me, however, to support the notion that the decision not to prosecute was made outside of the scope of his official capacity as State Solicitor. Stated another way, Mr. Rich's denial of Plaintiff's request to initiate a criminal prosecution against a number of the Defendants in this case on the ground that there was no "sufficient factual basis" [FN17] to do so, was directly related to his responsibilities as State Solicitor, and thus, clearly within the parameters of his "traditional prosecutorial function". [FN18] Likewise, as to the viability of a § 1983 suit against Mr. Rich in his individual capacity, the Complaint fails to state sufficient ground upon which he could be liable.

> FN16. *Will v. Michigan Dep't of State Police, supra.* See also *Doe v. Phillips,* 81 F.3d 1204 (2nd Cir.1996)(holding prosecutor has **absolute immunity** from a claim for damages for commencing a prosecution as well as for his performance of tasks as an advocate in the conduct of the prosecution).

> FN17. In a March 3, 1998 letter to Plaintiff, State Solicitor Rich advised Plaintiff of the denial of Plaintiff's request that the Department of Justice initiate civil rights proceedings against the Defendants.

> FN18. *See Doe v. Phillips, supra,* wherein the Court explained that to determine whether a prosecutor was acting in his "official capacity", the Court must first determine whether his actions were within the scope of a prosecutor's "traditional functions".

Accordingly, after drawing all reasonable inferences in favor of the Plaintiff, it is clear that the doctrine of sovereign immunity applies to the State Defendants, and I am therefore satisfied that under no conceivable set of circumstances which could be proved to support the claim asserted would the Plaintiff be entitled to relief.

### III. CONCLUSION

**\*4** For the forgoing reasons, both Motions to Dismiss are GRANTED. THEREFORE, IT IS ORDERED that Plaintiff's Complaint is dismissed *without prejudice* as to Hudson, Jones, *et al.* and dismissed *with prejudice* with respect to the State Defendants.

Del.Super.,1999.
Alston v. Hudson, Jones, Jaywork, Williams and Liguori
Not Reported in A.2d, 1999 WL 743671 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB I



Not Reported in F.Supp.                                                                Page 1

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents

United States District Court,E.D. Pennsylvania.
Elizabeth J. PAWLAK
v.
Chief Justice Robert N.C. NIX, Jr.; Justice Ralph J.
Cappy; Justice Nicholas P. Papadakos; Justice
Stephen A. Zappala; Justice John P. Flaherty;
Justice Frank J. Montemuro; Justice Rolf Larsen;
Justice Ronald Castille, Christine L. Donahue; John
S. Manos; Judge Eugene H. Clarke, Jr.; Judge
James M. Munley; Michael F. Defino; Gordon J.
Daghir; Harold Rosenn; Rebecca G. Sturchio;
Patrick Tassos; Charles W. Johns; and, William G.
Corey; in their official and personal capacities;
Carl W. Brueck, Jr., in his official and personal
capacities and as past president of the Pennsylvania
Bar Association; the Pennsylvania Board of Law
Examiners; Disciplinary Board of the Supreme
Court of Pennsylvania; the American Bar
Association; the National Conference of Bar
Examiners; and, the Pennsylvania Bar Association.
**Civil Action No. 95-5265.**

Sept. 30, 1996.
As Amended Oct. 25, 1996.

Elizabeth J. Pawlak, Greenbelt, MD, Pro Se.
Howard M. Holmes, Administrative Office of PA
Courts; H. Robert Fiebach, Marc S. Zamsky,
Cozen and O'Connor; John E. McKeever,
Schnader, Harrison, Segal & Lewis, Philadelphia,
PA; Robert A. Burgoyne, Jacqueline R. Depew,
Fulbright and Jaworski, L.L.P., Washington, DC,
and L. Suzanne Forbis, Pepper, Hamilton &
Scheetz, Philadelphia, PA, for Defendants.

*MEMORANDUM*

DuBOIS, District Judge.
*1 Plaintiff, Elizabeth J. Pawlak, seeks redress from
numerous individuals and organizations which she

alleges conspired and discriminated against her in
order to prevent her from practicing law in the
Commonwealth of Pennsylvania. As a result, she
asks this Court to award her compensatory damages
for lost income and equitable relief. Presently
before this Court are Defendants' Motions to
Dismiss Plaintiff's Complaint, or in the Alternative,
for Summary Judgment. Because this Court
concludes that it lacks subject matter jurisdiction
over plaintiff's claims under Federal Rule of Civil
Procedure 12(b)(1), Defendants' Motions to
Dismiss will be granted and Defendants' Alternative
Motions for Summary Judgment will be denied as
moot.

**I. Background**

Plaintiff is not a stranger to this Court. The
catalyst for all of her litigation began over four
years ago when she sat for the July, 1992,
Pennsylvania bar examination and received a score
below the minimum passing score required by the
Pennsylvania Board of Law Examiners ("Board").
As explained in more detail in this Court's prior
Memoranda, [FN1] after receiving her insufficient
examination score, plaintiff, a graduate of the
Georgetown University Law Center, Medical
School of Gdansk, in Poland, and the University of
Vienna, in Austria, petitioned the Board for special
medical accommodation for the February, 1993,
Pennsylvania bar examination. She explained that
during the July, 1992, examination she suffered
from a first-time "coughing attack" which
negatively affected her score. In response the
Board informed plaintiff of the procedures with
which she would have to comply before the Board
would grant her a medical accommodation.
Plaintiff refused to follow these procedures;
instead, according to the Executive Director of the
Board, Patrick Tassos, plaintiff threatened to
disrupt the February, 1993, examination unless she
was granted the accommodation she requested. As
a result, not only was plaintiff's petition for special

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 2

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

accommodation denied, but the Board also refused her application to sit for the February, 1993, bar examination, finding her threatening conduct incompatible with the character qualifications required for members of the Commonwealth's bar. The Board also refused her application to sit for the July, 1993, Pennsylvania bar examination until her application to sit for the February, 1993, bar examination was resolved. In a subsequent hearing granted to plaintiff, the Board reaffirmed that she lacked requisite character to sit for Pennsylvania bar examinations.

Plaintiff then petitioned the Supreme Court of Pennsylvania for review. The Court denied plaintiff's petitions seeking relief, including her Special Petition Seeking an Order for a Stay, a Permanent Injunction and a Dismissal and a Quash of the Decisions and Actions of The Board of Law Examiners, dated April 15, 1993, ("Special Petition" ) and her Petition for Expedited Review of the Adjudication Rendered by the Pennsylvania Board of Law Examiners, dated May 21, 1993, ("Petition for Expedited Review"). These petitions challenged the actions of the Board, *inter alia,* on the basis that they violated her rights under the Pennsylvania and United States Constitutions. Specifically, plaintiff maintained that members of the Board conspired and discriminated against her. Plaintiff's Application for Reargument was denied by the Supreme Court of Pennsylvania. The United States Supreme Court denied plaintiff's petition for a Writ of Certiorari.

This Court has rejected plaintiff's previous claims in Civil Action No. 93-2724 and Civil Action No. 93-1998. In those actions, plaintiff challenged the decisions of the Board denying her permission to sit for the February, 1993, and July, 1993, bar examinations. She sought declaratory, injunctive and compensatory relief against the Board, its members and affiliates, and the Justices of the Supreme Court of Pennsylvania. By Memorandum and Order dated August 30, 1995, this Court dismissed the complaints in both cases, finding that it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine. FN2 Additionally, by Memorandumnally, by Memorandum and Order dated December 1, 1995, Misc. No. 94-211, this

Court denied plaintiff's petition for a hearing on her fitness to practice law before this Court, and an order permitting her to apply to be admitted generally as an attorney of this Court although she is not a member of the Supreme Court of Pennsylvania.

## II. Proceedings in the Instant Case

**\*2** Plaintiff initiated the instant case on August 16, 1995. Her Complaint names numerous state officials, state agencies, and national organizations as defendants. Specifically, plaintiff sues present and former members of the Supreme Court of Pennsylvania in both their official and personal capacities, including Chief Justice Robert N.C. Nix, Jr., Justice Ralph J. Cappy, then-Justice Nicholas P. Papadakos, Justice Stephen A. Zappala, Justice John P. Flaherty, then-Justice Frank J. Montemuro, then-Justice Rolf Larsen, and Justice Ronald Castille. Plaintiff also sues the Board as an entity and the present and former members of the Board in their official and personal capacities, including Christine L. Donahue, John S. Manos, Carl W. Brueck, Jr., Judge Eugene H. Clarke, Jr., Judge James M. Munley, FN3 Michael F. DeFino, Gordon J. Daghir and Harold Rosenn. Additionally, plaintiff sues Rebecca G. Sturchio, counsel to the Board, Patrick Tassos, Executive Director of the Board, Charles W. Johns, Prothonotary of the Supreme Court of Pennsylvania, and William G. Corey, Deputy Prothonotary of the Supreme Court of Pennsylvania, in their official and personal capacities. Plaintiff also sues the Disciplinary Board of the Supreme Court of Pennsylvania (" Disciplinary Board"), FN4 the American Bar Association ("ABA"), the National Conference of Bar Examiners ("NCBE"), and the Pennsylvania Bar Association ("PBA"). Further, plaintiff names Brueck in his capacity as past president of the PBA. Only the ABA, the NCBE, the PBA, the Disciplinary Board and the Prothonotaries are new parties to the litigation in this Court; all of the other defendants were named as defendants in the actions dismissed by this Court's Memorandum and Order of August 30, 1995. FN5

Plaintiff's Complaint alleges five causes of action.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                              Page 3

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

In Count I, she maintains that defendants have conspired, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (1994), to artificially limit the number of attorneys licensed by the Pennsylvania state bar and to prevent foreign-born and foreign-educated individuals from practicing law. As a result, plaintiff alleges, *inter alia*, that she cannot practice law in Pennsylvania and that her reputation, both locally and abroad, has been " irreversibly devastated." Her Complaint states only that all defendants took part in the conspiracy; she offers no description of how any specific defendant contributed to the conspiracy or what agreements constituted the conspiracy.

*3 In Count II plaintiff claims that through their conspiracy, all defendants have monopolized the rendering of legal services in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (1994). Again, plaintiff's Complaint is devoid of any mention of how any single defendant contributed to this violation or any detail of how the monopoly was formed. For the violations of the Sherman Act which plaintiff alleges in Counts I and II plaintiff seeks compensatory damages. Specifically, she requests redress for lost past and future income, and injury to her person.

Plaintiff's third claim is that defendants violated Section 1962(c) of the Racketeering-Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (1994). FN6 She alleges that an " association in fact" between the Justices, members of the Board, the Board itself, the ABA, the NCBE and the PBA constitutes a RICO enterprise. She further alleges that "the enterprise served as a vehicle for defendants' predicate acts of racketeering," including, obstruction of justice, perjury, and fraud. Except for alleging that defendants Tassos, Daghir, Donahue, Brueck, DeFino, Manos, Sturchio, Clarke and Rosenn committed perjury, her Complaint does not specify which defendants were responsible for which predicate acts nor how the predicate acts were accomplished. No specific request for redress is made in this claim.

