# TAB L

H

Briefs and Other Related Documents
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Richard R. THOMPSON Plaintiff,
v.
Steven M. KRAMER, et al. Defendants.
**Civ. A. No. 93-2290.**

Dec. 29, 1994.

Richard R. Thompson, pro se.
Barbara Koppa Gerolamo, U.S. Attorney's Office, James G. Sheehan, Asst. U.S. Attorney-Civil Div., Philadelphia, PA, for James T. Giles.
Curtis P. Cheyney, III, Thomas More Marrone, Swartz, Campbell & Detweiler, Philadelphia, PA, for Lyman & Ash, Marvin F. Galfand.
Jeffrey H. Cohen, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, PA, for Edward Ellers, Morton R. Branzburg.
Mary C. Keane, Administrative Office of Pennsylvania Courts, Philadelphia, PA, for Paul J. Burgoyne.
Jeffrey S. Nowak, Cherry Hill, NJ, for Jeffrey Nowak.
Mary C. Keane, Administrative Office of Pennsylvania Courts, Philadelphia, PA, for Disciplinary Bd. of the Supreme Court of Pennsylvania.

MEMORANDUM

LOWELL A. REED, Jr., District Judge.
***1** Plaintiff Richard R. Thompson, appearing *pro se*, originally brought this action against defendants Judge James Giles, Steven M. Kramer, the firm of Kramer & Associates, Cletus Lyman, and Simon J. Rosen in order to recover for various harms allegedly done to him by defendants during the course of a number of lawsuits brought both by and against plaintiff. In an amended complaint, plaintiff attempted to add the following seventeen defendants: Morton Branzburg, [FN1] Paul J. Burgoyne, the Disciplinary Board of the Supreme Court of Pennsylvania ("Disciplinary Board"), Victor Druziako, Edward Ellers, Alan Fellheimer, the firm of Fellheimer, Eichen & Braverman, Marvin F. Galfand, Myrna Galfand, the firm of Galfand & Galfand, Lightning Lube Inc., the firm of Lyman & Ash, Herman Mattleman, the firm of Mattleman, Greenberg, Schmerelson, Weinroth & Miller ("Mattleman, et al."), Jeffrey Nowak, Robert J. Vedatsky, and Ralph S. Venuto, Sr. The amended complaint contains twenty counts, some of which apply to all of the defendants and some of which apply to only some of the defendants. The specific counts are: abuse of process, malpractice, racketeering, extortion, forgery, perjury, conspiracy, attempted laundering, defamation, casting in bad light, theft by false billing, theft by deception, attempted fraudulent conversion, common law fraud, interference with contractual relationships, invasion of privacy, obstruction of justice, violation of civil rights, breach of fiduciary responsibility, and a second claim of malpractice. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 based upon plaintiff's claims brought pursuant to the Hobbs Act, codified at 18 U.S.C. § 1951, the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§ 1961-1968, the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983, and the Constitution of the United States.

Currently before me are the motion of defendant Giles to dismiss, the motion of defendants Burgoyne and the Disciplinary Board to dismiss, the motion of defendant Lyman & Ash to dismiss, the motion of defendants Branzburg and Ellers to dismiss, the motion of defendant Marvin Galfand to dismiss, and the motion of defendant Nowak to dismiss. (Document Nos. 24, 34, 36, 37, 38, 47) Also currently before me are the motion of defendants Burgoyne and the Disciplinary Board for a protective order staying discovery and two motions of plaintiff for reimbursement of the costs of service. (Document Nos. 42, 44, 76)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For the following reasons, the motion of defendant Giles, the motion of defendant Lyman & Ash, the motion of defendants Branzburg and Ellers, the motion of Marvin Galfand, and the motion of defendant Nowak will be granted; the motion of defendants Burgoyne and the Disciplinary Board will be granted in part and denied in part. The amended complaint will be dismissed as against defendants Giles, Burgoyne, the Disciplinary Board, Lyman & Ash, Branzburg, Ellers, Marvin Galfand, and Nowak, with the exception of one Section 1983 claim against defendant Burgoyne relating to plaintiff's First Amendment rights and one Pennsylvania constitutional claim against defendant Burgoyne. In addition, the motion of defendants Burgoyne and the Disciplinary Board for a protective order staying discovery will be denied. Finally, the first motion of plaintiff for reimbursement of the costs of service will be granted in part and denied in part, defendants Branzburg and Ellers will be ordered to pay plaintiff $37.50 each in order to reimburse plaintiff for the cost of effectuating service upon them, and defendants Lyman & Ash and Nowak will be ordered to pay plaintiff $75.00 each in order to reimburse plaintiff for the cost of effectuating service upon them. As the second motion for reimbursement of the costs of service is simply a copy of the earlier motion, the second motion will be denied as moot.

## I. FACTUAL BACKGROUND [FN2]

***2** Plaintiff's involvement with defendants began in 1982, when he and his mother, Marjorie Thompson, were considering bringing a lawsuit against Prudential Bache Securities. Plaintiff and/or his mother contacted the law firm of Fellheimer, Eichen & Goodman regarding this potential lawsuit. Because the law firm had a conflict of interest that prevented it from representing plaintiff and his mother, Morton Branzburg, Edward Ellers, and Alan Fellheimer, all employees of this firm at the time, arranged for Steven Kramer, then working for the law firm of Kramer & Associates, to represent plaintiff and his mother. Plaintiff asserts that Kramer, working with Branzburg, Ellers, and Fellheimer in order to protect Prudential Bache Securities, then proceeded to "throw" the case. [FN3] After discovering how Kramer was handling the case, plaintiff fired Kramer and brought a complaint against Kramer to the Disciplinary Board of the Supreme Court of Pennsylvania. The Disciplinary Board, acting through Paul Burgoyne, its **Disciplinary Counsel**-in-Charge, dismissed plaintiff's complaint; plaintiff alleges that this dismissal was improper and was motivated by a desire to protect Kramer regardless of the validity of the complaint. In 1989, plaintiff brought a second complaint against Kramer to the Disciplinary Board, alleging that Kramer was committing fraud in connection with a case Kramer had brought against ARCO. [FN4] The Disciplinary Board dismissed this complaint; plaintiff alleges that this dismissal was also improper.

Subsequent disputes between plaintiff and Kramer continued to find their way into various courts. Kramer brought a libel suit against plaintiff in the Commonwealth Court of Pennsylvania in 1986, a suit which was eventually dismissed. [FN5] Kramer then brought two libel suits against plaintiff in federal court, one in 1989 [FN6] and one in 1990; [FN7] plaintiff asserts that these suits were brought in order to ruin him financially. Judge James Giles was the presiding judge over both cases, and, with the help of the judges on the Court of Appeals for the Third Circuit, allegedly worked improperly to ensure that Kramer would prevail. A number of other persons helped Kramer during the pendency of these libel suits: Jeffrey Nowak and Simon Rosen helped prosecute these cases, and Paul Burgoyne, Robert Vedatsky, and Ralph Venuto, Sr. allegedly testified falsely on Kramer's behalf. Venuto was the co-owner of Lightning Lube Inc. at the time. The 1989 lawsuit was eventually dismissed, but the 1990 lawsuit resulted in a $265,000 judgment in favor of Kramer and against plaintiff.

In the aftermath of these lawsuits, various other persons appeared on the scene. Cletus Lyman, who at the time was part of the law firm of Lyman & Ash, represented plaintiff during several of the appeals arising out of the 1989 and the 1990 lawsuits; plaintiff asserts that the representation was incompetent, that Lyman "churned" the case in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

order to generate excess fees, and that Lyman "threw " the appeals in order to ensure that Kramer would ultimately win. At the same time, the law firm of Lyman & Ash brought in the law firm of Galfand & Galfand, owned and operated by Marvin Galfand and Myrna Galfand, in order to represent Marjorie Thompson, whose savings had been seized as a result of the judgment in the 1990 lawsuit. According to plaintiff, Galfand & Galfand and its owners then proceeded to improperly take for themselves $15,000 of the money recovered. The right to collect the $265,000 judgment was eventually purchased from Kramer by the law firm of Mattleman, Greenberg, Schmerelson, Weinroth & Miller for that firm's client BK Funding. At the same time that this litigation was occurring, plaintiff filed for bankruptcy twice in the United States Bankruptcy Court for the Eastern District of Pennsylvania; both of these cases have since been closed. FN8 Victor Druziako and Simon Rosen allegedly testified falsely during these bankruptcy proceedings.

***3** In sum, the essence of plaintiff's complaint is that these defendants are tied together in a loose conspiracy whose goals are to undermine plaintiff's valid claims against third parties, to wipe out plaintiff's limited assets, to gain financial benefit for the co-conspirators, and to protect the reputations of the various lawyers involved, especially Steven Kramer. To challenge this alleged conspiracy, plaintiff brought the instant action.

## II. PROCEDURAL HISTORY

Plaintiff's original complaint was filed on June 22, 1993. On January 4, 1994, having found that plaintiff had good cause for having failed to serve his complaint on the five defendants originally named, I ordered plaintiff to file with the Clerk proof of service or waiver of service by February 14, 1994. Instead of making these filings, plaintiff filed an amended complaint on February 11, 1994, and then proceeded to try to serve this amended complaint. *See* Document No. 16. Despite various problems with service, a number of defendants proceeded to file motions to dismiss. Based upon a preliminary determination that at least one of the pending motions to dismiss was likely to be granted, I stayed all discovery on May 16, 1994. Since that time, the docket for this case has quickly grown through the filing of numerous motions and other papers by plaintiff. Having found that many of these filings were extraneous to the instant action and therefore placed an undue burden on this Court and the staff of the Clerk's office, on August 29, 1994 I ordered plaintiff to limit his filings to motions and the like seeking or responding to action discrete to this case only. In the same Order, I ordered the Clerk not to accept any filings from plaintiff or his representative without the express permission of this Court. In spite of this Order, plaintiff has since attempted to file approximately half-a-dozen documents without this Court's permission.

By a Memorandum and Order dated December 12, 1994, I dismissed plaintiff's claims against the following nine defendants: the firm of Fellheimer, Eichen & Braverman, FN9 Myrna Galfand, the firm of Galfand & Galfand, Steven Kramer, the firm of Kramer & Associates, Lightning Lube Inc., Cletus Lyman, Herman Mattleman, and Simon Rosen. In that same Memorandum and Order, I found that plaintiff had failed to effectuate valid service upon five other defendants, Victor Druziako, Alan Fellheimer, the firm of Mattleman, Greenberg, Schmerelson, Weinroth & Miller, Robert Vedatsky, and Ralph Venuto, Sr., and I ordered plaintiff to provide good cause for his failure to effectuate service on defendant Vedatsky and to promptly effectuate valid service on the other four defendants. With regard to the remaining eight defendants, Morton Branzburg, Paul Burgoyne, the Disciplinary Board of the Supreme Court of Pennsylvania, Edward Ellers, Marvin Galfand, Judge James Giles, the firm of Lyman & Ash, and Jeffrey Nowak, I chose to postpone consideration of any service problems to the time when I would consider the motions to dismiss filed by these defendants. That time is now at hand.

## III. DISCUSSION

***4** I will first consider three procedural concerns raised by the defendants: that the amended

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

complaint filed February 11, 1994 is not properly before this Court, that plaintiff did not validly serve some or all of the defendants, and that plaintiff's amended complaint violates Fed.R.Civ.P. 8 and 12(f). Then I will consider the arguments of three of the defendants that plaintiff's action as against them should be dismissed because of judicial immunity, Eleventh Amendment immunity, and prosecutorial immunity. Then I will consider the arguments raised by the defendants with regard to the specific counts of plaintiff's amended complaint. Finally, I will reconsider the stay on discovery in light of the current state of this litigation.

A. *Procedural Grounds for Dismissal*

A number of the defendants argue that plaintiff has failed to comply with the Federal Rules of Procedure regarding amendment of pleadings, service, and proper pleading form. I will address each of these concerns in turn.

1. Amended Complaint

Plaintiff's original complaint was filed on June 22, 1993 ("original complaint"). (Document No. 1) On February 11, 1994, plaintiff filed a new " Complaint" ("amended complaint"). (Document No. 16) According to defendants Marvin Galfand and the firm of Lyman & Ash, plaintiff also attempted to serve them with a document titled " Amended Complaint" on May 3, 1993; this document was never filed with this Court ("May 1993 Complaint").

It is undisputed that plaintiff's original complaint was properly filed with this Court. Defendants Marvin Galfand and the firm of Lyman & Ash argue that the amended complaint filed on February 11, 1994 is not properly before this Court for two reasons. First, they contend that since plaintiff attempted to serve them with the May 1993 Complaint prior to February 11, 1994, the amended complaint filed on February 11, 1994 was in fact a second amended complaint. Therefore, they argue that under Fed.R.Civ.P. 15(a) the amended complaint filed on February 11, 1994 is not properly before this Court because it was filed without permission of the Court or of the other parties. Their second argument is that the filing of the amended complaint on February 11, 1994 violated the Order of this Court dated January 4, 1994.

Fed.R.Civ.P. 15(a) provides in relevant part:
Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

With regard to the first argument, the May 1993 Complaint is not before this Court as it was never filed by plaintiff. As a result, the amended complaint filed on February 11, 1994 must be considered by this Court as the first attempt by plaintiff to amend his complaint. Since no responsive pleadings had been filed by any defendants prior to February 11, 1994, plaintiff had the right under Fed.R.Civ.P. 15(a) to amend his complaint without first seeking leave of the Court or of the other parties. *E.g., Halet v. Wend Inv. Co.,* 672 F.2d 1305, 1310 n. 5 (9th Cir.1982).

***5** With regard to the second argument, while the Order dated January 4, 1994 did not anticipate that plaintiff would seek to file an amended complaint, that Order does not explicitly bar plaintiff from making such a filing. Indeed, given Fed.R.Civ.P. 15(a), this Court may not even have the authority to issue such an order. *See e.g., Halet,* 672 F.2d at 1310 n. 5. Therefore, I conclude that the amended complaint filed on February 11, 1994 is properly before this Court as plaintiff's first amended complaint.

2. Service

Defendants Marvin Galfand and the firm of Lyman & Ash have also raised concerns in their motions to dismiss about the validity of plaintiff's service of the amended complaint upon them. Validity of service is not an issue for the other six defendants who filed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

motions to dismiss. Three of these defendants, Burgoyne, the Disciplinary Board, and Judge Giles, have explicitly waived any defects in service. *See* Burgoyne and Disciplinary Board waiver of summons, Document No. 31; motion of defendant Giles to dismiss at 5 n. 5. The other three defendants, Branzburg, Ellers, and Nowak, did not mention any problems with service, and so they have waived any defects in service. *See* Fed.R.Civ.P. 12(g) ("[i]f a party makes a motion under [Fed.R.Civ.P. 12, relating to motions to dismiss,] but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted"), (h)(1) ("[a] defense of ... insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g)").

Defendants Marvin Galfand and the firm of Lyman & Ash argue that plaintiff's service was invalid because it failed to comply with the Federal Rules of Civil Procedure. Specifically, they argue that the summons that accompanied the amended complaint was the summons issued on the original complaint, with handwritten changes that added additional defendants and altered the date of the summons, and that no summons has even been issued that names them as defendants.

While it is true that the summons that was served on these two defendants was defective in the ways identified by them, federal courts have generally held that these types of defects are insufficient to render service invalid when a defendant has received actual notice and has suffered no prejudice as a result of the defects. *See, e.g., Wells v. Rockefeller,* 728 F.2d 209, 213 (3d Cir.1984) (summons which incorrectly gave defendant three days to respond to complaint did not deprive court of jurisdiction over defendant when defendant was not prejudiced by the error); *O'Brien v. Sage Group, Inc.,* 141 F.R.D. 81, 84 n. 5 (N.D.Ill.1992) (expressing doubt that identification of multiple defendants only as "The Sage Group, Inc., et al." in the summons would be sufficient to invalidate service), *aff'd sub nom. O'Brien v. R.J. O'Brien & Assoc., Inc.,* 998 F.2d 1394 (7th Cir.1993); *Vega Mata v. Alvarez de Choudens,* 440 F.Supp. 246, 248-49 (D.P.R.1977) (fact that summons did not list all codefendants was insufficient to invalidate service when complaint and order to show cause which were served with the summons did list all codefendants), *aff'd without op.,* 577 F.2d 722 (1st Cir.1978). Defendants Marvin Galfand and the firm of Lyman & Ash have not pointed to any prejudice that they suffered as a result of the deficiencies in the summons. Nor could it be argued that they did not receive actual notice of this action; their motions to dismiss were filed within a few weeks of plaintiff's personal service upon them, and these motions carefully go through each count brought against them by plaintiff in the amended complaint. Therefore, I find that plaintiff validly served defendants Marvin Galfand and the firm of Lyman & Ash with the amended complaint that was filed in this Court on February 11, 1994.

