**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JOSEPH N. GIELATA,<br><br>　　　　　*Plaintiff*,<br><br>　　　　v.<br><br>ANDREA L. ROCANELLI, individually and in her official capacity as Chief Counsel of the Office of Disciplinary Counsel for the Supreme Court of Delaware, and THE OFFICE OF DISCIPLINARY COUNSEL FOR THE SUPREME COURT OF DELAWARE,<br><br>　　　　　*Defendants*. | Civil Action No. 05-567 GMS |

**COMPENDIUM OF UNREPORTED DECISIONS CITED IN
PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

A. 　*Roadcloud v. Pa. Bd. of Probation & Parole*,
　　　No. 05-3787, 2006 WL 83453 (E.D. Pa. Jan. 6, 2006)

B. 　*Watkins v. Pa. Bd. of Prob. and Parole*,
　　　No. 02-2881, 2002 WL 32182088 (E.D. Pa. Nov. 25, 2002)



Slip Copy
Slip Copy, 2006 WL 83453 (E.D.Pa.)
**(Cite as: 2006 WL 83453 (E.D.Pa.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Victoria ROADCLOUD, et al.
v.
PENNSYLVANIA BOARD OF PROBATION AND PAROLE, et al.
**No. 05-3787.**

Jan. 6, 2006.

Robert J. Sugarman, Philadelphia, PA, for Victoria Roadcloud, Henry Williams, Carmen Clemente, Martha Holman and Dionne Drayton.

Randall J. Henzes, Kevin R. Bradford, Office of the Attorney General, Philadelphia, PA, for Pennsylvania Board of Probation & Parole, Gary Sicchatano, Maria Marcinko, Willie Jones and Mark Weinstein.

Jodeen M. Hobbs, Miller, Alfano & Raspani, P.C., Philadelphia, PA, for Pennsylvania Board of Probation & Parole, Gary Sicchatano, Maria Marcinko, Willie Jones, Mark Weinstein and Daniel Solla.

Gino J. Benedetti, Joshua E. Scarpello, Miller Alfano & Raspanti PC, Philadelphia, PA, for Daniel Solla.

*MEMORANDUM AND ORDER*

KAUFFMAN, J.

**\*1** Plaintiffs Victoria Roadcloud ("Roadcloud"), Henry Williams ("Williams"), Carmen Clemente ("Clemente"), Martha Holman ("Holman") and Dianne Drayton ("Drayton") (collectively, "Plaintiffs") bring this action for violations of 42 U.S.C. § 1983 (" § 1983") (Count One), 42 U.S.C. § 1981 (" § 1981") (Count Two), and Article I, § 26 of the Pennsylvania Constitution (Count Six) [FN1] against Defendants Pennsylvania Board of Probation and Parole ("the Board"), Gary Sicchatano ("Sicchatano"), Maria Marcinko ("Marcinko"), Willie Jones ("Jones"), Daniel Solla ("Solla") and Mark Weinstein ("Weinstein") (collectively "Defendants"). [FN2] Now before the Court are three Motions to Dismiss: (1) by the Board, (2) by Sicchatano, Marcinko, Jones and Weinstein, and (3) by Solla. For the reasons that follow the Motions will be granted.

> FN1. The Complaint omits Counts Three, Four, and Five.

> FN2. The Complaint is silent as to whether Plaintiffs are suing Sicchatano, Marcinko, Jones, Solla, Weinstein in their individual or official capacities. For the purpose of this opinion, the Court will assume Plaintiffs intended the former. In any event, claims against the individual defendants in their official capacities would be governed by the Court's analysis of Plaintiffs' claims against the Board.

I. BACKGROUND

Accepting for purposes of the Motions to Dismiss the truth of the allegations in the Complaint, the relevant facts are as follows. Plaintiffs are current and former employees of the Board and are all either African-American or Hispanic. Complaint ¶ 12. The Board is an agency of the Commonwealth of Pennsylvania. Defendants Sicchatano, Marcinko, Jones, Weinstein and Solla hold various managerial/supervisory positions with the Board. Id. ¶ ¶ 7-11. The gravamen of the Complaint is that beginning in 1998, Defendants engaged in a pattern of racial discrimination against Plaintiffs, including disparate treatment, retaliation, and the creation of "a sham investigative group entitled 'Office of Professional Responsibility." ' *See Id.* ¶ ¶ 13-26.

II. LEGAL STANDARD

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. *Jordan v. Fox. Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.1985). A Rule 12(b)(6) motion will be granted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                Page 2
Slip Copy, 2006 WL 83453 (E.D.Pa.)
**(Cite as: 2006 WL 83453 (E.D.Pa.))**

only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir.1988).

III. ANALYSIS

A. The § 1981 claims

Plaintiffs have brought claims under § 1981 against all Defendants. Section 1981, as amended, provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other.

42 U.S.C. § 1981. Defendants are not at this stage of the proceeding challenging whether the conduct Plaintiffs have alleged constitutes a violation of § 1981; rather, their contention is that there is no private right of action under § 1981. They base their argument mainly on *Jett v. Dallas Independent School District,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

**\*2** The plaintiff in *Jett,* like Plaintiffs here, asserted a claim under § 1981. Recognizing that the language of § 1981 does not establish a cause of action, the plaintiff in *Jett* argued that the Supreme Court should "create or imply" one. The Court declined on the grounds that doing so would contravene Congress' intention that "the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violations of the rights declared in § 1981." [FN3] *Jett,* 491 U.S. at 731. Accordingly, the Court held "that the express 'action at law' provided by § 1983 ... provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Id.* at 736.

> FN3. 42 U.S.C. § 1983 provides in pertinent part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Defendants read *Jett* to require the dismissal of Plaintiffs' § 1981 claims. Plaintiffs offer two arguments to the contrary:

1. *The § 1981 Claim against the Board*

Plaintiffs seek to salvage their § 1981 claim against the Board with a narrow reading of *Jett:* that the Court's holding was limited to defendants who could be reached by § 1983. Essentially, Plaintiff's argument is that *Jett* is distinguishable from the facts in this case. The defendants in *Jett,* a school district and a school principle, were indisputably subject to suit under § 1983. *See Monell v. New York City Dept. Of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In contrast, the Board, as a state agency, is not. *Will v. Michigan Dep't. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

That distinction matters, Plaintiffs argue, because the *Jett* Court's holding was premised on the availability of a remedy under § 1983. The Court declined to imply a remedy under § 1981 out of deference to Congress' intention that § 1983 serve as the remedy for violations of § 1981. That logic, Plaintiffs argue, applies only so long as the defendants in question are susceptible to suit under § 1983. Where, as in this case, the defendant is not subject to suit under § 1983, there should be no bar to implying a cause of action, since doing so would not undermine Congressional intent. Plaintiffs would thus read *Jett* as holding that there is no cause of action under § 1981 against defendants subject to a § 1983 suit. Where, however, the entity alleged to have violated rights protected under § 1981 is not susceptible to suit under § 1983, a cause of action under § 1981 should be implied.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                              Page 3
Slip Copy, 2006 WL 83453 (E.D.Pa.)
**(Cite as: 2006 WL 83453 (E.D.Pa.))**

This reading of *Jett* does not survive scrutiny. First, the language the Court employed suggests that its holding was meant to reach state governments, not merely individuals acting under color of state law. Jett, 491 U.S. at 733 ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by *state governmental units* [.]") (emphasis added).

