# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **JOSEPH N. GIELATTA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-567-GMS** |
| | ) | |
| **ANDREA L. ROCANELLI, individually and** | ) | |
| **in her Official capacity as Chief Counsel of the** | ) | |
| **Office of Disciplinary Counsel for the Supreme** | ) | |
| **Court of Delaware;  THE STATE OF** | ) | |
| **DELAWARE, and THE OFFICE OF** | ) | |
| **DISCIPLINARY COUNSEL FOR THE** | ) | |
| **SUPREME COURT OF DELAWARE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' REPLY BRIEF
## <u>IN SUPPORT OF THEIR MOTION TO DISMISS</u>

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

Richard W. Hubbard  (I.D. #2442)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8308

Attorney for the Defendants

Date:  April 21, 2006

## TABLE OF CONTENTS

**Page:**

TABLE OF CITATIONS ................................................................................ ii

SUMMARY OF ARGUMENT ........................................................................1

ARGUMENT:

    I.    DEFENDANT ROCANELLI IS ENTITLED TO ABSOLUTE
        IMMUNITY ............................................................................................4

        A.    Quasi-judicial immunity includes prosecutorial immunity .. 4

        B.    Regulating the practice of law is a judicial function ............ 5

    II.    THE DOCTRINE OF *YOUNGER V. HARRIS* REQUIRES
        ABSTENTION ........................................................................................7

        A.    There is no law of the case on this issue ............................. 7

        B.    The Eastern District's holding was clearly erroneous ......... 8

        C.    The *Dombrowski* exception does not apply here ................ 8

        D.    Applying *Middlesex*, Federal courts have required more
            than a mere assertion of bad faith to avoid *Younger*
            abstention ........................................................................ 11

        E.    Plaintiff's assertion that the State lacks an important
            interest is frivolous .......................................................... 15

    III.    *ROOKER-FELDMAN* ABSTENTION ALSO APPLIES HERE .. 15

        A.    The *Stern-Centifanti* line of cases requires *Rooker-Feldman*
            abstention ........................................................................ 15

        B.    *Exxon* does not reverse or alter the *Stern-Centifanti* line of
            cases ................................................................................ 16

    IV.    ODC IS NOT A "PERSON" FOR PURPOSES OF § 1983 ......... 17

    V.    PLAINTIFF ADMITS THE ESSENTIAL FACTS THAT SHOW
        THERE IS NO CASE OR CONTROVERSY ............................... 19

CONCLUSION ............................................................................................ 20

### TABLE OF CITATIONS

**Cases:**                                                                                                   **Page:**

*Amanatullah v. Colorado Bd. of Medical Examiners,*
 187 F.3d 1160 (10th Cir. 1999) ...............................................................13

*Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718 (6th Cir. 1993)................1, 5, 12, 14

*Blake v. Papadakos*, 953 F.2d 68 (3d Cir. 1992).................................................15

*Boyce v. Dembe*, 47 Fed.Appx. 155 (2002) ......................................................15, 16

*Brooks v. New Hampshire Supreme Court*, 80 F.3d 633 (1st Cir. 1996) ..........................11

*Brown v. Ohio Disciplinary Counsel*, 230 F.3d 1357, 2000 WL 1434450 (6th Cir.).........12

*Butz v. Economou*, 438 U.S. 478 (1978).............................................................5

*Callahan v. City of Philadelphia*, 207 F.3d 668 (3d Cir. 2000) ...................................3, 18

*Canatella v. California*, 404 F.3d 1106 (9th Cir. 2005) .........................................13

*Centifanti v. Nix*, 865 F.2d 1422 (3d Cir. 1989) .........................................2, 15, 16

*Clark v. Washington*, 366 F.2d 678 (9th Cir. 1966) ...........................................13

*Crenshaw v. Supreme Court of Indiana*, 170 F.3d 725 (7th Cir. 1999)............................12

*DeVilla v. Schriver*, 245 F.3d 192 (2d Cir. 2001)...........................................2, 7

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 483 (1983) ............... *passim*

*Dombrowski v. Pfister*, 380 U.S. 479 (1965)...................................................1, 2, 8, 9, 14

*Exxon Mobil Corp.v. Saudi Basic Industries Corp.*,
 -- U.S. --, 125 S.Ct. 1517 (2005) ...................................................2, 16

*Fox v. Florida*, 138 Fed.Appx. 194 (11th Cir. 2005)...................................13, 16

*Gilchrist v. Arizona Supreme Court*,
 10 Fed.Appx. 468 (9th Cir. 2001), cert. denied, 534 U.S. 996 (2001) .............13, 16

*Gipson v. New Jersey Supreme Court*, 558 F.2d 701 (3d Cir. 1977)................................11

*Hefner v. Alexander*, 779 F.2d 277 (5th Cir. 1985) .........................................12

**Cases:**                                                                                                          **Page:**

*Hensler v. District Four Grievance Comm.*, 790 F.2d 390 (5th Cir. 1986).......................12

*Hirsch v. Justices of the Supreme Court of the State of Calif.*,
    67 F.3d 708 (9th Cir. 1995) ...............................................................................13

*In re Altman*, 302 B.R. 424 (Bankr.D.Conn. 2003) ...........................................2, 7

