# UNREPORTED DECISIONS

# Westlaw.

230 F.3d 1357 (Table)                                                                  Page 1

230 F.3d 1357 (Table), 2000 WL 1434450 (6th Cir.(Ohio))
**Unpublished Disposition**

**(Cite as: 230 F.3d 1357, 2000 WL 1434450 (6th Cir.(Ohio)))**

**Briefs and Other Related Documents**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.
Thomas C. BROWN, Plaintiff-Appellant,
v.
OHIO DISCIPLINARY COUNSEL; Thomas J. Moyer, Chief Justice, Ohio Supreme Court, also known as Thomas Myer, Defendants-Appellees.
**No. 99-4514.**

Sept. 18, 2000.

Before NELSON and MOORE, Circuit Judges; WILHOIT, Chief District Judge. [FN*]

> FN* The Honorable Henry R. Wilhoit, Jr., United States Chief District Judge for the Eastern District of Kentucky, sitting by designation.

**\*\*1** Thomas C. Brown, proceeding pro se, appeals a district court judgment dismissing his civil rights action construed as filed pursuant to 42 U.S.C. § 1983. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Brown filed a "Complaint for Declaratory Judgment and Temporary Restraining Order"

against the Ohio Disciplinary Counsel (ODC) and the Chief Justice of the Ohio Supreme Court, asserting that: 1) his law license had been suspended without due process of law and in violation of the Ex Post Facto Clause; and 2) Rule V, Section 5(a) of the Rules of Governance of the Bar was unconstitutional on its face and as applied to him. Upon motion by the defendants, the district court dismissed the complaint for lack of subject matter jurisdiction and also under the abstention doctrine because disciplinary proceedings were still pending against Brown.

In his timely appeal, Brown essentially reasserts his claims. He has also moved for miscellaneous relief.

This court reviews de novo a district court's decision to abstain. *See Berger v. Cuyahoga Co. Bar Ass'n,* **983 F.2d 718, 721 (6th Cir.1993).**

The district court properly abstained. Generally, absent extraordinary circumstances, abstention is appropriate where there is an ongoing state judicial proceeding, the proceeding implicates important state interests, and the state proceeding provides an adequate opportunity to raise constitutional challenges. *See Younger v. Harris,* 401 U.S. 37 44-45 (1971); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982) (applying *Younger* to state bar disciplinary hearing).

Abstention was appropriate in the instant case. *See Berger,* **983 F.2d at 722-24** (applying *Middlesex* to Ohio bar disciplinary proceedings). First, the disciplinary proceeding against Brown is ongoing and is judicial in nature as the Ohio Constitution gives the Ohio Supreme Court the power to discipline the bar and as the Ohio Supreme Court decides what discipline is imposed. *See id.* at 723. Second, the proceeding implicates the important state interest of maintaining the integrity of the bar. *See id.* Third, Brown has the opportunity to raise

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

230 F.3d 1357 (Table)                                                           Page 2

230 F.3d 1357 (Table), 2000 WL 1434450 (6th Cir.(Ohio))
**Unpublished Disposition**

**(Cite as: 230 F.3d 1357, 2000 WL 1434450 (6th Cir.(Ohio)))**

constitutional claims during the proceeding and has
not made any showing of bad faith, harassment, or
any extraordinary circumstance which would render
abstention inappropriate. *See id.*

Accordingly, all pending motions are denied, and
the district court's judgment is affirmed. Rule
34(j)(2)(C), Rules of the Sixth Circuit.

230 F.3d 1357 (Table), 2000 WL 1434450 (6th
Cir.(Ohio)) Unpublished Disposition

### Briefs and Other Related Documents (Back to top)

• 99-4514 (Docket) (Dec. 15, 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Westlaw.

Slip Copy                                                          Page 1

Slip Copy, 2005 WL 3747383 (M.D.Fla.)

**(Cite as: 2005 WL 3747383 (M.D.Fla.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
M.D. Florida.
Steven G. MASON, Plaintiff,
v.
THE FLORIDA BAR, Defendant.
**No. 6:05-CV-627-28JGG.**

Dec. 16, 2005.

Jerome Hennigan, Attorney & Counselor at Law,
Orlando, FL, for Plaintiff.

Laureen E. Galeoto, Mary Hope Keating,
Greenberg Traurig P.A., Tallahassee, FL, for
Defendant.

*REPORT AND RECOMMENDATION ON
ABSTENTION*

GLAZEBROOK, Magistrate J.

I. *THE ISSUES*

*1 The case is before the Court on the Florida Bar's
Motion to Abstain or in the Alternative Motion for
Judgment on the Pleadings filed August 30, 2005.
Docket Nos. 35 (motion); 39 (memorandum in
opposition); *see also,* Docket No. 24 at 2
(affirmative defenses raising *Younger* and *Pullman*
abstention). On September 30, 2005, this Court
ordered Plaintiff Steven G. Mason to show cause
why the Court should not grant the Bar's motion to
abstain pursuant to *Middlesex County Ethics
Committee v. Garden State Bar Ass'n,* 457 U.S.
423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).
Docket No. 42. At an evidentiary hearing on
October 25 and 26, 2005, the Court considered all

testimony, evidence, and other submissions. *See*
Docket Nos. 44, 45, 51, 52, 53, 55, 56, 60.

Mason asks this Court to decide an interesting and
weighty issue: whether the Florida Supreme Court
and the Florida Bar may prohibit an attorney from
impugning the qualifications and integrity of a
judge, and from disparaging jurors, without
violating free speech rights guaranteed by the
United States Constitution. The motion to abstain,
however, requires this Court to decide a more
limited issue--whether the federal court should hear
and resolve Mason's free speech argument.

Mason contends that it is the province of the
federal courts to resolve free speech issues arising
under the United States Constitution, and that the
referees, grievance committees, and counsel of the
Florida Bar are poorly equipped to do so--at least
without causing a lengthy delay that will chill all
lawyers' right to speak freely about judges and
juries. [FN1] In response, the Florida Bar argues
that this Court should abstain from resolving such
issues in order to permit a resolution by the entities
responsible for attorney discipline in Florida--the
Florida Supreme Court and the Florida Bar. The
Florida Bar is correct. The Florida Bar and the
Florida Supreme Court will allow Mason to raise
his federal constitutional issues, and will resolve
those issues promptly and competently. It is
therefore RECOMMENDED that the Florida Bar's
Motion to Abstain be GRANTED, and that the
United States District Court ABSTAIN pursuant to
*Younger v. Harris,* 401 U.S. 37 (1971), and in the
alternative, pursuant to *Railroad Comm'n of Texas
v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85
L.Ed. 971 (1941).

> FN1. Specifically, Mason contends that
> abstention is improper because the federal
> action has proceeded past the "embryonic
> stage" at a time when the grievance
> proceeding does not yet constitute an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 2

Slip Copy, 2005 WL 3747383 (M.D.Fla.)

**(Cite as: 2005 WL 3747383 (M.D.Fla.))**

"ongoing state proceeding." Mason also contends that the Florida Bar's bad faith precludes *Younger* abstention.

## II. *THE FACTS*

On April 4 and 6, 2005, two Circuit Court Judges of the Ninth Judicial Circuit in Orange County, Florida, telephoned the Florida Bar about two *Orlando Sentinel* articles quoting Mason, an attorney admitted to practice in Florida. Docket No. 44 at 1. One article reported that a Circuit Court Judge had allowed a special election for temporary mayor to proceed. The article quoted Mason, who was serving as counsel for one of the political parties, as follows:

"It's an illegal election," he said. "We'll find some judges on the appellate court who aren't afraid of the political heat, and we're going to win this thing."

Docket No. 1 at 14 (exhibit to complaint). The second article reported that a six-member civil jury in Orange County had found Mason's client liable for civil damages for bingo-related racketeering activities, and that the civil jury had not been told that an earlier criminal jury had acquitted the defendant of criminal racketeering and gambling charges. The article quoted Mason as questioning the jury's findings:

*2 "Unfortunately, this jury got absolutely buffaloed. They got snookered, beyond snookered," Mason said. "I would like to see their faces when they find out another jury in this courthouse found these people not guilty of every single charge based on the exact same facts."

Docket No. 1 at 15 (exhibit to complaint).