Plaintiff's fourth claim, based on 42 U.S.C. §§ 1981 & 1985(3) (1994), names only members of the

Board and affiliates of the Board as defendants. FN7 Plaintiff charges that the Application for Admission to the Bar of the Commonwealth of Pennsylvania is a discriminatory device aimed at excluding applicants who are not " 'our own' and hence 'unworthy' " of bar membership. She maintains that Board members used the information requested in the application to discriminate against her on account of her ethnicity and alienage. As redress for this discrimination, plaintiff seeks compensatory and declaratory relief for loss of past and future income. Additionally, she seeks to enjoin the members of the Board from, *inter alia,* utilizing the application in the future.

Finally, in a fifth claim, plaintiff alleges under 42 U.S.C. §§ 1983 & 1985(3) (1994) that the Prothonotary of the Supreme Court of Pennsylvania denied her equal protection of the laws by consolidating two petitions submitted to the Pennsylvania state Supreme Court. She does not seek damages under this claim.

### III. Discussion

This Court will dismiss plaintiff's claims against all defendants because it lacks jurisdiction under the *Rooker-Feldman* doctrine. FN8 Principles of immunity-Eleventh Amendment sovereign immunity, judicial immunity, and quasi-judicial immunity-provide alternative grounds for dismissing plaintiff's claims for compensatory and declaratory relief against the Board of Law Examiners and the Disciplinary Board of the Supreme Court of Pennsylvania, as entities, and the Justices of the Supreme Court of Pennsylvania, members of the Board, and others associated with the state judicial system, in both their official and personal capacities. With respect to the claims against the other defendants, the ABA, the NCBE, the PBA, and Carl W. Brueck, Jr. in his capacity as past president of the PBA, the Court concludes, in the alternative, that Plaintiff's Complaint fails to state claims upon which relief can be granted.

#### A. Rooker-Feldman Doctrine

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

.ot Reported in F.Supp.                                                        Page 4

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

*4 A federal district court is one of original jurisdiction; as such, it lacks subject matter jurisdiction to entertain appeals from state courts. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1314-15, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). The *Rooker-Feldman* doctrine, which reflects these principles, is transgressed if the claim before the district court has already been determined by the state court or is "inextricably intertwined" with a prior state court decision. *Marks v. Stinson,* 19 F.3d 873, 886 n. 11 (3d Cir.1994). In either scenario, "federal relief can only be predicated upon a conviction that the state court was wrong, [and] it is difficult to conceive of the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgement." *Centifanti v. Nix,* 865 F.2d 1422, 1430 (3d Cir.1989) (quoting *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)). District Courts, however, do "have subject matter jurisdiction over general challenges to state-bar rules ... which do not require review of a final state court judgment in a particular case." *Feldman,* 460 U.S. at 486, 103 S.Ct. at 1317.

Last year this Court concluded that the claims raised by plaintiff in this Court were inextricably intertwined with the decision of the Supreme Court of Pennsylvania to dismiss her petition challenging the Board's determination that she was unfit to sit for the bar exam. *Pawlak v. Pennsylvania Bd. of Law Examiners,* 93-1998 & 93-2724, 1995 WL 517646 (E.D.Pa. Aug. 30, 1995). The Court thus held that it lacked subject matter jurisdiction over plaintiff's claims for declaratory, injunctive and compensatory relief arising out of the Board's decision to not allow her to sit for the February, 1993 and July, 1993 bar examinations. *Id.* at *12-*16. In looking beyond the superficial differences in legal theories to the similarity of the events spurring these theories, *see Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 960, 963 (3d Cir.1991), this Court now holds that plaintiff's present Complaint is another attempt to seek review of the Supreme Court of Pennsylvania's decision. FN9

A manufactured effort to redefine the relief sought cannot circumvent the *Rooker Feldman* bar. *Guess v. Board of Med. Examiners of State of North Carolina,* 967 F.2d 998, 1005 (4th Cir.1992); *Stern v. Nix,* 840 F.2d 208, 212 (3d Cir.) ("Despite this genuflecting to the *Rooker-Feldman* doctrine, closer consideration convinces us that Stern's complaint is simply a skillful attempt to mask the true purpose of the action, which essentially is to reverse the judicial decision of the Supreme Court of Pennsylvania."), *cert. denied,* 488 U.S. 826 (1988); *Kirby v. City of Phila.,* 905 F.Supp. 222, 227-28 (E.D.Pa.1995) (holding that "plaintiffs' requests for relief are clearly focused on reversing the outcome of their unsuccessful state court appearance"); *Triffin v. Nix,* 93-5519, 1994 WL 156695, *5 (E.D.Pa.1994) (explaining that Triffin's attack against the Board's policy as arbitrary and capricious as applied to him and his request for an injunction to prevent the Board from applying its rules to him were simply attempts to get federal court review of the Board's decision denying his bar application), *aff'd,* 43 F.3d 1463 (3d Cir.1994). After study of Plaintiff's Complaint and the proceedings before the Board and the Supreme Court of Pennsylvania, this Court concludes that plaintiff's present action is a manufactured effort to circumvent the *Rooker-Feldman* doctrine.

*5 First, plaintiff has simply revised her state court petition as a federal action. The essence of Pawlak's action before this Court, although dressed in the different guises of antitrust, RICO, and discrimination claims, is that the Board and all others who she alleges play any role in licensing applicants for the Pennsylvania bar conspired to deny her membership to that bar through a scheme of discriminatory bias. *See* Complaint ¶¶ 24, 27 (alleging a conspiracy to prevent foreign-born and foreign-educated individuals, including plaintiff, from practicing law in Pennsylvania); ¶¶ 32-33 (claiming a conspiracy to monopolize regulation of the bar so as to exclude applicants, including plaintiff); ¶ 34 (avowing that defendants engaged in an enterprise, which among other violations, conspired to defraud plaintiff of admission to bar); ¶¶ 45-46 (alleging that defendants formed a conspiracy against plaintiff and denied her admission to the bar through a discriminatory

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

application); ¶ 50 (claiming discrimination against plaintiff through consolidation of two petitions). Plaintiff's argument mimics the unsuccessful contention she made in her petition to the Supreme Court of Pennsylvania, in which she alleged that the Board found that she lacked requisite character because they conspired to discriminate against and harass her. *See* Special Petition, ¶¶ 64-72 (asserting that members of the Board violated plaintiff's civil rights and right to equal protection of the laws); Petition for Expedited Review, ¶ 28 (alleging that the Board's decision was the result of invidious discrimination and harassment), ¶¶ 30-35 (maintaining that the Board and its members conspired to violate plaintiff's civil rights and deprive her membership in the state bar). The Court believes that through this action plaintiff is once again trying to succeed at that in which she has been frustrated-overturning the decisions denying her permission to sit for the Pennsylvania bar examination. *See Stern*, 840 F.2d at 212. Her claims before this Court are therefore inextricably intertwined with the state court proceeding. [FN10]

Second, although a casual reading of Plaintiff's Complaint may suggest that her federal action is completely divorced from her state proceeding, as the Third Circuit noted in *Stern*, "[d]espite this genuflecting to the *Rooker-Feldman* doctrine, closer consideration" reveals that the true purpose of this federal action is to reverse the decision of the state supreme court. 840 F.2d at 212. In attempting to avoid a determination that her present federal action is unrelated to the state proceedings plaintiff fails to state in her Complaint that she was not permitted to sit for the February, 1993, and July, 1993, Pennsylvania bar examinations or that she petitioned the Supreme Court of Pennsylvania for review. Moreover, while plaintiff alleges in her Complaint that she was injured, she does not reveal *how* she was injured. In not alleging such facts plaintiff appears to be attempting to avoid the conclusion of the Third Circuit in *Stern* that an extensive exposition of the specific facts of the claimant's case would signal that the federal action was essentially entwined with the state action. *See Stern*, 840 F.2d at 212-13; *Triffin*, 1994 WL at *5. [FN11] Similarly, Pawlak's request for monetary damages also reveals that the true nature of her

action is to have this Court reverse the decisions of the Board and the Supreme Court of Pennsylvania denying plaintiff permission to sit for the Pennsylvania bar examination. *See Centifanti*, 865 F.2d at 1429-30; *Stern*, 840 F.2d at 212. As this Court noted in dismissing her previous action for money damages, "[b]ecause such relief focuses on past actions of the Board and the Supreme Court of Pennsylvania and requires plaintiff to prove specific injury to herself," plaintiff's claim is barred by *Rooker-Feldman. Pawlak*, 1995 WL at *12. Finally, that plaintiff professes to act on behalf of other bar applicants who allegedly have been the subjects of the same conspiracy and discrimination does not transform the essence of her Complaint from one seeking a re-evaluation of the state court judgment to a general challenge to state bar rules. *Stern*, 840 F.2d at 212.

*6 Accordingly, this Court concludes that Pawlak's action is simply another effort to seek review of the state court judgment that she was unfit to practice law in Pennsylvania and thereby avoid the bar of *Rooker-Feldman.* Her claim is inextricably intertwined with the state court's judgment: in order for this Court to determine that her claims had merit it would have to rule that the Supreme Court of Pennsylvania erred in refusing to question the Board's decision about plaintiff's character. *See Lal v. Nix, et al.*, 935 F.Supp. 578, 582-83 (E.D.Pa.1996) (holding that claims of discrimination based on race, ethnicity, national origin and age raised in district court were barred by *Rooker-Feldman* because in order to grant plaintiff relief requested court would have to conclude that he was not denied admission because of character deficiencies but because of discrimination). Therefore, this Court lacks subject matter jurisdiction and will dismiss Pawlak's Complaint under Fed.R.Civ.P. 12(b)(1). [FN12]

**B. Immunity**

Even if plaintiff's action were not barred by *Rooker-Feldman*, this Court holds that principles of immunity would bar plaintiff's claims for compensatory and declaratory relief against all individual defendants (in both their official and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 6

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

personal capacities), [FN13] the Board and the Disciplinary Board. The Eleventh Amendment deprives this Court of jurisdiction over all of plaintiff's claims against the Board of Law Examiners and the Disciplinary Board of the Supreme Court of Pennsylvania, as entities, and against all of the individuals sued in their official capacities. Thus, in the alternative, the claims against these defendants will be dismissed for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) pursuant to the Eleventh Amendment. And, plaintiff's claims for damages and declaratory relief against the Justices of the Supreme Court of Pennsylvania, the members of the Board of Law Examiners, and others affiliated with the state court system sued in their individual capacities, are barred under principles of judicial and quasi-judicial immunity. As a result, in the alternative, such claims against these defendants will be dismissed under Fed.R.Civ.P. 12(b)(6).

#### 1. *Eleventh Amendment Immunity As Applied to the Pennsylvania Board of Law Examiners and the Disciplinary Board of Pennsylvania*

While the Eleventh Amendment [FN14] does not, by its terms, bar suits in federal court against a state by its own citizens, the Supreme Court has consistently held that an unconsenting state is immune from such suits in federal court. *Seminole Tribe of Florida v. Florida,* ---U.S. ----, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The bar is not limited to suits expressly brought against the state; rather, the bar also operates whenever "the state is the real, substantial party in interest." *Edelman v. Jordon,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). Similarly, the Eleventh Amendment bars actions against state officials sued in their official capacities when the state is the real party in interest. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985).