***6** Having resolved the outstanding service issues, it is now appropriate to consider plaintiff's motion for reimbursement of the costs of service from twelve defendants, Branzburg, Druziako, Ellers, Fellheimer, the firm of Galfand & Galfand, Kramer, the firm of Lyman & Ash, the firm of Mattleman, et al., Nowak, Rosen, Vedatsky, and Venuto. [FN10] Defendants Marvin Galfand, [FN11] the firm of Lyman & Ash, and Nowak have filed objections to this motion; no other defendants have responded to this motion. Defendants Galfand and the firm of Lyman & Ash argue that they were never served with a valid summons and that they never attempted to evade service. Defendant Nowak argues that plaintiff has not cited the proper rule for reimbursement of the costs of service. Defendant Nowak further argues that he never tried to evade service but rather that plaintiff initially tried unsuccessfully to serve him at his Philadelphia, Pennsylvania office and was successful only when plaintiff served him at his Cherry Hill, New Jersey office.

Fed.R.Civ.P. 4(d)(2) states in relevant part:
An individual, corporation, or association that is subject to service ... and that receives notice of an action in the manner provided in this paragraph has a duty to avoid unnecessary costs of serving the summons..... If a defendant located within the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States fails to comply with a request for waiver made by a plaintiff located within the United States, the court shall impose the costs subsequently incurred in effecting service on the defendant unless good cause for the failure be shown.

Initially, it should be noted that in a separate Memorandum and Order dated December 12, 1994 I found that seven of the twelve defendants against whom this motion is made, defendants Druziako, Fellheimer, Kramer, the firm of Mattleman, et al., Rosen, Vedatsky, and Venuto, were not properly served. Therefore, for reimbursement will be denied as against these defendants. *See, e.g., Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444-45 (1946) (a federal court attains personal jurisdiction over a defendant when she or he has been properly served); *Combs v. Nick Garin Trucking,* 825 F.2d 437, 442 (D.C.Cir.1987) (same); *Rumfola v. Murovich,* 812 F.Supp. 569, 577-78 (W.D.Pa.1992) (same). Since defendants Kramer and Rosen have been dismissed from the instant action for failure to effectuate service, the motion will be denied with prejudice as against them. Since defendants Druziako, Fellheimer, the firm of Mattleman, et al., Vedatsky, and Venuto are still parties to the instant action and therefore plaintiff may in the future effect valid service on them, the motion will be denied without prejudice as against these five defendants.

In addition, while the firm of Galfand & Galfand was dismissed from this action by the Memorandum and Order dated December 12, 1994 for reasons other than invalid service, the defects in service identified in that Memorandum and Order with regard to defendants Druziako, Fellheimer, the firm of Mattleman, et al, and Venuto also apply to service upon the firm of Galfand & Galfand, and are further compounded by the fact that Galfand & Galfand was not clearly identified as a defendant in the title of the amended complaint. FN12 Therefore, I find that defendant Galfand & Galfand was not properly served and so plaintiff's motion will be denied without prejudice as against this defendant.

*7 As for the remaining defendants against whom this motion has been made, Branzburg, Ellers, the firm of Lyman & Ash, and Nowak, I have already found that plaintiff effectively served them, either because they have waived any defects in service or because any defects in service were insufficient to render service ineffective. Therefore, the question for these defendants is therefore whether plaintiff made a request to these defendants for waiver of service in the form required by Fed.R.Civ.P. 4(d)(2) . FN13

Plaintiff's filings show that on February 11, 1994 he sent by certified mail copies of the amended complaint and a Notice of Lawsuit and Request for Waiver of Summons form to defendants Branzburg and Ellers at the firm of Klehr, Harrison, Harvey & Ellers, 1401 Walnut St., Philadelphia, PA 19102, to defendant Lyman & Ash at 1612 Latimer St., Philadelphia, PA 19103, and to defendant Nowak at the firm of Casey & Nowak at 1629 Solly Ave., Philadelphia, PA 19152. *See* Document Nos. 17, 18, 20. The notice forms were provided by the Clerk of this Court and, as completed by plaintiff, comply with the requirements of Fed.R.Civ.P. 4(d)(2). *See* Document No. 18. Plaintiff's filings also show that personal service was effected on defendants Branzburg, Ellers, and the firm of Lyman & Ash at the same addresses to which the notice forms were sent. *See* Document Nos. 73, 77. Since defendants Branzburg and Ellers have not responded to plaintiff's motion, and defendant Lyman & Ash has not argued that the addresses used by plaintiff are inaccurate, I find that plaintiff has met the requirements of Fed.R.Civ.P. 4(d)(2).
In addition, I find that plaintiff's requested $75.00 reimbursement for the costs of service from each defendant is reasonable, except that since it appears that plaintiff served defendants Branzburg and Ellers with a single copy of the summons and amended complaint between the two of them, I will divide the $75.00 cost of arranging for personal service between them. Therefore, plaintiff's motion will be granted as against defendants Branzburg, Ellers, and the firm of Lyman & Ash, defendants Branzburg and Ellers will be ordered to pay plaintiff $37.50 each, and defendant Lyman & Ash will be ordered to pay plaintiff $75.00.

As for defendant Nowak, his situation is somewhat more complicated. Personal service on him was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

eventually effected not at the Philadelphia address used by plaintiff when he mailed the notice form, but at 38 Haddonfield Road, Cherry Hill, NJ 08002. *See* Document Nos. 44, 76. In addition, plaintiff did not apparently receive a return receipt for the certified mail he sent to the Philadelphia address. *See* Document No. 20. Defendant Nowak, however, does acknowledge that he has a Philadelphia office, and plaintiff has provided this Court with stationary from that office; the address on that stationary matches the address to which plaintiff sent the notice form. *See* Document No. 44 at Exhibit B. In addition, defendant Nowak has not denied receiving the notice form, and so, even though the return receipt was apparently never received by plaintiff, it must be presumed that the notice form did reach its destination. FN14 *See, e.g., D'Amario v. Russo,* 750 F.Supp. 560, 565 (D.R.I.1990) (assuming that notice form sent by first class mail arrived at destination in context of granting a motion for reimbursement of costs of personal service). Therefore, I will grant plaintiff's motion as against defendant Nowak, and I will order defendant Nowak to pay plaintiff $75.00 to cover the costs of effectuating service on defendant Nowak.

3. Pleading Form

***8** Defendants Branzburg, Ellers, and Judge Giles argue that plaintiff's amended complaint should be dismissed because it fails to comply with Fed.R.Civ.P. 8 and 12(f), which relate to the proper form for complaints and amended complaints. Specifically, they argue that plaintiff's jurisdictional allegations are confused, that the amended complaint is not broken down into counts or sequentially numbered paragraphs, that the amended complaint contains allegations on behalf of and against individuals who are not named as parties, and that the amended complaint consists of a rambling and incomprehensible series of outrageous charges, conclusory accusations and personal invective that are not supported by any alleged factual basis.

Fed.R.Civ.P. 8(a) provides in relevant part:
Claims for Relief. A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Fed.R.Civ.P. 12(f) provides:Motion to Strike. Upon motion made by a party before responding to a pleading ... or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Having reviewed plaintiff's extensive, 63-page amended complaint, I am in agreement with many of the criticisms made of it by these defendants, but I find that plaintiff has pled his case with sufficient clarity so as to allow defendants to be put on notice regarding the claims that plaintiff seeks to bring against them, the relief that plaintiff seeks, and the grounds upon which those claims are based. Specifically, I find that plaintiff attempted to assert diversity jurisdiction for the basis of his claim in a relatively short statement on pages three and four of his amended complaint. While diversity jurisdiction does not exist in this case, plaintiff's legal error is not in and of itself a violation of Fed.R.Civ.P. 8(a). FN15 *See, e.g., Wong v. Bacon,* 445 F.Supp. 1177, 1182 (N.D.Cal.1977) (failure to comply with jurisdictional statement rule does not require dismissal when complaint reveals a proper basis for jurisdiction). And while the amended complaint contains much repetition, it does clearly identify as to each defendant what claims plaintiff is seeking to bring against them. It also identifies with some specificity the relief sought by plaintiff. *See* amended complaint at 59-62. Finally, while much of plaintiff's amended complaint is conclusory, defendants have shown in their motions to dismiss that they are capable of locating and responding to the factual allegations that do exist in the amended complaint. Therefore, I will decline to dismiss plaintiff's amended complaint on these procedural grounds and will proceed instead to consider the more substantive arguments for dismissal.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

B. *General Grounds for Dismissal*

***9** Three of the remaining defendants have raised grounds for dismissal which apply to all claims brought by plaintiff. First, defendant Giles argues that he has absolute judicial immunity with regard to all of plaintiff's allegations. Second, defendant Disciplinary Board argues that it is protected by the Eleventh Amendment to the Constitution of the United States as a state agency. Third, defendant Burgoyne argues that he has absolute quasi-judicial and prosecutorial immunity, or, in the alternative, that he has qualified immunity.

In determining whether or not to grant a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), I am required to "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). Dismissal is appropriate under Rule 12(b)(6) only when a plaintiff has alleged no set of facts which, if proved, would entitle the plaintiff to relief. *Id.* In addition, the allegations of the complaint, especially a *pro se* complaint, must be read in a liberal fashion. *Haines v. Kerner,* 404 U.S. 519 (1972).

1. Judicial Immunity

Defendant Giles argues that plaintiff's allegations relate solely to actions taken by him in his judicial capacity, and that therefore he is absolutely immune even if these allegations are true. With regard to actions seeking money damages, it is well settled that judges are absolutely immune except in two sets of circumstances:

First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 288 (1991). The first exception does not apply in the instant case; a review of the accusations made against defendant Giles in plaintiff's amended complaint show that the accusations all involve actions taken by defendant Giles in his judicial capacity. These actions included making communications to the jury in open court, making a variety of rulings from the bench, imposing sanctions on plaintiff, entering judgment against plaintiff, denying motions of plaintiff, and refusing to hear motions of plaintiff. [FN16] *See* Amended Complaint at 10-13, 40-44; *Stump v. Sparkman,* 435 U.S. 349, 362 (1978) ("whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity"). The second exception also does not apply; plaintiff relies on diversity of citizenship between himself and defendant Kramer for this Court's jurisdiction over the instant action, and this was the same ground relied upon by defendant Giles in asserting federal district court jurisdiction over Kramer's libel suits against plaintiff. [FN17] *See* Amended Complaint at 3-4; *Kramer v. Thompson,* 947 F.2d 666, 667-68 n. 5 (3d Cir.1991). Therefore, defendant Giles is absolutely immune from plaintiff's suit to the extent that it seeks monetary damages.

***10** With regard to declaratory and injunctive relief, I find that I do not have to reach the issue of whether Judge Giles' judicial immunity extends to this kind of relief because plaintiff cannot show that he lacks an adequate remedy at law for the alleged harms done to him by Judge Giles. Declaratory and injunctive relief is only available when there is a showing of an inadequate remedy at law and of a serious risk of irreparable harm. *Pulliam v. Allen,* 466 U.S. 522, 537 (1984). Declaratory and injunctive relief with regard to defendant Giles can only relate to his actions taken during the course of the litigation against plaintiff, actions which were fully challengeable upon appeal and for which the Court of Appeals for the Third Circuit has the power to provide adequate relief. *See, e.g., Mullis v. United States Bankruptcy Court,* 828 F.2d 1385, 1392 (9th Cir.1987) ("[w]here a federal official meets the prerequisites for judicial ... immunity from damages, there will invariably be an adequate remedy through either ordinary appeals or by extraordinary writ"), *cert. denied,* 486 U.S. 1040 (1988); *Affeldt v. Carr,* 628 F.Supp. 1097, 1102

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(N.D.Ohio 1985) (holding that "all the [magistrate judge's] acts ... could have been appealed either directly or by extraordinary writ" and therefore plaintiff had an adequate remedy at law). Therefore, as a matter of law, any declaratory or injunctive relief sought against defendant Giles must be denied. Since neither monetary damages nor declaratory or injunctive relief is available as against Judge Giles, his motion to dismiss will be granted, and the amended complaint will be dismissed as against Judge Giles.

2. Eleventh Amendment

Defendant Disciplinary Board argues that the Eleventh Amendment to the Constitution of the United States makes it immune from suit in federal court. The Eleventh Amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State.

A state is immune from suits by its own citizens in federal court as well as by citizens of other states, unless the state has consented to such suits. *Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 304 (1990). This immunity is available to an "arm of the state," as well as to the state itself. *Mt. Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 280 (1977). This immunity applies "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).
In addition, while the Eleventh Amendment's scope is not the same as the scope of 42 U.S.C. § 1983 (" Section 1983"), the Supreme Court of the United States has held that Congress did not intend for Section 1983 to overcome the sovereign immunity of states embodied in the Eleventh Amendment, and therefore states and their arms are not "persons" who can be held liable under Section 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 67 (1989).

*11 It is undisputed that the Disciplinary Board is an arm of the state of Pennsylvania and therefore protected by the Eleventh Amendment. *See, e.g., Mattas v. Supreme Court of Pennsylvania,* 576 F.Supp. 1178, 1182 (W.D.Pa.1983) ( "[t]he Pennsylvania Supreme Court, as an entity, and the Office of **Disciplinary Counsel**, as an entity, are arms of the state and therefore cannot be sued"). Given this protection, the Disciplinary Board could only be sued in federal court if it or the state generally has consented to such suits, and neither it nor Pennsylvania has given such consent. *See* 42 Pa.Cons.Stat.Ann. § 8521(b) ("nothing contained in this subchapter [Actions Against Commonwealth Parties] shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"); *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981) ("[b]y statute, Pennsylvania has specifically withheld consent" to suit in federal court). Given these facts, I find that the Disciplinary Board is immune from suit in federal court. Therefore, the motion of defendant Disciplinary Board to dismiss will be granted, and the amended complaint will be dismissed as against defendant Disciplinary Board.

3. Quasi-Judicial/Prosecutorial Immunity

Defendant Burgoyne argues that he is entitled to quasi-judicial and prosecutorial immunity or, at a minimum, to qualified immunity from all of plaintiff's claims. In order to determine whether a government official has absolute or qualified immunity, I must make "a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 113 S.Ct. 2167, 2170 (1993) (internal quotations and citations omitted). In order to further this analysis, the Supreme Court of the United States has suggested looking at three factors: the functions performed by the official, the likelihood that the controversies involved will result in recriminatory lawsuits by disappointed parties, and the safeguards that exist in the regulatory framework to control improper conduct. *Butz v. Economou,* 438 U.S. 478, 511-12 (1978).

Looking at the first of these three factors, disciplinary bodies that have oversight over

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

attorney conduct perform a quasi-judicial function since they oversee an adversarial process that involves making factual and legal findings regarding the fitness of persons to practice law. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 434 n. 13 (1982) (recognizing the "essentially judicial nature of [attorney] disciplinary actions in New Jersey" in the context of abstaining from federal court review of ongoing disciplinary proceedings). Therefore, while such bodies, because of their recent birth, do not have a common law history of immunity, they can take advantage of the traditional common law immunity enjoyed by judges generally. As for the second factor, the discipline of attorneys certainly has a high likelihood of resulting in recriminatory lawsuits against the officials making the disciplinary decisions. In fact, other federal courts have found this potential when disciplinary boards overseeing less litigious professions are involved. *See, e.g., Bettencourt v. Board of Registration in Medicine,* 904 F.2d 722, 783 (1st Cir.1990) (state board reg ulating practice of medicine), *cert. denied,* 498 U.S. 1083 (1991); *Horwitz v. State Bd. of Medical Examiners,* 822 F.2d 1508, 1515 (10th Cir.1987) (same), *cert. denied,* 484 U.S. 964 (1987); *Kwoun v. Southeast Missouri Professional Standards Review Org.,* 811 F.2d 401, 408-09 (8th Cir.1987) (regional Medicare peer review organization), *cert. denied,* 486 U.S. 1022 (1988); *Austin Mun. Sec. v. National Ass'n of Sec. Dealers, Inc.,* 757 F.2d 676, 689 (5th Cir.1985) (national securities brokers self-regulation association).