Second, the principle behind the *Jett* decision is deference to Congressional intent: Congress created § 1983 as a remedy for violations of § 1981 and the *Jett* Court was guided by the need to avoid implying a cause of action that would replace or alter that remedy. Thus, in assessing Plaintiffs' argument that *Jett* does not preclude the implication of a cause of action against state governments under § 1981, the central consideration is whether such a cause of action would be consistent with Congressional intent. Plaintiffs' argument that a cause of action under § 1981 may be implied assumes that Congress was indifferent to the liability of state governments when it adopted § 1983.

**\*3** That is an erroneous assumption. In addition to deciding who would be liable under § 1983, Congress also decided who would not. Thus, when it enacted § 1983, Congress made the deliberate choice to exclude state governments and their agencies from liability. Will, 491 U.S. at 66. To the extent that Congress understood § 1983 as a means of enforcing § 1981, implying a cause of action under § 1981, as Plaintiffs urge, would be tantamount to ignoring that Congressional choice. That is something this Court must not do. Jett, 491 U.S. at 732 ("[W]hatever the limits of the judicial power to imply or create remedies, it has long been the law that such power should not be exercised in the face of an express decision by Congress concerning the scope of remedies available under a particular statute."). Neither the language nor the reasoning in *Jett* supports Plaintiffs' narrow reading. Accordingly, the Court concludes that Plaintiffs lack a cause of action against the Board. [FN4]

> FN4. The same analysis would apply to any § 1981 claims Plaintiffs are asserting against the individual defendants in their official capacities.

2. *The § 1981 Claims against the Individual Defendants*

Plaintiffs concede that *Jett* does apply to the individual defendants because they are subject to suit under § 1983. They argue, however, that *Jett* has now been overruled by the 1991 amendments to the Civil Rights Act (the "1991 Amendments"), which, Plaintiffs contend, created a cause of action under § 1981.

Courts are divided as to the effect of the 1991 Amendments. At present, there is a conflict both among the circuits and courts in this district. The Third Circuit has not yet ruled on this issue. [FN5] However, this Court has held that the 1991 Amendments did not overrule *Jett,* and that § 1983 remains the exclusive remedy for violations of § 1981 by a state actor. *See* Carlton v. City of Philadelphia, 2004 WL 633279, at \*5 (E.D.Pa. Mar.30, 2004) (Kauffman, J.). Accordingly, Plaintiffs' § 1981 claims will be merged with their § 1983 claims.

> FN5. The Ninth Circuit has held that the 1991 Amendments create an implied right of action against state actors under § 1981. § 1983 remains the exclusive remedy for violations of § 1981 by state actors. Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir.1995); Johnson v. City of Fort Lauderdale, 903 F.Supp. 1520 (S.D.Fla.1995), *aff'd* 114 F.3d 1089 (11th Cir.1997). District courts within the Eastern District of Pennsylvania are divided on this issue. *See* Poli v. SEPTA, 1998 WL 405052, at \*12 (E.D.Pa. July 7, 1998) (following the holding in *Jett* that § 1983 is the exclusive remedy for violations of § 1981); *Watkins v. Penn. Bd. of Probation and Parole,* 2002 U.S. Dist. LEXIS 23504 (E.D.Pa. Nov. 25, 2002) (adopting the Ninth Circuit's view that there is a private right of action under § 1981).

B. *The § 1983 Claims*

Plaintiffs concede that in light of *Will,* their § 1983 claim against the Board must be dismissed. *See* Will, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (holding that § 1983 does not provide a cause of action against state governments and their agencies).

Plaintiffs also concede that only Plaintiffs Clemente and Drayton have § 1983 claims against Solla. *See* Brief in Opposition to Motion to Dismiss at 14. The § 1983 claims against Solla by Plaintiffs Roadcloud, Holman, and Williams will therefore also be dismissed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                           Page 4
Slip Copy, 2006 WL 83453 (E.D.Pa.)
**(Cite as: 2006 WL 83453 (E.D.Pa.))**

Finally, Sicchatano, Marcinko, Jones and Weinstein argue that Williams' § 1983 claim against them is barred by the applicable statute of limitations. The statute of limitations period governing a § 1983 claim is determined by reference to the limitations period for a personal injury action in the forum state. *Wilson v. Garcia,* 471 U.S. 261, 276-80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Accordingly, in this case, the applicable statute of limitations period is two years. *See* 42 Pa. Cons.Stat. § 5524; *Garving v. City of Philadelphia,* 354 F.3d 215, 220 (3d Cir.2003).

**\*4** The two-year statute of limitations for Williams' claim, which alleges constructive discharge, began to run in 1998, when he left employment at the Board. *See Genty v. Resolution Trust Corp.,* 937 F.2d 899, 919 (3d Cir.1991) (holding that a § 1983 cause of action accrues on the date when a plaintiff knew or should have known his or her rights had been violated). However, Williams did not file the present action until May 2005, well after the two year period had expired. His § 1983 claims are therefore time-barred and will be dismissed. [FN6]

> FN6. Williams argues that the statute of limitations should be tolled under 42 Pa. Cons.Stat. § 5103(b). However, that provision applies only to a state-law cause of action that a federal court has declined to hear under the doctrine of pendant jurisdiction, which is manifestly not the case here. *See Commonwealth v. Lambert,* 765 A.2d 306 (Pa.Super.Ct.2000).

C. The Pennsylvania Equal Protection Claim

Defendants contend that sovereign immunity protects them from Plaintiffs' Equal Protection Claim under the Pennsylvania Constitution. 1 Pa., Cons.Stat. § 2310 and 42 Pa. Cons.Stat. § 8521 together grant immunity to "the Commonwealth, and its officials and employees acting within the scope of their duties[.]" That immunity has been found to apply equally to claims like Plaintiffs' based on violations of the Pennsylvania Constitution. *See Faust v. Commonwealth of Pennsylvania,* 140 Pa.Cmwlth. 389, 592 A.2d 835, 839-40 (Pa.Commw.Ct.1991); *L.H. v. Evanko,* 2001 WL 605214, at \*4 (E.D.Pa. May 5, 2001) (holding that sovereign immunity statutes bar claims based on Pennsylvania constitutional violations absent waiver under Pennsylvania law); *Robinson v. Ridge,* 996 F.Supp. 447, 449 (E.D.Pa.1997). [FN7] Accordingly, the Court finds that Defendants are immune from Plaintiffs' equal protection claims.

> FN7. Plaintiffs contend that the Pennsylvania sovereign immunity statute does not apply to their constitutional claim, in support of which they cite *Jones v. City of Philadelphia,* 68 Pa. D. & C. 4th 47 (2004). However, *Jones* deals with the sovereign immunity of Pennsylvania municipalities under 42 Pa. Cons.Stat. § 8541. At issue here is the Commonwealth's sovereign immunity, which is governed by a different provision, 42 Pa. Cons.Stat. § 8521. The analysis in *Jones* is therefore inapposite.

IV. CONCLUSION

For the foregoing reasons, Count Two will be merged into Count One. Count One will be dismissed with prejudice as to the Board. The § 1983 claims by Roadcloud and Holman against Solla in Count One will be dismissed without prejudice and the § 1983 claims by Williams will be dismissed with prejudice. Finally, Count Six will be dismissed with prejudice as to all Defendants. An appropriate Order follows.