*In re City of Philadelphia Litigation*, 158 F.3d 711 (3d Cir. 1998)......................................8

*In re Member of Bar*, 257 A.2d 382 (Del. 1969) ...............................................17

*In the Matter of Mekler*, 669 A.2d 655 (Del. 1995)............................................6

*Kissell v. Breskow*, 579 F.2d 425 (7th Cir. 1978) ............................................1, 4

*Mason v. Departmental Disciplinary Comm.*, 894 F.2d 512 (2d Cir. 1990) ...................11

*Mason v. The Florida Bar*, 2005 WL 3747383 (M.D.Fla.) ................................................14

*Middlesex County Ethics Committee v. Garden State Bar Association*,
    457 U.S. 423 (1982)..................................................................................... *passim*

*Mueller v. The Florida Bar*, 390 So.2d 449 (Fla. App. 1980)...........................................10

*Neal v. Wilson*, 112 F.3d 351 (8th Cir.) ......................................................................13, 17

*O'Neill v. City of Philadelphia*, 32 F.3d 785 (3d Cir. 1994) ............................................11

*Pawlak v. Pennsylvania Board of Law Examiners*, 1995 WL 517646 (E.D.Pa.)..............15

*Pincham v. Illinois Judicial Inquiry Board*,
    872 F.2d 1341 (7th Cir. 1989), *cert. denied*, 493 U.S. 975 (1989).......................12

*Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*,
    123 F.3d 111 (3d Cir. 1997)...................................................................................8

*Richardson v. The Florida Bar,* No. 90-0984, 1990 WL 116727,
    1990 U.S. Dist. LEXIS 5864 (D.D.C. May 15, 1990)..........................................14

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).................................................... *passim*

*Simons v. Bellinger*, 643 F.2d 774 (D.C. Cir. 1980)...............................................1, 5, 6, 13

**Cases:**                                                                                    **Page:**

*Stein v. Legal Advertising Comm. Of the Disciplinary Bd.*
        272 F.Supp.2d 1260 (D.N.M. 2003) .....................................................................14

*Stern v. Nix*, 840 F.2d 208 (3d Cir. 1988)..........................................................2, 11, 15, 16

*Taylor v. Kentucky State Bar Ass'n*, 424 F.2d 478 (6th Cir. 1970) .....................................8

*Tindall v. The Florida Bar*, 1997 WL 689636 (M.D.Fla.)...................................................17

*Werle v. Rhode Island Bar Association*, 755 F.2d 195 (1st Cir. 1985)..............................11

*Westerbeke Corporation v. Diahatsu Motor Co., Ltd.*,
        304 F.3d 200 (2d Cir. 2002)..............................................................................2, 7

*Wightman v. Texas Supreme Court*, 84 F.3d 188 (5th Cir. 1996).....................................12

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)..........................................3, 17

*Younger v. Harris*, 401 U.S. 37 (1971).................................................................. *passim*

*Zahl v. Harper*, 282 F.3d 204 (3d Cir. 2002).....................................................................11


**Statutes and Rules:**

10 *Del.C.* §1906 .................................................................................................................6

29 *Del. C.* 2504(3) ............................................................................................................7

28 *U.S.C.* § 2283 ...............................................................................................................8

42 *U.S.C.* §1983 .............................................................................................................3, 14

Del. Constitution of 1897, Art. IV § 13(2) ......................................................................6

Del. Sup. Ct. R. 64 ..........................................................................................................18

Federal Rule of Civil Procedure 12 .................................................................................7

U.S. Constitution, 11th Amendment.................................................................................3

## SUMMARY OF ARGUMENT

Plaintiff is unable to point to any case on similar facts where challenges to state bar disciplinary authorities have survived dispositive motions and have gone to trial. Over and over, nationwide, these challenges have been routinely dismissed--even where bad faith has been alleged. *See, e.g., Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 723 (6th Cir. 1993).

1.     With respect to plaintiff's claim for damages for any alleged constitutional violation that supposedly has occurred, defendant Rocanelli has absolute immunity. Plaintiff misunderstands "quasi-judicial" immunity and believes that it does not include prosecutorial immunity, but he is wrong and case law clearly establishes that quasi-judicial immunity includes prosecutorial immunity. *See Kissell v. Breskow,* 579 F.2d 425, 429 (7th Cir. 1978). Plaintiff has asserted an argument that state bar disciplinary counsel should enjoy neither judicial nor prosecutorial immunity, but his view has been rejected in every modern Federal case that has addressed the subject. A functional analysis of the role of the ODC and Chief Disciplinary Counsel Rocanelli shows that the regulation of the practice of law to ensure compliance with ethical standards is an inherently judicial function. *See Simons v. Bellinger*, 643 F.2d 774, 779-80 (D.C.Cir. 1980).

2.     The doctrine of *Younger v. Harris* applies to the ODC disciplinary proceeding against plaintiff under *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 437 (1982). Although it is true there is a bad faith exception (the *Dombrowski* exception), this exception requires a "showing," not just general allegations of bad faith. When one looks closely at the *facts* alleged by plaintiff,

1

not the emotional characterizations, one sees that the Amended Complaint falls far short of the *Dombrowski* exception to *Younger v. Harris*.