On April 14, 2005, Florida Bar Counsel gave Mason fifteen days to explain in writing whether the statements attributed to him in the two *Orlando Sentinel* articles were true, and whether the statements violated Fla. Bar Rule 4- 8.2(a) (which prohibits a lawyer from impugning the qualifications and integrity of judges) and Fla. Bar Rule 4-8.4(d) (which prohibits a lawyer from disparaging jurors on any basis). Docket No. 1 at 11 (exhibit to complaint). On April 26, 2005, Mason filed a complaint asking the United States District

Court for the Middle District of Florida to declare that Fla. Bar Rules 4-8.2(a) and 4-8.4(d) unconstitutionally inhibit free speech in violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution. Docket No. 1 at 8. Mason's complaint also asked the federal court to forever enjoin the Florida Bar from enforcing those rules. Docket No. 1 at 8--9. After filing the federal case, Mason responded to Bar counsel's fifteen-day letter, a response which the Bar received on May 2, 2005. [FN2] Docket No. 44 at 2. On August 23, 2005, the Florida Bar referred the complaint against Mason to a grievance committee pursuant to Rules 3-7.3(f) and 3-7.4.

FN2. The Court has never seen Mason's response to the Florida Bar, and the parties declined this Court's invitation to include it in the record.

## III. YOUNGER *ABSTENTION*

The doctrine arising out of *Younger v. Harris*, 401 U.S. 37 (1971), generally requires federal courts to abstain from hearing federal constitutional claims that involve or call into question ongoing state procedures. While *Younger* emanated from the context of state criminal proceedings, in subsequent cases the court extended the application of the doctrine to civil proceedings which involve important state interests. *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). The doctrine applies to state administrative proceedings, *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), and more specifically, to disciplinary proceedings initiated by a state bar. *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *American Civil Liberties Union v. The Florida Bar,* 999 F.2d 1486, 1493 n. 15. [FN3]

FN3. *Accord Canatella v. California,* 404 F.3d 1106 (9th Cir.2005); *Stein v. Legal Advertising Comm. of the Disciplinary Bd.,* 122 Fed. Appx. 954 (10th Cir.2004); *Gilchrist v. Arizona Supreme Court,* 10

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 3

Slip Copy, 2005 WL 3747383 (M.D.Fla.)

**(Cite as: 2005 WL 3747383 (M.D.Fla.))**

Fed. Appx. 468 (9th Cir.2001), *cert. denied,* 534 U.S. 996, 122 S.Ct. 466, 151 L.Ed.2d 382 (2001); *Crenshaw v. Supreme Court of Indiana,* 170 F.3d 725 (7th Cir.1999), *cert. denied,* 528 U.S. 871, 120 S.Ct. 173, 145 L.Ed.2d 146 (1999); *Neal v. Wilson,* 112 F.3d 351 (8th Cir.1997); *Wightman v. Texas Supreme Court,* 84 F.3d 188 (5th Cir.1996), *cert. denied,* 519 U.S. 1080, 117 S.Ct. 744, 136 L.Ed.2d 682 (1997); *Brooks v. New Hampshire Supreme Court,* 80 F.3d 633 (1st Cir.1996); *Hirsh v. Justices of the Supreme Court of the State of Calif.,* 67 F.3d 708 (9th Cir.1995); ***Berger v. Cuyahoga County Bar Ass'n, 983 F.2d 718** (6th Cir.1992), cert. denied,* 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993); *Partington v. Gedan,* 961 F.2d 852 (9th Cir.1992), *cert. denied,* 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 537 (1992); *Greening,* 953 F.2d at 301; *Mason v. Departmental Disciplinary Comm.,* 894 F.2d 512 (2d Cir.1990), *cert. denied,* 497 U.S. 1025, 110 S.Ct. 3274, 111 L.Ed.2d 784 (1990); *Sekerez v. Supreme Court of Indiana,* 685 F.2d 202 (7th Cir.1982), *abrogated on other grounds,* 43 F.3d 290 (7th Cir.1994)

The *Middlesex* decision controls. In *Middlesex,* the United States Supreme Court reviewed a case in which the New Jersey Bar had charged that a lawyer had violated certain bar rules. Instead of responding to the charges, the lawyer filed suit in federal district court contending that the disciplinary rules violated his rights under the federal constitution. 457 U.S. at 429. The Third Circuit reversed, and on review, the Supreme Court held that the district court correctly dismissed the case based on *Younger. Id.* at 429, 437. The Supreme Court enunciated three elements that must be met for the application of the *Younger* abstention doctrine to state disciplinary proceedings: 1.) the proceeding must constitute an ongoing judicial proceeding; 2.) the proceeding must implicate important state interests; and 3.) there must be an adequate opportunity in the proceeding to raise constitutional

challenges. *Id.* at 432. If these three elements are met, then the district court must apply *Younger* in a bar disciplinary matter unless the complaining party makes a showing of bad faith, harassment, or some other extraordinary circumstance. *Id.* at 435.

*3 The Court in *Middlesex* noted that the New Jersey state constitution vested the power to govern and discipline bar members in the New Jersey Supreme Court, *Id.* at 425, 433, and that the disciplinary proceedings were carried out by bar ethics and grievance committees which are arms of the New Jersey Supreme Court. *Id.* at 425-26, 433. The Court recognized that that "[f]rom the very beginning a disciplinary proceeding is judicial in nature, initiated by filing a complaint with an ethics and grievance committee." *Id.* at 433. The Supreme Court further found that the respondent had the opportunity to present his constitutional claims by raising the issues before the committees and the New Jersey Supreme Court. *Id.* at 435-36. The Supreme Court therefore held that abstention was appropriate.

As in *Middlesex,* the Florida Constitution vests jurisdiction over the regulation of attorneys in the Florida Supreme Court. Art. V, § 15, Fla. Const.; *Tindall v. The Florida Bar,* No. 97-387-Civ-T-17C, 1997 WL 689636 (M.D.Fla.1997), aff'd, 163 F.3d 1358 (11th Cir.1998). The Florida Bar is an official arm of the Florida Supreme Court charged with the responsibility of maintaining the ethical standards among its members and disciplining members. *Carroll v. Gross,* 984 F.2d 392 (11th Cir.1993), *cert. denied,* 510 U.S. 893, 114 S.Ct. 254, 126 L.Ed.2d 206 (1993); *Tindall,* 1997 WL 689636 at *4; *Dade-Commonwealth Title Ins. v. North Dade Bar Ass'n,* 152 So.2d 723, 725 (Fla.1963); see also *Introduction,* Ch. 1, R. Regulating Fla. Bar; R. Regulating Fla. Bar. 3-3.1 and 1-8.1. In fulfilling its responsibilities in this regard, the Florida Bar acts at all times under the exclusive jurisdiction, supervision and control of the Florida Supreme Court. *Id.*

The United States Court of Appeals for the Eleventh Circuit has determined that the Florida Bar's disciplinary proceedings are judicial in nature.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 4

Slip Copy, 2005 WL 3747383 (M.D.Fla.)

**(Cite as: 2005 WL 3747383 (M.D.Fla.))**

*In the Matter of Calvo,* 88 F.3d 962, 965 (11th Cir.1996); *American Civil Liberties Union,* 999 F.2d at 1493 n. 15 ("*Younger* applies to state disciplinary hearings because they are 'judicial in nature' "); *Tindall,* 1997 WL 689636 at *4, aff'd, 163 F.3d 1358 (11th Cir.1998). *See also* R. Regulating Fla. Bar 3-7.6(f)(1); **Berger v. Cuyahoga County Bar Ass'n,** 983 F.2d 718 (6th Cir.1993) (finding Ohio attorney disciplinary proceedings, similar to Florida's, to be judicial in nature and applying *Younger* ), *cert. denied,* 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993); *Hirsch v. Justices of the Supreme Court of the State of Calif.,* 67 F.3d 708 (9th Cir.1995) (California's attorney disciplinary proceedings are judicial in nature and applying *Younger* ).