*7 Under the Eleventh Amendment this Court does not have jurisdiction over claims against the Board of Law Examiners or the Disciplinary Board because these entities are surrogates of the Supreme

Court of Pennsylvania. "There is no doubt that a state's highest court is an Eleventh Amendment state entity." *Robinson v. Court of Common Pleas of Philadelphia County,* 827 F.Supp. 1210, 1211-12 (E.D.Pa.1993). Pennsylvania state law recognizes the state Supreme Court as an arm of the judicial branch. *See* Pa. Const. Art. 5, s. 1 ("The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court...."); 42 Pa.C.S.A. § 102 (1981 & Supp.1996) (defining "Commonwealth government" as including the courts...."); *see also Reiff v. Philadelphia County Court of Common Pleas,* 827 F.Supp. 319, 323 (E.D.Pa.1993) (concluding that the Court of Common Pleas of Philadelphia County is an arm of the state and therefore entitled to Eleventh Amendment immunity).

As this Court has already recognized, "the Board [of Law Examiners] has no independent authority and acts on the Supreme Court's behalf." *Pawlak,* 1995 WL *14. As such, it also is an arm of the state and is protected from suit by the Eleventh Amendment. *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1355-56 (stating that state entities are protected by Eleventh Amendment); *Ford Motor Co. v. Department of Treasury of State of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350-51, 89 L.Ed. 389 (1945) (stating that when the action is in reality one against the state the Eleventh Amendment bar applies). Similarly, the Disciplinary Board of the Supreme Court of Pennsylvania is an arm of the state, and therefore is immune from suit in federal court. *See Mattas v. Supreme Court of Pennsylvania,* 576 F.Supp. 1178, 1182 (W.D.Pa.1983) (holding that the Supreme Court of Pennsylvania and the Pennsylvania Office of Disciplinary Counsel, as entities, are arms of the state and therefore cannot be sued in federal court because of the Eleventh Amendment); *Perry v. Barnard,* 745 F.Supp. 1394, 1403 (S.D.Ind.1989) (finding that in suit for injunctive relief against members of Commission on Judicial Qualifications and the Disciplinary Commission of the Supreme Court of Indiana, the real party in interest was the state and thus action was barred under Eleventh Amendment), *aff'd,* 911 F.2d 736 (7th Cir.1990). [FN15]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
(Cite as: Not Reported in F.Supp.)

For these reasons, this Court holds that these two state entities are protected by Eleventh Amendment immunity. Thus, in the alternative, the Court will dismiss all claims against such entities. Furthermore, in the alternative, the Court will dismiss the claims against the individual defendants sued in their official capacities, as such suits are another way of pleading an action against the state of which an officer is an agent. *Graham,* 473 U.S. at 165-66, 105 S.Ct. at 3104-05. Thus, all claims against the following persons in their official capacities will be dismissed: Chief Justice Nix, Justice Cappy, Justice Papadakos, Justice Zappala, Justice Flaherty, Justice Montemuro, Justice Larsen, Justice Castille, Christine L. Donahue, John S. Manos, Carl W. Brueck, Jr., Judge Eugene H. Clarke, Jr., Judge James M. Munley, Michael F. DeFino, Harold Rosenn, Gordon J. Daghir, Rebecca G. Sturchio, Patrick Tassos, Charles W. Johns [FN16] and William G. Corey. Because the Eleventh Amendment bar does not apply to suits against individuals in their individual capacities, *Hafer v. Melo,* 502 U.S. 21, 31, 112 S.Ct. 358, 364-65, 116 L.Ed.2d 301 (1991); *Winn v. Lynn,* 941 F.2d 236, 241 (3d Cir.1991), this Court will address other aspects of immunity with regard to the individual defendants sued in their individual capacities.

### 2. *Judicial Immunity as Applied to Justices of the Supreme Court of Pennsylvania and Members of the Board of Law Examiners*

#### a. Justices of the Supreme Court of Pennsylvania

**\*8** The scope of judicial immunity is broad. " Judicial immunity arose because it was in the public interest to have judges who were at liberty to exercise their independent judgment about the merits of a case without fear of being mulcted for damages should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption." *Dennis v. Sparks,* 449 U.S. 24, 31, 101 S.Ct. 183, 188, 66 L.Ed.2d 185 (1980). A judge is only subject to a suit for money damages if the judge's actions were not "judicial" or were clearly in the "

absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356-57, 98 S.Ct. 1099, 1104-05, 55 L.Ed.2d 331 (1978).

Neither exception applies to the Justices of the Supreme Court of Pennsylvania in this case. Pennsylvania law authorizes the Justices of the Supreme Court to review final orders from the Board of Law Examiners. 42 Pa.C.S.A. § 725(4) (1981 & Supp.1996). Thus, such an act is a judicial function, *see Stump,* 435 U.S. at 362, 98 S.Ct. at 1107-08 (noting that acts normally performed by a judge are a judicial function), [FN17] within their jurisdiction, *see Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 352, 20 L.Ed. 646 (1871) *cited in Stump,* 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7 . (explaining the broad contours of acts within a judge's jurisdiction). In the alternative, the suits against the Justices in their individual capacities are therefore barred and must be dismissed.

#### b. Members of Board of Law Examiners

Judicial immunity is not limited to judges: quasi-judicial immunity is available to those who " perform functions closely associated with the judicial process". *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985); *see also Henig v. Odorioso,* 385 F.2d 491, 494 (3d Cir.1967) (holding that judiciary employees executing judicial orders are immune from suits for money damages), *cert. denied,* 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166 (1968). Thus, members of the Board of Law Examiners, like the Justices for whom they are surrogates, also are protected from suits for monetary relief against them in their individual capacities. *See Sparks v. Character and Fitness Committee of Kentucky,* 859 F.2d 428, 432-33 (6th Cir.1988) (concluding that the act of considering an application to the bar is a judicial act, even if performed by nonjudicial officers, and that the Kentucky Board of Bar Examiners are entitled to judicial immunity), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989); *Childs v. Reynoldson,* 777 F.2d 1305 (8th Cir.1985) (holding that members of the Iowa Board of Law Examiners were entitled to absolute quasi-judicial immunity because they acted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 8

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

as surrogates of the Supreme Court); *Richardson v. McFadden,* 563 F.2d 1130, 1132 (4th Cir.1977) (concurring opinion) (persons who judge the fitness of applicants to practice law perform a judicial function), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978). Under like reasoning, Sturchio, counsel for the Board, and Tassos, Executive Director of the Board, also are immune from suits for money damages in their individual capacities. Similarly, Johns, the Prothonotary, and Corey, the Deputy Prothonotary, are immune from suits for money damages in their individual capacities. *Lockhart v. Hoenstine,* 411 F.2d 455, 460 (3d Cir.) (holding that prothonotary, acting under court direction, was immune from suit), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969).

*9 In sum, principles of immunity afford this Court with alternative grounds for dismissing most of plaintiff's claims. Plaintiff's claims against state entities, and members of such entities in their official capacities, must be dismissed because this Court lacks jurisdiction under the Eleventh Amendment. Judicial and quasi-judicial immunity precludes all claims for monetary damages against all other individuals sued in their personal capacities. However, because principles of quasi-judicial immunity do not bar claims for injunctive relief, *see Pulliam v. Allen,* 466 U.S. 522, 541-42, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984) (concluding that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity"), plaintiff's single claim for injunctive relief against only the members of the Board is not barred by quasi-judicial immunity. [FN18] The Court finds, however, that plaintiff's claims for declaratory relief [FN19] are barred by principles of judicial immunity as they are "no more than an implicit predicate to h[er] request for damages." *Hansen v. Ahlgrimm,* 520 F.2d 768, 770 (7th Cir.1975); *see also Iseley v. Bucks County,* 549 F.Supp. 160, 166 (E.D.Pa.1982). Thus, in the alternative, plaintiff's claims for compensatory and declaratory relief against the Board of Law Examiners and the Disciplinary Board of the Supreme Court of Pennsylvania, as entities, and the Justices of the Supreme Court of Pennsylvania, members of the Board, and others

associated with the state judicial system, in both their official and personal capacities will be dismissed on immunity grounds under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### c. Failure to State a Claim Upon Which Relief Can Be Granted Under Fed.R.Civ.P. 12(b)(6)

Similarly, even if plaintiff's action were not barred by *Rooker-Feldman,* plaintiff's claims which would not be barred under immunity principles-the claims against the ABA, the NCBE, the PBA and Carl W. Brueck in his capacity as past president of the PBA-would be subject to dismissal because plaintiff has failed to state claims upon which relief can be granted against those defendants. *See* Fed.R.Civ.P. 12(b)(6). The only claims against the ABA, the NCBE, the PBA and Brueck in his capacity as past president of the PBA are set forth in Counts I and II and the unnumbered third cause of action of Plaintiff's Complaint. [FN20] The Court now concludes that, in the alternative, these Defendants' Motions to Dismiss the Antitrust and RICO claims against them will be granted.

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). In evaluating such a motion, the court must accept the truth of a plaintiff's allegations. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). However, the court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Kost,* 1 F.3d at 183. "[T]he complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court should not ask whether the plaintiff will ultimately prevail, but rather whether the plaintiff can prove any set of facts that will entitle her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984). Finally, the Court notes that it will liberally construe a *pro se* plaintiff's complaint. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595-96, 30 L.Ed.2d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                Page 9

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

652 (1972). [FN21]

### 1. *Plaintiff Has Failed to State a Claim Under the Sherman Act*

**\*10** Counts I and II allege that defendants have violated the Sherman Act. Plaintiff claims that defendants conspired to limit the number of licensed attorneys in violation of 15 U.S.C. § 1 (1994) [FN22] and monopolized the rendering of legal services in violation of 15 U.S.C. § 2 (1994). [FN23] Plaintiff does not specify how the ABA, the NCBE, the PBA, or Brueck allegedly conspired to do so. In fact, none of these defendants is mentioned specifically in Counts I or II. Even in liberally construing Plaintiff's Complaint, *see Haines*, 404 U.S. at 520, 92 S.Ct. at 595-96 (stating that no matter how inartfully pleaded, *pro se* complaints shall be held to a less stringent standard than those drafted by licensed attorneys), plaintiff has not stated a cause of action upon which relief can be granted under Sections 1 or 2 of the Sherman Act for at least two reasons.

First, plaintiff has not demonstrated that injuries were caused by the private actions of the ABA, the NCBE, the PBA or Brueck, rather than by independent state conduct. The Sherman Act applies only to private conduct. In *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court held that states and state entities cannot be held liable under the Sherman Act for restraining trade or commerce. *Id.* at 350, 63 S.Ct. at 313; *see also Hoover v. Ronwin,* 466 U.S. 558, 573, 104 S.Ct. 1989, 1997-98, 80 L.Ed.2d 590 (1984) (applying *Parker* and holding that the Arizona Supreme Court and the Arizona Committee on Examinations and Admissions were immune from antitrust liability under the state action exception). Thus, "where a restraint upon trade and monopolization is the result of a valid governmental action as opposed to private action, no violation of the [Sherman] Act can be made out." *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 136, 81 S.Ct. 523, 529, 5 L.Ed.2d 464 (1961) cited in *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,* 937 F.Supp. 435, 439-40

(E.D.Pa.1996). In such situations, it is the state and not the private party which injures the plaintiff. *Lawline v. American Bar Ass'n,* 956 F.2d 1378, 1384 (7th Cir.1992), *cert. denied,* 510 U.S. 992, 114 S.Ct. 551, 126 L.Ed.2d 452 (1993); *Massachusetts School of Law,* 937 F.Supp. at 439-40 (explaining that when a plaintiff's alleged injury is proximately caused by the government, a private party defendant is not a cause of the injury).