*12 As for the third factor, it is true that the rules governing the Disciplinary Board in Pennsylvania give an attorney-defendant the right to receive a formal hearing, and the right to have the Disciplinary Board's determination reviewed de novo by the Supreme Court of Pennsylvania if disbarment has been recommended. Pa.R.D.E. 208 . The person who files a complaint appears, however, to have no right of appeal from the dismissal of her or his complaint. Therefore, at first glance, it appears that the third factor might prohibit a finding of quasi-judicial or prosecutorial immunity. But such a holding would ignore the larger historical context of prosecutorial immunity; a person who files a complaint with any type of prosecutor, including a criminal prosecutor, historically does not have a right to sue that prosecutor if that prosecutor chooses not to prosecute that complaint. This historical rule is consistent with the reasons articulated by the Supreme Court of the United States for granting prosecutorial immunity: "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman,* 424 U.S. 409, 423 (1976); *see also Origel v. Washtenaw County,* 549 F.Supp. 792, 795-96 (E.D.Mich.1982) (prosecutorial immunity applies to suit based on a claim of failure to vigorously prosecute a paternity action). Therefore, I find that defendant Burgoyne is covered by prosecutorial **absolute immunity**.

This holding is supported by the decisions of other federal courts that have considered the issue of what type of immunity is available to persons that prosecute cases before attorney discipline boards; these courts have all found that these persons are covered by prosecutorial **absolute immunity**. *See, e.g., Clulow v. State of Oklahoma,* 700 F.2d 1291, 1298 (10th Cir.1983), *overruled in part on other grounds by Garcia v. Wilson,* 731 F.2d 640 (10th Cir.1984), *aff'd,* 469 U.S. 815 (1984), *and by Newcomb v. Ingle,* 872 F.2d 675 (10th Cir.1987); *Kissell v. Breskow,* 579 F.2d 425 (7th Cir.1978); *Ginger v. Circuit Court,* 372 F.2d 621 (6th Cir.1967), *cert. denied,* 387 U.S. 935 (1967). It is also supported by the decisions of federal courts that have considered whether disciplinary board members are covered by some type of immunity; these courts have all found that board members are covered by absolute quasi-judicial immunity. *See, e.g., Carroll v. Gross,* 984 F.2d 392 (11th Cir.1993) , *cert. denied,* 510 U.S. 893, 114 S.Ct. 254 (1993); *Sparks v. Character and Fitness Comm.,* 859 F.2d 428 (6th Cir.1988), *cert. denied,* 489 U.S. 1011 (1989); *Simons v. Bellinger,* 643 F.2d 774, 782 (D.C.Cir.1980); *Slavin v. Curry,* 574 F.2d 1256, 1266 (5th Cir.), *modified on other grounds,* 583 F.2d 779 (5th Cir.1978), *overruled in part on other grounds by Sparks v. Duval County Ranch Co.,* 604 F.2d 976, 978 (1979) (en banc), *aff'd sub nom.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Dennis v. Sparks,* 449 U.S. 24 (1980); *Clark v. State of Washington,* 366 F.2d 678, 681 (9th Cir.1966).

***13** It should be noted, however, that prosecutorial immunity only covers actions which were performed in defendant Burgoyne's prosecutorial role. *See Imbler v. Pachtman,* 424 U.S. 409, 430 (1976) (prosecutors have **absolute immunity** to Section 1983 damages actions when their activities are "intimately associated with the judicial phase of the criminal process"). It should also be noted that prosecutorial **absolute immunity** is limited to suits seeking money damages; it does not apply to suits seeking prospective declaratory or injunctive relief. *See Pulliam v. Allen,* 466 U.S. 523, 541-42 (1984) (holding that judicial immunity does not bar prospective injunctive relief against state judicial officers).

Plaintiff appears to attack defendant Burgoyne for three categories of actions. First, plaintiff challenges defendant Burgoyne's decisions to dismiss plaintiff's complaints against Kramer. Second, plaintiff challenges defendant Burgoyne's decision to forbid plaintiff from communicating the fact that plaintiff had filed a complaint with the Disciplinary Board. Third, plaintiff challenges defendant Burgoyne's testimony in support of Kramer during the proceedings of the 1989 suit brought by Kramer against plaintiff here. *See* Amended Complaint at 25-27, 47. The first category of actions consists of prosecutorial actions relating to defendant Burgoyne's role as a " prosecutor" for the Board, and as such it is covered by defendant Burgoyne's absolute prosecutorial immunity. *See, e.g., Forman v. Ours,* 804 F.Supp. 864, 868 (E.D.La.1992) (finding that decision to prosecute lawyer by deputy **disciplinary counsel** of Louisiana State Bar Association was covered by absolute prosecutorial immunity), *aff'd without op.,* 996 F.2d 306 (5th Cir.1993). As for the second category, plaintiff appears to be seeking only declaratory or injunctive relief with regard to this category, which relief is not barred by prosecutorial immunity under any conditions. And as for the third category, the testimony is not covered by prosecutorial immunity; testifying in a non-Board related proceeding is outside of the defendant Burgoyne's role as a prosecutor for the Board and therefore his act of testifying is not covered by his absolute prosecutorial immunity. *See Imbler,* 424 U.S. at 430. Therefore, to the degree that plaintiff's claims for money damages rest on defendant Burgoyne's decision not to prosecute defendant Kramer, the motion of defendant Burgoyne to dismiss will be granted. FN18 To the degree that the claims of plaintiff seek declaratory or injunctive relief, and to the degree that the claims for money damages rest on defendant Burgoyne's testimony on behalf of Kramer, the motion of defendant Burgoyne to dismiss will be addressed below.

C. *Specific Grounds for Dismissal*

Having considered the general grounds for dismissal raised by the remaining defendants, I will now turn to the specific claims brought by plaintiff. The remaining defendants are Branzburg, Burgoyne, Ellers, Marvin Galfand, the firm Lyman & Ash, and Nowak. Burgoyne is a defendant only for declaratory and injunctive relief purposes and for purposes of claims relating to actions taken outside of the bounds of his prosecutorial immunity.

1. Federal Claims

***14** While plaintiff does not divide his claims into federal and state law claims, the statutory basis he provides for his claims suggests that the following claims are being asserted under federal law: civil and constitutional rights violations, extortion, money laundering, obstruction of justice, perjury, and racketeering. I will first address whether federal law provides a private cause of action for each of these claims. Then I will address in detail those claims for which a private cause of action does exist.

a. Private Causes of Action

Many of the claims brought by plaintiff fail to state a cause of action because these claims rest on statutes that do not provide a private cause of action. While 42 U.S.C. § 1983 ("Section 1983")

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and the Racketeering and Influencing Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, provide for private causes of action, I find that the remainder of plaintiff's federal claims lack any basis in federal law independent of Section 1983 and RICO.

The Court of Appeals for the Third Circuit has cautioned that an implied private right of action should only be found where a court "can confidently conclude Congress so intended." *State of New Jersey, Dep't of Envtl. Protection v. Long Island Power Auth.,* 30 F.3d 402, 421 (3d Cir.1994). With regard to deciding whether a private right of action exists, the Court of Appeals for the Third Circuit has directed lower courts to focus on two criteria: the class to be benefitted and explicit or implicit indications of legislative intent. *Id.*

The sole statute which plaintiff points to in order to support his claim of extortion is 18 U.S.C. § 1951, also known as the Hobbs Act. This statute provides in relevant part that:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a). This language contains no hint that this statute was intended to provide civil relief. In addition, plaintiff has pointed to no legislative history that indicates that congress intended to provide civil relief, nor have I been able to find any such legislative history. Nor is there anything in the statute or the legislative history to indicate that plaintiff is in any special class that the statute was intended to protect. Therefore, I find nothing that would indicate that this statute forms the basis for a private cause of action and so join the other federal courts that have considered this issue; these courts have uniformly held that there is no private cause of action under the Hobbs Act. *See John's Insulation, Inc. v. Siska Constr. Co.,* 774 F.Supp. 156, 163 (S.D.N.Y.1991); *Peterson v. Philadelphia Stock Exch.,* 717 F.Supp. 332, 335-36 (E.D.Pa.1989); *Creech v. Federal Land Bank,* 647 F.Supp. 1097, 1099 (D.Colo.1986). The federal claims of plaintiff for extortion will therefore be dismissed as against defendants Branzburg, Burgoyne, Ellers, Marvin Galfand, the firm of Lyman & Ash, and Nowak.

***15** With regard to plaintiff's claims of money laundering, obstruction of justice, and perjury, I find that the same analysis leads to the same conclusion. Money laundering is a violation of federal criminal law under 18 U.S.C. §§ 1956-1957; obstruction of justice is a violation of federal criminal law under 18 U.S.C. §§ 1501-1517; perjury is a violation of federal criminal law under 18 U.S.C. §§ 1621-1623. These statutes provide by their plain language for criminal penalties but not for private causes of action. In addition, plaintiff has not pointed to and I have not found anything in the legislative history of these statutes that would indicate that Congress intended to provide a civil cause of action for violations of these statutes, or that plaintiff was intended to be the especial beneficiary of these statutes. *See Schwartz v. F.S. & O. Assoc., Inc.,* No. 90 Civ. 1606 (VLB), 1991 WL 208056, at *2-3 (S.D.N.Y. Sept. 27, 1991) (no private right of action of money laundering under 18 U.S.C. §§ 1956-1957); *Harberson v. Hilton Hotels Corp.,* 616 F.Supp. 864, 866 (D.Colo.1985) (no private right of action for obstruction of justice under 18 U.S.C. § 1503); *LaBoy v. Zuley,* 747 F.Supp. 1284, 1289 (N.D.Ill.1990) (no private right of action for perjury under 18 U.S.C. §§ 1621-1622). Therefore, the federal claims of plaintiff for money laundering, obstruction of justice, and perjury will be dismissed as against defendants Branzburg, Burgoyne, Ellers, Marvin Galfand, the firm of Lyman & Ash, and Nowak. [FN19]

b. RICO

Plaintiff alleges that the defendants engaged in a pattern of racketeering activity under RICO. Since plaintiff appears to be attempting to allege violations of all four subsections contained in 18

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

U.S.C. § 1962, I will consider each type of RICO violation in turn.

In order to sustain a cause of action under subsection (a) of 18 U.S.C. § 1962 a "plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves." *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1188 (3d Cir.1993) (citations omitted). In his amended complaint, plaintiff alleges that various defendants took the proceeds from their various racketeering activities and invested those proceeds in their law firms and other businesses, particularly the firm of Kramer & Associates, the firm of Fellheimer, Eichen & Goodman, Prudential Bache Securities, and the firm of Lyman & Ash. Amended complaint at 48-50. Plaintiff fails to allege how this investment constituted an injury to him, beyond implying that this investment helped these entities to flourish and so allowed the defendants to continue to injury plaintiff. Such a claim is insufficient to meet the injury requirement of 18 U.S.C. § 1962(a). *Lightning Lube,* 4 F.3d at 1188 (holding that an allegation "that the use and investment of racketeering income keeps the defendant alive so that it may continue to injure plaintiff ... is insufficient to meet the injury requirement of section 1962(a)"). Therefore, plaintiff has failed to state a claim under 18 U.S.C. § 1962(a).

***16** "In order to recover under [subsection (b) of 18 U.S.C. § 1962], a plaintiff must show injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts." *Lightning Lube,* 4 F.3d at 1190. While plaintiff has extensively described how the alleged racketeering acts of defendants have injured him, he has failed to allege how the acquisition or control of the various enterprises listed in his amended complaint injured him. *See* amended complaint at 48-50. Therefore, plaintiff has failed to state a claim under 18 U.S.C. § 1962(b).

In order to state a claim under subsection (c) of 18 U.S.C. § 1962, plaintiff must allege "(1) the conducting of, (2) an enterprise (3) through a pattern, (4) of racketeering activity." *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1128 (3d Cir.1988). In order for an enterprise to be successfully alleged, a plaintiff must allege:

(1) [T]hat the enterprise is an ongoing organization with some sort of framework for making or carrying out decisions; (2) that the various associates function as a continuing unit; and (3) that the enterprise be separate and apart from the pattern of activity in which it engages.

*United States v. Pelullo,* 964 F.2d 193, 211 (3d Cir.1992). While plaintiff has alleged numerous informal ties between the various defendants, he has failed to allege any type of "framework" that existed for making or carrying out decisions. *See* amended complaint at 36 (asserting that the enterprise involved consisted of "a *corrupt organization* coalesced from a loose syndicate formed by the mutually consenting defendants ... acting with a *common profit motive* ") (emphasis in original). Therefore, plaintiff has failed to sufficiently allege that a RICO enterprise existed and so has failed to state a claim under 18 U.S.C. § 1962(c).

Subsection (d) of 18 U.S.C. § 1962 provides that " [i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Since plaintiff has failed to sufficiently allege a violation of subsection (a), (b), or (c), he has also failed to state a claim under 18 U.S.C. § 1962(d). As plaintiff has failed to state a claim under any of RICO's subsections, the RICO claim of plaintiff will be dismissed as against defendants Branzburg, Burgoyne, Ellers, Marvin Galfand, the firm of Lyman & Ash, and Nowak.

c. Section 1983

Plaintiff alleges that defendants have violated his rights under the Constitution of the United States to freedom of speech, due process of law, and civil liberties in general, and that he has a cause of action against them under Section 1983 for these violations. In order for the defendants to be liable under Section 1983, they must have acted under the color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

With regard to defendants Branzburg, Ellers, Marvin Galfand, the firm of Lyman & Ash, and Nowak, plaintiff has not alleged that they acted under the color of state law. The lawsuits around which plaintiff's allegations center were all brought in federal court, albeit under state libel law, FN20 and so the actions of defendants were, at most, done under the color of federal not state law. FN21 *See, e.g., Magill v. Avonworth Baseball Conference,* 516 F.2d 1328, 1331 (3d Cir.1975) (holding that cases where private, individual conduct can be seen as being under the color of state law can be "grouped into three general categories: (1) where state courts enforced an agreement affecting private parties; (2) where the state 'significantly' involved itself with the private party; and (3) where there was private performance of a government function"). Therefore, as to these five defendants plaintiff has failed to state a cause of action under Section 1983 and so his Section 1983 claims will be dismissed as against defendants Branzburg, Ellers, Marvin Galfand, and the firm of Lyman & Ash, and Nowak.

*17 The situation is slightly more complicated for defendant Burgoyne. To the degree that plaintiff is seeking money damages, I have already found that defendant Burgoyne is protected by absolute prosecutorial immunity for his decisions not to pursue the plaintiff's complaints against Steven Kramer. As for the testimony that defendant Burgoyne gave on Kramer's behalf during the 1989 lawsuit against plaintiff, plaintiff has failed to allege how this testimony, which allegedly "made it appear that Thompson was trying to cheat and defame his lawyer," could constitute action under the color of state law. FN22 Therefore, to the degree that plaintiff's Section 1983 claim seeks money damages from defendant Burgoyne, it will be dismissed.

With regard to prospective equitable relief against defendant Burgoyne under Section 1983, claims for such relief that are brought against government officials acting in their official capacities are allowed under Section 1983 and are generally not barred by the Eleventh Amendment. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 n. 10 (1989) (Section 1983 and prospective equitable relief); *Laskaris v. Thornburgh,* 661 F.2d 23, 25-26 (3d Cir.1981) (Eleventh Amendment and prospective equitable relief). In connection with his Section 1983 claim against defendant Burgoyne, plaintiff appears to have raised two constitutional claims, both under the First Amendment. First, plaintiff seeks for himself and other members of the public a right of access to the records of all the proceedings of the Disciplinary Board. Second, plaintiff seeks to overturn the Office of the **Disciplinary Counsel's** requirement that plaintiff not communicate to anyone the fact that he has filed a complaint with the Disciplinary Board.

i. Standing

With regard to the first claim, I find that the plaintiff lacks standing to raise it. In order to have standing under Article III of the Constitution of the United States, it is necessary that plaintiff " ' personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant' and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.' " *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472 (1982) (citations omitted). Plaintiff has failed to allege what information is being kept confidential by the Disciplinary Board that causes or will cause him injury if it is not made available to the general public. Rather, he has simply alleged a general conspiracy to protect incompetent or corrupt attorneys, thus allowing them to continue to hurt the general public. This diffuse harm which affects all members of the general public is not sufficiently particular to plaintiff so as to give him standing to make a right of access claim. *See Valley Forge,* 454 U.S. at 477 (" '[t]he party who invokes [the power of judicial review] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally' ") (quoting *Frothingham v. Mellon,* 262 U.S. 447, 488 (1923)). In other cases where similar rules have been challenged on First Amendment grounds, the plaintiffs have been newspapers who were bringing a right to access claim under the right to freedom of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

press, where it is clear that they were in a position different from that of other members of the general public. *See, e.g., First Amendment Coalition v. Judicial Inquiry & Review,* 784 F.2d 467 (3d Cir.1986) (plaintiffs were reporters and a nonprofit corporation comprised of newspapers, broadcasters, and media organizations). Therefore, plaintiff's Section 1983/First Amendment claim of right to access against Burgoyne will be dismissed.