*ORDER*

AND NOW, this 6th day of January, 2006, upon consideration of Defendants' Motions to Dismiss the Amended Complaint (docket nos. 4, 5, and 6), and for the reasons stated in the accompanying Memorandum, it is ORDERED that the Motions are GRANTED. It is FURTHER ORDERED that:
 (1) Count Two is MERGED into Count One;
 (2) Count One is DISMISSED WITH PREJUDICE as to the Pennsylvania Board of Probation and Parole;
 (3) The claims of Plaintiffs Victoria Roadcloud and Martha Holman under Count One against Defendant Daniel Solla are DISMISSED WITHOUT PREJUDICE;
 (4) The claims of Plaintiff Henry Williams under Count One are DISMISSED WITH PREJUDICE;
 (5) Count Six is DISMISSED WITH PREJUDICE. [FN8]

> FN8. The Complaint omits Counts Three, Four, and Five

Slip Copy, 2006 WL 83453 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2849686 (Trial Motion, Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2006 WL 83453 (E.D.Pa.)  
**(Cite as: 2006 WL 83453 (E.D.Pa.))**

Page 5

and Affidavit) Brief in Opposition to motion to Dismiss (Sep. 02, 2005)

• [2:05cv03787](#) (Docket) (Jul. 21, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                           Page 1
Not Reported in F.Supp.2d, 2002 WL 32182088 (E.D.Pa.)
**(Cite as: 2002 WL 32182088 (E.D.Pa.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Henry WATKINS
v.
PENNSYLVANIA BOARD OF PROBATION AND PAROLE, et al.
**No. 02CV2881.**

Nov. 25, 2002.

Debbie Lee Goldberg, Robert J. Sugarman, Sugarman & Associates, Philadelphia, PA, for Plaintiff.

Gino J. Benedetti, Jennifer A. Parda, Miller Alfano & Raspanti PC, Philadelphia, PA, for Defendants.

*MEMORANDUM OPINION AND ORDER*

WEINER, J.

**\*1** Plaintiff Henry Watkins ("Watkins"), a former parole board supervisor for the Pennsylvania Board of Probation and Parole ("Parole Board"), brings this suit against the Parole Board and two senior supervisors, Willie E. Jones [FN1] ("Jones") and Michael Bukata ("Bukata"), claiming that defendants racially discriminated against him during his course of employment, created a hostile work environment, retaliated against him for engaging in legally protected activity, and, subsequently, unlawfully terminated his employment. Presently before the Court is defendants' Motion to Dismiss the Amended Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons which follow, the motion is granted in part and denied in part.

>   FN1. Defendants contend that plaintiff had improperly identified this defendant in the Amended Complaint as Edward Jones.

I. STANDARD OF REVIEW

A claim may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. Poli v. Septa, 1998 WL 405052, 4 (E.D.Pa.1998) (quoting ALA, Inc. V. CCAIR, 29 F.3d 855, 859 (3rd Cir.1994)). The reviewing court must consider only those facts alleged in the complaint and accept all facts and allegations as true. *Id.* at 4. Furthermore, in deciding a motion to dismiss for failure to state a claim, the court must also accept as true *all reasonable inferences* that can be drawn from the allegations, and view them in the light most favorable to the nonmoving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir.1989) (emphasis added).

A motion to dismiss should be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In considering a motion to dismiss, the proper inquiry is not whether a plaintiff will ultimately prevail, but rather whether a plaintiff is permitted to offer evidence to support his claim. *See* Children's Seashore House v. Waldman, 197 F.3d 654, 658 (3d Cir.1999) (citation omitted).

II. BACKGROUND

A. *Facts*

Watkins, an African-American male, was first hired as an agent for the Parole Board on October 13, 1973, later promoted to supervisor in 1998 after an earlier discrimination settlement, but subsequently fired by the Parole Board on August 5, 2001. *Amended Complaint* at 5. Bukata is a Deputy Director at the Parole Board and was Watkins' immediate supervisor beginning in 1999 through his termination in August 2001. *Id.* at 8. Jones is the District Director at the Parole Board. *Id.*

Prior to the 1995 discrimination settlement between Watkins and the Parole Board, Watkins received "satisfactory", if not better, performance evaluations from his immediate supervisor Daniel Scolla. *Id.* at 6. As part of the settlement, plaintiff was to be promoted to supervisor, and both parties were required to pursue alternative dispute resolutions in response to any further complaints of discrimination and retaliation. *Id.* at 7.

**\*2** Bukata wrote annual negative performance

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 32182088 (E.D.Pa.)
**(Cite as: 2002 WL 32182088 (E.D.Pa.))**

evaluations of Watkins in 2000 and 2001. *Id.* at 9. Contrary to Parole Board policy that evaluations contain both positive and negative detail, these performance evaluations only included negative aspects of Watkins' job performance, failing to recognize Watkins' community service work that Bukata was well aware of. *Id.* at 11. Moreover, although located in the same building, Bukata failed to comply with Parole Board policy again by not meeting with Watkins to review these performance issues and negative evaluations at any time during his supervision of Watkins. *Id.* at 13. In contrast, Bukata met regularly with two white supervisors, traveling, on a weekly basis, ten miles to another office to do so. *Id.* at 24.

Furthermore, despite requests by Watkins to discuss his performance evaluations and contrary to the accord given to white employees, defendant Jones, as District Director, refused to discuss the matter and referred Watkins back to Bukata to discuss any concerns. *Id.* at 14. Upon finally granting a meeting with Watkins and Bukata in November 2000 to discuss the evaluations, Jones denied Watkins the opportunity to express his concerns and simply concurred with Bukata's assessment. *Id.* at 15.

As a result, Watkins soon filed an internal grievance pursuant to Parole Board policy regarding the alleged discriminatory treatment. *Id.* at 16. At the grievance hearing in December 2000 with Thomas Marshall, the Parole Board Labor Relations Specialist, Marshall replicated Jones' actions by again directing Watkins to discuss his concerns with Bukata, the very supervisor the racial discrimination allegations were brought against. *Id.* at 16.

Subsequent to this grievance hearing, Watkins was assigned a disparate number of cases as compared to Watkins' white colleagues. *Id.* at 17. In addition, Bukata and Jones ignored and refused Watkins' repeated requests for secretarial assistance to effectively manage this increased level of work for approximately one year. However, two white supervisors had assigned secretaries during this time. *Id.* at 21. Although Bukata offered the clerical assistance of his secretary to Watkins, her already full work load and remote location in relation to Watkins made the offer less than credible. *Id.* at 22.

Defendants' pattern of conduct continued, escalating to unspecified written and verbal warnings, and eventually a suspension until Watkins was fired from his job on August 5, 2001. *Id.* at 23, 24. Watkins asserts, without specific reference to any particular events, that defendants harassed black and white employees who were sympathetic to Watkins, leading to several lawsuits against the Parole Board. *Id.* at 25. Watkins filed a timely complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"), which issued Watkins a right-to-sue letter on April 30, 2002.

*B. Causes of Action*

Watkins' Amended Complaint contains six counts against all three defendants. The individual defendants are sued in both their individual and official capacities.

**\*3** Count I is brought under 42 U.S.C. § 1981 and alleges that defendants engaged in a pattern and practice of racially discriminating against Watkins in the performance, modification, retaliation and ultimate termination of Watkins' employment contract, thus violating Watkins' contractual rights.

Count II is brought under state law for intentional infliction of emotional distress for work-related harassment, retaliation, and discriminatory behavior allegedly motivated by defendants' racial bias against Watkins, subsequently causing extreme emotional distress.

Count III is brought under state law for negligent infliction of emotional distress as an alternative theory of recovery for this alleged racial discrimination, retaliation, and work-related harassment.

Count IV is a conspiracy claim brought under state law for defendants acting in concert in furtherance of alleged racially discriminatory acts against Watkins.

Count V is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e by the Civil Rights Act of 1991, for creating a hostile work environment prohibited by the statute.