Plaintiff's argument that the ruling of the Eastern District of Pennsylvania (that *Younger* abstention does not apply to state bar disciplinary proceedings) is the law of the case is absurd. Law of the case doctrine applies to rulings that have been fairly litigated, not to rulings on an *ex parte* TRO motion. *See Westerbeke Corporation v. Daihatsu Motor Co., Ltd.,* 304 F.3d 200, 219 (2d Cir. 2002); *DeVilla v. Schriver*, 245 F.3d 192, 197-98 (2d Cir. 2001); *In re Altman,* 302 B.R. 424, 427 n.4 (Bankr.D.Conn. 2003). The "hearing" that plaintiff refers to in his Answering Brief was the court's announcement of its ruling on plaintiff's "Emergency *Ex Parte* Motion for a Temporary Restraining Order and Order to Show Cause." (D.I. 6). This ruling was more than two months before the complaint was served on the defendants. (D.I. 15). Even if the District Court's ruling had been fully and fairly litigated, its holding contradicts the holding of *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 437 (1982), and is therefore clearly erroneous.

3.    Even if *Younger v. Harris* abstention did not apply, *Rooker-Feldman* abstention would be required. Plaintiff's reliance on *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* --U.S.--  125 S. Ct. 1517 (2005), to argue *Rooker-Feldman* does not apply is misplaced. *Exxon* involved a Federal action brought by a third party to the state court proceeding, not by the threatened or losing party in the state proceeding as occurred here. Nothing in *Exxon* reverses or alters the Third Circuit's controlling holdings in the *Stern-Centifanti* line of cases discussed at length in the Opening Brief on this motion.

4.    ODC has Eleventh Amendment immunity, and it is not a person for § 1983 purposes under *Will v. Michigan Department of State Police*.  Plaintiff claims that *Callahan v. City of Philadelphia*, 207 F.3d 668 (3d Cir. 2000), is inapposite, but in fact *Callahan* is controlling Third Circuit authority that compels the conclusion that the ODC is not a "person" under § 1983.  207 F.3d at 673-74 ("while it is true that the judicial defendants largely are funded locally . . . the district courts repeatedly have held that all components of the judicial branch of the Pennsylvania government are state entities and thus are not persons for section 1983 purposes").

5.    Plaintiff admits in his Answering Brief the essential facts that show there is no case or controversy in this matter.  He admits that the disciplinary proceeding has been suspended indefinitely.  (Ans. Br. at 2).  He admits that defendant Rocanelli has recused herself with respect to his disciplinary proceeding.  (Ans. Br. at 2).  He admits that he can practice law subject only to certain disclosure requirements to which he agreed.  (Ans. Br. at 2).  The only real controversy, prospectively, is the criminal proceeding over which this Court lacks jurisdiction under the doctrine of *Younger v. Harris,* 401 U.S. 37 (1971).

3

<u>**ARGUMENT**</u>

Plaintiff's Answering Brief is filled with imaginative arguments but is utterly lacking in precedents that are on point (*i.e.,* those which address abstention and immunity in the context of attorney disciplinary proceedings) and support his assertions.

**I.    <u>DEFENDANT ROCANELLI  IS ENTITLED TO ABSOLUTE IMMUNITY.</u>**

At page 15 of their Opening Brief in support of this motion, the defendants cited 12 case opinions from Federal circuit and district courts that are directly on point and hold that disciplinary counsel such as Rocanelli are entitled to absolute immunity.  In his Answering Brief, plaintiff makes general arguments about Rocanelli's function, but is unable to cite to any authorities on point that would deny immunity.  In this brief, defendants cite additional cases that reinforce the rule: disciplinary counsel in state bar proceedings are entitled to absolute immunity.

**A.    Quasi-judicial immunity includes prosecutorial immunity.**

Plaintiff misunderstands "quasi-judicial immunity" and believes that it does not include prosecutorial immunity, and that the defendants have therefore not argued prosecutorial immunity.  (Ans. Br. at 13 n.7).  However, he is wrong and case law clearly establishes that quasi-judicial immunity includes prosecutorial immunity. *See Kissell v. Breskow,* 579 F.2d 425, 429 (7th Cir. 1978) ("A prosecuting attorney, as a quasi-judicial officer, enjoys immunity under the Civil Rights Act insofar as his prosecuting functions are concerned. . . . the Deputy Attorney General, the state official charged with prosecuting disbarment proceedings, was immune under the doctrine of quasi-judicial immunity . . . .").

Plaintiff also misunderstands what a "bar grievance committee" is and what it does, as he argues that defendant Rocanelli is not a "decision-making body," which is what he thinks a grievance committee is.[1]  The authorities relied upon by defendants involve bar grievance committees engaging in exactly the same conduct of which Rocanelli is accused: investigating complaints and initiating disciplinary charges. The Amended Complaint accuses Rocanelli of receiving several complaints from attorneys against plaintiff (Am.Comp. ¶¶ 64, 76), investigating them (Am.Comp.¶¶ 5, 9), and filing a petition against plaintiff to initiate disciplinary proceedings against him.  (Am.Comp. ¶ 10).  These actions, along with a referral to the Delaware Attorney General's Office (Am.Comp. ¶ 6), constitute the allegedly unconstitutional conduct.