This Court must decide at what stage the Florida Bar's proceedings constitute an ongoing judicial proceeding for the purpose of *Younger.* Courts addressing this issue have consistently found that early stages of a bar's disciplinary procedures constitute ongoing judicial proceedings for purposes of *Younger. Amanatullah v. Colorado Bd. of Medical Examiners,* 187 F.3d 1160, 1163 (10th Cir.1999) (for purposes of *Younger,* state proceedings began on the day the board of medical examiners issued its first letter advising doctor of its investigation into allegations regarding his conduct and requesting information regarding the allegations); *Wightman v. Texas Supreme Court,* 84 F.3d 188 (5 th Cir.1996) (in matter where attorney made controversial statements in a motion and in letters to the court and to opposing counsel in which he attacked the character of certain state judges, the court upheld *Younger* abstention where disciplinary proceedings were still in their early stages and had not yet gone before investigatory panel of grievance committee), *cert. denied,* 519 U.S. 1080, 117 S.Ct. 744, 136 L.Ed.2d 682 (1997); *Hirsch,* 67 F.3d at 708 (disciplinary proceedings were ongoing after attorneys received notices to show cause); **Berger,** 983 F.2d at 718 (upholding *Younger* abstention when attorneys filed federal action in the midst of grievance committee's investigation but before formal complaint was filed), *cert. denied,* 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993); *Mason v. Departmental Disciplinary Comm.,* 894

F.2d 512 (2d Cir.1990) (*Younger* abstention upheld where committee was conducting inquiry by letter, and prior to deadline for responding, accused attorney sought federal court intervention), cert. denied, 497 U.S. 1025, 110 S.Ct. 3274, 111 L.Ed.2d 784 (1990); *Stein v. Legal Advertising Comm. of the Disciplinary Bd.,* 272 F.Supp.2d 1260 (D.N.M.2003) (finding that attorney disciplinary proceedings commenced for purposes of *Younger* when letter was sent to attorney apprizing him of an investigation and requiring him to respond, but attorney filed lawsuit instead).

**\*4** The Tenth Circuit in *Amanatullah* said "[t]he disciplinary proceedings by the Colorado Board begin with an informal inquiry and investigation into complaints .... [and if] upon completion of the investigation, the inquiry panel finds that the facts 'warrant further proceedings by formal complaint,' the matter is referred to the attorney general for the preparation and filing of a formal complaint." *Id.* at 1163 (citations omitted). The issue in that case, as in this case, was whether the proceeding for purposes of abstention began at the point the decision was made to go forward. The Tenth Circuit held that the state proceedings began on the date the Colorado Board issued its first "30-day" inquiry letter to respondent advising him of its investigation into the allegations of the Nevada complaint. The state proceedings "did not begin when the formal complaint was filed by the attorney general." *Id.* at 1164.

The Eleventh Circuit has not directly addressed this point. Nevertheless, *Redner v. Citrus County Florida,* 919 F.2d 646 (11th Cir.1990) suggests that the state Bar proceeding began on April 4, 2005 when the Florida Bar opened an inquiry file on Mason. In *Redner,* a criminal case, the court stated:
We reject Redner's suggestion that there was no pending state criminal proceeding against him when he filed for federal relief. Before he filed suit in federal court, he had been arrested and taken to jail twice for violating Ordinance 88-05 and twice had been released on bond. Because Redner was twice released from jail on bond, pending a state trial before he filed a federal suit, state criminal proceedings had begun against him.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 5

Slip Copy, 2005 WL 3747383 (M.D.Fla.)

**(Cite as: 2005 WL 3747383 (M.D.Fla.))**

*Id.* at 649.

Accordingly, this Court finds that the state Bar
proceeding against Mason commenced on April 4,
2005, when the Florida Bar opened an inquiry file
about Mason's statements that were quoted in the
*Orlando Sentinel.* Furthermore, the Court finds that
the Florida Bar proceedings against Mason were
"ongoing" when Mason filed this action in federal
court on April 26, 2005. Docket No. 1. The Court
disagrees with Mason's contention that no state
proceeding was commenced until the matter was
referred to the grievance committee on August 23,
2005. [FN4] If this Court were to accept Mason's
contention, then lawyers who receive notice of a
disciplinary investigation could easily circumvent
*Younger* by filing a federal action before the
grievance committee received the matter. Many
state proceedings involving attorney conduct would
become federal cases.

> FN4. This Court also disagrees that the
> Florida Bar waived its abstention defense
> by not raising it in the motion to dismiss.
> An appellate court may even raise
> abstention *sua sponte* for the first time on
> appeal. *See Columbia Basin Apartment
> Association v. City of Pasco,* 268 F.3d 791
> (9th Cir.2001); *Delleti v. Baird,* 428 U.S.
> 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976).

The Court also finds that no substantive
proceedings or rulings on the merits in this federal
action have taken place to date that would preclude
abstention as provided for in *For Your Eyes Only v.
City of Columbus,* 281 F.3d 1209 (11 th Cir.2002).
[FN5] There have been no substantive proceedings
on the merits, and no hearings on dispositive
motions, except for *Younger* related proceedings.
Certainly no federal action was pending at the time
the state Bar proceedings were commenced. On the
contrary, it was the state Bar proceeding that
triggered the commencement of the federal
proceeding.

> FN5. This court denied the Florida Bar's
> Motion to Dismiss on July 7, 2005 and
> denied the Florida Bar's Motion for Leave

to File Reply to Plaintiff's Response to the
Defendant's Motion to Dismiss and
Defendant's Motion to Reconsider Order
Denying Defendant's Motion to Dismiss on
July 14, 2005. The third order, entered on
August 24, 2005 related to complaints with
the case management and scheduling order
and extensions of time. These orders were
non-substantive and not on the merits.

**\*5** With regard to the second element of the
*Middlesex* test, Mason understandably makes no
argument that the disciplinary proceeding does not
concern or implicate important state interests.
Florida has a significant interest in regulating
Florida lawyers. There is no difference between
Florida's interest in regulating its lawyers and New
Jersey's interest as reviewed by the United States
Supreme Court in *Middlesex. See also, The Florida
Bar v. Went For It,* 515 U.S. 618, 625, 115 S.Ct.
2371, 132 L.Ed.2d 541 (1995) (we have little
trouble crediting the [Florida] Bar's interest [in
regulating its lawyers] as substantial"). The second
element of the *Middlesex* test is satisfied.

As to the third element of the *Middlesex* test, a
fundamental policy underlying the *Younger* doctrine
is the recognition that state courts are fully
competent to adjudicate federal constitutional
issues. *Middlesex,* 457 U.S. at 435-36; *Brooks v.
New Hampshire Supreme Court,* 80 F.3d 633, 639
(3d Cir.1996); *Levy v. Lerner,* 853 F.Supp. 636,
642 (E.D.N.Y.1994), aff'd, 52 F.3d 312 (2d
Cir.1995). The question is whether the opportunity
exists to raise a constitutional issue.

*Middlesex* explained that, where state interests are
involved, the federal court should abstain "unless
state law clearly bars the interposition of the
constitutional claims." *Id.* at 424. The U.S. Supreme
Court placed the burden upon the person claiming
that abstention is inapplicable to show that state law
clearly bars the interposition of constitutional
claims. *See also Butler v. Alabama Judicial Inquiry
Comm'n,* 245 F.3d 1257, 1262 (11th
Cir.2001)(finding that the burden to establish
inadequacy of procedures to adjudicate
constitutional claims rests on the moving party).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 6

Slip Copy, 2005 WL 3747383 (M.D.Fla.)

**(Cite as: 2005 WL 3747383 (M.D.Fla.))**

Mason failed to meet this burden.

The *Middlesex* court found that the respondent had an opportunity to raise federal issues and have them timely decided by a competent state tribunal:

> Under New Jersey's procedure, its Ethics Committees constantly are called upon to interpret the state disciplinary rules. Respondent Hinds points to nothing existing at the time the complaint was brought by the local Committee to indicate that the members of the Ethics Committee, the majority of whom are lawyers, would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees. * * * Whatever doubt, if any, that may have existed about respondent Hinds' ability to have constitutional challenges heard in the bar disciplinary hearings was laid to rest by the subsequent actions of the New Jersey Supreme Court. Prior to the filing of the petition for certiorari in this Court the New Jersey Supreme Court *sua sponte* entertained the constitutional issues raised by respondent Hinds. Respondent Hinds therefore has had abundant opportunity to present his constitutional challenges in the state disciplinary proceedings.