The claimed anticompetitive and monopolistic injuries to Pawlak are directly attributable to decisions made by state entities. The Supreme Court of Pennsylvania and the Board of Law Examiners, to whom it has lawfully delegated its authority, have the exclusive power to regulate admission to the bar. [FN24] Penn. Const. art. V, § 10(c); *Murphy v. State Bd. of Law Examiners for Commonwealth of Pa.,* 429 F.Supp. 16, 17 (E.D.Pa.1977); *Appeal of Murphy,* 482 Pa. 43, 47-48, 393 A.2d 369, 371 (1978), *cert. denied sub nom., Murphy v. Pennsylvania State Bd. of Bar Examiners,* 440 U.S. 901, 99 S.Ct. 1204, 59 L.Ed.2d 449 (1979). Thus, when a trade or professional association or individual does not induce state regulators to follow its recommendations or take certain action, the private actor is not liable under the antitrust laws. *Sessions Tank Liners, Inc. v. Joor Mfg., Inc.,* 17 F.3d 295 (9th Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 66, 130 L.Ed.2d 23 (1994) (explaining that when the government adopted recommendations of private standard-setting organization, injuries to plaintiff were not attributable to defendant but to government action); *Schachar v. American Academy of Opthalmology, Inc.,* 870 F.2d 397 (7th Cir.1989) (holding that because independent trade association had no authority over state licensing boards its recommendations were not subject to antitrust liability); *Massachusetts School of Law,* 937 F.Supp. at 440-42 (holding that any alleged injury stemmed from state rules governing bar admission because it is the states who decide who can sit for their bar examinations; ABA, in accrediting law schools, only makes recommendations concerning who should sit); *see also Zavaletta v. American Bar Ass'n,* 721 F.Supp. 96 (E.D.Va.1989); *Patel v. Amer. Bd. of Psychiatry and Neurology, Inc.,* 89-1751, 1989 WL 152816,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                  Page 10

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

\*3 (N.D.Ill. Nov. 21, 1989). Accordingly, because plaintiff has not alleged that any of these independent associations or Brueck has required or induced the Supreme Court of Pennsylvania, the Pennsylvania Board of Law Examiners, or any state officials to refuse bar admission to plaintiff, her antitrust claims against the ABA, the NCBE, the PBA and Brueck must be dismissed under Fed.R.Civ.P. 12(b)(6).

\*11 Second, plaintiff has not alleged the type of injury the antitrust laws were designed to prevent. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (explaining that the antitrust laws were enacted for the protection of competition not competitors). Her Complaint does not describe an injury to competition; rather, plaintiff alleges only an injury to herself. She claims that her opportunity to practice law has been frustrated. That is not by itself, however, an antitrust problem. *See Town Sound and Custom Tops, Inc. v. Chrysler Motors,* 959 F.2d 468, 495 (3d Cir.) (holding that an injury to plaintiff's business, without an injury to competition, did not amount to an injury to competition in violation of the antitrust laws), *cert. denied,* 506 U.S. 868, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992). The Court finds that despite plaintiff's "attempts to couch" her injury in terms of an injury to competition, [FN25] "the harm alleged by [plaintiff] is essentially harm to [her]self only. From the standpoint of the consumer, there has been no meaningful change in the market." *Mathews v. Lancaster General Hosp.,* 883 F.Supp. 1016, 1045 (E.D.Pa.1995), *aff'd,* 87 F.2d 624, 641 (3d Cir.1996) (affirming district court finding of no injury to competition because services were still easily available to the consumer when one surgeon was denied hospital privileges); *see also Gilliam v. National Com'n for Certification of Physician Assistants, Inc.,* 727 F.Supp. 1512, 1514 (E.D.Pa.1989) (holding that health care professional had not suffered an injury of the type which the antitrust laws were designed to prevent when he was denied a license by the Pennsylvania Board of Medicine after failing a test given by defendant, a national testing service), *aff'd,* 898 F.2d 140 (3d Cir.), *cert. denied,* 495 U.S. 920, 110 S.Ct. 1950, 109 L.Ed.2d 312 (1990). Accordingly, in the

alternative, plaintiff's antitrust claims against the ABA, the NCBE, the PBA and Brueck fail to state a claim upon which relief can be granted and therefore will be dismissed. [FN26]

### 2. *Plaintiff Has Failed to State a Claim Under RICO*

Claims brought under RICO are tested under the same Rule 12(b)(6) standard as other claims. *Jordan v. Berman,* 758 F.Supp. 269, 272 (E.D.Pa.1991) (citing *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). There are four essential elements of a claim under 18 U.S.C. § 1962(c) (1994): "(1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the enterprise; and (4) that he or she participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts." *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1165 (3d Cir.1989). Section 1962(c) requires that a defendant participate in *some* way in the operation or management of the enterprise as a prerequisite to liability. *See Reves v. Ernst & Young,* 507 U.S. 170, 179, 113 S.Ct. 1163, 1170, 122 L.Ed.2d 525 (1993). "No defendant can be liable under RICO unless he participates in two or more predicate offenses sufficient to constitute a pattern." *Banks v. Wolk,* 918 F.2d 418 (3d Cir.1990).

\*12 Plaintiff's RICO claims must be dismissed because she has not alleged that the ABA, the NCBE, the PBA or Brueck participated in any way in the enterprise, or that any of these entities participated in any predicate acts. Plaintiff's list of predicate acts in ¶ 34 of her Complaint is devoid of any reference to the ABA, the NCBE, the PBA or Brueck. Plaintiff's only reference to these entities merely alleges that these defendants were associated with the enterprise. *See Complaint,* ¶ 36. Such an allegation, however, is distinct from alleging a participatory role in the enterprise through predicate acts. As such, in the alternative, plaintiff's § 1962(c) claim against the ABA, the NCBE, the PBA and Brueck fails to state a claim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 11

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

upon which relief can be granted. *See Banks,* 918 F.2d at 421 (affirming district courts granting motion to dismiss RICO claim by defendants against whom only one predicate act was alleged); *Teleprompter of Erie, Inc. v. City of Erie,* 537 F.Supp. 6, 13 (W.D.Pa.1981) (dismissing plaintiff's RICO claim because plaintiff only pled one predicate act).

The Court further notes that no matter how liberally it construes Plaintiff's Complaint, there is no set of facts that would allow plaintiff to allege that the ABA, the NCBE, the PBA or Brueck have participated in the predicate acts. None of these organizations nor Brueck has any control over regulating admission to Pennsylvania's bar. Rather, the Supreme Court of Pennsylvania, with the aid of the State Board of Law Examiners, has the exclusive power to regulate admission to the bar. [FN27] Penn. Const. art. V, § 10(c); *Murphy,* 429 F.Supp. at 17; *see also Appeal of Murphy,* 482 Pa. at 47-48, 393 A.2d at 371 (explaining that fact that admission to the Pennsylvania bar was conditioned upon applicant possessing a law degree from a law school accredited by the ABA did not mean that the Supreme Court had unconstitutionally delegated its judicial function, for Supreme Court was the exclusive regulator of the bar). Accordingly, in the alternative, plaintiff's RICO claims against the ABA, the NCBE, the PBA and Brueck fail to state claims upon which relief may be granted and therefore will be dismissed.

### IV. Conclusion

Defendants' Motions to Dismiss will be granted. [FN28] Defendants' Alternative Motions for Summary Judgment will be denied as moot.

An appropriate order follows.

### *ORDER*

**AND NOW,** to wit, this 30th day of September, 1996, upon consideration of Plaintiff's Complaint (Document No. 1), Defendant National Conference of Bar Examiners' Motion to Dismiss (Document

No. 3), Motion to Dismiss Or, In The Alternative, For Summary Judgment, On Behalf of Defendants Chief Justice Robert N.C. Nix, Jr.; Justice Ralph J. Cappy; Justice Stephen A. Zappala; Justice John P. Flaherty; Justice Ronald Castille; Christine L. Donahue; Carl W. Brueck, Jr.; Michael F. DeFino; Honorable Gordon J. Daghir; Patrick Tassos; John S. Manos; Honorable Eugune H. Clarke, Jr.; Charles W. Johns; The Disciplinary Board of the Supreme Court of Pennsylvania, (Incorrectly Sued As "Bar of Commonwealth of Pennsylvania, A/K/A The Disciplinary Board of The Supr. Ct. Pa"), and Honorable James M. Munley (Document No. 6), Plaintiff's Opposition to Defendant National Conference of Bar Examiners' Motion to Dismiss (Document No. 7, duplicate filed and docketed as Document No. 12), Defendant National Conference of Bar Examiners' Praecipe to Substitute Signature Page of the Declaration of Erica Moeser (Document No. 8), Plaintiff's Opposition to Motion to Dismiss Or, In The Alternative, For Summary Judgment, On Behalf of Defendants: Robert N.C. Nix, Jr., Ralph J. Cappy, Stephen A. Zappala, John P. Flaherty, Ronald Castille, Christine L. Donahue, Carl W. Brueck, Jr., Michael F. DeFino, Gordon J. Daghir, James M. Munley, Eugene H. Clarke Jr., Charles W. Johns, Harold Rosenn, Patrick Tassos, John S. Manos, and the Bar of Commonwealth of Pennsylvania a/k/a The Disciplinary Board of The Supreme Court of Pennsylvania (Document No. 11, duplicate filed and docketed as Document No. 13), Motion of Defendants, Pennsylvania Bar Association and Carl W. Brueck, Jr., in His Capacity as Past President of the Pennsylvania Bar Association to Dismiss or, in the Alternative, for Summary Judgment (Document No. 15), Motion to Dismiss of Defendant American Bar Association (Document No. 17), Supplemental Memorandum of Law in Support of the American Bar Association's Motion to Dismiss (Document No. 20), and Praecipe to Substitute Original Executed Affidavit as Exhibit "A" to Supplemental Memorandum of Law In Support of the American Bar Association's Motion to Dismiss (Document No. 21), for the reasons set forth in the accompanying Memorandum, **IT IS ORDERED** that Defendants' Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(1) **ARE GRANTED** on the ground that this Court lacks subject matter

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 12

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

jurisdiction under the *Rooker-Feldman* doctrine, and that Defendants' Alternative Motions for Summary Judgment **ARE DENIED AS MOOT.**

**\*13 IT IS FURTHER ORDERED,** in the alternative, that the Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(1) filed by the Board of Law Examiners, the Disciplinary Board of the Supreme Court of Pennsylvania, and all individuals in their official capacities, **ARE GRANTED** on the ground that this Court lacks subject matter jurisdiction under the Eleventh Amendment.

**IT IS FURTHER ORDERED,** in the alternative, that the Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by all individual defendants in their personal capacities **ARE GRANTED** with respect to plaintiff's claims for compensatory and declaratory relief on the grounds that judicial immunity and quasi-judicial immunity bar such claims.