***18** With regard to plaintiff's standing to assert his second claim, plaintiff has alleged that the Office of **Disciplinary Counsel**, under defendant Burgoyne's direction, has ordered plaintiff not to communicate to anyone the fact that he had filed a complaint with the Disciplinary Board. Plaintiff attached to his amended complaint a letter from the Office of **Disciplinary Counsel** which contained the following language:

The confidentiality provision of Rule 402, Pennsylvania Rules of Disciplinary Enforcement, requires *all* parties to disciplinary proceedings to maintain the confidentiality of the proceedings.

You are therefore advised that the fact that you filed a complaint with this office must remain confidential.

Letter from Anthony P. Sodroski, Assistant **Disciplinary Counsel** to Thompson of 2/8/94, attached to amended complaint as Exhibit D. [FN23] Plaintiff has indicated in his various filings and through the very act of filing of his amended complaint that he wishes to publicly discuss the fact that he filed a complaint with Disciplinary Board; therefore, he has an actual injury that is causally linked to this order.

ii. Confidentiality of Fact of Complaint Filing

Having determined that plaintiff, for the purposes of the pending motions to dismiss, has standing to bring his second First Amendment claim, I must now turn to consideration of the merits of plaintiff's challenge. The specific issue to be addressed is whether requiring plaintiff to maintain the fact that he filed a complaint with the Disciplinary Board confidential is unconstitutional. I am not the first to consider this issue, though most other federal courts have addressed it in slightly different contexts. *See Lind v. Grimmer,* 30 F.3d 1115 (9th Cir.1994) (complaint filed with campaign spending commission), *petition for cert. filed,* 63 U.S.L.W. 3423 (U.S. Nov. 15, 1994); *Kamasinski v. Judicial Review Council,* 797 F.Supp. 1083 (D.Conn.1992) (complaint filed with judicial review panel); *Doe v. State of Florida Judicial Qualifications Comm'n,* 748 F.Supp. 1520 (S.D.Fla.1990) (complaint filed with judicial review panel); *Doe v. Supreme Court of Florida,* 734 F.Supp. 981 (S.D.Fla.1990) (complaint filed with attorney disciplinary body); *Providence Journal Co. v. Newton,* 723 F.Supp. 846 (D.R.I.1989) (complaint filed with ethics commission). All of these courts found that such a restraint is unconstitutional. [FN24]

Because of the constitutional nature of this issue and the broad scope of plaintiff's amended complaint, I invited the parties to submit additional briefing on this particular issue. Defendant Burgoyne, after filing a supplemental memorandum which focused on the right of access aspect of plaintiff's First Amendment claim, chose to file a motion for summary judgment on this issue instead. *See* Document No. 83. Given the paucity of briefing on this issue at the motion to dismiss stage, as well as the constitutional nature of the issue and the fact that all federal courts that have carefully considered this issue have found similar rules unconstitutional, I believe it would it be premature to dismiss plaintiff's Section 1983/First Amendment claim regarding this order. Therefore, the motion of defendant Burgoyne to dismiss will be denied as it applies to the Section 1983 claim of plaintiff for a violation of plaintiff's First Amendment rights by defendant Burgoyne through the ordering of plaintiff not to communicate to anyone the fact that he had filed a complaint with the Disciplinary Board.

2. State Claims

***19** If a district court dismisses all the claims over which it has original jurisdiction, the court has the option of declining to exercise supplemental jurisdiction over the remaining state claims. *See* 28 U.S.C. § 1367(c)(3). Even if a federal claim does

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

exist, this option is still available if the federal claim is unrelated to the state claims, if the state claims substantially predominate over the claims over which a court has original jurisdiction, or, in exceptional circumstances, if there are other compelling reasons for declining jurisdiction. *See* 28 U.S.C. § 1367(a), (c)(2), (c)(4).

As against the eight defendants who have filed motions to dismiss, the only remaining federal claim is plaintiff's Section 1983/First Amendment claim against defendant Burgoyne. This claim is unrelated to plaintiff's state claims, with the exception of his claim for freedom of speech under the Constitution of the Commonwealth of Pennsylvania; [FN25] plaintiff's other state claims center around defendants alleged activities surrounding the previous litigation between plaintiff and defendant Kramer. As for the federal claims against the five defendants who have yet to be properly served, while I cannot consider dismissing these claims *sua sponte,* I can make a preliminary determination that these claims appear to suffer from the same flaws as the federal claims against the defendants who have already filed motions to dismiss. [FN26] Given that (1) this Court's original jurisdiction is based solely on the federal claims of plaintiff, (2) for the defendants that have filed motions to dismiss the state claims are unrelated to the remaining federal claim and substantially predominate over it, and (3) the federal claims against the defendants who have yet to be properly served appear to suffer from the same fatal flaws as the federal claims against the defendants who have already filed motions to dismiss, I find that the circumstances are exceptional and so I may decline to exercise supplemental jurisdiction over the state law claims against the defendants who have filed motions to dismiss if there are compelling reasons for so doing.

When deciding whether to exercise supplemental jurisdiction, a district court should consider a number of factors, including judicial economy, convenience and fairness to the litigants, the stage of the litigation, whether either party will be prejudiced by the dismissal of the state law claims, and whether the state law claims involve issues of federal policy. *See Glaziers & Glassworkers Local 252 Annuity Fund v. Newbridge Sec., Inc.,* 823 F.Supp. 1191, 1197 (E.D.Pa.1993) (listing these factors as the ones to be considered when deciding whether to exercise supplemental jurisdiction). In the instant action, the litigation is still at an early stage, discovery was stayed at an early stage, and no federal policies are implicated by the various state claims. In addition, since Pennsylvania law provides that matters dismissed by a federal court for lack of jurisdiction may be refiled in the state courts without regard to the limitations period, my dismissal of the state claims will not prevent plaintiff from bringing the same claims in state court. 42 Pa.Cons.Stat.Ann. § 5103(b)(1); *see Lovell Mfg. v. Export-Import Bank of the United States,* 843 F.2d 725, 735 n. 15 (noting that 42 Pa.Cons.Stat.Ann. 5103(b)(1) will protect a plaintiff from dismissal on statute of limitations grounds if a federal court chooses not to exercise jurisdiction over state law claims). I find these considerations compelling and so will choose not to exercise supplemental jurisdiction over plaintiff's state law claims against Branzburg, Burgoyne, Ellers, Marvin Galfand, the firm of Lyman & Ash, and Nowak, and these claims will be dismissed without prejudice, with the exception defendant Burgoyne's motion as it relates to the freedom of speech claim under the Constitution of the Commonwealth of Pennsylvania.

D. *Discovery*

***20** By an Order dated May 16, 1994, I ordered that discovery be stayed pending resolution of the pending motions to dismiss. On May 18, 1994, apparently before receipt of the May 16, 1994 Order, defendants Burgoyne and the Disciplinary Board filed a motion for a protective order staying discovery, which motion also contained a request to quash the interrogatories served upon them by plaintiff. Since discovery is already stayed, the motion for a protective order staying discovery will be denied as moot. And since discovery is stayed, I find that the request of defendants Burgoyne and the Disciplinary Board to quash plaintiff's interrogatories is premature and so it will be denied without prejudice.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IV. CONCLUSION

For the foregoing reasons, the motion of defendant Giles, the motion of defendant Lyman & Ash, the motion of defendants Branzburg and Ellers, the motion of Marvin Galfand, and the motion of defendant Nowak will be granted; the motion of defendants Burgoyne and the Disciplinary Board will be granted in part and denied in part. The amended complaint will be dismissed as against defendants Giles, Burgoyne, the Disciplinary Board, Lyman & Ash, Branzburg, Ellers, Marvin Galfand, and Nowak, with the exception of one Section 1983 claim against defendant Burgoyne relating to plaintiff's First Amendment rights and one Pennsylvania constitutional claim against defendant Burgoyne. In addition, the motion of defendants Burgoyne and the Disciplinary Board for a protective order staying discovery will be denied. Finally, the first motion of plaintiff for reimbursement of the costs of service will be granted in part and denied in part, defendants Branzburg and Ellers will be ordered to pay plaintiff $37.50 each in order to reimburse plaintiff for the cost of effectuating service upon them, and defendants Lyman & Ash and Nowak will be ordered to pay plaintiff $75.00 each in order to reimburse plaintiff for the cost of effectuating service upon them. As the second motion for reimbursement of the costs of service is simply a copy of the earlier motion, the second motion will be denied as moot.

An appropriate Order follows.

ORDER

AND NOW, this 28th day of December 1994, upon consideration of the motion of defendant Judge James Giles to dismiss (Document No. 24), the motion of defendants Paul Burgoyne and the Disciplinary Board of the Supreme Court of Pennsylvania to dismiss (Document No. 34), the motion of defendant Lyman & Ash to dismiss (Document No. 36), the motion of defendants Morton Branzburg and Edward Ellers to dismiss (Document No. 37), the motion of defendant Marvin Galfand to dismiss (Document No. 38), and the motion of defendant Jeffrey Nowak to dismiss (Document No. 47), and the responses of plaintiff thereto, and also having considered the motion of defendants Paul Burgoyne and the Disciplinary Board of the Supreme Court of Pennsylvania for a protective order staying discovery (Document No. 42), the motions of plaintiff for reimbursement of the costs of service (Document Nos. 44, 76), and the responses thereto, for the reasons stated in the attached memorandum, it is hereby ORDERED that:

***21** 1) The motion of defendant Judge James Giles (Document No. 24) is GRANTED. IT IS FURTHER ORDERED that the amended complaint as against defendant Judge James Giles is DISMISSED with prejudice.

2) The motion of defendants Paul Burgoyne and the Disciplinary Board of the Supreme Court of Pennsylvania (Document No. 34) is GRANTED as to all claims against these two defendants, with the exception that the motion is DENIED with regard to the claims of plaintiff against defendant Paul Burgoyne under 42 U.S.C. § 1983 and the First Amendment to the Constitution of the United States and under Article I, Section 7 of the Constitution of the Commonwealth of Pennsylvania to the extent that these claims arise from the order of the Office of the **Disciplinary Counsel** of the Supreme Court of Pennsylvania to plaintiff that he must not communicate to anyone the fact that he had filed a complaint with the Disciplinary Board of the Supreme Court of Pennsylvania. IT IS FURTHER ORDERED that the amended complaint as against defendant Disciplinary Board of the Supreme Court of Pennsylvania is DISMISSED with prejudice, that the federal claims against defendant Paul Burgoyne are DISMISSED with prejudice, and that the state claims against defendant Paul Burgoyne are DISMISSED without prejudice, with the exception of the federal claim of plaintiff against defendant Paul Burgoyne under 42 U.S.C. § 1983 and the First Amendment to the Constitution of the United States and the state claim of plaintiff against defendant Paul Burgoyne under Article I, Section 7 of the Constitution of the Commonwealth of Pennsylvania to the extent that these claims arise from the order of the Office of the **Disciplinary Counsel** of the Supreme Court of Pennsylvania to plaintiff that he must not communicate to anyone the fact that he had filed a complaint with the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Disciplinary Board of the Supreme Court of Pennsylvania.
3) The motion of defendant Lyman & Ash (Document No. 36), the motion of defendants Morton Branzburg and Edward Ellers to dismiss (Document No. 37), the motion of defendant Marvin Galfand (Document No. 38), and the motion of defendant Jeffrey Nowak (Document No. 47) are GRANTED. IT IS FURTHER ORDERED that the federal claims against defendants Lyman & Ash, Morton Branzburg, Edward Ellers, Marvin Galfand, and Jeffrey Nowak are DISMISSED with prejudice and the state claims against defendants Lyman & Ash, Morton Branzburg, Edward Ellers, Marvin Galfand, and Jeffrey Nowak are DISMISSED without prejudice.
4) The motion of plaintiff for reimbursement of the costs of service (Document No. 44) is GRANTED as against defendants Morton Branzburg, Edward Ellers, the firm of Lyman & Ash, and Jeffrey Nowak, is DENIED with prejudice as against defendants Steven Kramer and Simon Rosen, and is DENIED without prejudice as against defendants Victor Druziako, Alan Fellheimer, the firm Mattleman, Greenberg, Schmerelson, Weinroth & Miller, Robert Vedatsky, and Ralph Venuto, Sr. IT IS FURTHER ORDERED that defendant Morton Branzburg shall pay to Richard Thompson the total sum of thirty-seven dollars and fifty cents ($37.50), that defendant Edward Ellers shall pay to Richard Thompson the total sum of thirty-seven dollars and fifty cents ($37.50), that defendant Lyman & Ash shall pay to Richard Thompson the total sum of seventy-five dollars ($75.00), and that defendant Jeffrey Nowak shall pay to Richard Thompson the total sum of seventy-five dollars ($75.00). IT IS FURTHER ORDERED that these payments shall be made no later than January 30, 1995, and that defendants Morton Branzburg, Edward Ellers, the firm of Lyman & Ash, and Jeffrey Nowak shall file with the Clerk no later than January 30, 1995 certifications that these payments have been made, including the date and manner thereof.
*22 5) The motion of defendants Paul Burgoyne and the Disciplinary Board of the Supreme Court of Pennsylvania for a protective order staying discovery will be DENIED as moot. IT IS FURTHER ORDERED that the request of defendants Paul Burgoyne and the Disciplinary Board of the Supreme Court of Pennsylvania to quash plaintiff's interrogatories will be DENIED without prejudice. IT IS FURTHER ORDERED that the response of defendants to plaintiff's interrogatories is STAYED.

This is not a final order as plaintiff's claims have not been dismissed as against all defendants, and therefore this Order is not immediately appealable. FN1

FN1. Defendant Branzburg's last name was misspelled "Branzberg" in plaintiff's various filings and in this Court's Memorandum and Order dated December 12, 1994.

FN2. This factual background is based on the allegations contained in plaintiff's amended complaint. When considering motions to dismiss, I must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990).

FN3. This case was named *Thompson v. Prudential Bache Securities* and given the docket number 82-3128 in the United States District Court for the Eastern District of Pennsylvania.

FN4. This case, *Kramer v. ARCO,* was docketed as number 88-3350 in the United States District Court for the Eastern District of Pennsylvania.

FN5. Docket number 86-4030.

FN6. Docket number 89-2679 in the United States District Court for the Eastern District of Pennsylvania.

FN7. Docket number 90-7753 in the United States District Court for the Eastern District of Pennsylvania.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN8. The first bankruptcy case was assigned docket number 90-11688F. According to court records, this case was closed on November 8, 1990. The second bankruptcy case was assigned docket number 92-13190F, adversary number 92-0824. According to court records, this second case was closed on April 28, 1993.

FN9. The law firm where defendant Alan Fellheimer is currently a partner; the firm of Fellheimer, Eichen & Goodman was the firm where Alan Fellheimer was a partner when plaintiff first attempted to engage his services [ACCURATE].

FN10. This motion was originally filed on May 24, 1994 and was listed as Document No. 44. Another copy of this motion was filed on December 2, 1994, as Document No. 76. Since this "second" motion for reimbursement of the costs of service is an exact copy of the first motion, which will be ruled on here, the second motion will be denied as moot.

FN11. While Marvin Galfand appears to have believed that plaintiff's motion was directed at him, he is not listed as a target of that motion. *See* motion for reimbursement of the costs of service at 3.

FN12. While the response of Marvin Galfand, one of the co-owners of the firm of Galfand & Galfand, to the instant motion would indicate that the firm of Galfand & Galfand received actual notice of the instant action, the fact that Marvin Galfand responded only in his name and not in the name of the firm indicates that the firm's status as a defendant was unclear. Therefore, I find that this evidence of actual notice is insufficient to render effective plaintiff's attempt to serve the firm Galfand & Galfand.

FN13. The defendants that have objected to this motion seem to assume that a reimbursement for costs of service is only appropriate if plaintiff can show that they somehow "evaded" service. While plaintiff does accuse the defendants of evading service, all that is required for the costs of service to be imposed upon the defendants is a showing that plaintiff sent to the defendants a proper notice of the instant action and a proper request for waiver of service of a summons, and that the defendants did not then waive service of the summons. *See* Fed.R.Civ.P. 4(d)(2).

FN14. This is especially true given that under the terms of Fed.R.Civ.P. 4(d)(2)(B), plaintiff need not have sent the notice form by certified mail but could have sent it by first-class mail.

FN15. Diversity jurisdiction can exist only if all the defendants to a suit are residents of states other than the state in which the plaintiff resides. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373 (1978). In the instant action, plaintiff has alleged in his complaint that many of the defendants " live, work, and are employed in the state of Pennsylvania," and that he himself is a " citizen of Pennsylvania." Amended complaint at 3-4. While diversity jurisdiction does not exist, this Court does have jurisdiction over plaintiff's suit because plaintiff has made several claims under federal statutes and the Constitution of the United States, thus bringing his suit within the reach of the federal question jurisdiction provided for in 28 U.S.C. § 1331.