Count VI is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.2000e by the Civil Rights Act of 1991, for adverse employment decisions against Watkins ultimately resulting in his wrongful termination, all in retaliation to Watkins' protected opposition to defendants' alleged discriminatory practices.

III. SECTION 1981 RACE DISCRIMINATION

Defendants first contend that the Section 1981 direct

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00567-GMS    Document 35    Filed 04/03/2006    Page 9 of 18

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2002 WL 32182088 (E.D.Pa.)  
**(Cite as: 2002 WL 32182088 (E.D.Pa.))**

Page 3

cause of action against all defendants fails because (1) 42 U.S.C. § 1983 ("Section 1983") remains the exclusive remedy against a state or individual for violations of rights guaranteed by § 1981 despite changes to § 1981 by the Civil Rights Act of 1991 and that (2) the § 1981 claim alternatively fails against the Parole Board because Watkins has failed to plead a constitutional violation under an official policy or custom as required to bring suit against a municipality for a violation of § 1981.

A. *Implied § 1981 Direct Cause of Action*

The original Section 1981, presently subsection (a), only provided that:

> All persons within the jurisdiction of the United States *shall have the same rights in every State and Territory to* make and enforce contracts, to sue, be parties, give evidence, *and to* the full and equal benefit of all laws ... as is enjoyed by white citizens."

42 U.S.C. § 1981 (emphasis added). It had been previously noted that § 1981 was silent as to whether it created a cause of action for damages against municipal actors and others who violated it. *See e.g., Jett v. Dallas Indep. School District,* 491 U.S. 701, 724, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Federation of African American Contractors v. City of Oakland,* 96 F.3d 1204, 1210 (9th Cir.1996); *Oden v. Okitbbeha County, Miss.,* 246 F.3d 458, 461 (5th Cir.2001), discussed *infra.* Accordingly, Congress enacted 42 U.S.C. § 1983 which created the vehicle for plaintiffs to bring suit in federal court and seek damages for violations of the Constitution and for violations of any federal law by state actors. *Johnakin v. City of Philadelphia, et al.,* 1996 WL 18821, at *2 (E.D.Pa.). Section 1983 states:

> **\*4** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ...

42 U.S.C. § 1983.

Consequently, the Supreme Court in *Jett v. Dallas Indep. School District,* formulated two principles regarding 42 U.S.C. § 1981. The Court first held that § 1981 did not provide an independent federal cause of action for damages against local governmental entities; instead, the *Jett* Court concluded that *where a claim is brought against a municipality,* 42 U.S.C. § 1983 provides the exclusive remedy for the violation of rights guaranteed by 42 U.S.C. § 1981. *Jett,* 491 U.S. 701, 731, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (emphasis added). Second, the *Jett* Court held that in order to sue a municipality or state official in his official capacity under 42 U.S.C. § 1983 for a violation of his rights under 42 U.S.C. § 1981, a plaintiff may not rely on the principles of respondeat superior, but must allege that the violation of a constitutional right or law of the United States was caused by the execution of an official custom or policy. *Id.* at 735-736; *See also Monell v. New York Dep't of Social Services,* 436 U.S. 658, 692-694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

1. The 1991 amendment to 42 U.S.C. § 1981

The Civil Rights Act of 1991 amended § 1981 by adding subsections (b) and (c). Subsection (c) borrowed the language of § 1983 providing:

> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairments *under color of State law.*

42 U.S.C.1981(c) (emphasis added). The Congressional findings behind the Act detailed the need to provide additional remedies under Federal law to deter unlawful harassment and intentional discrimination in the workplace. 1991 Acts, Section 2 of Pub.L. 102-166. Moreover, one stated purpose of the Act was to respond to recent Supreme Court decisions by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination. 42 U.S.C. § 1981 (note 4) (as amended 1991).

Since there is no language in § 1981(c) which explicitly creates a direct cause of action against local governmental entities, the courts have had to consider whether the language of § 1981(c) now implies a cause of action against state actors for substantive violations of § 1981, thus abrogating the 1989 holding in *Jett* that § 1983 was the exclusive remedy for § 1981 violations by local government entities. The Third Circuit Court of Appeals has not addressed this issue, and the other circuit courts are split as to the effect of the Civil Rights Act of 1991 upon the Supreme Court's holding in *Jett.* The Ninth Circuit Court of Appeals, along with a number of district courts, have concluded that the 1991 amendment implicitly created a direct cause of action against local governmental entities under § 1981. See *Federation of African American Contractors v. City of Oakland,* 96 F.3d 1204, 1214 (9th Cir.1996); *Gallarado v. Board of Country Comm'rs,* 857 F.Supp. 783, 786 (D.Kan.1994); *Powell v. City of*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00567-GMS   Document 35   Filed 04/03/2006   Page 10 of 18

Not Reported in F.Supp.2d                                                                                                  Page 4
Not Reported in F.Supp.2d, 2002 WL 32182088 (E.D.Pa.)
**(Cite as: 2002 WL 32182088 (E.D.Pa.))**

*Pittsfield,* 143 F.Supp.2d 94, 112 (D.Mass.2001); *Simmons v. Chicago Bd. of Educ.,* 2000 WL 1720958, at *6 (N.D.Ill. Nov.16, 2000); *Robinson v. Town of Colonie,* 878 F.Supp. 387, 405 (N.D.N.Y.1995); *La Compania Ocho, Inc. v. U.S. Forest Service,* 874 F.Supp. 1242, 1251 (D.N.M.1995); *Morris v. Kansas Dep't of Revenue,* 849 F.Supp. 1421, 1426 (D.Kan.1994); *Arnett v. Davis County School Dist.,* 1993 WL 434053 at *5 n. 8 (D.Utah April 5, 1993).

**\*5** However, the Fourth, Fifth, and Eleventh Circuit Courts of Appeals have concluded, albeit indirectly, that the 1991 amendment did not affect the Supreme Court's opinion in *Jett* concerning the absence of an implied right of action under § 1981. See *Oden v.. Okitbbeha County, Miss.,* 246 F.3d 458, 464 (5th Cir.2001); *Butts v. County of Volusia,* 222 F.3d 891, 894 (11th Cir.2000); *Dennis v. County of Fairfax,* 55 F.3d 151, 156 n. 1 (4th Cir.1995) discussed *infra.* These cases rely mainly on the lack of explicit legislative history reflecting an intention to overrule *Jett.* [FN2]

> FN2. Although defendants correctly cite *Poli v. Septa,* 1998 WL 405052 (E.D.Pa., July 2, 1998), as supporting this position, they erroneously contend that *Johnakin v. City of Philadelphia,* 1996 WL 18821, at 4, (E.D.Pa., January 18, 1996), and the Eighth Circuit Court of Appeals' decision in *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 224 (8th Cir.1994), also support this argument. *Johnakin* only assumed, without deciding, that subsection (c) creates an independent basis for section 1981 actions against state actors and that, in such cases, the *Monell* requirements for municipal liability would still also apply in § 1981 actions. *Williams* did not even discuss the effects of the 1991 Amendments to § 1981 on the Supreme Court decision in *Jett* and is clearly unpersuasive.

This court finds that the rationale behind the Ninth Circuit's conclusion in *Federation* that § 1981, as amended, creates an implied direct cause of action against state actors is convincing and elect to follow it. In *Federation,* the Ninth Circuit Court of Appeals first noted that, '[a]lthough the language in § 1981(c) explicitly 'protect[s]' the rights enumerated in § 1981(a) against 'impairment' by a 'nongovernmental' entity or 'under color of State law"[,] it does not, in so many words authorize a private cause of action against municipalities." *Federation,* 96 F.3d at 1210 (quoting 42 U.S.C. § 1981(c). However, the Ninth Circuit applied the modern implied remedy doctrine enunciated by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), [FN3] for determining whether a private cause of action is implied in a statute that does not expressly provide one. *Id.* at 1210.