### B.    Regulating the practice of law is a judicial function.

Although ordinarily such functions as investigating complaints and initiating charges entitle the actor to absolute prosecutorial immunity, in the bar-regulatory context, courts have viewed these functions as judicial in nature.  In *Simons v. Bellinger*, 643 F.2d 774 (D.C. Cir. 1980), the Court of Appeals for the District of Columbia Circuit analyzed the functions of a bar disciplinary committee, using a functional analysis (as plaintiff argues must be applied), and concluded that, functionally, bar disciplinary officials perform an inherently judicial function that entitles them to absolute immunity.  The appeals court stated:

> Under *Butz* [*v. Economou*, 438 U.S. 478 (1978)], the first criterion which we must consider is whether the Committee's judgments upon which the Simonses have brought suit possess a "functional comparability . . . to

---

[1] Strangely, in the Answering Brief at 12, plaintiff cites *Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 723 (6th Cir. 1993), for the proposition that this "decision-making body" reviews an initial complaint and decides whether to investigate--which is precisely the conduct for which plaintiff is suing Rocanelli in the instant action).

those of a judge." We find that they possess this vital characteristic in two respects. First, and most significantly, the Committee members were clearly engaged in preparing, and, perhaps, initiating, a particular lawsuit a critical phase of any prosecution. Second, in assessing whether to initiate a prosecution, the Committee was performing, by delegation, the inherent judicial function of determining who is authorized to practice law.

643 F.2d at 779-80. The court added:

The Committee members' work is functionally comparable to the work of judges in a second respect. They serve as an arm of the court and perform a function which traditionally belongs to the judiciary. In this sense, the Committee's efforts to determine those practicing law without proper authority are judicial efforts.

643 F.2d at 780.

In the instant action, the defendants are performing the judicial function of determining compliance, or lack thereof, with the Delaware Lawyers' Rules of Professional Conduct. This function is delegated to the Justices of the Delaware Supreme Court by the Delaware Constitution of 1897, Art. IV, § 13(2), which authorizes "a majority of the Justices of the Supreme Court to adopt rules for the administration of justice and the conduct of the business of any or all the courts of this State . . . ." The Delaware Supreme Court has stated: "It is the exclusive responsibility of this Court to supervise, regulate and discipline members of the Delaware Bar." *In the Matter of Mekler,* 669 A.2d 655, 664 (Del. 1995). *See also,* 10 *Del.C.* § 1906. Plaintiff correctly acknowledged in his original complaint that the ODC is an arm of the Delaware Supreme Court, before he realized this admission implies the existence of absolute immunity for the defendants.

## II.    THE DOCTRINE OF *YOUNGER V. HARRIS* REQUIRES ABSTENTION.

### A.    There is no law of the case on this issue.

Plaintiff's assertion in the Answering Brief that the ruling on his "Emergency *Ex Parte* Motion for a Temporary Restraining Order and Order to Show Cause" (D.I. 6) ("TRO") in the District Court of Eastern Pennsylvania constitutes the law of the case is absurd.  The law of the case applies only to rulings on issues that were fairly and fully litigated.  *Westerbeke Corporation v. Daihatsu Motor Co., Ltd.,* 304 F.3d 200, 219 (2d Cir. 2002); *DeVilla v. Schriver*, 245 F.3d  192, 197-98 (2d Cir. 2001);  *In re Altman,* 302 B.R. 424, 427 n.4 (Bankr.D.Conn. 2003).   In the instant action, plaintiff filed his complaint outside the relevant jurisdiction and sought a TRO with no notice to the defendants.  The litigating arm of the State, the Department of Justice (*see* 29 *Del.C.* § 2504(3)), was not involved in the telephone conference call at which the Eastern District Court announced its ruling on the same date, August 4, 2005, as the first docket entry in the case.  No authority anywhere holds that a party is bound by the "law of the case" two months before the complaint has even been served on that party.  The waiver of service, filed November 30, 2005, shows that the complaint was not sent to the defendants until October 21, 2005.  (D.I. 15).

Plaintiff argues that defendants did not appeal the ruling of the Eastern District of Pennsylvania on the *Younger* abstention issue.   There was no need to do so.   The complaint had not even been served on the defendants.  The defendants are entitled under Rule 12 of the Federal Rules of Civil Procedure to file a motion to dismiss the complaint.  If jurisdiction is lacking or if abstention is proper, this is the appropriate procedural stage at which to litigate these issues.

7

Moreover, the Third Circuit Court of Appeals has held that the law of the case doctrine is particularly ill-suited to jurisdictional issues. *See Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 118 (3d Cir. 1997) (stating that the law of the case "is not a fixed rule that prevents a federal court from determining the question of its own subject matter jurisdiction in a given case").

**B.      The Eastern District's holding was clearly erroneous.**

The law of the case does not apply here also because the ruling of the Eastern District on the issue of the applicability of *Younger v. Harris* abstention to state bar disciplinary proceedings was clearly erroneous. *See In re City of Philadelphia Litigation*, 158 F.3d 711, 718 (3d Cir. 1998) (stating that law of the case is a discretionary doctrine that does not apply to clearly erroneous decisions). The District Court explicitly relied upon the logic of *Taylor v. Kentucky State Bar Ass'n,* 424 F.2d 478, 482 (6th Cir. 1970), that a state bar disciplinary hearing is not a "state proceeding" under 28 U.S.C. § 2283. However, this logic was the holding of the Third Circuit Court of Appeals in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 437 (1982), which the Supreme Court reversed. The many cases cited in section II.D. below, where Federal courts have repeatedly relied on *Middlesex* to apply *Younger* abstention in the bar disciplinary context, show how obviously erroneous was the Eastern District of Pennsylvania's ruling.