*Id.* at 435-36. The respondent in Middlesex had an adequate opportunity to raise constitutional claims in the state system so long as the state supreme court ultimately considered the constitutional issues. In the case at bar, Florida Bar rules and state law do not clearly bar the interposition of Mason's constitutional claims. To the contrary, there is abundant opportunity for a lawyer facing disciplinary charges to raise constitutional issues at almost every stage of the Florida proceedings. See Ch. 3-7, *R. Regulating the Fla. Bar; Tindall,* 1997 WL 689636 at *5; *The Florida Bar v. Brown,* 905 So.2d 76 (Fla.2005); *The Florida Bar v. Ray,* 797 So.2d 556 (Fla.2001), cert. denied, 535 U.S. 930, 122 S.Ct. 1302, 152 L.Ed.2d 214 (2002); *The Florida Bar v. Sayler,* 721 So.2d 1152 (Fla.1998); *The Florida Bar v. Daniel,* 626 So.2d 178 (Fla.1993); *The Florida Bar v. Herrick,* 571 So.2d 1303 (Fla.1990), cert. denied, 501 U.S. 1205, 111 S.Ct. 2798, 115 L.Ed.2d 972 (1991); *State ex rel. Florida Bar v. Grant,* 85 So.2d 232 (Fla.1956).

*6 Mason may assert his constitutional claims before the grievance committee, or possibly even prior to that. See Rule 3-7.3(d) and Rule 3-7.4(h). Even after the Chief Justice assigns the complaint to a referee for trial, the Board of Governors may terminate the proceedings before any evidence is received under Rule 3-7.5(e). Nothing prohibits Mason from petitioning the Board of Governors to dismiss the disciplinary action on constitutional grounds, and there is no reason to find that the grievance committee or the Board, both of which are composed primarily of lawyers, would refuse to consider such claims. The referee may grant a motion to dismiss the complaint as insufficient in light of Mason's First Amendment and any state constitutional claims under Rule 3-7.6(h). [FN6] The Florida Bar introduced into evidence two orders of referees in other disciplinary proceedings in which the referees held that the advertising rules as applied to the attorneys at issue were unconstitutional. If the referee were to rule against Mason's constitutional claims, Mason may object to the report and recommendation, and seek review by the Florida Supreme Court. *See* Rule 3-7.7(a)(1) and (c)(5). The third prong of *Middlesex* is satisfied because Mason has an adequate opportunity to raise federal and state constitutional challenges in the state Bar proceeding.

> FN6. Although not asserted in his federal claim for declaratory judgment, Mason undoubtedly will want to ask the Florida Supreme Court to consider his right to freedom of speech under Section 4 of the Florida Constitution.

## IV. *EXCEPTIONS TO* YOUNGER *ABSTENTION DOCTRINE*

The U.S. Supreme Court has recognized exceptions to *Younger* abstention where the plaintiff makes an adequate showing of bad faith or other extraordinary circumstances that "render the state court incapable of fairly and fully adjudicating the federal issues before it ..." *Kugler v. Helfant,* 421 U.S. 117, 124-125, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). None of the *Kugler* circumstances is present here. Mason introduced no evidence of bad faith

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                      Page 7

Slip Copy, 2005 WL 3747383 (M.D.Fla.)

**(Cite as: 2005 WL 3747383 (M.D.Fla.))**

prosecution by the Florida Bar. The state proceeding marks the first time Mason has ever been charged by the Florida Bar, and there is no evidence that Bar harbors animus of any sort against Mason. Testimony presented at hearing demonstrated that the Bar is proceeding in accordance with its routine procedures in investigating the complaints against him. Furthermore, Mason introduced no evidence sufficient to demonstrate harassment or other extraordinary circumstances that would constitute an exception to the *Younger* doctrine. Because all of the necessary elements have been met, the *Younger* doctrine dictates that this Court abstain.

V. PULLMAN *ABSTENTION*

In *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the United States Supreme Court held that a federal district court should exercise discretion to abstain from exercising jurisdiction in deference to state court resolutions of underlying issues of state law. *Pullman* abstention is appropriate when two criteria are met: 1.) the case presents an unsettled question of state law, and 2.) the question of state law is dispositive of the case or would avoid, or substantially modify, the constitutional question presented. *Rindley v. Gallagher,* 929 F.2d 1552, 1554-55 (11th Cir.1991).

*7 In the case at bar, neither the Florida Bar nor the Florida Supreme Court has interpreted Rules 4-8.2(a) and 4-8.4(d) as applied to Mason, and the quotes attributed to him in the *Orlando Sentinel* . [FN7] As in the cases discussed above, such interpretation might eliminate the necessity of adjudicating the constitutional issues raised in the complaint. Hence, this Court should exercise its discretion to abstain pursuant to *Pullman.*

> FN7. At the hearing, Mason introduced evidence that the Florida Bar has found far more incendiary statements by lawyers about judges to have complied with the Florida Bar Rules. At the request of the Central Florida Criminal Defense Lawyers, the Florida Bar had approved those

statements prior to the publication of an annual poll about the judiciary. The Florida Bar will be eager to resolve the issues that Mason raises.

VI. *CONCLUSION*

For the reasons stated above, it is RECOMMENDED that the Florida Bar's Motion to Abstain or in the Alternative, Motion for Judgment on the Pleadings be GRANTED pursuant to *Younger,* and in the alternative, pursuant to *Pullman.*

Failure to file written objections to this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

DONE AND ORDERED.

Slip Copy, 2005 WL 3747383 (M.D.Fla.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2680697 (Trial Motion, Memorandum and Affidavit) Amended Motion to Stay Discovery Pending Disposition of Motion for Abstention or in the Alternative Motion for Protective Order to Limit Discovery (Sep. 13, 2005)

• 2005 WL 2680696 (Trial Motion, Memorandum and Affidavit) Verified Composite Response in Opposition to Bar's Motion for Stay of Discovery, Docket #37, and Bar's Motion to Abstain, Docket #35, and Mr. Mason's Request for Evidentiary Hearing Addressing Bad Faith (Sep. 12, 2005)

• 2005 WL 2479124 (Trial Motion, Memorandum and Affidavit) Motion to Stay Discovery Pending Disposition of Motion for Abstention or in the Alternative Motion for Protective Order to Limit Discovery (Aug. 31, 2005)

• 2005 WL 2479122 (Trial Motion, Memorandum and Affidavit) Defendant's Motion to Dismiss or in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 8

Slip Copy, 2005 WL 3747383 (M.D.Fla.)

**(Cite as: 2005 WL 3747383 (M.D.Fla.))**

the Alternative for Judgment on the Pleadings (Aug. 22, 2005)

• 2005 WL 2479123 (Trial Motion, Memorandum and Affidavit) Defendant's Motion to Abstain or in the Alternative for Judgment on the Pleadings (Aug. 22, 2005)

• 2005 WL 1241652 (Trial Pleading) Complaint for Declaratory Judgment and Permanent Injunction (Apr. 26, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1990 WL 116727 (D.D.C.), 1990-2 Trade Cases P 69,111
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents

United States District Court, District of Columbia.
T. Carlton RICHARDSON
v.
THE FLORIDA BAR, et al.
**CIV. A. No. 90-0984.**

May 15, 1990.

Memorandum Opinion
THOMAS F. HOGAN, District Judge.
*1 This case is presently before the Court on plaintiff's motion for injunctive relief and defendant the Florida Bar's motion to dismiss. For the reasons set forth below, the Court shall grant defendant's motion to dismiss for lack of subject matter jurisdiction. Given this disposition, the Court shall not consider plaintiff's motion for injunctive relief.

I. *Background*

Plaintiff, Mr. Richardson, is an attorney currently based in the District of Columbia, who also practices in Florida. In connection with his practice in the latter jurisdiction, he is the subject of a disciplinary order of the Supreme Court of Florida issued April 19, 1990. That Court ordered him suspended for 91 days, effective May 21, 1990, and prohibited him from accepting new clients effective April 19, 1990. The Florida Bar has also taken action recently to notify the District of Columbia Bar of the disciplinary order, although no reciprocal disciplinary proceedings have been brought to this Court's attention.

Mr. Richardson was disciplined for charging a " clearly excessive fee" for his services under Florida's Disciplinary Rule 2-106, arising out of his representation of an elderly Florida couple in a

probate matter. The fee dispute has been in litigation for the past five years. After the contested fees had been paid, the aggrieved clients sought and were granted reimbursement of the fees from the estate in probate court. The probate court judge thereafter entered a judgment against Mr. Richardson in the amount of $15,670 on behalf of the estate, representing the amount of fees found to be excessive. Parallel disciplinary proceedings were also instituted against Mr. Richardson, culminating in the Supreme Court of Florida's April 19, 1990, order, which precipitated this action. Part of that order requires Mr. Richardson to pay the money judgment entered in probate court. Mr. Richardson has filed a request for rehearing with the Supreme Court of Florida, which remains pending. See Plaintiff's Opposition at 4 ("a request for rehearing has been made and the decision is not final until rendered").