**IT IS FURTHER ORDERED,** in the alternative, that the Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by the American Bar Association, the National Conference of Bar Examiners, the Pennsylvania Bar Association, and Carl W. Brueck in his capacity as past president of the Pennsylvania Bar Association, **ARE GRANTED** on the grounds that plaintiff has failed to state claims upon which relief can be granted.

> FN1. *See* Memorandum dated August 30, 1995, in *Pawlak v. Pennsylvania Bd. of Law Examiners,* 93-1998 & 93-2724, 1995 WL 517646 (E.D.Pa.1995) and Memorandum dated Dec. 1, 1995, in *In re Pawlak,* 94-211, 1995 WL 723177 (E.D.Pa.1995), for a more thorough description of the substantive and procedural history of the disputes between plaintiff and the Board.

> FN2. Under the *Rooker-Feldman* doctrine United States District Courts do not have subject matter jurisdiction "over challenges to state court decisions in

particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 1317, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

> FN3. Judge Munley is not identified in the caption of Plaintiff's Complaint; he is identified only in paragraph 5. Complaint, ¶ 5.

> FN4. Although the Disciplinary Board is named as a defendant in the caption to Plaintiff's Complaint, it is not specifically mentioned anywhere else in the Complaint. The Disciplinary Board was incorrectly sued as "Bar of Commonwealth of Pennsylvania a/k/a The Disciplinary Board of the Supr.Ct.PA."

> FN5. Defendants Papadakos, Larsen, Montemuro, Daghir, Rosenn, Sturchio and Corey were no longer employed as justices, officers or employees of their respective entities at the time Pawlak attempted to serve process in this action. As a result, they contend that service of the summons and complaint on them at their prior places of employment was improper under Fed.R.Civ.P. 4(e). *See* Motion to Dismiss or, in the Alternative, for Summary Judgment, on Behalf of Defendants Chief Justice Robert N.C. Nix, Jr., et al., at 2 n. 3. Because the Court concludes that it lacks jurisdiction over plaintiff's claims, it need not address this issue.

> FN6. Neither this cause of action nor the two causes of action that follow are separately numbered in the Complaint.

> FN7. Plaintiff's Complaint states: "This count is brought against defendants Donohue, Daghir, Brueck, DeFino, Manos,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

Clarke, Sturchio and Tassos in their individual (personal) capacity." Complaint, ¶ 43. It should be noted that paragraph 49, which refers to the same claim, also includes Harold Rosenn as a defendant. Complaint, ¶ 49.

FN8. In considering a motion to dismiss a suit for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may consider evidence beyond the facts alleged in the complaint. *Berardi v. Swanson Memorial Lodge No. 48 of the Fraternal Order of Police,* 920 F.2d 198, 200 (3d Cir.1990); *Delaware Valley Toxics Coalition v. Kurz-Hastings, Inc.,* 813 F.Supp. 1132 (E.D.Pa.1993). The Court must convince itself that it has the power to hear the case. *Boyle v. Governor's Veterans Outreach & Assistance Center,* 925 F.2d 71, 74 (3d Cir.1991). In concluding that this Court lacks subject matter jurisdiction the Court has considered Plaintiff's Special Petition, Plaintiff's Petition for Expedited Review, and Adjudication and Order of the Pennsylvania Board of Law Examiners, attached as Exhibit D-17 to Defendants' Supplement Motion to Dismiss submitted Aug. 10, 1995. *See Lal v. Nix, et al.,* 935 F.Supp. 578, 579-80 (E.D.Pa.1996) (dismissing claims under *Rooker-Feldman* doctrine and stating that court may consider transcripts of plaintiff's Board hearing and state court's order); *Lal v. Borough of Kennett Square,* 935 F.Supp. 570, 572 n. 1 (E.D.Pa.1996) (dismissing claims under *Rooker-Feldman* and immunity doctrines and noting that court may consider published opinions and other public records); *see also Iacaponi v. New Amsterdam Cas. Co.,* 379 F.2d 311, 312 (3d Cir.1967) (affirming district court which took judicial notice of state court proceedings and dismissed action on basis of res judicata), *cert. denied,* 389 U.S. 1054, 88 S.Ct. 802, 19 L.Ed.2d 849 (1968).

FN9. This Court reiterates its prior holding

that the *England* reservation does not apply and that plaintiff has not reserved the right to have her federal claims heard by this Court notwithstanding the *Rooker-Feldman* bar. In *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), the United States Supreme Court stated that if a federal court abstains from hearing a plaintiff's claims that plaintiff may preserve her right to return to federal court after her state court proceedings by so informing the state court. *Id.* at 421, 84 S.Ct. at 467-68. However, as this Court held in its Memorandum dated August 30, 1995, the reservation is inapplicable to plaintiff's situation because this Court did not abstain from deciding the case at bar. *See Pawlak,* 1995 WL at *10 (E.D.Pa.1995).

FN10. That plaintiff's proceeding before the state supreme court was held pursuant to that court's power to regulate the bar, and was not a full trial, does not frustrate application of the *Rooker-Feldman* jurisdictional bar. For even if plaintiff could not have brought her claims in the same posture in state court as she could in this court, this Court can nevertheless find that the claims before it are inextricably intertwined with the state court proceeding and that such claims therefore are barred by the *Rooker-Feldman* doctrine. *See Marks v. Stinson,* 19 F.3d 873, 886 n. 11 (3d Cir.1994) (stating that *Rooker-Feldman* did not bar the court from hearing claims before it "because these claims had not been determined by the state court, nor were they inextricably intertwined with a prior state court decision"); *accord FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 841-42 (3d Cir.1996) (same); *see also Lal v. Nix, et al.,* 935 F.Supp. 578, 582-83 (E.D.Pa.1996) (holding that even though plaintiff had not raised his present claims of discrimination by the Board and Justices of the Supreme Court of Pennsylvania

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

before the Board or state Supreme Court, because such claims were inextricably intertwined with the state court proceedings, they were still barred by *Rooker-Feldman* doctrine); *Lal v. Borough of Kennett Square,* 935 F.Supp. 570, 576 (E.D.Pa.1996) (determining that claims brought in federal court but not raised in state court were barred under *Rooker-Feldman* because they were inextricably intertwined with the state court decision as the district court judge would be forced to rule that the state court was wrong in order to grant relief on those claims). Similarly, that plaintiff now brings her charges against numerous defendants who were not parties to the state court action is irrelevant. *See Rooker,* 263 U.S. at 414, 44 S.Ct. at 149-50 (holding that the district court does not have jurisdiction over challenges to state court actions even though two federal defendants were not parties to the state action).

FN11. The Court also notes that plaintiff's attempt to avoid the *Rooker-Feldman* doctrine has backed her into a tenuous position regarding her standing to sue. However, in light of the Court's holding that it lacks jurisdiction over plaintiff's claims, the Court does not address this issue.

FN12. Some defendants raised the defenses of claim and issue preclusion. The Court notes that although the *Rooker-Feldman* doctrine "has a close affinity" to the principles of res judicata, *Valenti v. Mitchell,* 962 F.2d 288, 296-97 (3d Cir.1992), application of the principles of res judicata and the *Rooker-Feldman* doctrine do not yield the same results in this case. Because this Court holds that it lacks jurisdiction over plaintiff's claims under the *Rooker-Feldman* bar, it need not address defendants' res judicata arguments.

FN13. The Court notes that Carl W.

Brueck was sued in his official and personal capacities as a member of the Board and in his personal capacity as a former president of the PBA. Principles of immunity bar suits against him as a member of the Board, in either capacity. *See infra.* However, immunity principles do not insulate him from suit in his capacity as past president of the PBA, a nonprofit corporation. Nevertheless, the claims against Brueck in his capacity as past president are, in the alternative, subject to dismissal because plaintiff has failed to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) . *See infra,* Part III.C.

FN14. "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amed. XI.

FN15. A number of courts have recognized that state boards of law examiners and disciplinary boards are agents of the state courts. *See, e.g., Carroll v. Gross,* 984 F.2d 392, 393 (11th Cir.1993) (holding that Florida Disciplinary Committee was agent of Florida Supreme Court), *cert. denied,* 510 U.S. 893, 114 S.Ct. 254, 126 L.Ed.2d 206 (1993); *Berger v. Cuyahoga County Bar Ass'n,* 983 F.2d 718, 722 (6th Cir.) (state bar disciplinary committee was agent of state supreme court), *cert. denied,* 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993); *Childs v. Reynoldson,* 777 F.2d 1305, 1306 (8th Cir.1985) (Iowa Board of Law Examiners acts as an arm of the Supreme Court of Iowa); *Thomas v. Kadish,* 748 F.2d 276, 282 (5th Cir.1984) (the Texas Board of Law Examiners exercised authority on behalf of the Texas Supreme Court and was an agent of the state court system), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3531, 87 L.Ed.2d 655 (1985); *Ginter v. State Bar of Nevada,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

625 F.2d 829, 830 (9th Cir.1980) (recognizing State Bar association as an arm of the State and thus not subject to suit under the Eleventh Amendment); *Slavin v. Curry,* 574 F.2d 1256, 1266 (5th Cir.) (members of state bar grievance committee immune form suit because they acted as arm of state supreme court), *modified on other grounds,* 583 F.2d 779 (1978), *overruled in part on other grounds, Sparks v. Duval County Ranch Co.,* 604 F.2d 976, 978 (1979) (en banc), *aff'd sub nom., Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). *See also Hoover v. Ronwin,* 466 U.S. 558, 573, 104 S.Ct. 1989, 1997-98, 80 L.Ed.2d 590 (1984) (explaining that the conduct of the Arizona Supreme Court Committee on Examinations and Admissions was "in reality that of the Arizona Supreme Court" as the Arizona Supreme Court had delegated the administration of the admissions process to the Committee; the Court held that such conduct was immune from anti-trust liability under the state-action doctrine).
That surrogates of state supreme courts may not be completely or directly funded by the state does not preclude them from being state entities subject to Eleventh Amendment immunity. *Reiff,* 827 F.Supp. at 322-23 (relying on *Urbano v. Board of Managers,* 415 F.2d 247 (3d Cir.1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970), and holding that because the state would be constitutionally responsible for any judgement against lower state courts, such courts were protected by Eleventh Amendment immunity notwithstanding that most funding did not come from the state); *Robinson,* 827 F.Supp. at 1213-16 (same).

FN16. The Court notes that plaintiff's fifth claim, asserted only against Prothonotary Johns in his official capacity and based on 42 U.S.C. § 1983, is barred for an additional reason: state entities and officials acting in their official capacities are not "persons" subject to suit under § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

FN17. *Compare Forrester v. White,* 484 U.S. 219, 228-30, 108 S.Ct. 538, 544-46, 98 L.Ed.2d 555 (1988) (explaining that judicial immunity should not be afforded to judges who act in administrative manners in making hiring decisions or in promulgating a code of conduct for attorneys-"acts that simply happen to be have been done by judges") *with Marin v. Hazelton,* 89-35747 & 90-35136, 1990 WL 157128 (9th Cir. Oct. 16, 1990) (" Determining whether a particular individual is suited to be member of the bar is inherently a judicial function, one closely tied to the process of resolving the cases these members of the bar will be presenting to the courts."), *cert. denied,* 502 U.S. 888, 112 S.Ct. 249, 116 L.Ed.2d 203 (1991); *Sparks v. Character and Fitness Committee of Kentucky,* 859 F.2d 428, 432-33 (6th Cir.1988) (distinguishing *Forrester* and concluding that judicial immunity was appropriate for the " historically judicial function of determining eligibility for, and the composition of, the state bar."), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989); *Childs v. Reynoldson,* 777 F.2d 1305, 1306 (8th Cir.1985) (holding that actions taken by Iowa Supreme Court Justices in denying applicant's admission to practice law in Iowa are judicial acts within their subject matter jurisdiction and that the justices are entitled to absolute immunity).