FN16. The only action alleged which was arguably not done in Judge Giles' judicial capacity was lying on his financial disclosure form. *See* amended complaint at 40. The only "lie" that plaintiff accuses Judge Giles of, however, is not revealing a conflict of interest because Judge Giles' wife works for Merrill Lynch, a stock brokerage firm, and plaintiff's original suit, which was not before Judge Giles, was made against Prudential Bache Securities,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

also a stock brokerage firm. Even assuming that plaintiff would have some cause of action if Judge Giles had lied on his financial disclosure form, I find that the relationship plaintiff alleges did not create a conflict of interest and therefore plaintiff's allegations do not show that Judge Giles lied on his financial disclosure form.

Plaintiff rests his response to Judge Giles motion primarily on a new allegation, that Judge Giles improperly considered during the course of the litigation involving plaintiff a pre-sentencing report from another case and information obtained *ex parte* from Judge James McGirr Kelly of the United States District Court of the Eastern District of Pennsylvania. Assuming without deciding that this allegation is properly before this Court, I find that a judge's decisions about what information can be properly considered during the course of litigation is generally covered by judicial immunity, and that consideration of the particular information identified by plaintiff, while arguably improper, was not so clearly outside of the jurisdiction of Judge Giles as to place his alleged decision to consider it outside of judicial immunity.

FN17. In the instant action diversity jurisdiction does not lie because plaintiff has alleged that he and a number of the defendants are residents of Pennsylvania. *See* amended complaint at 3-4. In the previous suits brought by Kramer, Kramer, who plaintiff alleges is a resident of New York, and plaintiff were the only parties and therefore diversity jurisdiction did lie.

Plaintiff's primary argument for why the judgment in the 1990 libel suit was outside of Judge Giles' jurisdiction is that the 1989 libel suit, which was allegedly exactly the same as the 1990 suit, was dismissed with prejudice. Court records reveal, however, that the dismissal of the 1989 case occurred after the 1990 judgment had been entered, and therefore could not render the 1990 judgment outside of the Judge Giles' jurisdiction. I may consider these court records even in the context of motions to dismiss because they are matters of public record. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993) (matters of public record may be considered when deciding a motion to dismiss), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687 (1994).

FN18. A suit for money damages against defendant Burgoyne acting in his official capacity is also barred by the Eleventh Amendment, since those damages would have to be paid out of the state treasury. *See Edelman v. Jordan,* 415 U.S. 651 (1974). A suit for declaratory or injunctive relief is generally not barred by the Eleventh Amendment, however. *Laskaris v. Thornburgh,* 661 F.2d 23, 25-26 (3d Cir.1981).

FN19. Plaintiff also asserts that he has stated a claim under the federal "White Collar Kingpin Act of 1990." I have been unable to find any act of Congress that has been given this name. In addition, even assuming that such a law exists, plaintiff has provided no evidence that this law provides for a private cause of action.

FN20. Plaintiff does not challenge the validity of the state libel law itself.

FN21. Plaintiff does not challenge any actions of defendants that related to the libel suit that was brought in a Pennsylvania state court.

FN22. Even if some of defendant Burgoyne's testimony could be characterized as being given under the color of state law, defendant Burgoyne is absolutely immune from civil liability under Section 1983 for his alleged perjury. *See Briscoe v. LaHue,* 460 U.S. 325 (1983) (holding that state officials who testify falsely during a criminal trial are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

absolutely immune from civil liability under section 1983).

FN23. I may consider this letter even in the context of a motion to dismiss because it was attached to the amended complaint. *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989).

FN24. One case did find that a bar on revealing the existence of a complaint was constitutional when applied during the pendency of an investigation but was unconstitutional when applied after a complaint had been dismissed. *See Kamasinski,* 794 F.Supp. at 1096. In the instant case, plaintiff was informed that his complaint had been dismissed in the same letter that instructed him to keep confidential the fact that he had filed the complaint, so I need not address the constitutionality of such a bar prior to the dismissal of a complaint.

FN25. The Constitution of the Commonwealth of Pennsylvania provides for freedom of speech in Article I, Section 7. As the free speech protection afforded by the Pennsylvania Constitution is apparently at least as broad as the protection afforded by the First Amendment to the Constitution of the United States, the motion of defendant Burgoyne to dismiss will be denied as against this particular state law claim for the same reasons and to the same extent that the motion of defendant Burgoyne to dismiss plaintiff's Section 1983/First Amendment claim will be denied. *See, e.g., William Goldman Theatres, Inc. v. Dana,* 173 A.2d 59, 61 (Pa.1961) (applying the Pennsylvania Constitution in conjunction with the First Amendment), *cert. denied,* 368 U.S. 897 (1961).

FN26. The surviving Section 1983/First Amendment claim was made only against defendants Burgoyne and the Disciplinary Board.

FN1. When this case is finally resolved, plaintiff will have the option of appealing this and all other orders issued in the instant case.

E.D.Pa.,1994.
Thompson v. Kramer
Not Reported in F.Supp., 1994 WL 725953 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

- 2:93cv02290 (Docket) (Apr. 30, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB M

**Effect of amendments.** — The 2001 amendment, effective June 5, 2001, added the present last sentence in (e).

## Rule 10. Immunity.

All communications to and from the Board, PRC, or the ODC relating to lawyer misconduct or disability, and all testimony given in proceedings relating thereto, shall be absolutely privileged, and no civil suit predicated thereon may be instituted against any complainant, witness, or lawyer. Members of the Board, members of the PRC, members of the ODC and staff, Special Disciplinary Counsel and staff, the Administrative Assistant and staff, and receivers and their agents and staff shall be immune from civil suit for any conduct in the discharge of their official duties.

COMMITTEE COMMENT

The scope of persons given immunity in this new Rule has been slightly expanded from that of the former rule.

## Rule 11. Service.

(a) *Service of petition.* Service of the petition upon the respondent or respondent's counsel in any disciplinary or disability proceeding shall be made by personal service by any person authorized by the ODC, or by registered or certified mail at the address last furnished by the respondent pursuant to Supreme Court Rule 69.

(b) *Service of other papers.* Service of any other papers or notices required by these Rules shall, unless otherwise provided by these Rules, be made in accordance with the Rules of Civil Procedure for the Superior Court of the State of Delaware.

COMMITTEE COMMENT

This Rule is substantially equivalent to the former rule on service.

## Rule 12. Subpoena power and discovery.

(a) *Subpoenas.* (1) Before the filing of a petition for discipline, the ODC may compel by subpoena the testimony of witnesses (including the respondent) and the production of pertinent books, papers, and documents for purposes of evaluation or investigation.

(2) After the filing of a petition for discipline, the ODC or the respondent may compel by subpoena the testimony of witnesses, or the production of pertinent records, books, papers, and documents, at a deposition or hearing under these Rules. The Clerk of the Supreme Court shall issue such subpoenas as are requested in writing by the respondent. Upon the written request of either the ODC or the respondent to the Administrative Assistant, the Clerk of the Supreme Court shall issue a commission for the issuance of a subpoena where the evidence sought is beyond jurisdictional limits.

(3) Subpoenas issued by the ODC or by the Clerk of the Supreme Court shall clearly indicate on their face that the subpoenas are issued in connection with a confidential matter under these Rules. It shall not be regarded as a breach of confidentiality for a person subpoenaed to consult with an attorney.

# TAB N





**H**

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.
Elizabeth J. PAWLAK
v.
PENNSYLVANIA BOARD OF LAW EXAMINERS, et al.
Elizabeth J. PAWLAK
v.
Hon. Robert N.C. NIX, Jr., et al.
**Civ. A. Nos. 93-1998, 93-2724.**

Aug. 30, 1995.

Susan L. Anderson, Anderson, Greenfield and Dougherty, Philadelphia, PA, Kimberley Klein Power, Clinton, MD, Bernhard D. Saxe, Foley and Lardner, Washington, DC, for plaintiff Elizabeth J. Pawlak.

Elizabeth J. Pawlak, Greenbelt, MD, pro se.

Howard M. Holmes, Administrative Office of PA Courts, Philadelphia, PA, for defendants Pennsylvania Board of Law Examiners, John S. Manos, Chairman of the Board individually and in his official capacity, Carl W. Brueck, Gordon J. Daghir, Michael G. Defino, Christine L. Donohue, Harold Rosenn, Members of the Board individually and in their official capacity, Rebecca G. Sturchio, Counsel to the Board individually and in her official capacity, Patrick Tassos, Executive Director individually and in his official capacity, Supreme Court of Pennsylvania and Justices of the Supreme Court of Pennsylvania: Robert N.C. Nix, Jr., Chief Justice, Rolf Larsen, Ralf J. Cappy, Stephen A. Zappala, Nicholas P. Papadakos, John P. Flaherty, Frank J. Montemuro, Jr., all individually and in their official capacity.

James M. Munley, Eugene H. Clarke, Jr., Michael G. Defino, Members of the Bd. of Law Examiners.

*MEMORANDUM*

DuBOIS, District Judge.

*1 These two related civil rights actions, brought by *pro se* plaintiff, Elizabeth J. Pawlak, under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, arise out of the decisions of one of the defendants, the Pennsylvania Board of Law Examiners (the "Board" or the "Board of Law Examiners"), to refuse her applications to sit for the February, 1993, July, 1993, and February, 1994, Pennsylvania Bar Exams. Presently before the Court is defendants' Motion to Dismiss Plaintiff's Complaints, [FN1] for Summary Judgment or, in the Alternative, for More Definite Statement. Because the Court concludes it has no subject matter jurisdiction over the instant cases, defendants' Motion to Dismiss Plaintiff's Complaints will be granted and defendants' alternative Motions will be denied as moot.

I. Background [FN2]

On July, 27, 1992, plaintiff sat for the Pennsylvania Bar Examination and did not receive a passing score. Some time thereafter, plaintiff, claiming a disability, requested permission to sit for the February, 1993, bar exam under modified arrangements. By letter dated December 29, 1992, Patrick Tassos, Executive Director of the Board of Law Examiners, informed plaintiff of the need to submit appropriate documentation from a treating physician or therapist describing her disability and the reason that the modified testing arrangements were required.

On January 8, 1993, plaintiff petitioned the Chairman of the Board of Law Examiners for review and regrading of the multistate section of her July, 1992, bar exam. In her Petition, plaintiff explained that, due to a first-time

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"coughing/breath-shortage attack," she was forced to leave the bar exam for at least two hours. Because she only needed three more points to pass the exam, plaintiff requested a " 'situation-just' partial-score-adjustment."

On January 19, 1993, Susan Calarusso, the officer manager of the Board of Law Examiners, called plaintiff to inform her that the Board had denied her Petition for Review and Regrading of the Multistate Section of her July, 1992, bar exam and her request for special accommodations at the February, 1993, bar exam. According to defendants, plaintiff became "quite boisterous" after fifteen or twenty minutes of conversation, and the phone call was referred to Mr. Tassos.

During the course of their forty-five minute discussion, Mr. Tassos told plaintiff that she needed to send appropriate medical documentation so that the Board could make the necessary arrangements to accommodate her disability at the February, 1993, bar exam. According to the defendants, plaintiff responded that she did not need any medical documentation because she was "medically trained" and threatened to cause "a disturbance and a disruption" at the bar exam. Plaintiff vehemently denies defendants' version of the events of January 19, 1993, and states that defendants fabricated their story as a pretext for preventing her from becoming a member of the Pennsylvania bar.

> ***2** [S]aid notice [regarding plaintiff's threat to disrupt the bar exam] was nothing else but an outright sham and ... the professed charge was pretextual, illusory and fraudulent. It was plaintiff's refusal to give the functionary the opportunity to illicitly pasture [sic] on plaintiff's medical records--not some imaginary threat "to deliberately disrupt the administration of the Bar Examination"--that was the circumstance that animated the functionary's sick imagination. It was the functionary's personal vendetta in retaliation for plaintiff's resistance to satisfy his ambitions and whims--not plaintiff's conduct--that prompted the functionary to craft that sham notice of that imaginary charge. It was the functionary's devious drive for power and authority along with his lack of any integrity and any ability to distinguish between right and wrong that were the true reasons for the issuance of the notice.

*Supplement to Plf.'s Opp'n to Defs.' [Third] Mot. to Dismiss* at 9-10.

Mr. Tassos ended the conversation and, by letters dated January 21, 1993, informed plaintiff that her Petition for Review and Regrading of the Multistate Section of her July, 1992, bar exam and her request for special accommodations at the February, 1993, bar exam were denied. By letter dated February 4, 1993, Mr. Tassos informed plaintiff that her request to sit for the February, 1993, bar exam was denied pursuant to Pa.B.A.R. 203(a)(3) because her conduct during the January 19, 1993, telephone conversation is "incompatible with the standards expected to be observed by members of the Bar of this Commonwealth." [FN3] Plaintiff requested and was granted a hearing, which occurred on February 12 and 15, 1993, before the Honorable Gordon J. Daghir, a member of the Pennsylvania Board of Law Examiners.

By letter dated February 17, 1993, Rebecca G. Sturchio, Esq., counsel to the Board of Law Examiners, informed plaintiff that the Board determined that she did not meet the character and general qualifications required to sit for the February, 1993, bar exam. The letter also apprised plaintiff that if she wished to petition the Supreme Court of Pennsylvania for judicial review of the Board's determination, she must file written notification of her intention to seek judicial review within thirty days.

On March 18, 1993, plaintiff sent three documents to the Pennsylvania Board of Law Examiners--a Petition for Review by the Full Board, a Notice of Intent to Seek a Hearing *De Novo* Before or, in the Alternative, A Review by the Supreme Court of Pennsylvania, and an application for permission to sit for the July, 1993, bar exam. By letter dated March 23, 1993, Ms. Sturchio informed plaintiff that the decision conveyed by Mr. Tassos regarding the denial of plaintiff's request for regrading of plaintiff's July, 1992, bar exam was not made by Mr. Tassos individually but by the entire Board, thereby mooting plaintiff's Petition for Review by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Full Board. Ms. Sturchio also stated that the Board would treat plaintiff's Notice of Intent to Seek a Hearing *De Novo* Before or, in the Alternative, A Review by the Supreme Court of Pennsylvania as a written notice of intention to seek judicial review, pursuant to Pa.B.A.R. 222(b). [FN4] Finally, Ms. Sturchio returned plaintiff's application for permission to sit for the July, 1993, bar exam, which had been submitted without the required fees, because "[t]he Board does not accept re-applications until the prior application has been finally disposed of; in your case, this would be after the appeal process to the Pennsylvania Supreme Court has been completed." [FN5]

*3 Under Pennsylvania law, the Board is required to file in the Supreme Court of Pennsylvania a formal adjudication and designation of the record within sixty days of receipt of plaintiff's notice of intention to seek judicial review. *See* Pa.B.A.R. 222(b). The entry of the formal adjudication is deemed the entry of a quasi-judicial order for purposes of the Pennsylvania Rules of Appellate Procedure, and an applicant is permitted to file a petition for review of such order. *See* Pa.B.A.R. 222(c).

On April 15, 1993, prior to the filing of the formal adjudication, plaintiff filed a Petition for Leave to File Motion and Special Petition in the Supreme Court of Pennsylvania. [FN6] Attached to this Petition were several documents--a Petition for Leave to Proceed *In Forma Pauperis;* a Petition for Leave to File Special Petition; a Special Petition for a Waiver of Rule 221 of the Pennsylvania Bar Admission Rules; [FN7] a Special Petition Seeking an Order for a Stay, a Permanent Injunction and a Dismissal and a Quash of the Decisions and Actions of the Board of Law Examiners; and a Motion for Recusal and/or Disqualification and Removal. Plaintiff's Special Petition Seeking an Order for a Stay, a Permanent Injunction and a Dismissal and a Quash of the Decisions and Actions of the Board of Law Examiners challenged the actions of the Board, *inter alia,* on the basis that they violated her rights under the Pennsylvania and United States Constitutions.

The formal adjudication of the Board was filed in the Pennsylvania Supreme Court on May 10, 1993. On May 21, 1993, plaintiff filed a *pro se* Petition for Expedited Review of the Adjudication Rendered by the Pennsylvania Board of Law Examiners. [FN8] Plaintiff's Petition for Expedited Review of the Adjudication Rendered by the Pennsylvania Board of Law Examiners, like her Special Petition Seeking an Order for a Stay, a Permanent Injunction and a Dismissal and a Quash of the Decisions and Actions of the Board of Law Examiners, challenged the actions of the Board of Law Examiners, *inter alia,* on the basis that they violated her rights under the Pennsylvania and United States Constitutions. Plaintiff's Petition for Expedited Review of the Adjudication Rendered by the Pennsylvania Board of Law Examiners also contained the following statement: "Applicant/petitioner is exposing her federal claims here only for the purpose of complying with *Windsor,* and she intends, should this Honorable Court hold against her on the question of state law, to return to the U.S. District Court for disposition of her preserved federal contentions."