> FN3. According to *Cort,* 422 U.S. at 95, the following factors are to be considered in determining whether a statute implies a private cause of action:
> (1) Is the plaintiff one of the class for whose "especial benefit" the statute was enacted; that is, does the statute create a federal right in favor of the plaintiff?
> (2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?
> (3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?
> (4) Is the cause of action one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law?

As to the first *Cort* factor, the *Federation* Court found that § 1981 as amended, by its plain terms, creates federal-civil rights in favor of a class of persons that includes Plaintiff, i.e. subsection(a) states that the statute was enacted for "all persons", and subsection (c) "makes explicit that the rights 'protected by [§ 1981(a) ]' are 'protected against impairment by nongovernmental discrimination and impairment under color of State law." ' *Id.* at 1211. (quoting 42 U.S.C. § 1981(a)-(c)).

Regarding the second *Cort* factor, the *Federation* Court noted that Congressional committee reports on the 1991 amendment "clearly contemplate that § 1981 rights are to receive parallel protections against state actors and private actors" and "implying a direct cause of action against state actors under 42 U.S.C. § 1981 is consistent with this intent." *Id.* at 1212-13 (citing H.Rep. No. 102-40(I), 102d Cong., 1st Sess. 92, reprinted in 1991 U.S.C.C.A .N. 549, 630; H.Rep. No. 102-40(II), 102d Cong., 1st Sess. 37, reprinted at U.S.C.C.A.N. 694, 731). [FN4]

> FN4. To be sure, as the Ninth Circuit points out, the legislative history surrounding the amendment suggests that Congress' intent in adding subsection (c) was to codify *Runyon v. McCrary* 427 U.S. 160, 96 S.Ct. 2586, 49

Not Reported in F.Supp.2d                                                                                                   Page 5
Not Reported in F.Supp.2d, 2002 WL 32182088 (E.D.Pa.)
**(Cite as: 2002 WL 32182088 (E.D.Pa.))**

L.Ed.2d 415 (1976), which held that § 1981 rights were protected against discrimination by both private and state actors, and further that § 1981 implies a right of action against private defendants. 96 F.3d at 1212. Consequently, in adding § 1981(c) to codify *Runyon,* Congress necessarily codified the implied cause of action against private actors. *E.g., Federation,* 96 f.3d at 1213; Oden, 246 F.3d at 463, (5th Cir.2001). However, because § 1981(c) now affords identical protection against impairment by nongovernmental discrimination and impairment under color of State law, and subsection (c) was previously held to implicitly codify an implied cause of action against private defendants, the Ninth Circuit correctly inferred that subsection (c) now also contains an implied cause of action against state actors who impair a claimant's § 1981 rights. *Id.* at 1213. To achieve parallel protection against private and governmental entities, comparable remedies against each type of defendant appear necessary. *Id.* at 1213.

In adding § 1981(c), Congress' intended to both expand the scope of relevant civil rights statutes ensuring adequate protection, and to provide additional remedies under Federal law to deter unlawful harassment and intentional discrimination in the workplace. 42 U.S.C.1981, Section 2 and note 4, *supra.* Accordingly, legislative intent exists to create an implied cause of action against *both* private and government defendants. This conclusion is reinforced by the legislative history describing an intent to "prohibit racial discrimination in all contracts, both private and public." *Id.* at 1213 (citing H.Rep. No. 102-40(II) at 731). Accordingly, legislative intent exists to create an implied cause of action against *both* private and government defendants. As a result, this court, like the Ninth Circuit, "infer[s] that § 1981(c) now *also* contains an implied cause of action against state actors who 'impair' a claimant's § 1981 rights." *Id.* at 1213 (emphasis in original).

Regarding the third factor, the *Federation* Court reasoned that an implied cause of action under § 1981(c) against state actors is consistent with the purposes of the 1991 Civil Rights Act, complementing the overall legislative scheme, by providing an additional remedy to deter intentional discrimination and unlawful harassment, and operating to ensure the adequate protection of victims of discrimination. *Id.* at 1214. Finally, regarding the fourth *Cort* factor, the *Federation* court observed that "private causes of action against state actors who impair federal civil rights have *not* been traditionally relegated to state law." *Id.* at 1214 (emphasis in original).

**\*6** Defendant's reliance on caselaw rejecting an implied direct cause of action under § 1981 is misplaced. Defendants correctly contend that this district has previously rejected the *Federation* Court's reasoning in Poli v. Septa, 1998 WL 405052 at \*12, (E.D.Pa. January 18, 1996), instead deciding to follow the Fourth, Eighth, and Eleventh Circuits rulings. *Def. Memo. in Further Support of Motion to Dismiss* at 5. However, the Fourth Circuit Court of Appeals in Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir.1995), did not analyze the issue but merely stated in a footnote that the only purpose of subsection (c) to § 1981 was to codify Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), and not to overrule *Jett.* Further, in *Johnson v. City of Fort Lauderdale,* the Court of Appeals for the Eleventh Circuit has since withdrawn the original affirmation, cited in *Poli,* of a lower court's conclusion that the 1991 Amendment to § 1981 did not create a new cause of action. 148 F.3d 1228 (11th Cir.1998). On partial grant of a rehearing, the Eleventh Circuit reconsidered and issued a substituted opinion concluding only that the Civil Rights Act of 1991 did not preempt § 1983 *specifically* in such a way to render Title VII and § 1981 the exclusive remedies for public sector employment discrimination. *Id.* at 1231. *Poli,* without explanation, founded its holding on a passing reference to this issue in *Dennis* and a presently withdrawn affirmation in *Johnson. Poli,* 1998 WL 404052 at \*11. As a result, this court declines to follow *Poli.*

Furthermore, the Fifth Circuit's reasoning in *Oden v. Okitbbeha County, Miss.* for upholding both principles of *Jett* is flawed. *See* 246 F.3d 458 (5th Cir.2001). The Court in *Oden* opposed employing the implied remedy doctrine analysis, stating that "judicial power to imply or create remedies should not be exercised in the face of an *express decision by Congress* concerning the scope of remedies available under a particular statute." 246 F.3d at 464 (quoting Jett, 491 U.S. at 732) (emphasis added). However, in light of the 1991 Amendment to § 1981, it is just because Congress has not made an express decision concerning the scope of remedies under § 1981(c)

Case 1:05-cv-00567-GMS     Document 35     Filed 04/03/2006     Page 12 of 18

Not Reported in F.Supp.2d                                                                                           Page 6
Not Reported in F.Supp.2d, 2002 WL 32182088 (E.D.Pa.)
**(Cite as: 2002 WL 32182088 (E.D.Pa.))**

that the Ninth Circuit in *Federation* was justified in employing a thorough, implied remedy doctrine analysis.

We also agree with the Ninth Circuit that the policy and custom requirements of *Monell* apply to section § 1918 claims against municipalities. *Federation,* 96 F.3d at 1214-15; *see also Johnakin,* 1996 WL 18821 at *4. The Parole Board can be liable only if the action alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell* at 690-691. [FN5] Even in the absence of formal policymaking activity, "an 'official policy' may be inferred 'from informal acts or omissions of supervisory municipal officials." *Colburn v. Upper Darby Township,* 838 F.2d 663, 671 (3rd Cir.1988), (citations omitted), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989).