**C.      The *Dombrowski* exception does not apply here.**

In *Dombrowski v. Pfister*, 380 U.S. 479 (1965), the United States Supreme Court created the bad faith exception to the 1793 Anti-Injunction Act now codified at 28 U.S.C. § 2283. In *Younger v. Harris,* 401 U.S. 37 (1971), the Supreme Court discussed the

*Dombrowski* exception and the limits of its applicability.  In *Dombrowski* the plaintiffs offered to prove that their offices had been raided and all their files and records seized pursuant to search and arrest warrants that were summarily vacated by a state judge for lack of probable cause.  Despite the state order quashing the warrants, the prosecutor continued threatening new prosecutions under the same statutes, holding public hearings at which the illegally seized documents were to be used to obtain additional indictments under the same statutes.  These threats were made despite the alleged absence of any likelihood of obtaining a conviction.   The Court held that this series of prosecutions and seizures threatened irreparable injury beyond that associated with the defense of a single prosecution brought in good faith.  *Younger*, 401 U.S. at 48-49.

The *Younger* Court emphasized the narrowness of the *Dombrowski* exception, which requires a showing of bad faith, not mere allegations, to warrant federal intervention.  *Id.* at 54.  The Court stated:  "[W]e hold that the *Dombrowski* decision should not be regarded as having upset the settled doctrines that have always confined very narrowly the availability of injunctive relief against state criminal prosecutions."  *Id.* at 53.

Further, the Court rejected the argument that the "chilling effect" of an arguably unconstitutional state prosecution or state statute is sufficient to warrant Federal intervention in a prior state proceeding.  The Court stated: "Moreover, the existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action."  *Id.* at 51.

In *Middlesex, supra,* the Court applied the *Younger* doctrine to state bar disciplinary proceedings, and found that a "showing" of bad faith was required before

Federal intervention could be justified.   457 U.S. at 435.   The Court noted that "extraordinary circumstances" would be required before there could be intervention.  *Id.* at 437.

In the instant action, the only thing that is extraordinary about plaintiff's Amended Complaint is the potboiler rhetoric employed to characterize rather mundane allegations.  The "smoking gun" is . . . [drum roll] . . . Andrea Rocanelli was once an associate of an attorney who filed a complaint against the plaintiff.  In a small city like Wilmington, such a circumstance would be expected to be the case, rather than the exception.  It can hardly be a basis for presuming bad faith.  Similarly, that Rocanelli's husband is allegedly employed by the largest private employer (or one of the largest private employers) in Delaware, which plaintiff chose to sue, is hardly a basis even for recusal (which she has nevertheless done), much less a presumption of bad faith.

Even where bar grievance committees have solicited complaints against attorneys who became the object of disciplinary charges, courts have refused to infer bad faith.  *See Mueller v. The Florida Bar*, 390 So.2d 449, 452 (Fla. App. 1980) ("We are not aware of any rule or policy prohibiting The Florida Bar from actively seeking (soliciting, if you will) complaints against particular members of the bar or members of the bar in general . . . . The allegation that certain complaints were solicited is therefore surplusage.").  In the instant action, plaintiff not only fails to allege Rocanelli solicited complaints against him, he identifies in the Amended Complaint the two different third parties (attorneys) who filed complaints against him, which started the investigation.  This is remarkably thin gruel to support modifiers such as "vendetta" and "death blow."  If the Court were to indulge plaintiff's outlandish inferences in the absence of any supporting factual

10

allegations, it would set a novel and untenable standard for deference to the legal conclusions of a complaint.

> ### D. Applying *Middlesex,* Federal courts have required more than a mere assertion of bad faith to avoid *Younger* abstention.

Applying *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 437 (1982), Federal courts have consistently required more than an assertion of bad faith to avoid the application of *Younger* abstention in the bar disciplinary context.

**First Circuit:** *Brooks v. New Hampshire Supreme Court*, 80 F.3d 633 (1st Cir. 1996) (rejecting bias claim as exception to *Younger* abstention); *Werle v. Rhode Island Bar Association*, 755 F.2d 195 (1st Cir. 1985) (Rhode Island Bar committee on unauthorized practice of law entitled to dismissal of complaint on either absolute immunity or qualified immunity grounds);

**Second Circuit:** *Mason v. Departmental Disciplinary Comm.,* 894 F.2d 512 (2d Cir. 1990) (*Younger* abstention upheld despite allegations of bad faith and bias, and communications between bar disciplinary authorities and Attorney General's Office were proper);