Although the details remain sketchy, Mr. Richardson's briefs, filed *pro se,* indicate that other related collateral proceedings have been brought and remain pending in Florida. Plaintiff's principal brief relates, somewhat confusingly, that "[t]he probate judge in this case has filed a grievance with the Florida Bar which is being investigated which will be affected by this decision arising out of actions the plaintiff took in the federal courts to avoid the affect [sic] of the probate court's judgment, as well as any other bar proceedings against the plaintiff." Plaintiff's Memorandum at 16. The opposition to the motion to dismiss reiterates that "a collateral proceeding arising out of the plaintiff's contest of the invalid probate court order to refund fees is now pending upon complaint of the probate court judge who entered the order." Plaintiff's Opposition at 12.

*2 Mr. Richardson's present action seeks to challenge the procedures and results of the Florida disciplinary proceedings on federal antitrust and constitutional grounds. The prayer for relief requests (1) an injunction restraining the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2

Not Reported in F.Supp., 1990 WL 116727 (D.D.C.), 1990-2 Trade Cases P 69,111
**(Cite as: Not Reported in F.Supp.)**

enforcement of the April 19, 1990, disciplinary order of the Supreme Court of Florida; (2) damages for violations of "the anti-trust laws of the United States," "due process, equal protection, and proprietary rights"; (3) an injunction barring enforcement of the $15,670 judgment entered by the probate court; and (4) an order that defendants " expunge" the records of the underlying litigation and judgment.

## II. *Analysis*

There is no question that the present action is a poorly-veiled attempt to obtain collateral, pseudo-appellate review of the Supreme Court of Florida's April 19, 1990, decision and order. As set forth below, this Court has no jurisdiction to entertain such an action. To the doubtful extent the Court has jurisdiction of the federal antitrust claim, that claim is clearly barred by the "state action" exemption. Furthermore, even if the Court had jurisdiction to entertain any part of this action, it would abstain from doing so in light of the pending related state disciplinary proceedings.

### A. *Subject Matter Jurisdiction*

It is well-settled that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings," which is the exclusive role of the United States Supreme Court under 28 U.S.C. § 1257. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983); see also *Atlantic Coast Line R. Co. v. Locomotive Engineers,* 398 U.S. 281, 296 (1970) (" lower federal courts possess no power whatever to sit in direct review of state court decisions"), quoted in *Feldman,* 460 U.S. at 482-83 n. 16. In particular, "orders of a state court relating to the admission, discipline, and disbarment of members of its bar may be reviewed only by the Supreme Court of the United States on certiorari to the state court, and not by means of an original action in a lower federal court." *MacKay v. Nesbett,* 412 F.2d 846, 846 (9th Cir.1969) (*per curiam* ), quoted in *Feldman,* 460 U.S. at 484 n. 16.

*Feldman,* which similarly raised federal antitrust and constitutional claims in the bar admission context, is particularly on point. The Court drew the following jurisdictional line, which governs here:

United States district courts ... have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case. They do not have jurisdiction, however, over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.

*Id.* at 486.

Plaintiff argues in light of *Feldman* that this action " makes a general federal constitutional and statutory attack on the disciplinary rule of the Florida Bar governing fees for legal services." Plaintiff's Opposition at 1. It is disingenuous at best, however, to contend that this suit does not arise out of "judicial proceedings" in a "particular case" before the Supreme Court of Florida. All of the present claims were raised in that court, which rejected them on the merits. See *The Florida Bar v. T. Carlton Richardson,* No. 73,214, slip op. at 7 (Fla. Apr. 19, 1990) (*per curiam* ) (available on Westlaw) ("We find each of these claims to be without merit."). Adjudication of this case would thus unavoidably entail "review of a final state-court judgment in a particular case," which this Court has no power to perform.

### B. *Antitrust Claims*

**\*3** Plaintiff's antitrust claim arose only as "a defense in a proceeding to enforce a disciplinary rule" in state court and thus is not the basis for "an original antitrust action" in federal district court. *Feldman v. Gardner* [1982-1 TRADE CASES ¶ 64,562], 661 F.2d 1295, 1303 n. 60 (D.C.Cir.1981) (distinguishing *Bates v. State Bar of Arizona* [1977-2 TRADE CASES ¶ 61,573], 433 U.S. 350 (1977)), rev'd on other grounds, 460 U.S. 462 (1983). Even if there were an independent basis

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3

Not Reported in F.Supp., 1990 WL 116727 (D.D.C.), 1990-2 Trade Cases P 69,111
**(Cite as: Not Reported in F.Supp.)**

for the antitrust claim, however, it would fail in light of the clearly-applicable "state action" exemption.

The present antitrust claim falls squarely within the judicially-created state action exemption of *Parker v. Brown,* 317 U.S. 341 (1943). That doctrine exempts from the Sherman Act any restraint on trade or anticompetitive rule imposed by the state acting as sovereign. *Id.* at 314. The Supreme Court did not grant certiorari on this issue in *Feldman,* see 460 U.S. at 474 n. 11, but had thoroughly covered the field in the state bar context in two earlier cases which must be read together. Plaintiff relies heavily on one of the two cases, *Goldfarb v. Virginia State Bar* [1975-1 TRADE CASES ¶ 60,355], 421 U.S. 773 (1975), to the exclusion of the other, *Bates v. State Bar of Arizona,* 433 U.S. 350 (1977), which completely undermines his theory.

*Goldfarb* held the state action exemption inapplicable to shield the Fairfax County Bar Association and the Virginia State Bar from antitrust liability for price fixing in the form of minimum fee schedules. Significantly, however, the Court found that exemption inapplicable because the bar's adoption of the fee schedules was "essentially a private anticompetitive activity" that the Supreme Court of Virginia had neither required nor approved. *Id.* at 790-91. *Bates* distinguished *Goldfarb* on precisely those grounds in holding the state action exception applicable where the state supreme court *did* require or approve the action at issue. *Bates* arose out of a direct challenge to the Arizona Supreme Court's rule prohibiting attorneys in that state from advertising their fees. While overturning the ban on First Amendment grounds, the Court held that the State Bar of Arizona was immune to any Sherman Act claim under the state action doctrine. Expressly distinguishing *Goldfarb,* the Court in *Bates* reasoned that "by contrast, the challenged restraint is the affirmative command of the Arizona Supreme Court under its Rules.... That court is the ultimate body wielding the State's power over the practice of law, ... and, thus, the restraint is 'compelled by direction of the State action as a sovereign.' " *Id.* at 359-60 (citations omitted).

Plaintiff's case here unquestionably comes under *Bates,* not *Goldfarb.* This case challenges a disciplinary order of the Florida Supreme Court interpreting an ethical rule adopted by that Court. As the "ultimate body wielding [Florida's] power over the practice of law," under *Bates* that court acts for the sovereign and is therefore exempt from antitrust liability for any anticompetitive rules and interpretations it may issue. Plaintiff's antitrust claim must therefore be deemed so " 'frivolous or so insubstantial as to be beyond the jurisdiction of the District Court.' " *Feldman,* 661 F.2d at 1303 (quoting *Hagans v. Lavine,* 415 U.S. 528, 539 (1974)).

### C. Abstention

*4 Finally, even if plaintiff were to overcome the above jurisdictional obstacles, this Court would abstain under *Younger v. Harris,* 401 U.S. 37 (1971), from considering any challenge that remains the subject of pending state disciplinary proceedings. The proceedings before the Supreme Court of Florida technically remain pending on plaintiff's petition for rehearing of the April 19, 1990, order. Furthermore, a closely-related disciplinary investigation arising out of the probate court judge's complaint remains pending.

The *Younger* abstention doctrine applies to noncriminal judicial proceedings in areas where important state interests are involved. One such area the United States Supreme Court has recognized is state bar disciplinary proceedings. See *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423 (1982). "The judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice." Id. at 434. Thus, "[s]o long as the constitutional claims of [attorneys] can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain" in the face of pending state bar disciplinary proceedings. *Id.* at 435.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 4

Not Reported in F.Supp., 1990 WL 116727 (D.D.C.), 1990-2 Trade Cases P 69,111
**(Cite as: Not Reported in F.Supp.)**


As none of the above exceptions appear to apply, this Court would abstain from considering the challenges in this case-in the unlikely event it had jurisdiction to do so.