FN18. Plaintiff asks this Court to enjoin defendants from, *inter alia,* distributing and requiring applicants to execute an allegedly discriminatory " 'Authorization and Release.' " *See* Complaint, ¶ 49(b).

FN19. Plaintiff asks this Court to declare that the "questionnaire designated as an '

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 16

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

Application for Admission to the Bar of the Commonwealth of Pennsylvania,' " is discriminatory. *See* Complaint ¶ 49(a). She further asks the Court to declare that defendants deprived her of "contractual rights protected under 42 U.S.C. § 1981," *id.*, ¶ 49(c), and that "defendants deprived plaintiff of the rights protected under 42 U.S.C. § 1985(3)," *id.*, ¶ 49(d).

FN20. The Court notes that Carl W. Brueck is sued as a past president of the PBA. Complaint ¶ 12. Personal liability for corporate officers only applies when the officer actually participates in the wrongful acts. *Wilks v. Milzoco Builders, Inc.*, 503 Pa. 614, 621-22, 470 A.2d 86, 90 (1983). Thus, in analyzing whether plaintiff states a claim upon which relief can be granted against Brueck, the Court must determine whether plaintiff alleges that Brueck participated in the acts that injured her. Further, the Court questions how Brueck, who was PBA President during 1988 and 1989, can be responsible for events which allegedly took place a number of years later.

FN21. Although defendants have submitted affidavits with their motions to dismiss, the Court relies only upon the Plaintiff's Complaint and matters of public record in deciding this Rule 12(b)(6) motion. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (3d Cir.1994) (stating courts can look to the complaint and matters of public record in determining whether to grant a 12(b)(6) motion (citing 5A Wright & Miller, *Federal Practice and Procedure: Civil 2d*, § 1357)); *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1197 (3d Cir.1993) (collecting cases in which documents were considered public records because the public had unqualified access to them), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994).

FN22. In order to prevail in a cause of action arising under Section 1 of the Sherman Act plaintiff must establish four elements:
(1) that the defendants contracted, combined or conspired among each other; (2) that the combination or conspiracy produced adverse, anti-competitive effects within the relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiffs were injured as a proximate result of that conspiracy.
*Englert v. City of McKeesport, Pa.*, 872 F.2d 1144, 1149 (3d Cir.1989) (citing *Arnold Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 572 (3d Cir.1986)).

FN23. In order to establish a claim of monopolization under Section 2 of the Sherman Act plaintiff must prove "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S.Ct. 884, 890-91, 122 L.Ed.2d 247 (1993).

FN24. The Court references this matter of public record in addressing the Motions to Dismiss under Rule 12(b)(6). *See supra* n. 21.

FN25. In Count I plaintiff states: " Defendants' practices have harmed and threaten to continue to harm the general public by interfering with the orderly practice of law in the community by both artificially reducing the number and kind of lawyers practicing in the community, and by depriving people of the freedom to choose plaintiff as their lawyer." Complaint, ¶ 28. With respect to Count II plaintiff alleges that acts by defendants " were in restraint of trade and commerce among the states in the United States."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711
**(Cite as: Not Reported in F.Supp.)**

Complaint, ¶ 32.

FN26. Because the Court finds that plaintiff's Counts I and II fail to satisfy at least two elements requisite for claims based on the Sherman Act, the Court need not address whether, in general, these two claims-which lack specific facts but have a surplus of vague conclusions-can withstand a motion to dismiss. *See Black and Yates v. Mahogany Ass'n,* 129 F.2d 227, 231 (3d Cir.1941), (explaining that plaintiffs in an antitrust complaint must plead sufficient facts constituting the conspiracy), *cert. denied,* 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942); *Burns v. Cover Studios, Inc.,* 818 F.Supp. 888, 891 (W.D.Pa.1993) ("In determining whether to dismiss an antitrust claim pursuant to Fed.R.Civ.Pro. 12(b)(6), the district court must accepts as true all of the factual allegations of the complaint, but may disregard allegations of conclusions without supporting facts."); *Kalmanovitz v. G. Heileman Brewing Co., Inc.,* 595 F.Supp. 1385, 1401 (D.Del.1984) (same), *aff'd,* 769 F.2d 152 (3d Cir.1985).

FN27. The Court references this matter of public record in addressing the Motions to Dismiss under Rule 12(b)(6). *See supra* n. 21.

FN28. Even if the Court did have jurisdiction it concludes that it would not grant plaintiff leave to amend because it can conceive of no set of facts upon which plaintiff could state a cause of action upon which relief could be granted.

E.D.Pa.,1996.
Pawlak v. Nix
Not Reported in F.Supp., 1996 WL 560360 (E.D.Pa.), 1997-1 Trade Cases P 71,711

Briefs and Other Related Documents (Back to top)

• 2:95cv05265 (Docket) (Aug. 16, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB J



Slip Copy                                                                                                      Page 1

Slip Copy, 2005 WL 2994354 (E.D.Pa.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Mark David FRANKEL Plaintiff,
v.
THE DISCIPLINARY BOARD OF THE
SUPREME COURT OF PENNSYLVANIA, et.al .,
Defendants.
**No. Civ.A. 05-CV-01450.**

Nov. 8, 2005.

Mark David Frankel, York, PA, pro se.
Mary E. Butler, Administrative Office of PA
Courts, Philadelphia, PA, for Defendants.

MEMORANDUM

DAVIS, J.
**\*1** Presently before this Court is Defendants'
Motion to Dismiss Plaintiff's Complaint and
Plaintiff's Response thereto. For the reasons set
forth below, Defendants' Motion to Dismiss is
granted in part and denied in part.

I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, a disbarred attorney, alleges, pursuant to
42 U.S.C. § 1983, that the Disciplinary Board of the
Supreme Court of Pennsylvania ("Disciplinary
Board"), Patti W. Bednarik, Esq. and Edwin R.
Frownfelter, Esq. violated his 14th Amendment
procedural due process rights during his
disciplinary proceedings. FN1 Bednarik and
Frownfelter prosecuted a disciplinary action against
plaintiff before a three-judge panel. This panel
recommended to the Disciplinary Board that
plaintiff be disbarred. Plaintiff appealed this
recommendation to the Disciplinary Board. After
hearing oral argument, the Disciplinary Board
recommended to the Pennsylvania Supreme Court

that plaintiff be disbarred. The Pennsylvania
Supreme Court agreed and disbarred plaintiff.

> FN1. Plaintiff also brought suit against the
> Supreme Court of Pennsylvania. Plaintiff's
> claims against the Supreme Court of
> Pennsylvania have already been dismissed
> for want of subject matter jurisdiction. *See*
> *Stern v. Nix,* 840 F.2d 208 (3d Cir.1988).

Plaintiff claims that the Disciplinary Board never
reviewed evidentiary rulings made by the initial
panel and that the Disciplinary Board made initial
procedural rulings that it never reviewed. Compl. ¶
¶ 13, 14. Plaintiff alleges that Bednarik and
Frownfelter knowingly and intentionally misstated
and misrepresented evidence, referenced
information that was not in evidence, and took
actions that were designed to malign and otherwise
cause harm to plaintiff. FN2 *Id.* ¶ 21. Plaintiff
further alleges that Bednarik made
misrepresentations to and threatened witnesses and
potential witnesses. *Id.* Plaintiff seeks compensatory
damages and costs of litigation from all defendants.
*Id.* ¶¶ 20, 21. In addition, plaintiff requests that
all defendants be recused from any further
consideration or review of the underlying
disbarment case. *Id.*

> FN2. Plaintiff did not specify whether he
> was bringing his claims against Defendants
> Bednarik and Frownfelter in their official
> or individual capacities or both. In order to
> fully address Plaintiff's claim, this Court
> will assume that Plaintiff intended to bring
> his claims against these defendants in both
> of their capacities.

II. DISCUSSION

Defendants bring this motion to dismiss pursuant to
Federal Rules of Civil Procedure 12(b)(1) and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2

Slip Copy, 2005 WL 2994354 (E.D.Pa.)
**(Cite as: Slip Copy)**

12(b)(6) Defs' Mot. to Dismiss at 2. In reviewing Defendant's facial attack on subject matter jurisdiction under Rule 12(b)(1), the court must treat the allegations contained in the complaint as true and make the disposition of the motion "a purely legal determination." *Cudjoe v. Department of Veteran Affairs,* 426 F.3d 241, 244 (3d Cir.2005) ; *see also Mortensen v. First Federal Savings & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate when it is clear that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Robb v. City of Philadelphia,* 733 F.2d 286, 290 (3d Cir.1984).

A. Eleventh Amendment Immunity [FN3]

> FN3. Eleventh Amendment Immunity is a jurisdictional issue raised under Rule 12(b)(1).

Under Eleventh Amendment jurisprudence, an unconsenting state is immune from suits brought in federal court. [FN4] *Port Authority Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990); *Bolden v. Southeastern Pa. Transport Authority,* 953 F.2d 807, 813 (3d Cir.1991). This protection extends to suits "against departments or agencies of the state having no existence apart from the state itself." *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981). The Disciplinary Board, an agency under the Supreme Court of Pennsylvania's jurisdiction, is an arm of the state of Pennsylvania and, therefore, is protected by the Eleventh Amendment. *See Mattas v. Supreme Court of Pennsylvania,* 576 F.Supp. 1178, 1182 (W.D.Pa.1983). Therefore, the Disciplinary Board is immune from suit in federal court. As a result, Defendants' Motion to Dismiss will be granted with respect to Defendant Disciplinary Board.

> FN4. By statute, Pennsylvania has specifically withheld consent. 42 Pa.C.S. § 8521(b).

*2 Plaintiff has stated that, should his claim against the Disciplinary Board fail, he would seek to amend his Complaint to set forth each member of the Disciplinary Board as a defendant. Pl.'s Brief Contra at 4. If Plaintiff brought claims seeking damages from the members of the Disciplinary Board in their official capacities, the members would be immune from suit under the Eleventh Amendment. *Hafer v. Melo,* 502 U.S. 21, 25-27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (finding that official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent); *see also Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Similarly, any claims seeking damages from Defendants Bednarik and Frownfelter in their official capacities are protected by the Eleventh Amendment. Defendants Bednarik and Frownfelter are employed by the Disciplinary Board's Office of **Disciplinary** Counsel. A suit against them in their official capacities is tantamount to a suit against the Disciplinary Board. *See Hafer,* 502 U.S. at 25. Therefore, these defendants, in their official capacities, are protected by Eleventh Amendment immunity from claims seeking damages . [FN5]

> FN5. This Court notes that, in addition to damages, Plaintiff requests that Defendants Disciplinary Board, Bednarik and Frownfelter be recused from further consideration and review of the underlying attorney discipline matter. Compl. at Count 2, Count 3. This requested relief does not fall under the protection of the Eleventh Amendment. *Will v. Michigan Dept. of Police,* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (noting that an action for prospective relief against a state official sued in his official capacity is permitted). This relief will be addressed in Section II.D.