By Order dated June 11, 1993, the Pennsylvania Supreme Court granted plaintiff's Petition for Leave to File Motion and Special Petition and denied all of plaintiff's other Petitions and Motions. Plaintiff filed an Application for Reargument, as amended, on August 23, 1993, which was denied by the Pennsylvania Supreme Court by Order dated September 27, 1993.

*4 On December 27, 1993, plaintiff filed a Petition for a Writ of Certiorari in the United States Supreme Court, seeking, *inter alia,* a determination that the Pennsylvania Supreme Court's denial of her Petition for Expedited Review of the Adjudication Rendered by the Pennsylvania Board of Law Examiners violated her rights under the Fifth and Fourteenth Amendments to the United States Constitution. The United States Supreme Court denied plaintiff's Petition for a Writ of Certiorari on March 2, 1994.

II. Proceedings in This Court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff initiated proceedings in this Court on April 15, 1993, by filing a Petition for Leave to Proceed *In Forma Pauperis* in Civil Action Number 93- 1998. By Order dated April 16, 1993, plaintiff's Petition was denied without prejudice for failure to provide sufficient financial information. [FN9] On April 23, 1993, plaintiff paid the required filing fee and filed an Amended Complaint, a Motion for Temporary Restraining Order, and a Motion for Preliminary Injunction. The Amended Complaint, the Motion for Temporary Restraining Order, and the Motion for Preliminary Injunction assert claims arising out of the decision of the Pennsylvania Board of Law Examiners not to allow plaintiff to sit for the July, 1993, bar exam.

On May 11, 1993, defendants filed a Motion to Dismiss Plaintiff's Amended Complaint in Civil Action Number 93-1998 or, in the alternative, for Summary Judgment. Shortly thereafter, on May 21, 1993, plaintiff filed a Petition for Leave to Proceed *In Forma Pauperis* in Civil Action Number 93-2724. [FN10] The Complaint in Civil Action Number 93-2724 asserts claims arising out of the decision of the Board not to allow plaintiff to sit for the February, 1993, bar exam.

On July 2, 1993, after defendants' Motion to Dismiss Plaintiff's Amended Complaint in Civil Action Number 93-1998 had been fully briefed, plaintiff requested leave to amend her Amended Complaint. In order to address all of the outstanding Motions, the Court held a status conference on the record on July 2, 1993. At the status conference, plaintiff renewed her Motion for Leave to Amend the Amended Complaint in Civil Action Number 93-1998 and said she wanted to take depositions and obtain other discovery in opposition to defendants' Motion to Dismiss. The Court informed plaintiff that such requests would make it impossible for any order to issue with respect to the forthcoming July, 1993, bar exam. Plaintiff did not withdraw any of her outstanding Motions and, by Orders dated July 2, 1993, the Court granted plaintiff's Motion for Leave to Amend the Amended Complaint and plaintiff's Motion for Continuance to Conduct Discovery, and denied as moot plaintiff's Motion for Preliminary Injunction and defendants' Motion to Dismiss the Amended Complaint in Civil Action Number 93-1998. [FN11]

On July 9, 1993, plaintiff filed a Second Amended Complaint in Civil Action Number 93-1998 and a Notice of Appeal from the Court's Order dated July 2, 1993, denying the Motion for Preliminary Injunction as moot. By Order dated July 21, 1993, the Court of Appeals for the Third Circuit dismissed plaintiff's appeal for lack of appellate jurisdiction.

*5 On July 22, 1993, plaintiff filed a second Notice of Appeal from the Court's Order dated July 2, 1993, denying the Motion for Preliminary Injunction as moot. By Order dated October 1, 1993, the Court stayed all discovery in the case until a final decision on plaintiff's second appeal. By Order dated October 5, 1993, the Court of Appeals dismissed plaintiff's second appeal as moot.

By Order dated October 26, 1993, following a status conference in both cases at which the parties informed the Court they were interested in pursuing the question of settlement, the Court, by agreement of the parties, stayed all proceedings in both cases and appointed Susan L. Anderson, Esq., as counsel for plaintiff for the limited purpose of exploring settlement. [FN12] By letter dated November 11, 1993, Ms. Anderson reported to the Court that the settlement discussions were at an impasse. [FN13] Ms. Anderson stated that plaintiff "is willing to settle these matters if she is granted admission, without further examination, by year end and is given monetary damages" and that defendants' offer of settlement "would involve some means of rectifying the adverse character ruling and permitting Ms. Pawlak to sit for the bar examination in 1994."

The Court held a status conference on November 24, 1993, to discuss whether additional settlement negotiations were worthwhile. At that conference, plaintiff reiterated her position that she would only settle if she received damages and were admitted to the bar without taking another bar examination and without making any apology to the Board. Counsel

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for the defendants stated that plaintiff's position made settlement impossible.

By Order dated December 1, 1993, the Court directed the parties to continue settlement discussions and report jointly to the Court whether an amicable solution could be found. By letter dated January 27, 1994, the parties jointly informed the Court that they were unsuccessful in their efforts to reach settlement.

By Order dated February 16, 1994, the Court consolidated plaintiff's two actions under separate captions for all pretrial purposes and for trial. The Court also granted plaintiff leave to file a third amended complaint in Civil Action Number 93-1998 and an amended complaint in Civil Action Number 93-2724.

On March 8, 1994, plaintiff filed her "Thrice Amended Complaint" (hereinafter "Third Amended Complaint") in Civil Action Number 93-1998, naming as defendants the Pennsylvania Board of Law Examiners, the Supreme Court of Pennsylvania, the justices of the Supreme Court of Pennsylvania (Chief Justice Robert N.C. Nix, Jr., Justice Rolf Larsen, Justice Ralf J. Cappy, Justice Stephen A. Zappala, Justice Nicholas P. Papadakos, Justice John P. Flaherty, and Justice Frank J. Montemuro, Jr.), individually and in their official capacities, the members of the Pennsylvania Board of Law Examiners (John S. Manos, Carl W. Brueck, Judge Eugene H. Clarke, Jr., Judge James M. Munley, Judge Gordon J. Daghir, Michael G. Defino, Christine L. Donohue, and Harold Rosenn), individually and in their official capacities, Rebecca G. Sturchio, Counsel to the Pennsylvania Board of Law Examiners, individually and in her official capacity, and Patrick Tassos, Executive Director of the Pennsylvania Board of Law Examiners, individually and in his official capacity. This Complaint, brought under 42 U.S.C. §§ 1983, 1985, 1986 and 1988, seeks declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees arising out of the decision of the Pennsylvania Board of Law Examiners not to allow plaintiff to sit for the July, 1993, and February, 1994, bar exams.

*6 Specifically, in the Third Amended Complaint filed in Civil Action Number 93-1998 plaintiff seeks a declaration that (1) Pa.B.A.R. 211; [FN14] (2) the Board's policy of "not accepting re-applications until the prior application has been finally disposed of;" (3) the Board's custom and practice of refusing to provide forms for requesting permission to sit for future bar exams to re-applicants whose prior applications have not been finally disposed of; and (4) Board policy 203(a)(3)-92.1, [FN15] separately and in any combination thereof, are unconstitutional in that they place an impermissible burden upon interstate commerce in violation of Article I, § 8 of the United States Constitution and deny re-applicants of their right to due process and equal protection under the Fourteenth Amendment to the United States Constitution, their privileges and immunities of citizenship as guaranteed by Article IV, § 2 of the United States Constitution, and their rights guaranteed under the Privileges and Immunities Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff also seeks permanent injunctive relief against all defendants except for Judge James M. Munley and Rebecca G. Sturchio, Esq., "enjoining them forever from rejecting petitioner's applications for permission to sit for the Pennsylvania bar examination without due process and equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and from outrightly violating plaintiff's civil and constitutional rights." With respect to the individual members of the Pennsylvania Board of Law Examiners and Rebecca G. Sturchio, Esq., and Patrick Tassos, plaintiff demands compensatory and punitive damages and attorney's fees in connection with her federal claims. Lastly, without specifying a demand or identifying the defendants, plaintiff alleges a state law claim for a violation of Article V, § 9, of the Pennsylvania Constitution. [FN16]

On March 15, 1994, plaintiff filed a Corrected Amended Complaint (hereinafter referred to as "Second Amended Complaint") in Civil Action Number 93-2724, naming the same defendants as in Civil Action Number 93-1998 except for the Supreme Court of Pennsylvania and Judge James M. Munley. This Complaint is also brought under

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C. §§ 1983, 1985, 1986 and 1988, and seeks declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees arising out of the decision of the Pennsylvania Board of Law Examiners not to allow plaintiff to sit for the February, 1993, bar exam.

Specifically, in the Second Amended Complaint filed in Civil Action Number 93- 2724 plaintiff seeks a declaration that (1) Pa.B.A.R. 104(c); [FN17] (2) Pa.B.A.R. 203(a)(3); (3) Pa.B.A.R. 212 ; [FN18] (4) Pa.B.A.R. 213(a); [FN19] (5) Pa.B.A.R. 213(b); (6) Pa.B.A.R. 222, separately and in any combination thereof, are unconstitutional for the reasons set forth in Civil Action Number 93-1998. Plaintiff also seeks "prospective and permanent" injunctive relief against all defendants named in the Second Amended Complaint "enjoining them forever from denying petitioner's [sic] permission to sit for the Pennsylvania bar examination without due process and equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and from outrightly violating plaintiff's civil and constitutional rights." With respect to the individual members of the Pennsylvania Board of Law Examiners named in the Second Amended Complaint and Rebecca G. Sturchio, Esq., and Patrick Tassos, plaintiff demands compensatory and punitive damages and attorney's fees in connection with her federal claims. Lastly, without specifying a demand or identifying the defendants, plaintiff alleges a state law claim for a violation of Article V, § 9, of the Pennsylvania Constitution.

*7 On April 15, 1994, defendants filed a Motion to Dismiss Plaintiff's Third Amended Complaint in Civil Action Number 93-1998 and plaintiff's Second Amended Complaint in Civil Action Number 93-2724, or for Summary Judgment or, in the Alternative, for More Specific Pleading. Defendants argue that (1) claims for declaratory and injunctive relief against the Supreme Court of Pennsylvania and the Pennsylvania Board of Law Examiners are barred by the Eleventh Amendment; (2) pendent state claims against state entities or officials are barred by the doctrine of sovereign immunity; (3) claims for declaratory and injunctive relief against state officials in their official capacity are barred by the Eleventh Amendment; (4) the Supreme Court of Pennsylvania and the Board of Law Examiners are not "persons" subject to suit under 42 U.S.C. § 1983; (5) the doctrine of legislative immunity bars suit against the Supreme Court of Pennsylvania and its members for the promulgation and adoption of bar admission rules; (6) the Supreme Court of Pennsylvania is neither a necessary nor a proper party to the suit; (7) plaintiff has not met the case or controversy and standing requirements for declaratory and injunctive relief; (8) the district court lacks subject matter jurisdiction over plaintiff's claims under the Rooker-Feldman doctrine; (9) plaintiff's claims are barred by the principles of full faith and credit and res judicata; (10) plaintiff fails to state a claim under § 1983 because an applicant does not have a right to take the bar examination or be admitted to the bar; (11) plaintiff fails to state a claim under §§ 1985 and 1986 because she has failed to allege class-based animus; (12) plaintiff's claims for damages are barred by the doctrines of judicial, prosecutorial, witness and qualified immunity; and (13) plaintiff's claims are not pled with the requisite level of specificity. [FN20]

III. Discussion

A. The *Rooker-Feldman* Doctrine

In *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983), respondents, applicants to the District of Columbia Bar who were denied admission because they had not graduated from approved law schools, challenged the decision of the Committee on Admissions of the District of Columbia Bar in the District of Columbia Court of Appeals. The District of Columbia Court of Appeals denied their petitions by *per curiam* orders, and respondents thereafter filed complaints in the United States District Court for the District of Columbia.

After determining that the proceedings in the District of Columbia Court of Appeals were judicial in nature, the Supreme Court reaffirmed its earlier holding in *Rooker v. Fidelity Trust Co.,* 263 U.S.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

413 (1923), that, because of 28 U.S.C. § 1257, [FN21] a United States district court has no subject matter jurisdiction "over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Feldman,* 460 U.S. at 486. However, rather than dismissing respondents' complaints, the Supreme Court remanded the cases to the district court and noted that United States district courts did have subject matter jurisdiction "over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case." *Id.*

***8** In a footnote, the Supreme Court discussed the flawed reasoning in a Fifth Circuit case, *Dasher v. Supreme Court of Texas,* 658 F.2d 1045 (5th Cir.1981), and stated that "[i]f the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the district court is in essence being called upon to review the state-court decision." *Feldman,* 460 U.S. at 482 n. 16. The Supreme Court held that the district court had no jurisdiction in such a case. *See Id.*

Defendants argue in their Motion to Dismiss that this Court has no subject matter jurisdiction over the two instant cases because the Board's adjudication and the Pennsylvania Supreme Court's review of that adjudication are judicial acts and the true purpose of plaintiff's Complaints is "to reverse the judicial decision of the Supreme Court of Pennsylvania, in contravention of *Rooker-Feldman.* " *Defs.' Mot. to Dismiss* at 41-43. Defendants also argue that no subject matter jurisdiction exists because plaintiff's federal claims are "inextricably intertwined" with the state court's decision. *See Id.* Plaintiff, on the other hand, contends that this Court does have subject matter jurisdiction because her Complaints are "general challenges" to the constitutionality of various rules and policies concerning admission to the Pennsylvania bar. [FN22]

Since the Supreme Court's decision in *Feldman,* the Third Circuit has on several occasions addressed the distinction between a challenge to a state court judicial decision in a particular case and a general constitutional challenge to existing rules.
In ***Stern v. Nix,* 840 F.2d 208 (3d Cir.),** *cert. denied,* 488 U.S. 826 (1988), Stern, an attorney who was disbarred by the Supreme Court of Pennsylvania, instituted a § 1983 action in federal court challenging the bar's procedural rules which allowed the Pennsylvania Supreme Court to reject the findings of the Hearing Committee and the Disciplinary Board without affording him a hearing. Stern sought a temporary restraining order, a preliminary and permanent injunction, and a stay of the Supreme Court's order disbarring him. The Third Circuit rejected Stern's characterization of his Complaint as a "generalized challenge" to the constitutionality of certain bar procedural rules and stated that "[d]espite [Stern's] genuflecting to the *Rooker-Feldman* doctrine, closer consideration convinces us that Stern's complaint is simply a skillful attempt to mask the true purpose of the action, which essentially is to reverse the judicial decision of the Supreme Court of Pennsylvania, in contravention of *Rooker-Feldman.*" *Id.* at 212.

In reaching its conclusion, the Third Circuit examined the type of relief that Stern requested and concluded that the remedy sought was inconsistent with a general challenge for two reasons. First, the court reasoned that a declaratory judgment and a permanent injunction restraining the Supreme Court of Pennsylvania from disbarring him would require the federal court effectively to reverse the state court judgment in Stern's case.

> ***9** In his complaint, Stern demands a declaratory judgment and a permanent injunction restraining the Supreme Court of Pennsylvania from disbarring him and other similarly situated attorneys unless the Supreme Court, in any case in which it plans to reject the findings of the Hearing Committee (which of course would include Stern's case), first grants an evidentiary hearing to the attorney. This demand for a permanent injunction, while drafted to sound like a remedy for a general challenge, is in itself problematic. In a sense, any attempt to enjoin

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> the enforcement of a state court judgment, even conditionally, as in this case, is suspect. If it granted Stern's requests, the federal court would effectively reverse the state court judgment, and thus "review [a] final judgment[ ] of a state court in judicial proceedings", contrary to *Rooker-Feldman.*

*Id.* Second, Stern moved for a temporary restraining order and a preliminary injunction, both of which "required him to demonstrate the likelihood of success on the merits and irreparable harm *to himself,* thus shifting the focus to the actions of the Supreme Court of Pennsylvania in his particular case." *Id.*

The Third Circuit also considered the fact that "as the proceedings continued, the veneer of the 'general challenge' became increasingly thin." *Id.* Stern pled extensive facts in his Complaint which were specific to his situation and argued in his appellate briefs that in disbarring him, the Pennsylvania Supreme Court violated his personal rights. *See Id.* at 213.

In marked contrast to ***Stern,*** the Third Circuit in *Centifanti v. Nix,* 865 F.2d 1422 (3d Cir.1989), reversed the district court's dismissal of petitioner's complaint for lack of subject matter jurisdiction on the ground that the complaint, fairly read, set forth a general challenge to procedural rules rather than an attempt to seek review of a state court judicial decision. Petitioner in *Centifanti* was a suspended attorney who had been denied reinstatement by the Supreme Court of Pennsylvania after receiving the unanimous recommendations of the Disciplinary Board and Hearing Committee. Centifanti sought declaratory and injunctive relief requiring the Supreme Court to provide reasons when denying a petition for reinstatement and to afford petitioners who had received favorable recommendations a hearing and the opportunity to submit briefs.