> FN5. Of course, § 1981 claims may be asserted against individual defendants in their individual capacities.

**\*7** The defendants contend that Watkins only offers conclusory allegations that fail to meet the basic pleading requirements of the case. *Def. Memo. in Further Supp.* at 6. However, Watkins has done more than this, instead alleging that a pattern and practice of discrimination against African-American employees by the Parole Board has led to numerous settlements of other discrimination suits against the Parole Board. *Am. Compl.* at 25. The prior settlements can be viewed as providing the Parole Board with actual or constructive knowledge of the alleged custom of discrimination by supervisory officials.

Furthermore, Watkins alleges that the defendants, all supervisory officials, conducted a continuing pattern and practice of harassment despite Watkins' repeated requests at mediation through proper channels within the Parole Board. *Amended Complaint* at 24(a)-(d), 25. Moreover, Watkins alleges that a discriminatory environment was maintained and promoted by the defendants through improper, discriminatory discipline ultimately escalating to Watkins' unlawful termination. *See generally Id.* at 11-23. Accepting all reasonable inferences drawn from the allegations as true and in the light most favorable to the nonmoving party, the continuing practice and pattern of alleged discrimination detailed in the Amended Complaint satisfies the "custom or policy" requirement dictated by *Monell.* Although not a shining picture of clarity, Watkins' complaint meets the liberal standards of notice pleading, sufficiently alleging the civil rights violations were causally related to some "official policy or custom." In short, this court cannot hold that the complaint provides no basis for finding liability against the Parole Board or other defendants in their official capacity. Although it may be difficult for plaintiff to prove the " 'nexus between the policy ... and the infringement of constitutional rights" ', *see Talbert v. Kelly,* 799 F.2d 62, 67 (3rd Cir.1986) (internal citations omitted), we cannot say at this stage of the proceeding that such a nexus is so implausible that the cause of action under § 1981 cannot be maintained. Accordingly, the motion to dismiss the § 1981 claim against all Defendants is denied.

IV. Intentional and Negligent Infliction of Emotional Distress

Defendants argue that Watkins' claims for intentional and negligent infliction of emotional distress fail for two reasons: (1) Defendants are entitled to sovereign immunity; and (2) Watkins did not satisfy the physical injury requirement for either claim.

*A. Sovereign Immunity*

Relying on the Supreme Court's recent decision in *Lapides v. Board of Regents of University System of Georgia,* 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002), Watkins contends that the defendants waived sovereign immunity by removing the case to federal court. Although *Lapides* expressly holds that a State waives its Eleventh Amendment immunity when it removes a lawsuit from state court to federal court, Eleventh Amendment immunity and sovereign immunity are two different doctrines of protection. Eleventh Amendment immunity bars citizen suits against unconsenting states in federal court. *E.g., Dill v. Oslick,* 1999 WL 508675, at *2 (E.D.Pa. July 19, 1999). The doctrine of sovereign immunity bars damage claims for state law torts against "the Commonwealth, and its officials and employees acting within the scope of their duties." 1 Pa.C.S. § 2310. The statute further provides that such parties "shall continue to enjoy sovereign immunity and official immunity ... unless the General Assembly shall specifically waive immunity", except for several narrow enumerated exceptions. 1 Pa.C.S. § 2310; *McGrath v. Johnson,* 67 F.Supp.2d 499, 511

Not Reported in F.Supp.2d                                                                                                  Page 7
Not Reported in F.Supp.2d, 2002 WL 32182088 (E.D.Pa.)
**(Cite as: 2002 WL 32182088 (E.D.Pa.))**

(E.D.Pa.1999); *Tinson v. Pennsylvania,* 1995 WL 581978, at *6 (E.D.Pa. October 2, 1995). The Eleventh Amendment immunity issue is only controlling concerning federal law claims brought against states in federal court. Thus, a Commonwealth party may waive its Eleventh Amendment immunity by removing a case to federal court, yet still preserve its sovereign immunity protection from state-law claims.

 **\*8** The Pennsylvania General Assembly has only made sovereign immunity inapplicable in certain prescribed circumstances. *See* 42 Pa.C.S. § 8522(b). The nine exceptions to the rule of immunity provided for in the Code must arise out of negligent acts. *Id.* Accordingly, a Commonwealth agency and its employee acting within the scope of his employment is protected by sovereign immunity from intentional torts. *Frazier v. Southeastern Pennsylvania Transp. Auth.,* 868 F.Supp. 757, 762 (E.D.Pa.1994). Further, none of these limited negligent categories where the Commonwealth has explicitly waived immunity is applicable to the plaintiff's claims for negligent infliction of emotional distress. 42 Pa.C.S. § 8522(b). As a result, the Parole Board is immune from liability for both intentional and negligent infliction of emotional distress claims.

 On the other hand, a Commonwealth employee is only protected by sovereign immunity, notwithstanding the nine exceptions in the Code, *for acting within the scope of his office or employment.* A Commonwealth employee is still liable for willful misconduct committed outside the scope of his office or employment. *McGrath,* 67 F.Supp.2d at 512; *LaFrankie v. Miklich,* 152 Pa. Cmwith 163, 171, 152 Pa.Cmwlth. 163, 618 A.2d 1145, 1150-51 (1992). Although Watkins fails to directly assert in the Amended Complaint that Jones and Bukata committed these acts outside the scope of their employment, we will, at this stage of the proceedings, infer from the allegations that some of the actions by the individual defendants took place outside the scope of their employment. Consequently, sovereign immunity protection will not be extended to defendants Jones and Bukata for intentional and negligent infliction of emotional distress claims resulting from conduct committed outside the scope of their office or employment.

 *B. Failure to State a Claim*

 Nevertheless, Watkins fails to state a claim upon which relief can be granted for both intentional and negligent infliction of emotional distress against the individual defendants acting in their individual capacities. Section 46 of the Restatement (Second) of Torts (1965), adopted by Pennsylvania courts for intentional infliction of emotional distress, requires that conduct must be extreme and outrageous, be intentional or reckless, *and* cause severe emotional distress. *Hudson v. Brandywine Hospital,* 1999 WL 1240956 at *3 (E.D.Pa. Dec, 1999) (citing *Wisiniewski v. John Manville Corp.,* 812 F.2d 81, 85 (3rd Cir.1987)) (emphasis added). The Restatement further provides that "liability has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds in decency, and be regarded as atrocious, and utterly intolerable in a civilized community." Restatement of Torts (Second) § 46 cmt. d (1965); *Hudson,* 1999 WL 1240956 at *4. Here, the racial discrimination, retaliation, and work-related harassment alleged throughout Watkins' Amended Complaint does not satisfy the element of extreme and outrageous conduct required to state this cause of action. *See generally Am. Compl.* 8-29. Furthermore, bald, conclusory allegations of extreme emotional distress also do not meet the required standard for this claim. *Id.* at 35. As a result, we will dismiss the intentional infliction of emotional distress claim against Bukata and Jones in their individual capacities.