**Third Circuit:** *Zahl v. Harper*, 282 F.3d 204 (3d Cir. 2002) (affirming district court's dismissal of complaint, which challenged state medical administrative proceeding as federally preempted, on *Younger* abstention basis); *O'Neill v. City of Philadelphia*, 32 F.3d 785 (3d Cir. 1994) (district court's failure to abstain under *Younger v. Harris*, where complaint challenged municipal administrative parking ticket board procedure on due process claim, held to be abuse of discretion); *Stern v. Nix*, 840 F.2d 208 (3d Cir. 1988) (*Rooker-Feldman* abstention in attorney discipline case); *Gipson v. New Jersey Supreme*

*Court*, 558 F.2d 701, 703-04 (3d Cir. 1977) (pre-*Middlesex* case, refusing to interfere with state attorney discipline proceeding and citing *Younger*);

**Fifth Circuit:** *Wightman v. Texas Supreme Court*, 84 F.3d 188, 190 (5th Cir. 1996) (*Younger* abstention upheld despite bad faith and harassment allegations, stating the "bad faith exception is narrow and is to be granted parsimoniously"); *Hensler v. District Four Grievance Comm.,* 790 F.2d 390 (5th Cir. 1986) (motion to dismiss granted and *Younger* abstention upheld despite allegations of bad faith when attorney filed suit after receiving notice of grievance against him); *Hefner v. Alexander,* 779 F.2d 277, 279-80 (5th Cir. 1985) (motion to dismiss granted and affirmed on grounds of *Younger* abstention despite allegations of bad faith);

**Sixth Circuit:** *Brown v. Ohio Disciplinary Counsel,* 230 F.3d 1357 (table), 2000 WL 1434450 (6th Cir.) (dismissal of action against Ohio disciplinary counsel challenging disciplinary action affirmed on *Younger* abstention grounds); *Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 723 (6th Cir. 1993) (*Younger* abstention affirmed despite allegations of bad faith);

**Seventh Circuit:** *Crenshaw v. Supreme Court of Indiana*, 170 F.3d 725 (7th Cir. 1999), *cert. denied*, 528 U.S. 871 (1999) (affirming dismissal on *Younger* abstention grounds: "In order to establish her entitlement to the bad faith exception to the *Younger* doctrine, Ms. Crenshaw must allege specific facts to support her inferences of bad faith, bias, and retaliation.  She must present more than mere allegations and conclusions."); *Pincham v. Illinois Judicial Inquiry Board*, 872 F.2d 1341 (7th Cir. 1989) (motion to dismiss granted and affirmed on *Younger* abstention grounds despite allegations of bad faith, selective prosecution, and racial discrimination), *cert. denied*, 493 U.S. 975 (1989);

**Eighth Circuit:** *Neal v. Wilson*, 112 F.3d 351 (8th Cir. 1997) (district court lacked jurisdiction under *Rooker-Feldman* abstention, and *Younger* abstention was appropriate despite bad faith allegations);

**Ninth Circuit:** *Canatella v. California,* 404 F.3d 1106 (9th Cir. 2005) (California's attorney discipline proceedings are "judicial in character" and *Younger* abstention applies despite unsupported allegations of bias); *Gilchrist v. Arizona Supreme Court*, 10 Fed.Appx. 468 (9th Cir. 2001) (if state bar proceeding was concluded, *Rooker-Feldman* abstention applied; if it was ongoing, *Younger* abstention applied; bar association prosecuting attorneys are absolutely immune), *cert. denied*, 534 U.S. 996 (2001); *Hirsch v. Justices of the Supreme Court of the State of Calif.*, 67 F.3d 708 (9th Cir. 1995) (*Younger* abstention upheld, attorney disciplinary proceedings are judicial in nature, and attorney prosecutors are entitled to quasi-judicial immunity); *Clark v. Washington*, 366 F.2d 678, 681 (9th Cir. 1966) (bar discipline prosecutors are absolutely immune).

**Tenth Circuit:** *Amanatullah v. Colorado Bd. of Medical Examiners,* 187 F.3d 1160, 1163 (10th Cir. 1999) (*Younger* abstention upheld where plaintiff failed to meet "heavy burden" of setting forth more than "mere allegations of bad faith");

**Eleventh Circuit:** *Fox v. Florida*, 138 Fed.Appx. 194 (11th Cir. 2005) (affirming dismissal of complaint challenging attorney license suspension on *Rooker-Feldman* abstention grounds);

**District of Columbia Circuit:** *Simons v. Bellinger*, 643 F.2d 774 (D.C. Cir. 1980) (bar committee members absolutely immune);

**District Courts:** *Mason v. The Florida Bar*, 2005 WL 3747383 (M.D.Fla.) (motion for judgment on the pleadings granted on *Younger* abstention grounds despite allegations of bad faith); *Stein v. Legal Advertising Comm. of the Disciplinary Bd.*, 272 F.Supp.2d 1260 (D.N.M. 2003) (motion to dismiss granted on *Younger* abstention grounds despite allegations of bad faith); *Richardson v. The Florida Bar*, No. 90-0984, 1990 WL 116727, at *2, 1990 U.S. Dist. LEXIS 5864, at *10-11 (D.D.C. May 15, 1990) (both *Younger* and *Rooker-Feldman* abstention appropriate, requiring dismissal of complaint alleging constitutional violations with respect to attorney disciplinary proceeding).