                                   *Conclusion*

The Court discerns no basis for jurisdiction over this case. Even if it did, it would abstain. Accordingly, plaintiff must resign himself to litigating this case through the normal appellate channels, and not by collateral attacks outside those channels such as the present one. An order in accordance with this memorandum opinion shall be issued herewith.


                    FN1. The remaining defendant, the Supreme Court of Florida, has not responded to the complaint or to plaintiff's request for injunctive relief. Nonetheless, the Florida Bar's motion to dismiss raises jurisdictional defenses common to both defendants.

                    FN2. Before this judgment was issued, which plaintiff alleges he did not receive until it was too late to appeal, plaintiff had prosecuted one appeal resulting in a remand on a calculation issue, see *Richardson v. Jones,* 508 So.2d 739 (Fla.Dist.Ct.App.), review denied, 518 So.2d 1277 (Fla.1987) (table), and unsuccessfully petitioned the Supreme Court of Florida for a writ of mandamus against the probate court judge, see *Richardson v. Alvarez,* 525 So.2d 880 (Fla.1988) (table).

D.D.C.,1990.
Richardson v. The Florida Bar
Not Reported in F.Supp., 1990 WL 116727 (D.D.C.), 1990-2 Trade Cases P 69,111

Briefs and Other Related Documents (Back to top)

• 1:90cv00984 (Docket) (Apr. 27, 1990)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                Page 1

Not Reported in F.Supp., 1997 WL 689636 (M.D.Fla.), 11 Fla. L. Weekly Fed. D 312
**(Cite as: Not Reported in F.Supp.)**

**H**

United States District Court, M.D. Florida.
Nathaniel W. TINDALL, II, Plaintiff,
v.
The Florida Bar, Stephen Grimes, Ben F. Overton,
Leander J. Shaw, Gerald Kogan, Major B. Harding,
Charles P. Wells, Harry Lee Amstead, John F.
Harkness, Jr., Susan V. Bloemendaal, Lee D. Gunn,
IV, and Carolyn House-Stewart, Defendants.
**No. 97-387-CIV-T-17C.**

Oct. 14, 1997.

Nathaniel W. Tindall, II, Law Office of Nathaniel
W. Tindall, II, Tampa, FL, Pro se.
George Lee Waas, Attorney General's Office, Dept.
of Legal Affairs, Tallahassee, FL, for the Florida
Bar, Stephen Grimes, Ben F. Overton, Leander J.
Shaw, Gerald Kogan, Major B. Harding, Charles P.
Wells, Harry Lee Amstead, John F. Harkness, Jr.,
Lee D. Bloemendaal, Lee D. Gunn, IV, defendant.

*ORDER*

KOVACHEVICH, Chief J.
**\*1** This cause comes before the Court on the
following documents:
(1) Verified Amended Complaint (Docket No. 2)
(filed March 3, 1997);
(2) Defendants, STEPHEN GRIMES, BEN F.
OVERTON, LEANDER J. SHAW, GERALD
KOGAN, MAJOR B. HARDING, CHARLES P.
WELLS, and HARRY LEE AMSTEAD's ("Florida
Supreme Court Justices or Justices of the Supreme
Court of Florida") Motion to Dismiss and
Memorandum (Docket No. 4) (filed March 12,
1997);
(3) Defendants, THE FLORIDA BAR ("the Bar"),
JACK F. HARKNESS, JR. ("Harkness"), and
SUSAN V. BLOEMENDAAL's ("Bloemendaal"),
Motion to Dismiss and Memorandum (Docket No.
5) (filed March 20, 1997);

(4) Plaintiff, NATHANIEL W. TINDALL's, ("
Tindall"), Response to Florida Supreme Court
Justices' Motion to Dismiss (Docket No. 6) (filed
March 25, 1997);
(5)    TINDALL's    Response    to    the    Bar's,
HARKNESS', and BLOEMENDAAL's Motion to
Dismiss (Docket No. 7) (filed April 2, 1997).

In Count I of the amended complaint, TINDALL
asserts a section 1983 claim against the defendants
for: (1) racial discrimination in violation of the
Equal Protection Clause, (2) disparate treatment of
Florida Bar attorneys on the basis of such factors as
"favoritism, political standing, [and] social status,"
in violation of the Equal Protection Clause, (3)
retaliation in violation of the First Amendment, and
(4)    deprivation    of    rights    secured    by    the
Constitution, including the rights of association and
"access to court," in violation of the Due Process
and Equal Protection Clauses. These grounds stem
from the Bar's grievance proceedings against
TINDALL.

In Count II, TINDALL asserts a Section 1983 claim
against the defendants for: (1) racial discrimination
in violation of the Equal Protection Clause, (2) "bad
faith" prosecution of plaintiff by defendants, Florida
Bar, Florida Supreme Court Justices, HARKNESS,
and BLOEMENDAAL, (3) disparate treatment by
defendants, Florida Bar, Florida Supreme Court
Justices, HARKNESS, and BLOEMENDAAL in
pursuing complaints and allegations made to the
Florida Bar, and (4) retaliatory action in violation of
the First Amendment. These grounds stem from
public allegations made by TINDALL accusing the
Florida Bar, Florida Supreme Court Justices, and
HARKNESS of "favoritism, racism, engaging in
intellectual dishonesty for personal interest, and flat
out lying." In addition, TINDALL asserts that he
provided defendants with evidence of improprieties
committed by other Florida Bar members which
were essentially ignored.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                        Page 2

Not Reported in F.Supp., 1997 WL 689636 (M.D.Fla.), 11 Fla. L. Weekly Fed. D 312
**(Cite as: Not Reported in F.Supp.)**

In Count III, TINDALL asserts a Section 1983 claim against the defendants for: (1) racial discrimination in insurance contract rights, (2) racial discrimination in the practice of law, regulation of lawyers, and the judicial process, and (3) conspiracy "to defeat the rights of persons within the State of Florida to have valid and meaningful access to courts, free of racial discrimination as mandated by the First and Fourteenth Amendments to the Constitution of the United States of America. These claims stem from plaintiff's complaints regarding the way defendants, GUNN and HOUSE-STEWART, and other attorneys have represented insurance companies in the past. Specifically, plaintiff accuses the Florida Bar, Florida Supreme Court Justices, HARKNESS, and BLOEMENDAAL of selectively enforcing the Rules Regulating the Florida Bar when he has filed complaints against other lawyers.

**\*2** In Count IV, TINDALL asserts a Section 1983 claim which reiterates his previous allegation of a conspiracy to deprive TINDALL's rights guaranteed by the U.S. Constitution. These grounds arise from plaintiff's grievance complaints regarding defendants GUNN and HOUSE-STEWART. Plaintiff asserts that these defendants "are receiving substantial benefit under the color of state law by the refusal of the Florida Bar, the Justices of The Supreme Court of Florida, John F. Harkness, Jr., and Susan Bloemendaal to investigate and prosecute their racial discriminatory conduct of advocating and promoting the racial discriminatory position of their client, Travelers Indemnity Company, contrary to Plaintiff [sic] rights, privileges, immunities secured by the Constitution and laws of the United States."

In September, 1995, plaintiff filed a suit in this Court against the Florida Bar, the Florida Supreme Court, Travelers Indemnity Co., and Gene Balis. The Justices of the Florida Supreme Court were later added to the suit. In January, 1996, plaintiff filed a second suit in this Court, against the same parties, and added JOHN HARKNESS, Jr ., and a member of the staff of the Florida Bar, JOSEPH A. CORSMEIER. The two case were later consolidated by the assigned judge and all counts were dismissed against the Florida Bar and

defendants HARKNESS and CORSMEIER. The Court found that the proceedings which were still pending before the Florida Bar were subject to the abstention doctrine outlined in *Younger v. Harris,* 401 U.S. 37 (1971). Accordingly, the Court abstained from considering the plaintiff, TINDALL's, request to enjoin those proceedings. The Court found that plaintiff's generalized allegations of "bad faith" and harassment on the part of defendants, Florida Supreme Court Justices, were insufficient to defeat application of the abstention doctrine. Said proceedings were still pending before a Grievance Committee and the matters had not been referred to a Referee nor considered by defendants, Florida Supreme Court Justices. Plaintiff's other claims did not concern ongoing bar disciplinary proceedings, therefore, standing rather than the abstention doctrine was addressed.