B. Quasi-Judicial Immunity [FN6]

FN6. The doctrine of quasi-judicial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 2994354 (E.D.Pa.)
**(Cite as: Slip Copy)**

immunity falls under Rule 12(b)(6).

If Plaintiff's claims against the members of the Disciplinary Board are brought against them in their individual capacities, the doctrine of quasi-judicial immunity will apply. Under the doctrine of quasi-judicial immunity, administrative officials performing discretionary acts of a judicial nature are entitled to absolute immunity from damages liability. *See Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); *Butz v. Economou,* 438 U.S. 478, 513-14, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The state bar disciplinary proceeding over which the Disciplinary Board presided was clearly judicial in nature. *See Middlesex v. County Ethics Commission v. Garden State Bar Ass'n,* 457 U.S. 423, 433-34, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (finding that it was "clear beyond doubt" that similar New Jersey state bar disciplinary proceedings were judicial in nature). Therefore, quasi-judicial immunity bars Plaintiff's claims for damages against the members of the Disciplinary Board. [FN7]

> FN7. The requested prospective relief will be addressed in Section II.D.

**C. Prosecutorial Immunity** [FN8]

> FN8. The doctrine of prosecutorial immunity falls under Rule 12(b)(6).

If Plaintiff's claims against Defendants Bednarik and Frownfelter are brought against them in their individual capacities, the doctrine of prosecutorial immunity applies. A prosecutor is immune from a civil suit for damages under § 1983 for actions arising from the prosecutor's presentation of the case. *Imbler v. Pachtman,* 424 U.S. 409, 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (applying an approach that looks to the nature of the function performed). Plaintiff alleges that during hearings and in pleadings to the three member panel, the Disciplinary Board and the Supreme Court of Pennsylvania, Bednarik and Frownfelter knowingly and intentionally misstated and misrepresented evidence, referenced information that was not in

evidence, and took actions that were designed to malign and otherwise cause harm to Plaintiff. Compl. ¶ 21. These alleged actions were part of Defendants' presentation of their case against Plaintiff and, therefore, are protected by absolute immunity. [FN9] *See Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (citing *Imbler,* 424 U.S. at 431) (reiterating that a prosecutor's acts that occur in the course of his or her role as advocate for the state are entitled to absolute immunity).

> FN9. Absolute prosecutorial immunity only applies when monetary damages are sought; it does not apply when equitable or injunctive relief is at issue. *See Urrutia v. Harrisburg County Police Dept.,* 91 F.3d 451, 462 (3d Cir.1996). Plaintiff's requested prospective, non-monetary relief will be addressed in Section II.D.

*3 Plaintiff further alleges that Defendant Bednarik made misrepresentations to and threatened witnesses and potential witnesses. Compl. ¶ 21. The appropriate inquiry for determining whether prosecutorial immunity is available is whether the prosecutor is acting in an advocacy role or an investigative role. *Rose v. Bartle,* 871 F.2d 331, 344 (3d Cir.1989) (holding that a prosecutor's solicitation and preparation of perjured testimony for use in the grand jury proceedings occurred in his advocacy role and, therefore, was entitled to absolute immunity). The Third Circuit believes "that a limited factual inquiry may in some cases be necessary to determine in what role the challenged function was exercised." *Forsyth v. Kleindienst,* 599 F.2d 1203, 1215 (3d Cir.1979). In the current case, the bare allegations in the Complaint do not provide enough information for the Court to determine in what context the alleged threats and misrepresentations were made. Therefore, a "limited factual inquiry" is necessary. As a result, Defendants' Motion to Dismiss cannot be granted with respect to these allegations. [FN10]

> FN10. Defendant argues that none of immunities apply to any of his claims. His

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 4

Slip Copy, 2005 WL 2994354 (E.D.Pa.)
(Cite as: Slip Copy)

arguments are based upon public policy
rationales. Def.'s Brief Contra at 3-5. He
states that allegations of fraud were not
meant to be barred by the Eleventh
Amendment or the doctrines of
quasi-judicial or prosecutorial immunity.
However, Plaintiff's Complaint does not
allege fraud, it alleges violations of the
Fourteenth Amendment under § 1983.
Compl. ¶ 9.

### D. Prospective Relief Sought

In Counts 2 and 3 of his Complaint, Plaintiff
requests that Defendants be recused from further
consideration and review of the underlying attorney
discipline matter. "A claim is not ripe for
adjudication if it rests upon 'contingent future
events that may not occur as anticipated, or indeed
may not occur at all." ' *Texas v. United States,* 523
U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406
(1998) (quoting *Thomas v. Union Carbide
Agricultural Products Co.,* 473 U.S. 568, 580-81,
105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). Although
the ripeness doctrine applies to whether or not a
claim is ripe for adjudication, its rationale can be
analogized to Plaintiff's current request for relief.
Whether Plaintiff's underlying disciplinary matter is
further considered and/or reviewed by Defendants
is contingent on a number of factors. *See Texas,* 523
U.S. at 300. Whether or not Defendants should
recuse themselves from future action is a question
that should be addressed when the future
proceedings and/or review begin. This Court cannot
grant Plaintiff the speculative relief he requests.

### III. CONCLUSION

Accordingly, this Court grants Defendants' Motion
to Dismiss with respect to Defendants Disciplinary
Board and Frownfelter. This Court also grants
Defendants' Motion to Dismiss with respect to
Defendant Bednarik insofar as the Complaint
alleges actions that fall under prosecutorial
immunity. This Court denies Defendants' Motion to
Dismiss with respect to the allegations that
Defendant Bednarik made misrepresentations to and
threatened witnesses and potential witnesses. An

appropriate order follows.

E.D.Pa.,2005.
Frankel v. Disciplinary Bd. of Supreme Court of
Pennsylvania
Slip Copy, 2005 WL 2994354 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:05cv01450 (Docket) (Mar. 29, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB K

Westlaw.

28 F.3d 1213                                                                                          Page 1

28 F.3d 1213, 1994 WL 328302 (C.A.6 (Tenn.))
**(Cite as: 28 F.3d 1213)**

**C**
NOTICE: THIS IS AN UNPUBLISHED
OPINION.(The Court's decision is referenced in a "
Table of Decisions Without Reported Opinions"
appearing in the Federal Reporter. Use FI CTA6
Rule 28 and FI CTA6 IOP 206 for rules regarding
the citation of unpublished opinions.)
United States Court of Appeals, Sixth Circuit.
William A. COHN, Plaintiff-Appellant,
v.
Lance B. BRACY, individually and as Chief
Disciplinary Counsel; Joseph L. Mercer, III,
individually and as Assistant Disciplinary Counsel;
Honorable Muriel J. Robinson Rice; and the State
of Tennessee, acting through its Supreme Court and
its Board of Professional Responsibility,
Defendants-Appellees.
**No. 93-5883.**

July 6, 1994.

On Appeal from the United States District Court for
the Western District of Tennessee, No. 90-02771;
Jon P. McCalla, District Judge.
W.D.Tenn.

AFFIRMED.

Before: KENNEDY and SILER, Circuit Judges;
and SPIEGEL, District Judge. [FN*]

PER CURIAM.
*1 Plaintiff William A. Cohn appeals the District
Court's grant of summary judgment in favor of
defendants Lance B. Bracy, Joseph L. Mercer,
Judge Muriel J. Robinson Rice and the State of
Tennessee. Plaintiff argues that (1) he is entitled to
injunctive relief against pending disciplinary
proceedings and that he is entitled to an injunction
to prevent Judge Robinson Rice from presiding
over future cases in which plaintiff is involved, (2)
plaintiff has standing to challenge the

constitutionality of certain rules of professional
responsibility, and that such rules violate the First
Amendment, (3) there is a genuine issue of fact as
to whether defendants conspired out of malice to
bring attorney disciplinary proceedings against him,
and finally, (4) the District Court erred by ruling on
defendants' motion for summary judgment before
plaintiff had completed discovery and without
deeming admitted matters contained in plaintiff's
request for admission. For the following reasons,
we affirm.

I.

Plaintiff, a lawyer licensed by the State of
Tennessee, was divorced from his wife in 1989.
Defendant Muriel J. Robinson Rice, a state court
judge in Tennessee, presided over plaintiff's divorce
proceedings. During the course of the divorce
litigation, plaintiff filed a complaint for disciplinary
action against his wife's attorney, Don L. Dowden,
with the Office of the Disciplinary Counsel alleging
that Dowden had unethically advised his client not
to sign certain documents relating to plaintiff's
purchase of a condominium. The complaint was
eventually dismissed. Plaintiff also filed a
complaint against Judge Robinson Rice with the
Tennessee Court of the Judiciary alleging religious
discrimination and judicial incompetence, and
seeking the judge's recusal. The Court of the
Judiciary responded in February 1989, stating that
the appropriate remedy was with the state court of
appeals. Joint App. at 47. In addition, plaintiff
sued to enjoin his wife's father from visiting with
their children. At the close of the divorce
proceedings in the trial court, Judge Robinson Rice
sanctioned plaintiff for filing a frivolous petition
against his father-in-law. The sanction was
affirmed on appeal. *Cohn v. Cohn,* Shelby Equity
No. 4, 1990 WL 95602 (Tenn.App. July 12, 1990)
(unpublished opinion).

During this same period, Judge Robinson Rice

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 F.3d 1213                                                                                    Page 2

28 F.3d 1213, 1994 WL 328302 (C.A.6 (Tenn.))
**(Cite as: 28 F.3d 1213)**

served as Chairperson of the Tennessee Child Support Guidelines Commission. The guidelines were distributed to the public and Chief Justice Frank F. Drowota of the Tennessee Supreme Court solicited comments from the bench, bar and public. Plaintiff sent a letter to Chief Justice Drowota in which he criticized Judge Robinson Rice's qualifications to serve on the Commission and included copies of an article and letter-to-the-editor from a local newspaper which were critical of Judge Robinson Rice.

In November 1988, while the divorce action was pending on appeal, plaintiff sent a letter on his law firm letterhead to his wife regarding the terms of divorce. The letter charged his wife's attorney with incompetence and indecency and urged her not to pay her attorney. The wife's attorney filed a complaint with the Board of Professional Responsibility ("the Board") regarding plaintiff's conduct in the divorce litigation. The Disciplinary Counsel for the Board filed a Petition for Discipline against plaintiff. Joint App. at 48. The petition alleged that plaintiff violated the Rules of Professional Responsibility by communicating directly with his wife, by filing a frivolous suit against his wife's father, and by writing the letter to the Child Support Guidelines Commission criticizing Judge Robinson Rice. On July 23, 1990, an amendment was filed to the Petition for Discipline clarifying the allegations relating to plaintiff's letter to Chief Justice Drowota.