The Third Circuit noted that Centifanti, unlike Stern, sought prospective declaratory relief directed toward the rules and procedures for considering future petitions for reinstatement rather than toward the decision of the state supreme court on Centifanti's prior petition. Furthermore, Centifanti's demand for injunctive relief sought an order directing the defendant justices "to afford plaintiff and all similarly situated future petitioners for reinstatement Due Process prior to denial of their petitions." *Id.* at 1429. Because this type of injunctive relief did not require the federal court to interfere in any way with the decision of the Pennsylvania Supreme Court to deny his petition or with the enforcement of that decision, the Third Circuit concluded that the injunctive relief Centifanti requested, if granted, could only affect future decisions of the state supreme court and would not require review of a past decision.

***10** Having determined that Centifanti's complaint presented a general challenge to procedural rules rather than an attempt to seek review of a state court judicial decision, the Third Circuit then addressed the question of whether Centifanti's claims were inextricably intertwined with the merits of the state court's denial of his petition.

> While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Id.* at 1430 (quoting *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). The court concluded that Centifanti's federal claim was not inextricably intertwined with the state court judgment because "the district court could hold that the state rules in question violate the Constitution, without holding that the Pennsylvania Supreme Court erred in denying Centifanti's petition for reinstatement." *Centifanti,* 865 F.2d at 1430.

In sum, the *Rooker-Feldman* doctrine prevents the district court from exercising subject matter jurisdiction over challenges to state court judicial decisions in particular cases and general challenges

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

which are inextricably intertwined with the merits of those decisions. General constitutional challenges which are not inextricably intertwined with the merits of a state court judicial decision in a particular case are not precluded by *Rooker-Feldman.*

B. England Reservation

Before deciding the question whether plaintiff's Complaints raise general or particular challenges, the Court must address plaintiff's argument that *Rooker-Feldman* is inapplicable to the instant cases because, in accordance with *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411 (1964), she reserved the right to have her federal claims heard by a federal court. The Court concludes that plaintiff has misconstrued the scope of *England* and that such a reservation is not possible in plaintiff's situation.

Appellants in *England* were graduates of schools of chiropractic medicine who sought to practice in Louisiana without complying with the educational requirements of the Louisiana Medical Practice Act. Appellants brought suit against the Louisiana State Board of Medical Examiners in district court, seeking an injunction and a declaration that, as applied to them, the Louisiana statute violated the Fourteenth Amendment. A statutory three-judge court abstained and stayed proceedings in federal court pursuant to *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496 (1941), on the ground that the state court might effectively end the controversy by determining that chiropractors are not governed by the Louisiana Medical Practice Act. [FN23]

***11** The Supreme Court held that "if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then--whether or not he seeks direct review of the state decision in this Court--he has elected to forgo his right to return to the District Court." *England,* 375 U.S. at 419. The Court stated, however, that a litigant may preserve the right to return to federal court by "inform[ing] the state courts that he is exposing his federal claims there only for the purpose of complying with *Windsor,* and that he intends, should the state courts hold against him on the question of state law, to return to the District Court for disposition of his federal contentions." *Id.* at 421. [FN24]

Plaintiff first stated her intention to reserve her federal claims in her Petition for Expedited Review of the Adjudication Rendered by the Pennsylvania Board of Law Examiners. Plaintiff's petition contained the following statement: "Applicant/petitioner is exposing her federal claims here only for the purpose of complying with *Windsor,* and she intends, should this Honorable Court hold against her on the question of state law, to return to the U.S. District Court for disposition of her preserved federal contentions." Although this attempted reservation is in the form recommended by the Supreme Court in *England,* such a reservation is inapplicable to plaintiff's situation because the federal court did not abstain from deciding the instant cases.

In *England,* the Supreme Court discussed the procedure for a party to reserve his right "to return to District Court." *See Id.* at 417, 419. This right derives from the Supreme Court's conclusion that a party's right to litigate federal claims in federal court should not be denied because of a judicial abstention doctrine which seeks to obtain a state court decision on state law issues prior to deciding federal constitutional issues.

> There are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims. Such a result would be at war with the unqualified terms in which Congress, pursuant to constitutional authorization, has conferred specific categories of jurisdiction upon the federal courts, and with the principle that "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.... The right of a party

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiff to choose a Federal court where there is a choice cannot be properly denied."
*Id.* at 415.

In this case, plaintiff filed her first federal court action at the same time she filed her Petition for Expedited Review in the Pennsylvania Supreme Court. This Court did not abstain and, therefore, the rationale of *England* is totally inapposite. It is clear that plaintiff cannot create federal jurisdiction simply by stating her intention "to return to federal court." *See Feldman,* 460 U.S. at 481 n. 14 ("The fact that Feldman's counsel stated in the letter that he was prepared to pursue constitutional and antitrust challenges to the rule in federal district court if Feldman's petition was denied is irrelevant to a consideration of whether these issues were before the District of Columbia Court of Appeals. This case is not like *England,* which arose in the abstention context, and discussed a litigant's right to reserve his federal claims for consideration by a federal court even though he might be required to inform the state court of the nature of his federal claims so that a state statute could be construed in light of those claims.").

***12** Plaintiff, citing *Ivy Club v. Edwards,* 943 F.2d 270 (3d Cir.1991), *cert. denied,* 503 U.S. 914 (1992), argues that *Rooker-Feldman* is inapplicable when the *England* reservation is made. *Ivy Club,* however, was a case in which the plaintiff filed suit in federal court and that court abstained pursuant to *Pullman.* When the *England* reservation is *properly* made, as it was in *Ivy Club, Rooker-Feldman* has no application because the federal issues were never before the state court. However, when *England* itself is inapplicable because the federal court does not abstain from exercising its jurisdiction, invoking *England* cannot circumvent the limits on federal jurisdiction imposed by the *Rooker-Feldman* doctrine. *See Bernardsville Quarry v. Borough of Bernardsville,* 929 F.2d 927, 929 (3d Cir.) ("[A]n *England* reservation only applies where the district court abstains."), *cert. denied,* 502 U.S. 861 (1991).

C. Civil Action Number 93-2724

In Civil Action Number 93-2724, plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees arising out of the Board's decision not to allow her to sit for the February, 1993, bar exam because it determined that her character and general qualifications (other than scholastic) are incompatible with the standards expected to be observed by members of the bar of the Commonwealth of Pennsylvania. Plaintiff argues that her Second Amended Complaint is not barred by the *Rooker-Feldman* doctrine because it poses a general challenge to the state bar rules. The Court, however, disagrees and concludes that no subject matter jurisdiction exists over plaintiff's claims in Civil Action Number 93-2724 because they are, in essence, a thinly veiled attempt to obtain review of a final state court judgment in her particular case.

Viewing the relief sought by the Second Amended Complaint in Civil Action Number 93-2724, it is clear that a primary purpose of plaintiff's action is to recover damages against members of the Board of Law Examiners and the justices of the Pennsylvania Supreme Court. Because such relief focuses on past actions of the Board and the Pennsylvania Supreme Court and requires plaintiff to prove specific injury to herself, it is fundamentally inconsistent with plaintiff's argument that her Second Amended Complaint poses a general challenge to the constitutionality of certain bar rules. Like the claims for a temporary restraining order and preliminary injunction in ***Stern,*** plaintiff's claims for damages shift the focus of her Second Amended Complaint to her individual case before the Board and the Pennsylvania Supreme Court. *See* ***Stern,*** **840 F.2d at 212.** Such an inquiry is barred by *Rooker-Feldman.*

Plaintiff's Second Amended Complaint in Civil Action Number 93-2724 also seeks injunctive relief "enjoining [the Board] forever from denying petitioner's [sic] permission to sit for the Pennsylvania bar examination without due process and equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and from outrightly violating plaintiff's civil and constitutional rights." This conditional

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

demand for injunctive relief, like the demand for injunctive relief in ***Stern,*** is inconsistent with a general challenge to the procedural rules for admission to the Pennsylvania Bar because, if granted, it would effectively reverse the state court judgment and thus constitute a review of a final judgment of a state court in judicial proceedings, contrary to *Rooker-Feldman.* The Board determined that plaintiff does not possess the requisite character to sit for the Pennsylvania bar exam and plaintiff's petition for review of that determination was denied by the Pennsylvania Supreme Court. This Court, therefore, is without authority to issue an injunction, even conditionally, which prevents the Board from enforcing its decision.

*13 Plaintiff's claim for injunctive relief is unlike the injunctive relief allowed in *Centifanti* because it does not seek prospective relief on behalf of plaintiff and all similarly situated future applicants. Plaintiff's claim for injunctive relief is directed only at herself and, if granted, would directly interfere with the enforcement of the Pennsylvania Supreme Court's decision not to allow her to sit for the Pennsylvania bar exam.

> In contrast to the injunction sought in ***Stern,*** Centifanti seeks to enjoin the Justices to direct that they "afford *plaintiff and all similarly situated future petitioners for reinstatement* Due Process prior to the denial of their petitions." Centifanti argues, and we agree, that the complaint's joint reference to Centifanti "and all similarly situated future petitioners" indicates that he seeks *prospective* relief. He does not request the district court to interfere in any way with the decision of the Pennsylvania Supreme Court to deny his petition, or with the enforcement of that decision. Instead, he requests an injunction ordering the state court to correct alleged constitutional defects in the procedural rules applied in reaching that decision. Although such relief, if granted, could affect *future* decisions of the state supreme court, it would not require review of a past decision.

*Centifanti,* 865 F.2d at 1430 (emphasis in original).

Finally, as in ***Stern,*** the **"veneer of the 'general challenge' became increasingly thin"** as the proceedings continued beyond the filing of plaintiff's original Complaint. ***Stern,*** **840 F.2d at 212.** Plaintiff's filings with the Court contain diatribes against the Board and the Pennsylvania Supreme Court which set forth extensive facts related to the impropriety of the Board determination in her individual case. *See, e.g., Supplement to Plf.'s Opp'n to Defs.' Mot. to Dismiss* at 7-8 ("The Highlights of the Parade of Horribles") (discussing the improprieties involved in plaintiff's adjudication before the Board and appeal to the Pennsylvania Supreme Court), 9-13 ("A Sham Notice of Utterly-imaginary Charges at Glance") (discussing the February 4, 1993, letter from Mr. Tassos and juxtaposing excerpts from his subsequent testimony at the Board adjudication), 13-16 ("One Dozen of Examples of Perjured Testimony") (setting forth extensive passages from plaintiff's Board adjudication), 17-20 ("A Handful of Examples of an Outright Fraud upon the Court: the Adjudication") (comparing "False & Fantastic Findings of Fact" at plaintiff's Board adjudication with "Factual Reality"). As the Third Circuit noted in ***Stern,*** such individualized factual detail hardly would have been necessary if the district court were being asked only to assess the validity of a bar rule in its general application.

Plaintiff attempts to genuflect to the *Rooker-Feldman* doctrine by including a claim for declaratory relief, which, on its face, appears to assert a permissible, general challenge to the bar admission rules. However, it is apparent from the other relief requested and the extensive factual detail contained in plaintiff's submissions that, taken as a whole, plaintiff's Second Amended Complaint in Civil Action Number 93-2724 is, in reality, a prohibited attempt to reverse the state court judgment. Accordingly, the Court concludes that plaintiff's Second Amended Complaint in Civil Action Number 93-2724 is barred by *Rooker-Feldman* and must be dismissed for lack of subject matter jurisdiction. *See, e.g., Triffin v. Nix,* No. 93-5519, 1994 WL 156695 (E.D.Pa. April 27, 1994), *aff'd,* 43 F.3d 1463 (3d Cir.1994).

D. Civil Action Number 93-1998

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***14** Unlike the actions at issue in Civil Action Number 93-2724, the actions of the Board which form the basis for plaintiff's claims in Civil Action Number 93-1998 were not the subject of a petition before the Pennsylvania Supreme Court and did not result in a Pennsylvania Supreme Court order. Accordingly, plaintiff argues that because there was no "*final* adjudication of the matter in the state [sic] highest court," *Rooker-Feldman* does not apply. The Court rejects plaintiff's argument and concludes that *Rooker-Feldman* applies to plaintiff's claims in Civil Action Number 93-1998 because the Board of Law Examiners is essentially the agent of the Pennsylvania Supreme Court and plaintiff has failed to pursue available channels of state court review.

In *Thomas v. Kadish,* 748 F.2d 276 (5th Cir.1984), *cert. denied,* 473 U.S. 907 (1985), petitioner, an applicant who had been denied admission by the Texas Board of Law Examiners, did not seek state court review but instead challenged the denial by filing a § 1983 action in district court. Thomas argued that *Rooker-Feldman* did not apply because the decision of the Texas Board of Law Examiners was an administrative agency rather than a court and that, under *Patsy v. Board of Regents,* 457 U.S. 496 (1982), he was not required to exhaust state administrative remedies before bringing a constitutional claim in federal court. The Fifth Circuit rejected these arguments for two reasons. First, the Texas Board of Law Examiners was exercising authority on behalf of the Texas Supreme Court, which had promulgated the rules governing the Board's activities and appointed the Board's nine members. And second, Thomas had failed to pursue available channels of state court review.

> [T]he Texas state supreme court has itself provided for a method of judicial review of the Board's denial of fitness. A rejected applicant's deliberate bypass of those procedures that envisioned (ultimately) a reviewable final state-court judgment, itself under *Feldman* not subject to federal district-court review, should not, it would seem, entitle the applicant to a review of his constitutional claims by a federal district court that would have been unavailable to him if he had pursued his claim to final state court judgment. Under *Feldman,* 'a petitioner's failure to raise his constitutional claims in state court does not mean that a United States District Court should have jurisdiction over the claims,' ... and 'by failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court.'

*Thomas,* 748 F.2d at 282.

The Court finds the analysis in *Thomas* instructive and concludes that the Pennsylvania Board of Law Examiners is exercising authority on behalf of the Pennsylvania Supreme Court pursuant to that court's rules, standards, and procedures. The exclusive power to regulate admission to the bar and the practice of law is conferred on the Pennsylvania Supreme Court by Article V, Section 10(c) of the Pennsylvania Constitution and 42 Pa.Cons.Stat.Ann. § 1722(a)(1). The Pennsylvania Supreme Court has delegated that power to the Pennsylvania Board of Law Examiners, which consists of seven members of the Pennsylvania bar appointed for three year terms by the Supreme Court. The Pennsylvania Supreme Court has also promulgated the rules governing the Board's activities. *See* Pa.B.A.R. 103. In short, the Board has no independent authority and acts on the Supreme Court's behalf. *Cf. Scott v. Flowers,* 910 F.2d 201 (5th Cir.1990) (refusing to apply *Rooker-Feldman* to suit involving Texas Commission on Judicial Conduct because the Commission, unlike the Texas Board of Law Examiners, cannot be regarded as the agent of the state court system).

***15** Furthermore, the Court concludes that plaintiff has failed to pursue available channels of state court review. According to Pa.B.A.R. 222(a), "any final determination of the Board may be reviewed by the Supreme Court." Rather than petitioning the Pennsylvania Supreme Court for review of the Board's decision not to allow her to re-apply while she was appealing the denial of her prior application, plaintiff chose to challenge the Board's action in federal court. If plaintiff had petitioned the Pennsylvania Supreme Court for review of the Board's decision, that final judgment of the Pennsylvania Supreme Court would not have been reviewable in federal court. Plaintiff cannot

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

circumvent the *Rooker-Feldman* doctrine by failing to petition for review in the Pennsylvania Supreme Court. *See Port Authority Police Benevolent Ass'n, Inc. v. Port Authority of New York and New Jersey Police Dep't,* 973 F.2d 169, 177 (3d Cir.1992) (holding that federal district courts are precluded by *Rooker-Feldman* from reviewing decisions of lower state courts because they are subject to correction and modification within the state court system).

Plaintiff argues that even if *Rooker-Feldman* applies to Civil Action Number 93-1998, this Court has subject matter jurisdiction over her claims because she is making a general challenge to certain procedural bar rules and policies and is not attempting to obtain review of a state court judgment in her particular case. The Court rejects plaintiff's argument for the same reasons stated with respect to Civil Action Number 93-2724.