 **\*9** Likewise, Watkins' negligent infliction of emotional distress claim against the individual defendants in their individual capacities also fails to state a claim upon which relief can be granted. In adopting the Restatement definition of the tort of negligent infliction of emotional distress, Pennsylvania courts require that the plaintiff sustain, as a result of defendant's negligence, some physical injury in addition to or caused by the emotional disturbance. Restatement (Second) Torts § 436A (1965); *Hudson,* 1999 WL 1240956 at *2; *Kase v. Wiseman,* 1993 WL 409862, at *3 (E.D.Pa. October 12, 1993); *Armstrong v. Paoli Mem'l Hosp.,* 341 Pa.Super. 173, 491 A.2d 207, 209 (Pa.Super.Ct 1993). Watkins erroneously contends that *Hudson* does not require a plaintiff to allege physical harm at this stage of the proceedings for both intentional and negligent infliction of emotional distress claims. *Pl. Memo. In Response to Motion to Dismiss* at 13. Although a physical injury may not be required to plead a physical injury at this stage for intentional infliction of emotional distress, that requirement is not abrogated for negligent infliction of emotional distress. Since Watkins fails to allege the existence of any physical injury in the Amended Complaint, we will dismiss the negligent infliction of emotional

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 8
Not Reported in F.Supp.2d, 2002 WL 32182088 (E.D.Pa.)
**(Cite as: 2002 WL 32182088 (E.D.Pa.))**

distress claim against Bukata and Jones in their individual capacities.

V. Conspiracy

Watkins alleges that the defendants, acting in concert, conspired against Watkins by discussing and agreeing to treat Watkins differently because of his race. *Am. Compl.* at 43-44. Despite the federal nature of these allegations, Watkins contends that the conspiracy claim is brought under state law. *Pl. Memo. In Response to Motion to Dismiss* at 15. A civil conspiracy is the combination of two or more entities or individuals engaging in an unlawful act, or an otherwise lawful act by unlawful means, when some overt act is taken in furtherance of the conspiracy and some actual legal harm accrues to the plaintiff. *Barmasters Bartending School, Inc. v. Authentic Bartending School, Inc.,* 931 F.Supp. 377, 386 (E.D.Pa.1996) (citing *Thompson Coal Co. v. Pike Coal Co.,* 412, A.2d 466, 472 (Pa.1979)). To prove a civil conspiracy under Pennsylvania law, a plaintiff must "show the following elements: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *See e.g., Simon v. UnumProvident Corp.,* 2002 WL 1060832 at *7, (E.D.Pa. May 23, 2002); *SNA, Inc. v. Array,* 51 F.Supp.2d 554, 561 (E.D.Pa.1999); *Skipworth v. Lead Indus. Ass'n, Inc.,* 547 Pa. 224, 690 A.2d 169, 174 (Pa.1997); *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466, 472 (Pa.1979). Furthermore, proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy. *Simon,* 2002 WL 1060832 at * 7, (citing *Thompson Coal,* 412 A.2d at 466) (internal quotations omitted). Merely describing something as malicious is not sufficient to give the proper inference of malice .... malice requires an allegation that the sole purpose of the conspiracy was to injure the plaintiff. *Id* . To survive a motion to dismiss, plaintiff must plead facts which support allegations of conspiracy. *Scott v. Township of Bristol,* 1990 WL 178556, at *5 (E.D.Pa. Nov 14, 1990) (citing *Robinson v. McCorkle,* 462 F.2d 111, 113 (3rd Cir.), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972)). These allegations must include a description of the membership, formulation and purpose of the alleged conspiracy. *Id.*

*10 Here, Watkins sufficiently alleges the membership, formulation, and purpose of the conspiracy, thus satisfying the three elements to state a valid cause of action for conspiracy to discriminate against Watkins' because of his race. Watkins alleges that Jones and Bukata in both their individual and official capacities discussed and agreed to take the racially discriminatory actions detailed throughout the Amended Complaint, thus meeting the membership standard of two or more people involved in the conspiracy. Although the plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred, he is not required to allege exactly where, when and with what words an agreement was made. *Flanagan v. Shively,* 783 F.Supp. 922, 928-929 (M.D.Pa.1992). Moreover, the unfair, negative performance reviews, denial of opportunity to discuss concerns over the discriminatory treatment, assignment of disparate caseload as compared to white supervisors while simultaneously denying clerical assistance, and ultimate unlawful termination indeed to demonstrate overt acts taken in furtherance of an alleged conspiracy to racially discriminate against Watkins. Finally, actual damages are alleged throughout the Amended Complaint, and the sole purpose of the conspiracy is alleged to have been to injure Watkins through the denial of the opportunity of advancement and ultimate termination of his employment thus satisfying the malice and damage requirements. As a result, we will deny the motion to dismiss the conspiracy claims against all defendants.

VI. Title VII Claims

Watkins brings claims against all defendants under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000(e), and the Civil Rights Act of 1991, for both creating a hostile work environment and for retaliation to Watkins' protected opposition to the defendants' alleged discriminatory practices. We note at the outset that individual employees cannot be held liable under Title VII. *See Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1078 (3rd Cir.1996) (en banc), ("Congress did not intend to hold individual employees liable under Title VII"), *cert. denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997); *Smith v. Pathmark Stores, Inc.,* 1998 WL 309916 at *3 (E.D.Pa. June 11, 1998). Although supervisors may not be held individually liable, Title VII is a statutory expression of traditional *respondeat superior* liability and supervisors' actions that fall within the scope of their employment may satisfy the definition of "employer" under Title VII; Consequently, supervisors may be sued in their official capacity. *See In Re Montgomery,* 215 F.3d 367, 373 (3rd Cir.2000); *William v. Banning,* 72 F.3d

Case 1:05-cv-00567-GMS   Document 35   Filed 04/03/2006   Page 15 of 18

Not Reported in F.Supp.2d                                                                                               Page 9
Not Reported in F.Supp.2d, 2002 WL 32182088 (E.D.Pa.)
**(Cite as: 2002 WL 32182088 (E.D.Pa.))**

552, 554-5 (7th Cir.1995); *Cross v. Alabama,* 49 F.3d 1490, 1504 (11th Cir.1995); *Tomka v. Seiler,* 66 F.3d 1295, 1313-17 (2d Cir.1995); *Garcia v. Elf Atochem North America,* 28 F.3d 446, 451 n. 2 (5th Cir.1994); *Gary v. Long,* 59 f.3d 1391, 1399 (D.C.Cir), *cert denied,* 516 U.S. 1011, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995); *Grant v. Lone Star,* 21 F.3d 649 (5th Cir.), *cert denied,* 513, U.S. 1015 (1994). Thus, we will dismiss all Title VII claims against defendants Jones and Bukata in their individual capacities. Accordingly, we will only analyze Watkins' Title VII claims against the Parole Board, and Jones and Bukata in their official capacity.

### A. Hostile Work Environment

*11 Hostile work environment harassment is actionable under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, and occurs when the conduct in question is severe *or* pervasive enough to create an "objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive -and an environment the victim-employee subjectively perceives as abusive or hostile." *Harris v. Forklift Systems,* 510 U.S. 17, 21-22, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). The hostile work environment standard is not a mathematically precise test. Rather, whether an environment is "hostile" or "abusive" is very fact-specific and can only be determined by looking at the totality of the circumstances. *Id.* at 23. For instance, when the workplace is permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Title VII is violated. *Id.* at 21 (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)) (internal quotations omitted). Moreover, the factors that guide the Court's determination may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. However, the Supreme Court was quick to point out that these factors do not mark the boundary of what is actionable, and that no single factor is required. *Id.* Specifically, a discriminatory, abusive work environment also exists when it will "detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Id.* at 22. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality. *Id.*

Watkins alleges that, contrary to Parole Board policy and the treatment given to white supervisors, (1) he received unfair, negative performance evaluations in 2000 and 2001 that deliberately omitted positive references of his job performance that the defendants were well aware of; (2) he was denied the proper opportunity to correct any alleged job deficiencies before he received his annual performance evaluations; (3) he was denied the opportunity to discuss the alleged disparate treatment with both Jones and Bukata, two co-defendants and Watkins' immediate superiors; (4) he was assigned substantially more work than white supervisors while being denied clerical assistance that had been granted to some white supervisors; and (5) that the discriminatory actions at the Parole Board continued in increasing frequency, ultimately escalating into Watkins' unlawful termination. Furthermore, Watkins alleges that this continuing pattern and practice of behavior against Watkins, and other African-American supervisors, detracted from his work performance and blocked any advancement in his career during his course of employment.