In *Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 723 (6th Cir. 1993), the Sixth Circuit Court of Appeals affirmed the dismissal of a complaint on the basis of *Younger* abstention. Like the instant Amended Complaint, the complaint in *Berger* alleged a bad faith prosecution by bar disciplinary officials and sought injunctive, declaratory and monetary relief. The plaintiffs alleged they were being charged with disciplinary violations because they were civil rights attorneys (just as Gielata alleges he has been charged because he sued Paypal and MBNA). The Sixth Circuit distinguished between general allegations of bad faith and specific factual allegations that would implicate the *Dombrowski* exception. The court stated:

> Plaintiffs allege bad faith and harassment on the part of the Grievance Committee. First, they argue the proceedings harass civil rights attorneys, thereby impairing federal rights under 42 U.S.C. § 1983. However, plaintiffs have not alleged specific facts showing a concerted effort to discipline only civil rights attorneys. Second, they argue the proceedings were brought in bad faith because of past conflicts in litigation with members of the Grievance Committee. The argument is without merit. The very nature of our adversarial legal system requires attorneys to oppose each other during litigation in order to represent zealously the interests of the client. Since the bar association is a self-governing body,

> it is inevitable that attorneys who have disagreed in prior matters will
> eventually be called on to discipline each other.  Absent specific facts
> demonstrating bad faith by the Committee, we find that the third
> *Middlesex* factor requires abstention.

983 F.2d at 724.  In a footnote, the court noted the consistency of its decision with "the findings of other courts which have refused to interfere with state bar proceedings."

### E.    Plaintiff's assertion that the State lacks an important interest is frivolous.

Plaintiff asserts in his Answering Brief that the State of Delaware lacks an important interest in its attorney disciplinary proceedings under the *Middlesex-Younger* abstention test.  (Ans. Br. at 23).   This contention demonstrates the frivolous nature of this litigation.  Every Federal court in the cases cited in section II.D. above found attorney disciplinary proceedings to implicate an important state interest, as did the Supreme Court in *Middlesex, supra*.  Moreover, there is no reason to presume that in the disciplinary proceedings that are reviewed by the Delaware Supreme Court the plaintiff is unable to assert any and all defenses, including those of a constitutional nature.

## III.    *ROOKER-FELDMAN* ABSTENTION ALSO APPLIES HERE.

### A.    The *Stern-Centifanti* line of cases requires *Rooker-Feldman* abstention.

Pages 14-16 of the Opening Brief in support of this motion discussed the *Rooker-Feldman* doctrine as set forth in multiple Third Circuit precedents where attorneys challenged disciplinary action against them in Federal court:  *Stern v. Nix*, 840 F.2d 208 (3d Cir. 1988); *Centifanti v. Nix*, 865 F.2d 1422 (3d Cir. 1989); *Boyce v. Dembe*, 47 Fed.Appx. 155 (3d Cir. 2002); *Blake v. Papadakos*, 953 F.2d 68 (3d Cir. 1992); *Marran v. Marran*, 376 F.3d 143 (3d Cir. 2004); *Pawlak v. Pennsylvania Board of Law Examiners*, 1995 WL 517646 (E.D.Pa.) (Tab M of the Appendix to Opening Brief).  To

15

determine whether *Rooker-Feldman* applies, and whether plaintiff seeks to reverse or negate a state court adjudication or challenge a rule of general applicability, courts look to see the level of factual specificity in the complaint and the relief requested.  *See Centifanti v. Nix*, 865 F.2d 1422, 1428 n.7, 1429 (3d Cir. 1989); *Boyce v. Dembe*, *supra,* 47 Fed.Appx. at 160.  Where plaintiff seeks protection from some action taken against him and provides in the complaint extensive factual development of the matter as it pertains to him, *Rooker-Feldman* abstention will apply.  *Id.* This analysis in the instant action requires the application of *Rooker-Feldman* abstention.

      **B.**    ***Exxon* does not reverse or alter the *Stern-Centifanti* line of cases.**

Plaintiff seeks to avoid the outcome of dismissal mandated by Third Circuit precedent by reliance on a recent Supreme Court opinion, *Exxon Mobil Corp. v. Saudi Basic Industries Corp*., --U.S.--, 125 S. Ct. 1517 (2005).  However, *Exxon* involved a third party to the state court proceeding, did not involve a losing or threatened party in the state proceeding trying to undo the state result, and has no application to the instant action.  Nothing in *Exxon*'s holding reverses or alters the *Stern-Centifanti* line of Third Circuit authorities involving Federal challenges to state bar disciplinary proceedings.

The Third Circuit's application of *Rooker-Feldman* abstention in bar discipline cases is supported by the opinions of the other circuits.  *See Fox v. Florida*, 138 Fed.Appx. 194 (11th Cir. 2005) (affirming dismissal of complaint challenging attorney license suspension on *Rooker-Feldman* abstention grounds); *Gilchrist v. Arizona Supreme Court*, 10 Fed.Appx. 468 (9th Cir. 2001), *cert. denied*, 534 U.S. 996 (2001) (if state bar proceeding was concluded, *Rooker-Feldman* abstention applied; if it was ongoing, *Younger* abstention applied; bar association prosecuting attorneys are absolutely

immune);  *Neal v. Wilson*, 112 F.3d 351 (8th Cir. 1997) (district court lacked jurisdiction under *Rooker-Feldman* abstention, and *Younger* abstention was appropriate despite bad faith allegations); *Tindall v. The Florida Bar,* 1997 WL 689636 (M.D.Fla.) (challenge to Florida bar disciplinary proceedings alleging bad faith prosecution, harassment, disparate treatment, and racial discrimination dismissed under *Rooker-Feldman* doctrine), *aff'd*, 163 F.3d 1358 (11th Cir. 1998).