> FN1. For the purposes of this order, the consolidated cases will be considered the " first lawsuit" filed by plaintiff, Tindall.

In his first lawsuit, similar to the case at hand, plaintiff sought to enjoin the defendants, the Florida Bar, Florida Supreme Court Justices, and HARKNESS from engaging in discriminatory grievance proceedings, disparate treatment to other Florida Bar members, and from prosecuting lawyers in an effort to deter the exercise of constitutional rights. In addition, plaintiff requested the Court to dismantle the unconstitutional grievance system and to declare that the Rules Regulating the Florida Bar were either unconstitutional on their face for vagueness and/or unconstitutional because of the arbitrary enforcement. The Court found that plaintiff's claims for injunctive relief did not present a case or controversy of "sufficient immediacy and reality" to confer plaintiff with standing. The Court reasoned that plaintiff would not become subject to the disciplinary proceedings under the Rules Regulating the Florida Bar unless a complaint were to be filed against him. The Court opined that even if a complaint were filed, a bar counsel investigator handling the case would have to determine whether the facts warranted opening a disciplinary file and a hearing before the grievance

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 3

Not Reported in F.Supp., 1997 WL 689636 (M.D.Fla.), 11 Fla. L. Weekly Fed. D 312
**(Cite as: Not Reported in F.Supp.)**

committee prior to the Bar actually proceeding further against plaintiff. The Court dismissed for lack of jurisdiction.

\*3 Plaintiff's sweeping allegations in his previous lawsuit are nearly identical to those in the case at hand, save for the minor substitution of defendants who represent either staff counsel for the Florida Bar or members of the Florida Bar who are accused of conspiring against plaintiff. In both suits, plaintiff's allegations and counts repeatedly describe a "plan" or "scheme" to prevent plaintiff from exercising his constitutional rights. Moreover, plaintiff's assertions of racial discrimination, disparate treatment, bad faith prosecution, harassment, false charges, etc. are also nearly identical in the two lawsuits.

> FN2. With respect to the Florida Bar, plaintiff has substituted defendant Bloemendaal for defendant Corsmeier. Bloemendaal, like Corsmeier, is a member of the Bar staff assigned to oversee the disciplinary proceedings against the plaintiff.

Defendants, the Florida Bar, HARKNESS, and BLOEMENDAAL'S, motion to dismiss is based on the ground of collateral estoppel. Defendants argue that even though plaintiff has dropped two parties from the first lawsuit and added four new parties to this suit, the complaints are essentially the same against the same parties in interest. Defendants contend that since the first lawsuit is still pending in this Court, plaintiff should add these additional parties to that suit, rather than, relitigating the same issues in this new lawsuit.

In contrast, plaintiff, TINDALL, asserts that the instant complaint alleges new conduct of defendants, the Florida Bar, HARKNESS, and BLOEMENDAAL. Plaintiff argues that this "new" conduct by defendants comes closer to the situation where the offending conduct is capable of repetition yet it evades review. The "new" conduct plaintiff complains of is the continuing enforcement of the Rules Regulating the Florida Bar. In plaintiff's first lawsuit, Case No. 96-1488-CIV-T-21B, he alleged "

[t]hat since October 27, 1992, the Florida Bar has instituted various disciplinary actions against Plaintiff solely to harass, intimidate, and to deter Plaintiff from speaking out against the unfair, and unconstitutional practices and *de facto* unconstitutional favoritism of John F. Harkness Jr., Stephen Grimes, Ben F. Overton, Leander J. Shaw, Gerald Kogan, Major B. Harding, Charles P. Wells, Harry Lee Amstead, and Joseph A. Corsmeier toward Senator John A. Grant, Jr." In plaintiff's first lawsuit, his 46 page complaint includes allegations of a conspiracy and scheme employed by the Justices of the Florida Supreme Court and defendant HARKNESS "to deny and deprive [ TINDALL] of rights guaranteed to Plaintiff under the Constitution and laws of the United States...". Essentially, plaintiff's complaint alleges acts of discrimination in the application of the Rules Governing the Florida Bar.

In the instant case, plaintiff's 32 page verified amended complaint (Docket No. 2) includes similar allegations of disparate treatment in applying the Rules Governing the Florida Bar and a conspiracy to deprive plaintiff of his constitutional rights. The complaints are primarily the same in that plaintiff, TINDALL, complains that the decisions of the Supreme Court and the Florida Bar are discriminatory because of the way his disciplinary proceedings are being handled. Plaintiff's central objection is that when he has filed a complaint concerning other members of the Florida Bar, no disciplinary action has been taken because the Florida Bar finds insufficient evidence of a violation of the Rules. However, when a complaint has been filed against him, the Florida Bar has initiated proceedings. In fact, defendants, GUNN and HOUSE-STEWART, are named in the case at hand because plaintiff has filed a grievance as to each. A grievance which plaintiff apparently feels was not handled acceptably by the Florida Bar. Plaintiff has continuing disciplinary proceedings being conducted by the Florida Bar. Plaintiff asserts that since he authored a letter "accusing the Florida Bar, the Justices of the Florida Supreme Court, and John F. Harkness of favoritism, racism, engaging in intellectual dishonesty for personal interest, and flat out lying," in October, 1992, the Florida Bar has brought twelve (12) or more charges against him.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                              Page 4

Not Reported in F.Supp., 1997 WL 689636 (M.D.Fla.), 11 Fla. L. Weekly Fed. D 312
**(Cite as: Not Reported in F.Supp.)**

Plaintiff argues that these charges were brought to " distract Plaintiff from asserting First Amendment rights." These disciplinary proceedings involve defendants, BLOEMENDAAL and HARKNESS in their official capacities. Defendant, BLOEMENDAAL, as assistant staff counsel for review and investigation for the Florida Bar, was involved in the various decisions to investigate or refuse to investigate complaints filed with the Florida Bar. Defendant HARKNESS is the executive director for the Florida Bar and is responsible for the daily operations of the Florida Bar.

**\*4** In addition, the Justices of the Supreme Court of Florida have filed a motion to dismiss plaintiff's verified complaint, pursuant to Fed.R.Civ.P. 12(b), for failure to state a claim upon which relief can be granted. Specifically, those defendants argue that plaintiff's claims fail to allege a cause of action against them in his section 1983 claim and plaintiff is attempting to impermissibly litigate overgeneralized claims pending in other actions in this Court. In their motion, the defendants argue that plaintiff cannot factually demonstrate that the Justices of the Florida Supreme Court have deprived plaintiff of a right, privilege, or immunity guaranteed by federal law. The defendants argue that plaintiff does not have a federally protected right to have his complaints, which he files with the Florida Bar, treated *ipso facto* as a guarantee of prosecution, conviction, and adjudication of the person complained against.

## JURISDICTION

As a preliminary matter, this Court must determine whether it has jurisdiction to hear plaintiff's claims. The United States Supreme Court has declared that federal district courts do not have jurisdiction to review or modify a judgment of a state's highest court. (The Rooker-Feldman doctrine) *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). A Rooker-Feldman challenge, alleging that plaintiff improperly seeks review of a judgment of a state court, is for lack of

subject matter jurisdiction, and may be raised at any time by either party or *sua sponte* by the Court. "It is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision." *Dale v. Moore,* 121 F.3d 624 (11th Cir.1997). District courts have no jurisdiction "over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." 103 S.Ct. at 1317.