**\*2** On October 10, 1990, plaintiff brought this action under 42 U.S.C. §§ 1983 & 1985(3) against defendants Lance B. Bracy, Chief Disciplinary Counsel of the Tennessee Board of Professional Responsibility, Joseph L. Mercer, III, Assistant Disciplinary Counsel of the Tennessee Board of Professional Responsibility, the Honorable Muriel J. Robinson Rice, and the State of Tennessee acting through its Board of Professional Responsibility. The complaint alleged that (1) defendants conspired to discipline plaintiff in retaliation for plaintiff's exercise of First Amendment rights, (2) defendants failed to notify plaintiff of the petition's allegation relating to plaintiff's letter to Chief Justice Drowota, in violation of due process, and (3) various rules of professional and judicial conduct violate the First

Amendment. All parties eventually moved for summary judgment.

On August 13, 1992, the District Court entered an order dismissing (1) all claims for monetary damages against the State of Tennessee as barred by the Eleventh Amendment, [FN1] (2) all claims against Judge Robinson Rice pertaining to plaintiff's divorce action as barred by the statute of limitations, and (3) plaintiff's challenge to certain state disciplinary rules on the ground that plaintiff lacked standing to challenge their constitutionality. By order of January 14, 1993, the District Court granted partial summary judgment in defendant's favor holding that (1) plaintiff failed to state sufficient facts to support a conclusion that defendants conspired to discipline plaintiff in retaliation for plaintiff's statements about Judge Robinson Rice, and (2) plaintiff lacked standing to challenge Disciplinary Rule 8-102 (Statements Concerning Judges and Other Adjudicative Officers) because the rule was not a basis of the disciplinary petition. On May 13, 1993, the District Court granted summary judgment for defendants on the remaining claim challenging the application to plaintiff of Disciplinary Rule 7-104 (Communicating with One of Adverse Interest) on the ground of qualified immunity. Plaintiff appeals the three summary judgment orders.

II.

Plaintiff appeals the District Court's grant of defendants' motion for summary judgment. We review a district court's grant of summary judgment *de novo. Jones v. Tennessee Valley Auth.,* 948 F.2d 258, 261 (6th Cir.1991). Where, looking to the record as a whole, a reasonable mind could come to only one conclusion, there is no genuine issue of material fact and summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51 (1986).

III. Damages

We first consider plaintiff's claims for damages. His claim against Judge Robinson Rice concerning

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

her allegedly improper inquiry during plaintiff's divorce proceeding is barred by absolute judicial immunity. *See Stump v. Sparkman,* 435 U.S. 349, 355-57 (1978). Likewise, plaintiff's claim for damages against Mercer and Bracy based on the disciplinary petition filed against plaintiff is barred by absolute immunity. *Ginger v. Circuit Court for Wayne County,* 372 F.2d 621 (6th Cir.), *cert. denied,* 387 U.S. 935 (1967), *confirmed in Watts v. Burkhart,* 978 F.2d 269, 272 (6th Cir.1992).

**\*3** The only remaining damages claim is that against Judge Robinson Rice for allegedly conspiring with the other defendants to discipline plaintiff for his letter to Chief Justice Drowota in which plaintiff criticized Judge Robinson Rice. Plaintiff has failed to allege any facts or present any evidence that Judge Robinson Rice violated plaintiff's constitutional rights. He alleges that he was not served with a complaint about the letter and concludes that Judge Robinson Rice conspired with the Disciplinary Counsel to include the allegation in the disciplinary petition without notice to plaintiff. Plaintiff points out no evidence that Judge Robinson Rice had anything to do with the allegation in the petition. Even if she did, a complaint to the Disciplinary Counsel is not a constitutional violation. We conclude, therefore, that plaintiff has failed to state a claim for damages on which relief may be granted.

### IV. Injunctive and Declaratory Relief

Plaintiff also appeals the District Court's denial of his claims for declaratory and injunctive relief. Plaintiff's complaint requested that the trial court enjoin all disciplinary proceedings against him and prohibit Judge Robinson Rice from presiding over cases in which plaintiff was a lawyer or party. Plaintiff also sought a declaratory judgment that various rules of professional conduct for lawyers and judges violate the First Amendment's guarantee of freedom of speech. These claims are not barred by defendants' immunity. *See Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 736-37 (1980) (holding that prosecutorial immunity of state-court judge in bringing disciplinary proceedings against attorneys

does not bar prospective relief); *Pulliam v. Allen,* 466 U.S. 522, 536 (1984) (holding that judicial immunity does not bar prospective relief).

We first address plaintiff's request for an injunction against Judge Robinson Rice from presiding over any case in which plaintiff is a lawyer or party. Plaintiff has failed to demonstrate an inadequate remedy under state law for any failure of Judge Robinson Rice to refuse to recuse herself in the future should that be required. As such, principles of comity and federalism prevent us from granting the relief requested. *See O'Shea v. Littleton,* 414 U.S. 488, 499-504 (1974); *Lambert v. Turner,* 525 F.2d 1101, 1102-03 (6th Cir.1975).

As to the remaining claims for prospective relief, we are required to abstain under the doctrine of *Younger v. Harris,* 401 U.S. 37 (1971). Plaintiff sought an injunction against the pending disciplinary proceedings on constitutional grounds. Absent extraordinary circumstances, the doctrine of *Younger* abstention requires federal courts to abstain from enjoining state disciplinary proceedings against attorneys. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423 (1982); *Berger v. Cuyahoga County Bar Ass'n,* 983 F.2d 718 (6th Cir.), *cert. denied,* 113 S.Ct. 2416 (1993). In *Middlesex,* the Supreme Court set forth the following inquiry for the application of *Younger* abstention to attorney disciplinary hearings:
**\*4** [F]irst, do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.

457 U.S. at 432.

We conclude that the present case meets these criteria. The Supreme Court of Tennessee has original and exclusive jurisdiction over the licensing of attorneys. *Ramsey v. Board of Professional Responsibility of the Supreme Court of Tenn.,* 771 S.W.2d 116, 118 (Tenn.), *cert. denied,* 493 U.S. 917 (1989). The Court's "authority 'to make rules governing the practice of law is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 F.3d 1213                                                                                     Page 4

28 F.3d 1213, 1994 WL 328302 (C.A.6 (Tenn.))
**(Cite as: 28 F.3d 1213)**

traditional, inherent and statutory. Such power is indispensable to the orderly administration of justice.' " *Ramsey,* 771 S.W.2d at 118, (quoting *Barger v. Brock,* 535 S.W.2d 337, 342 (Tenn.1976) ). Pursuant to this authority, the Tennessee Supreme Court promulgates rules governing the practice of law and the procedures for disciplining lawyers who violate such rules. *Id.* The Supreme Court appoints a Board of Professional Responsibility, which appoints a Disciplinary Counsel to investigate complaints and file petitions for discipline, and which assigns members to hearing committees to review petitions and conduct disciplinary hearings. Rule 9, §§ 5.1 & 5.5, S.Ct. Rules of Tenn. Hearings are conducted by hearing panels consisting of three members of a hearing committee. Rule 9, §§ 6.1 & 6.4. At such hearings, a respondent-attorney is entitled to be represented by counsel, to cross-examine witnesses and to present evidence in his favor. Rule 9, § 8.2. "The hearing committee shall, in every case, submit its findings and judgment, in the form of a final decree of a trial court...." Rule 9, § 8.3. "Any attorney admitted to practice law in [Tennessee] ... is subject to the disciplinary jurisdiction of the Supreme Court, the Board, the hearing committees, . .. and the Circuit and Chancery Court." Rule 9, § 1.1. An attorney may seek review of a hearing committee's ruling in the Chancery or Circuit Court, from which he may seek review directly in the Supreme Court of Tennessee. Rule 9, §§ 1.3 & 8.3. At any stage of the disciplinary proceedings, the respondent may challenge the disciplinary petition on federal constitutional grounds. *See, e.g., Ramsey,* 771 S.W.2d at 121-22 (affirming hearing panel's ruling that attorney discipline for public remarks violated First Amendment).

Thus, we conclude, the three-part inquiry set forth in *Middlesex* is satisfied and *Younger* abstention is required provided that "there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex,* 457 U.S. at 435. Plaintiff avers in his complaint that the disciplinary proceedings were initiated out of malice and revenge. The District Court held that the complaint's allegations of a retaliatory conspiracy are insufficient to withstand a motion for summary

judgment. At the very least, the allegations are insufficient to establish the extraordinary circumstances under which *Younger* abstention is inappropriate. *Cf. Berger,* 983 F.2d at 724 (applying *Younger* abstention to attorney disciplinary proceedings in Ohio).

### V. Discovery

**\*5** Finally, plaintiff argues that the District Court abused its discretion by ruling on defendants' motion for summary judgment before defendants had complied with plaintiff's discovery requests and, alternatively, that the District Court erred by failing to deem admitted matters in plaintiff's request for admission because, plaintiff argues, defendants' response to the request was untimely.

The scope of discovery is within the sound discretion of the trial court. *Emmons v. McLaughlin,* 874 F.2d 351, 356 (6th Cir.1989). An abuse of discretion will not be found unless the party seeking further discovery has suffered substantial prejudice. *Wolotsky v. Huhn,* 960 F.2d 1331, 1338 (6th Cir.1992). A party seeking postponement of a court's ruling on a motion for summary judgment must affirmatively demonstrate why further discovery will enable him to show a genuine issue of fact for trial. *See* Fed.R.Civ.P. 56(f); *Emmons,* 874 F.2d at 356. Where a party opposing summary judgment fails to meet this burden, postponement of the court's ruling is unjustified. *Id.* at 356.

Defendants moved for summary judgment on November 30, 1990. Joint App. 127. Plaintiff subsequently moved for summary judgment on January 14, 1991. Joint App. 125. Plaintiff moved on February 27, 1991, for a postponement of consideration on the summary judgment motions. We believe that plaintiff's motion for summary judgment, which was filed after defendants' motion for summary judgment and which stated no need for further discovery, indicated to the trial court that sufficient discovery had been completed for the purpose of ruling on the motions. We cannot conclude that the trial court abused its discretion in ruling on the motions without extending the time for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 F.3d 1213                                                                                        Page 5

28 F.3d 1213, 1994 WL 328302 (C.A.6 (Tenn.))
**(Cite as: 28 F.3d 1213)**

discovery.

Nor do we find any merit in plaintiff's claim that the
trial court erred in failing to hold that defendants
admitted by default matters contained in plaintiff's
request for admission. Rule 36 of the Federal Rules
of Civil Procedure provides that a matter in a
request for admission is admitted unless, within 30
days after service of the request, the party to whom
the request is directed responds with a written
answer or objection. Fed.R.Civ.P. 36(a). Plaintiff
served the request for admission on defendants on
June 18, 1991. Joint App. 145. Defendants
objected to the request by filing a motion for a
protective order on July 15, 1991. Defendants'
objection was timely and therefore no admission
was made.

VI.

For the reasons stated above, the District Court's
judgment granting defendants' motion for summary
judgment is AFFIRMED.

> FN* The Honorable S. Arthur Spiegel,
> United States District Judge for the
> Southern District of Ohio, sitting by
> designation.

> FN1. Plaintiff does not argue this issue on
> appeal and has therefore abandoned his
> claim for damages against the State of
> Tennessee.

C.A.6 (Tenn.),1994.
Cohn v. Bracy
28 F.3d 1213, 1994 WL 328302 (C.A.6 (Tenn.))

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.