In Civil Action Number 93-1998, plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees based on the Board's decision not to allow her to sit for the July, 1993, and February, 1994, bar exams because she was currently appealing the Board's denial of her application to sit for the February, 1993, bar exam and did not supply the Board any significant, new character information. Plaintiff's claims for compensatory and punitive damages are inconsistent with a general challenge to the procedural rules and policies for permission to sit for the Pennsylvania bar exam because, like her claims for damages in Civil Action Number 93-2724, they require her to show injury to herself, thus shifting the focus of these claims to the actions of Board of Law Examiners.

Plaintiff's claim for injunctive relief seeks an order "enjoining [the Board] from forever rejecting petitioner's applications for permission to sit for the Pennsylvania bar examination without due process and equal protection of the law." Like the injunctive relief requested in Civil Action Number 93-2724, this requested relief is inconsistent with a general challenge to the procedural rules and policies for permission to sit for the Pennsylvania bar exam because it only seeks relief on behalf of plaintiff and, if granted, it would effectively reverse the decision of the Board of Law Examiners, an arm of the Pennsylvania Supreme Court, contrary to *Rooker-Feldman.*

***16** Finally, as in Civil Action Number 93-2724, the veneer of the general challenge wore increasingly thin as the proceedings progressed. Shortly after filing her original Complaint in Civil Action Number 93-1998, plaintiff moved for a Temporary Restraining Order and Preliminary Injunction, relief which the Third Circuit explicitly stated was inconsistent with a general challenge because it requires demonstration of the likelihood of success on the merits and irreparable harm to the individual plaintiff. *See* ***Stern,*** **840 F.2d at 212.** Moreover, as in Civil Action Number 93-2724, plaintiff filed extensive factual submissions in Civil Action Number 93-1998 regarding her individual case and the impropriety of actions taken against her by the Board and the Pennsylvania Supreme Court. Accordingly, the Court concludes that, like the Second Amended Complaint in Civil Action Number 93-2724, plaintiff's Third Amended Complaint in Civil Action Number 93-1998 is barred by *Rooker-Feldman* and must be dismissed for lack of subject matter jurisdiction. *See, e.g., Triffin v. Nix,* No. 93-5519, 1994 WL 156695 (E.D.Pa. April 27, 1994), *aff'd,* 43 F.3d 1463 (3d Cir.1994).

IV. Conclusion

Because the Court concludes that it has no subject matter jurisdiction over the instant cases, defendants' Motion to Dismiss Plaintiff's Complaints will be granted and defendants' alternative Motions will be denied as moot. An appropriate Order follows.

*ORDER*

AND NOW, to wit, this 30th day of August, 1995, upon consideration of Defendants' Motion to Dismiss Plaintiff's Complaints/for Summary Judgment Pursuant to Federal Civil Rules 12(b)(1) and (6) and 56(b) or, in the Alternative, for More Definite Statement Pursuant to Rule 12(e) (Document No. 93, Civil Action Number 93-1998),

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Defendants' Supplemental Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaints/for Summary Judgment (Document No. 90, Civil Action Number 93-1998; Document No. 28, Civil Action Number 93-2724), Plaintiff's Opposition to Defendants' [Third] Motion to Dismiss, Filed on April 15, 1994 (Document No. 169, Civil Action Number 93-1998), Plaintiff's Opposition to Defendants' [Third] Motion to Dismiss, Filed on April 15, 1994 (Document No. 90, Civil Action Number 93- 2724), Defendants' Reply Memorandum in Support of Motion to Dismiss/for Summary Judgment (Document No. 171, Civil Action Number 93-1998), Supplement to Plaintiff's Opposition to Defendants' [Third] Motion to Dismiss (Document No. 174, Civil Action Number 93-1998; Document No. 93, Civil Action Number 93- 2724), Plaintiff's Surreply to Defendants' Reply Memorandum in "Support" of Their Third Motion to Dismiss, Filed on April 15, 1994 (Document No. 176, Civil Action Number 93-1998; Document No. 94, Civil Action Number 93-2724), Plaintiff's Amended Surreply to Defendants' Reply Memorandum in "Support" of Their Third Motion to Dismiss, Filed on April 15, 1994 (Document No. 180, Civil Action Number 93-1998), Plaintiff's Notice of Intention to File with the Court Essential Claims Against Defendants and Other Co-Culprits (Document No. 190, Civil Action Number 93-1998), Defendants' Memorandum in Opposition to Plaintiff's Notice of Intention to File with the Court Essential Claims Against Defendants and Other Co-Culprits (Document No. 191, Civil Action Number 93- 1998; Document No. 99, Civil Action Number 93-2724), Defendants' Supplement to Exhibits Submitted with Motion to Dismiss/for Summary Judgment Filed April 15, 1995 (Document No. 192, Civil Action Number 93-1998; Document No. 100, Civil Action Number 93-2724), Plaintiff's Modification of July 31, 1995, Notice (Document No. 193, Civil Action Number 93-1998), Plaintiff's Supplemental Response to Defendants' Recent Supplementation Purportedly Submitted (on August 10, 1995) in "Further Support" of their [Third] Motion to Dismiss, Filed on April 15, 1994 (Document No. 194, Civil Action Number 93-1998), and Plaintiff's [Revised] Supplemental Response to Defendants' Recent Supplementation Purportedly Submitted (on August 10, 1995) in "Further Support" of their [Third] Motion to Dismiss, Filed on April 15, 1994 (Document No. 195, Civil Action Number 93-1998), IT IS ORDERED that, for the reasons set forth in the accompanying Memorandum, Defendants' Motion to Dismiss Plaintiff's Complaints is GRANTED and defendants' alternative Motions for Summary Judgment and for More Definite Statement are DENIED AS MOOT. Plaintiff's Third Amended Complaint in Civil Action Number 93-1998 and plaintiff's Second Amended Complaint in Civil Action Number 93-2724 are DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

FN1. Defendants' Motion seeks to dismiss plaintiff's Third Amended Complaint in Civil Action Number 93-1998 and plaintiff's Second Amended Complaint in Civil Action Number 93-2724.

FN2. The facts are set forth in the various submissions of the parties and are included in this Memorandum in order to relate the chronology of events underlying the two cases. The decision of the Court is based on plaintiff's Complaints--the Third Amended Complaint in Civil Action Number 93-1998 and the Second Amended Complaint in Civil Action Number 93-2724.

FN3. Pa.B.A.R. 203 provides in part:
RULE 203. ADMISSION OF GRADUATES OF ACCREDITED AND UNACCREDITED INSTITUTIONS
(a) Bar Examination. The general requirements for permission to sit for the bar examination are:

* * *

(3) Absence of prior conduct by the applicant which in the opinion of the Board indicates character and general qualifications (other than scholastic) incompatible with the standards expected to be observed by members of the bar of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

this Commonwealth.

FN4. Pa.B.A.R. 222 provides in part:
RULE 222. REVIEW OF OTHER BOARD DETERMINATIONS
(a) General Rule. Except as prescribed by Rule 221 (relating to marking of bar examination papers) any final determination of the Board may be reviewed by the Supreme Court.
(b) Preliminary Procedures. Any person desiring to seek judicial review of a determination of the Board shall, within 30 days after service of notice of such determination, file with the Board a written notice of intention to seek judicial review thereof. Not later than 60 days after the filing of such notice the Board shall enter and serve:
(1) A formal adjudication complying with the provisions of Rule 1925 of the Pennsylvania Rules of Appellate Procedure (relating to opinion in support of order).
(2) A list of all documents, transcripts or testimony, if any, exhibits and other materials comprising the record before the Board in the matter.
(c) Filing Petition for Review. The entry of the formal adjudication as prescribed in Subdivision (b) of this rule shall be deemed the entry of a quasi-judicial order for the purposes of the Pennsylvania Rules of Appellate Procedure and a petition for review of such order may be filed with the Prothonotary within the time and in the manner prescribed by such rules. Upon service of the petition for review the Board shall forthwith file the record in the matter with the Prothonotary.

* * *

(f) Review and Action by Supreme Court. The Supreme Court shall review the record and enter an appropriate order. Unless otherwise ordered, matters arising under these rules will be considered without oral argument.

FN5. On August 17, 1993, plaintiff called the Pennsylvania Board of Law Examiners to request an application form for permission to sit for the February, 1994, bar exam. By letter dated August 17, 1993, Ms. Sturchio informed plaintiff that "at the present time, since the denial of your previous application for admission is still on appeal, you are not entitled to file another application for permission to sit for the bar examination."

FN6. On April 15, 1993, plaintiff also initiated proceedings in this Court by filing a Petition for Leave to Proceed *In Forma Pauperis* in Civil Action Number 93-1998. *See infra* Section II.

FN7. Pa.B.A.R. 221 provides as follows:
RULE 221. MARKING OF BAR EXAMINATION PAPERS
The marking of the bar examination paper of an applicant by the Board shall be final and shall not be subject to judicial review.

FN8. On May 21, 1993, plaintiff also initiated proceedings in her second action in this Court by filing a Petition for Leave to Proceed *In Forma Pauperis* in Civil Action Number 93-2724. *See infra* Section II.

FN9. Plaintiff filed an Amended Petition for Leave to Proceed *In Forma Pauperis* and a Second Amended Petition for Leave to Proceed *In Forma Pauperis* on April 22, 1993, and July 23, 1993, respectively. The Court denied both Petitions by Order dated August 2, 1993.

FN10. By Order dated July 2, 1993, the Court denied plaintiff's Petition for Leave to Proceed *In Forma Pauperis* in Civil Action Number 93- 2724. On July 19, 1993, plaintiff filed an Amended Petition for Leave to Proceed *In Forma Pauperis* in Civil Action Number 93-2724, which the Court denied by Order dated July 30,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1993. Plaintiff paid the required filing fee and filed her Complaint in Civil Action Number 93-2724 on October 8, 1993.

FN11. The Court inadvertently failed to enter an Order on July 2, 1993, with respect to plaintiff's Motion for Temporary Restraining Order. By Order dated December 10, 1993, the Court amended its July 2, 1993, Order and denied plaintiff's Motion for Temporary Restraining Order as moot.

FN12. Ms. Anderson served as the Secretary/Treasurer of the Board of Law Examiners for twelve years and at the time of her appointment represented applicants before the Board.

FN13. The positions of the parties regarding settlement is included in the Memorandum for background purposes and was *not* relied upon by the Court in deciding the issues presented by defendants' Motion to Dismiss.

FN14. Pa.B.A.R. 211 provides as follows:
RULE 211. SUBMISSION OF APPLICATION TO THE BOARD
An applicant for admission to the bar shall file with the Board a written application, in the form of a verified statement, in the form and at the time prescribed by the Board, setting forth those matters which the Board deems necessary, including information pertaining to character, education and prior employment, and shall pay any application fee fixed by the Board therefor.

FN15. Board Policy 203(a)(3)-92.1 was adopted on February 3, 1992, and provides as follows: *Re-application after denial under Rule 203(a)(3).*
When the Board has previously denied an application on the grounds that the applicant has failed to meet the requirements of Rule 203(a)(3) (character and general qualifications other than scholastic), it is the policy of the Board to deny a subsequent application which does not contain significant new information relating to the applicant's qualifications which were at issue in his or her previously denied application, and which was previously unavailable to the applicant. The Board's consideration of the subsequent application will be limited to the significant new information.

FN16. Article V, § 9, of the Pennsylvania Constitution provides as follows:
§ 9. Right of appeal
There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

FN17. Pa.B.A.R. 104 provides in part:
RULE 104. PENNSYLVANIA BOARD OF LAW EXAMINERS
(a) General Rule. The Supreme Court shall appoint a board to be known as the "Pennsylvania Board of Law Examiners" which shall consist of seven members of the bar of this Commonwealth, one of whom shall be designated by the Court as Chairman and another as Vice-Chairmen [sic]. Judges shall be eligible for appointment to the Board.

* * *

(c) Powers and Duties. The Board shall have the power and duty:
(1) To appoint an Executive Director, Counsel, and such other officers and staff as may from time to time be required to perform properly the functions prescribed by orders of the Court and these rules.
(2) To adopt rules pertaining to the admission to the bar and the practice of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

law not inconsistent with these rules. Such rules may provide for the delation to one or more members of the Board, or to a hearing officer appointed by the Board, of the functions of the Board under Rule 213 (relating to hearings before the Board).
(3) To recommend the admission of persons to the bar and the practice of law.
(4) To exercise the powers and perform the duties vested in and imposed upon the Board by law.
The Board shall have broad and plenary power to act within the jurisdiction committed to it as justice may require.

FN18. Pa.B.A.R. 212 provides as follows:
RULE 212. CONSIDERATION BY THE BOARD
The Board shall review the application of the applicant and may use such other means of investigation as it deems best to determine the fitness and qualifications of the applicant.

FN19. Pa.B.A.R. 213 provides as follows:
RULE 213. HEARINGS BEFORE THE BOARD
(a) General Rule. If, upon an initial review of an application filed under these rules and of any other related information available to the Board, the Board, through the Executive Director, finds that the applicant does not appear to possess the fitness and general qualifications (other than scholastic) requisite for a member of the bar of the Commonwealth, the Executive Director shall forthwith give the applicant notice of such finding in the manner prescribed by the Board rule, and of the right of the applicant to request in writing, within thirty (30) days of the denial, a hearing before the Board.
(b) Hearing. Within 30 days after receipt of the request of an applicant for a hearing under this rule the Board shall hold a hearing at which the applicant shall be present. The applicant may be represented by counsel at the hearing. The applicant and Counsel of the Board may subpoena and examine witness and offer such evidence as may be necessary for the Board to make a final determination upon the application. At any such hearing, Counsel of the Board shall present in full the facts upon which the initial adverse finding was based and shall make available to the applicant and his or her counsel for inspection such portion of the record of the applicant bearing upon the issues before the Board as does not constitute confidential information or work product of the Executive Director or Counsel of the Board. If requested by applicant, a stenographic or other verbatim record shall be made of any such hearing, but hearings before the Board shall not be open to the public.

FN20. Two related matters, which are not addressed by the instant Memorandum, are currently pending in this Court. First, on September 20, 1994, plaintiff filed a Petition, with Incorporated Memorandum, Directed to the Chief Judge of this Court, for an Order Waiving in Part Local Rule 11(a) and Permitting Application to be Made Under Said Rule. Plaintiff seeks, in essence, an exemption from the requirement that an attorney be a member in good standing of the bar of the Supreme Court of Pennsylvania in order to practice in this Court. By Order dated September 22, 1994, Chief Judge Cahn transferred that Petition to this Court as a related case. Second, on August 16, 1995, plaintiff filed a Complaint in Civil Action Number 95-5265 against the current justices of the Pennsylvania Supreme Court, current members and employees of the Pennsylvania Board of Law Examiners and the Board itself, the Pennsylvania Bar Association, the National Conference of Bar Examiners, the Bar of the Commonwealth of Pennsylvania a/k/a the Disciplinary Board of the Supreme Court of Pennsylvania, and the American Bar

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Association. Plaintiff's Complaint in Civil Action Number 95-5265 alleges, *inter alia,* that she was discriminated against on the basis of ethnic, national and religious bases and seeks damages and declaratory and injunctive relief and alleges violations of the Sherman Act, 15 U.S.C. § 1, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* and 42 U.S.C. §§ 1981, 1983, 1985(2), 1985(3).

FN21. 28 U.S.C. § 1257 provides as follows:
§ 1257. State courts; certiorari
(a) Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn into question or where the validity of a statute of any State is drawn into question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.
(b) For the purposes of this section, the term "highest court of a State" includes the District of Columbia Court of Appeals.

FN22. Plaintiff does not dispute the fact that the adjudication by the Pennsylvania Board of Law Examiners and the subsequent review by the Pennsylvania Supreme Court are "judicial" rather than "administrative" proceedings. *See Feldman,* 460 U.S. at 477-79 (holding that proceedings of District of Columbia Court of Appeals denying petition for waiver of bar rules was judicial in nature).

FN23. According to *Pullman,* a federal court under a duty to accept jurisdiction may abstain and stay federal proceedings until the completion of state court proceedings to decide an issue of state law which might moot a federal constitutional question. *See ACS Enterprises, Inc. v. Comcast Cablevision, L.P.,* No. 93-2076, 1994 WL 185046 (E.D.Pa. May 12, 1994), *aff'd,* 60 F.3d 813 (3d Cir.1995).

FN24. The Supreme Court has construed its holding in *Government & Civic Employees Org. Comm., C.I.O. v. Windsor,* 353 U.S. 364 (1957), as requiring a litigant whose federal case is stayed under *Pullman* pending a resolution of state issues to inform the state court of his federal claims so that the state court can decide the state issues "in light of those claims." *See England,* 375 U.S. at 420.

Not Reported in F.Supp., 1995 WL 517646 (E.D.Pa.), 7 NDLR P 139

**Motions, Pleadings and Filings (Back to top)**

- 2:93cv02724 (Docket) (May. 21, 1993)
- 2:93cv01998 (Docket) (Apr. 15, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.