*12 Defendants contend that the alleged behavior is both vague and isolated over a period of nineteen months. Even if the alleged hostile work environment was based solely on conduct occurring during that time frame, which is not clear from the Amended Complaint at this time, there is nothing isolated about continuous conduct over a nineteen month period. Defendants primarily rely on *Walton v. Mental Health Assoc. of Southeastern Pennsylvania,* 168 F.3d 661 (3rd Cir.1999), and *Cronin v. Martindale Andres & Co.,* 159 F.Supp.2d 1 (E.D.Pa.2001), in asserting that the hostile work environment claim fails as a matter of law. However, both *Walton* and *Cronin* concerned granting summary judgment in favor of defendants in hostile work environment claims, not motions to dismiss. Here, Watkins satisfies the lenient standards of notice pleading at this stage of adjudication, appropriately asserting a "short and plain statement of the facts." As a result, the defendant's motion to dismiss the race-based hostile work environment claim against the Parole Board and Jones and Bukata in their official capacity is denied.

### B. Retaliation

Not Reported in F.Supp.2d  Page 10
Not Reported in F.Supp.2d, 2002 WL 32182088 (E.D.Pa.)
**(Cite as: 2002 WL 32182088 (E.D.Pa.))**

To establish a *prima facie* case of unlawful retaliation, a plaintiff must demonstrate that: (1) he or she engaged in activity protected by Title VII; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action. *See Weston v. Commonwealth of Pennsylvania,* 251 F.3d 420, 430 (3rd Cir.2001); *Farrell v. Planter's Lifesavers, Co.,* 206 F.3d 271, 279 (3rd Cir.2000).

With regard to the first element, Title VII protects not only against the filing of formal charges of discrimination, but also protects informal protests of discriminatory employment practices. *Abramson v. William Paterson College of New Jersey,* 260 F.3d 265, 288 (3rd Cir.2001). Protected informal protest can include making complaints to management, writing clerical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges. *Id.* Further, informal complaints can be either written or verbal. *See, e.g., Jones v. WDAS FM/AM Radio Stations,* 74 F.Supp.2d 455, 463-64 (E.D.Pa.1999). An employee does not need to prove that the conduct about which she is complaining is actually in violation of anti-discrimination laws; rather, she only has to have a good-faith, reasonable belief that the conduct complained of was unlawful. *See Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1085 (3rd Cir.1996).

Watkins alleges he made both numerous formal and informal complaints, concerning the racial discriminatory behavior, to his superiors Jones and Bukata as well as a verbal complaint to Thomas Marshall, the Parole Board's Labor Relations Specialist. *Am. Compl* . at 14-16, 18. Accordingly, Watkins' complaints constitute protected activity and satisfy the first element of a retaliation cause of action.

**\*13** The second element, which requires an allegation of adverse employment action, is also easily satisfied. The Amended Complaint details an intricate list of adverse action taken by Watkins' supervisors contrary to Parole Board policy that included unfair annual performance evaluations, denial of proper channels of dispute resolution, discriminatory denial of adequate clerical services, and the assignment of a discriminatory and disparate caseload as opposed to white supervisors.

The inquiry into the third element, proof of a causal link, generally focuses on timing and evidence of ongoing antagonism. *Abramson,* 260 F.3d at 288 (citing *Farrell,* 206 F.3d at 281). Thus, Watkins can establish a link between not only the numerous formal and informal complaints he made to Jones and Bukata, but also to the complaint made to the Parole Board Labor Relations Specialist, Mr. Marshall, if the defendants engaged in a pattern of discrimination, harassment, and antagonism during the intervening period. Although the complaint is not a model of clarity and does not establish a specific timeline for all alleged misconduct, it can be reasonable inferred that the alleged continuing misconduct occurred, at least in substantial part, from the time when Watkins first complained to Bukata of his discriminatory behavior as Watkins' supervisor up to the point of his alleged unlawful termination. Consequently, the defendants' motion to dismiss the Title VII retaliation claim against the Parole Board and Jones and Bukata in their official capacity is denied.

VII. Qualified Immunity

Defendants Jones and Bukata contend they are entitled to qualified immunity pursuant to all claims, and as a result, the entire case should be dismissed concerning any liability in their individual capacities. Notwithstanding immunities granted previously in this opinion, it is not proper to grant qualified immunity at this stage of adjudication.

A public official's otherwise illegal actions are protected by qualified immunity only if he can show that his offending conduct did not "violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Moreover, Watkins correctly points out that defendants have the burden to prove that they are protected by qualified immunity. *Id.* Thus, taking the allegations in the Amended Complaint and all reasonable inferences as true, the issue of qualified immunity should not be decided on a motion to dismiss. *Alexander v. Hargrove,* 1994 WL 519724 (E.D.Pa. September 22, 1994) (court denied defendants' motion to dismiss as premature where Commonwealth defendants' assertions of good faith were insufficient, i.e. they did not carry their burden of proving their entitlement to qualified immunity). Accordingly, defendants' motion to dismiss all claims against defendants Jones and Bukata in their individual capacities based on qualified immunity is denied.

VIII. Conclusion

Not Reported in F.Supp.2d                                                                                                                     Page 11
Not Reported in F.Supp.2d, 2002 WL 32182088 (E.D.Pa.)
**(Cite as: 2002 WL 32182088 (E.D.Pa.))**

 **\*14** For the foregoing reasons, the Court will dismiss the following claims for failure to state a claim upon which relief can be given: all claims against all defendants for alleged intentional and negligent infliction of emotional distress; and all claims against Defendants Jones and Bukata in their individual capacity brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e.

 The following claims will be allowed to remain: the racial discrimination claims brought directly under 42 U.S.C.A. § 1981 against all defendants; the conspiracy claims brought under state law against all defendants, the hostile work environment claim brought under Title VII, 42 U.S.C.A.2000e, against the Parole Board and defendants Jones and Bukata in their official capacity, and the retaliation claim brought under Title VII against the Parole Board and Defendants Jones and Bukata in their official capacity.

 An appropriate Order follows.

*ORDER*

 The motion of the defendants to dismiss is GRANTED in part and DENIED in part.

 The following claims are dismissed: all claims against all defendants for alleged intentional and negligent infliction of emotional distress; and all claims against defendants Jones and Bukata in their individual capacity brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e. All other claims shall remain.

 IT IS SO ORDERED.

 Not Reported in F.Supp.2d, 2002 WL 32182088 (E.D.Pa.)

 **Motions, Pleadings and Filings (Back to top)**

• 2:02cv02881 (Docket) (May. 14, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

# CERTIFICATE OF SERVICE

    I hereby certify that, on April 3, 2006, I electronically filed COMPENDIUM OF UNREPORTED DECISIONS CITED IN PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT with the Clerk of Court using CM/ECF which will send notification of such filing to:

    Richard Hubbard, Esq.
    Delaware Dept. of Justice
    820 N. French St., 6th Floor
    Carvel State Building
    Wilmington, DE 19801

    *Attorney for Defendants*

    /s/ *Joseph N. Gielata*
    Joseph N. Gielata