## IV.    ODC IS NOT A "PERSON" FOR PURPOSES OF § 1983.

Although plaintiff alleged in his original complaint that the ODC is an arm of the Delaware Supreme Court (Complaint at ¶ 19), in his Answering Brief he argues that it is not for Eleventh Amendment purposes.  He bases this argument on a contention that a judgment against the ODC would not be paid by public funds, and therefore the ODC lacks Eleventh Amendment immunity.  Plaintiff's contention that a judgment against the ODC would be paid by private funds is mere speculation.  As the Rules of the Delaware Supreme Court provide absolute immunity to the ODC, there is no provision for funding judgments against it.  Plaintiff's argument that operating expenses are paid by private assessments, not taxes, does not demonstrate or even indicate the source of payment for judgments against the ODC.  The Rules of the Delaware Supreme Court simply do not address this circumstance.

What is clear is that the assessments by the Delaware Supreme Court on attorneys for the operation of the ODC have been found by that Court to be part of its inherent authority to establish and control the Delaware Bar.  *See In re Member of Bar*, 257 A.2d 382, 383 (Del. 1969).  This fact is critical to the Third Circuit's section 1983 "person" analysis under *Will v. Michigan Dept. of State Police,* 491 U.S. 58  (1989).

In *Callahan v. City of Philadelphia*, 207 F.3d 668 (3d Cir. 2000), the Third Circuit held that Pennsylvania judicial defendants who were funded largely with local funds were still not "persons" under section 1983, regardless of the outcome of Eleventh Amendment jurisdictional analysis. The appeals court found it more important that the defendants in *Callahan* were subject to the control of the Pennsylvania Supreme Court, and thus lacked autonomy. 207 F.3d at 673. Similarly, in the instant case, ODC and its Chief Disciplinary Counsel are under the control of the Delaware Supreme Court. *See, e.g.,* Delaware Supreme Court Rule 64(a)--each disciplinary counsel is appointed and serves at the pleasure of the Court; 64(e)(5)--ODC budgetary limitations set by the Court; 64(e)(10)--disciplinary counsel must undertake any investigations or tasks pursuant to directions from the Court; and 64(f)--ODC shall annually file an audit of its expenses with the Court.

*Callahan* is precisely on point with the instant action. Here, the funding of the ODC consists of mixed sources: offices provided at State expense, operating expenses paid by assessments of the Delaware Supreme Court on members of the Bar, and no provision that establishes a source for paying judgments. *Callahan* similarly involved mixed funding sources.

Plaintiff claims that *Callahan v. City of Philadelphia*, 207 F.3d 668 (3d Cir. 2000), is inapposite, but in fact *Callahan* is controlling Third Circuit authority that compels the conclusion the ODC is not a "person" under § 1983. 207 F.3d at 673-74 ("while it is true that the judicial defendants largely are funded locally . . . the district courts repeatedly have held that all components of the judicial branch of the Pennsylvania government are state entities and thus are not persons for section 1983 purposes").

18

**V.    PLAINTIFF ADMITS THE ESSENTIAL FACTS THAT SHOW THERE IS
<u>NO CASE OR CONTROVERSY</u>.**

Plaintiff admits in his Answering Brief the essential facts that show there is no
case or controversy in this matter.  He admits that the disciplinary proceeding has been
suspended indefinitely.  (Ans. Br. at 2).  He admits that defendant Rocanelli has recused
herself with respect to his disciplinary proceeding.  (Ans. Br. at 2).  He admits that he is
able to practice law subject only to certain disclosure requirements to which he agreed.
(Ans. Br. at 2).  The only real controversy, prospectively, is the criminal proceeding over
which this Court lacks jurisdiction under the doctrine of *Younger v. Harris,* 401 U.S. 37
(1971).

## <u>CONCLUSION</u>

For the above-stated reasons, the Defendants respectfully request that this Honorable Court issue an order granting their motion to dismiss the Amended Complaint for lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, and under principles of federalism and comity.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Richard W. Hubbard
_____
Richard W. Hubbard (ID# 2442)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8308

Date: April 21, 2006

Attorney for the Defendants

20

## <u>CERTIFICATE OF MAILING AND/OR DELIVERY</u>

The undersigned certifies that on April 21, 2006, he caused the foregoing document to be delivered to the following persons in the form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT(S):**

Joseph N. Gielata, Esquire
501 Silverside Road, Ste. 90
Wilmington, DE  19809

**MANNER OF DELIVERY:**

<u>x</u>   One true copy by electronic delivery.

__One true copy by facsimile transmission to each recipient

__Two true copies by first class mail, postage prepaid, to each recipient

__Two true copies by Federal Express

__Two true copies by hand delivery to each recipient

/s/  Richard W. Hubbard
_____
Richard W. Hubbard, I.D. # 2442

21