In the case at hand, plaintiff is undoubtedly challenging the manner in which the Florida Bar and the Supreme Court of Florida regulate the members of the Florida Bar. The disciplinary proceedings before the Florida Bar are judicial proceedings . *See The Rules Regulating the Florida Bar* Rule 3-7.6(e)(1) (explaining that a disciplinary proceeding is a quasi-judicial administrative proceeding); *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116 (1982) (finding that the New Jersey Supreme Court considers its bar disciplinary proceedings as judicial in nature). The Florida Bar is an official arm of the Florida Supreme Court, acting at all times under the supervision and control of the Florida Supreme Court. *See Rules Regulating the Florida Bar,* Rule 2-3.1, 3-3.1. In the performance of their disciplinary functions, the Florida Bar and its disciplinary staff act as an official arm of the Florida Supreme Court and enjoy absolute immunity for such functions. *See Carroll v. Gross,* 984 F.2d 392 (11th Cir.1993). Moreover, the provisions in the Florida State Constitution grant the Supreme Court of Florida the exclusive jurisdiction over the regulation of judges and lawyers. *See* Fla. Const. art. V, § 15. The Court subsequently delegated that authority over lawyers to the State bar of Florida. *See Rules Regulating the Florida Bar,* 494 So.2d 997 (Fla.1986). A judicial proceeding "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." 103 S.Ct. at 1312. It is within the exclusive province of the judiciary to determine who is permitted to practice before the courts. *Id.* at 1311-15.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 5

Not Reported in F.Supp., 1997 WL 689636 (M.D.Fla.), 11 Fla. L. Weekly Fed. D 312
**(Cite as: Not Reported in F.Supp.)**

> FN3. Rule 3-3.1 designates the board of governors of the Florida Bar, grievance committees, and referees as agencies of the Florida Supreme Court and explains that they shall have the jurisdiction and powers as necessary to conduct the proper and speedy disposition of any investigation or cause, including the power to compel the attendance of witnesses, and order the production of books, records, or other documentary evidence.

**\*5** The claims raised in district court need not have been argued in the state judicial proceeding to be barred by the Rooker-Feldman doctrine. *Feldman,* 103 S.Ct. at 1315-16 n. 16. A district court engages in impermissible appellate review when it hears claims that are inextricably intertwined with the state court decision. *Id.* The underlying inquiry is whether "the district court is in essence being called upon to review the state-court decision." *Id.* Consequently, this Court must determine whether plaintiff is effectively asking the district court to review the Florida Supreme Court's judgment to discipline him and not discipline others. Although plaintiff, TINDALL's, amended verified complaint seeks damages for the alleged unlawful prosecution of him, his claims are merely another way to contest his disciplinary proceedings. As such, plaintiff's claims are inextricably intertwined with the Florida Supreme Court's decision and the Rooker-Feldman doctrine applies. *See Levin v. ARDC,* 74 F.3d 763, 767 n. 4 (7th Cir.1996).

In *Leaf v. Supreme Court of Wisconsin,* 979 F.2d 589 (7th Cir.1992), the Court of Appeals held that the district court lacked jurisdiction over claims that the state's disciplinary proceeding applied unconstitutional state bar rules and disciplinary board improperly investigated and prosecuted plaintiff. *Id.* at 598-600, *cert. denied,* 508 U.S. 941, 113 S.Ct. 2417, 124 L.Ed.2d 639 (1993). In that case, plaintiff LEAF, whose license to practice law was suspended, attempted to challenge in her complaint the constitutional validity of the Wisconsin Supreme Court Rules related to the disciplinary process; the application of the rules to her proceedings; the motives and tactics of the persons and entities investigating, prosecuting, and reviewing the disciplinary proceedings against her; other unconstitutional acts which were supposedly taken in furtherance of these allegedly wrongful and discriminatory motives; and LEAF alleged that much was done as part of a discriminatory conspiracy against her. *Id.* at 598. In *Leaf,* similar to the case at hand, the plaintiff was essentially attacking the investigative procedures taken in the state's disciplinary action.

The instances of objectional conduct recited in plaintiff, TINDALL's, amended verified complaint are merely examples of the allegedly discriminatory and wrongful motives of the Florida Bar and others involved in the disciplinary investigations. "Where a litigant attempts to circumvent the requirement of seeking direct review in the United States Supreme Court by casting her lawsuit as a section 1983 action, Feldman's jurisdictional bar applies." *Keene Corp. v. Cass,* 908 F.2d 293, 297 (8th Cir.1990).

In order to grant the relief requested by plaintiff, this Court would have to vacate or reverse the Florida Supreme Court's disciplinary action. Plaintiff asks this Court to review the Florida Bar's investigatory procedures, application of the Rules Governing the Florida Bar, and every decision to discipline plaintiff over his legal career. There is no doubt that plaintiff has raised his constitutional issues with the Florida Supreme Court, and has the opportunity to do so in the future. Plaintiff cannot, however, make a blanket assertion that everyone involved in his disciplinary procedures is conspiring against him because of his race to circumvent review by the United States Supreme Court. Plaintiff's allegations arise because of the disciplinary proceedings brought against him and the complaints he has filed with the Florida Bar concerning others. Plaintiff's assertions concerning defendants GUNN and HOUSE-STEWART are nothing more than grievances which should continue to be addressed to the Florida Bar. When plaintiff seeks review of the Florida Bar's final decisions, he should appeal to the United States Supreme Court, not the United States District Courts. If plaintiff seeks review of disciplinary actions brought against him by the Supreme Court of Florida, this too presents an issue for the United States Supreme Court. This Court does not have

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 6

Not Reported in F.Supp., 1997 WL 689636 (M.D.Fla.), 11 Fla. L. Weekly Fed. D 312
**(Cite as: Not Reported in F.Supp.)**

the authority to review every complaint filed with
the Florida Bar by plaintiff. Virtually every
paragraph of plaintiff's complaint concerns
enforcement, or lack thereof, of the Rules regulating
the Florida Bar and the Florida Bar's prosecution of
plaintiff.

**\*6** Plaintiff's prayers for relief are illustrative of
plaintiff's attempt to impermissibly appeal actions
taken by the Florida Bar and the Florida Supreme
Court to this Court. Count one requests that this
Court enter a judgment and declare that the policy,
custom, usage, and practices of the Florida Bar,
Justices of the Florida Supreme Court,
HARKNESS, and BLOEMENDAAL in engaging
in, and ignoring racially discriminatory practices of
attorneys in the State of Florida, whose conduct is
regulated by the said defendants, are
unconstitutional. This is simply plaintiff's request
to review the Florida Bar's finding that there was
insufficient evidence to commence disciplinary
proceedings when plaintiff filed complaints against
defendants GUNN and HOUSE-STEWART. In
Count II plaintiff alleges that in failing to enforce
Rule 4-8.4(d) of the Rules Regulating the Florida
Bar, the defendants have tacitly sanctioned and
approved racism within the practice of law. In
addition, plaintiff asserts that the defendants' failure
to address the racist conduct of defendants GUNN
and HOUSE-STEWART amounts to state
sanctioned racism. Plaintiff also contends that in
refusing to enforce Rule 4-8.4(d), the defendants,
the Florida Bar, Justices of the Florida Supreme
Court, HARKNESS, and BLOEMENDAAL have
entered into a civil rights conspiracy. In Count IV
plaintiff complains of the defendants, the Florida
Bar, Justices of the Florida Supreme Court,
HARKNESS, and BLOEMENDAAL's refusal to
investigate and prosecute defendant GUNN and
HOUSE-STEWART for their discriminatory
conduct. Plaintiff's theory is consistent throughout
his entire complaint; the defendants, the Florida
Bar, Justices of the Florida Supreme Court,
HARKNESS, and BLOEMENDAAL have refused
to investigate defendants GUNN and
HOUSE-STEWART on complaints filed by
plaintiff, however, the defendants have wrongfully
disciplined him.

For the above reasons, this Court finds that plaintiff,
TINDALL's, verified amended complaint should be
dismissed for lack of subject matter jurisdiction.
Plaintiff's proper course should be that any
grievances he has regarding the improprieties of
other members of the Florida Bar be submitted to
the Florida Bar. If plaintiff is dissatisfied with the
Florida Supreme Court's final decision, plaintiff
should seek review in the proper venue. If plaintiff
feels the Florida Supreme Court has improperly
disciplined him, plaintiff will also have to seek the
proper venue to review the highest state court's
decision. The United States District Courts cannot
regulate the practice of law in Florida as plaintiff
requests. Accordingly, it is

ORDERED that plaintiff's Verified Amended
Complaint (Docket No. 2) be DISMISSED for lack
of subject matter jurisdiction pursuant to the
Rooker-Feldman doctrine and the Clerk of the
Court shall enter judgment for all defendants.

M.D.Fla.,1997.
Tindall v. The Florida Bar
Not Reported in F.Supp., 1997 WL 689636
(M.D.Fla.), 11 Fla. L. Weekly Fed. D 312

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.