IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSEPH N. GIELATA, *pro se*, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 05-567 (GMS) |
| ANDREA L. ROCANELLI, AND | ) |
| OFFICE OF DISCIPLINARY COUNSEL | ) |
| FOR THE SUPREME COURT OF | ) |
| DELAWARE, | ) |
| | ) |
| Defendants. | ) |

## ORDER

The following facts are alleged in the amended complaint. The plaintiff, Joseph N. Gielata, Esq., is an attorney licensed to practice law in the State of Delaware. On November 16, 2003, Gielata purchased certain goods (ostensibly on eBay.com) from a Pennsylvania resident named Wayne Chen, and paid for those goods using an electronic payment service provided by PayPal, Inc. ("PayPal"). Gielata also elected to pay an extra fee for PayPal's money-back guarantee, which allows purchasers to recover a portion of the purchase price in the event that the goods are unsatisfactory. Gielata subsequently exercised his rights under the money-back guarantee, and PayPal reimbursed him the amount he was owed under the terms of the guarantee. Then, on December 18, 2003, Gielata sold one or more of the goods he had purchased back to Chen (again, ostensibly on eBay.com). As part of that transaction, Chen also elected to pay for PayPal's money-back guarantee. However, when he attempted to exercise his rights under the guarantee, PayPal refused to reimburse him.

On March 19, 2004, Gielata filed a lawsuit in small-claims court against PayPal on behalf of Chen alleging that PayPal had breached the terms of the money-back guarantee. PayPal retained

a local law firm to defend the suit, and on June 16, 2004 – after some "contentious interactions" – Gielata agreed to dismiss the suit. Five days later, Gielata informed PayPal's counsel that he intended to re-file the suit as a class action. However, Gielata learned on July 29 that a class action had already been filed against PayPal in the United States District Court for the Northern District of California. Four days later, on August 2, 2004, Gielata inquired of counsel in the California action via email about the status of the case. And on August 3, Gielata sent an email from an anonymous account containing similar inquiries to the same address. At some point between March 19 and August 12, PayPal's local counsel filed a complaint against Gielata with the Office of Disciplinary Counsel for the Supreme Court of Delaware ("ODC"). On August 16, Gielata received a letter from Andrea L. Rocanelli, chief counsel of the ODC, informing him that the ODC was commencing an investigation regarding the complaint. Rocanelli, as it turns out, is a former employee of the PayPal's law firm. Gielata met with Rocanelli the following day to discuss the investigation and the PayPal lawsuit. Then, on August 18, Gielata received a response to his anonymous email. This was curious to Gielata because, although he had sent that email from an anonymous account, the response was sent to his non-anonymous account. Around the same time, Rocanelli contacted Delaware's Department of Justice ("DOJ") regarding possible charges against Gielata and Chen for their attempts to obtain reimbursement under PayPal's money-back guarantee. Gielata believes that Rocanelli was using her position at the ODC at the behest of her former firm in order to derail his class action suit against PayPal.

After he was placed on a leave of absence from his law firm – Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") – Gielata began working in early 2005 as a solo practitioner and continued his pursuit of PayPal. On March 17, 2005, Gielata also initiated a class action suit in this

court against J.P. Morgan Chase & Co. ("J.P. Morgan") on behalf of its shareholders. The very next day, Seth D. Rigrodsky, a "rival" lawyer at Milberg Weiss who was involved in litigation regarding J.P. Morgan in state court, wrote a letter to Vice Chancellor Stephen P. Lamb of the Chancery Court accusing Gielata of committing certain ethical violations. Because Rigrodsky was aware of the ongoing ODC investigation and allegedly desired to derail Gielata's J.P. Morgan class action, he copied the letter to Rocanelli – who had once been a colleague of Rigrodsky at PayPal's local firm. However, the ODC did not act on these accusations immediately. It was not until after Gielata filed yet another class action suit, this time against MBNA Corp. ("MBNA"), in June of 2005 that the ODC initiated an investigation into Rigrodsky's allegations. Gielata suspects (based on information gleaned from the public record) that Rocanelli is married to MBNA executive Thomas D. Veale, and therefore, that Rocanelli initiated the investigation to derail Gielata's MBNA lawsuit.

On July 25, 2005, while Gielata was traveling to South America, the DOJ obtained a grand-jury indictment charging Gielata and his client with the felonies of theft and conspiracy to commit theft. Upon learning of the indictment, Gielata returned to the United States and was arrested when he arrived. After Gielata was indicted, Rocanelli gave notice to the Supreme Court of Delaware and petitioned to have Gielata's law license temporarily suspended. Although Rocanelli took these actions pursuant to the requirements of Rule 16 of the Delaware Lawyers' Rules of Disciplinary Procedure, Gielata contends that she nevertheless violated Delaware's criminal law because she had a financial stake in Gielata's suit against MBNA through her husband's employment. Gielata responded on August 2 by filing suit in the Eastern District of Pennsylvania against Rocanelli, the ODC, the Deputy Attorney General of the State of Delaware, and the State of Delaware itself. That court dismissed the Deputy Attorney General and the State *sua sponte* on Eleventh Amendment

grounds, and then transferred the remainder of the case to this district. On August 9, at a hearing before a panel of the Supreme Court of Delaware, it was agreed that Gielata's license would not be temporarily suspended if he notified his clients of the pending felony indictment against him. The state's criminal proceedings and disciplinary proceedings are still ongoing, however Rocanelli has been recused from further involvement. Presently before the court is the defendants' motion to dismiss Gielata's amended, fifteen-count complaint against the Rocanelli and the ODC.

The Supreme Court of the United States has, in no uncertain terms, proscribed federal-court involvement in state judicial proceedings except in the very narrowest of circumstances:

> *Younger v. Harris*, [401 U.S. 37 (1971)], and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances. The policies underlying *Younger* abstention have been frequently reiterated by this Court. The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44 n.10. Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.
>
> The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved. *Moore v. Sims*, 442 U.S. 415, 423 (1979); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604-605 (1975). The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature, as in *Huffman*, *supra*. Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. *Trainor v. Hernandez*, 431 U.S. 434 (1977); *Juidice v. Vail*, 430 U.S. 327 (1977). Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." *Moore*, 442 U.S. at 426. "[The] . . . pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims . . . ." *Id.* at 430. *See also Gibson v. Berryhill*, 411 U.S. 564 (1973).

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-32 (1982). Thus,

application of the *Younger* abstention doctrine requires the court to ask (1) whether the proceedings in question "constitute an ongoing state judicial proceeding," (2) whether "the proceedings implicate important state interests," and (3) whether there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex*, 411 U.S. at 432. If the court answers all three prongs of this inquiry in this affirmative, "and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance," the court must abstain. *Id.* at 435.

Here, as in *Middlesex*, the disciplinary proceedings satisfy the first two prongs of the *Younger* inquiry. *Middlesex*, 411 U.S. at 433-34. Regarding Gielata's opportunity to raise his constitutional claims, Rule 16(d) of the Delaware Lawyers' Rules of Disciplinary Procedure explicitly requires the Supreme Court of Delaware to hold a hearing upon receipt of a petition for suspension from the ODC. Indeed, Gielata admits in his complaint that such a hearing was held on August 9, 2005. Moreover, any bad faith or harassment on the part of Rocanelli in pursuing the disciplinary proceedings has been short circuited by her recusal from the case. *Cf. Brooks v. New Hampshire Supreme Court*, 80 F.3d 633, 640 (1st Cir. 1996) (explaining that "the bias exception to the *Younger* abstention doctrine is inapposite if an ostensibly aggrieved party fails to employ available procedures for recusal of allegedly biased judges"). Therefore, *Younger* abstention applies to the disciplinary proceedings. Accordingly, Counts I and V-X must be dismissed.

Regarding the criminal proceedings, neither Rocanelli nor the ODC is answerable for any constitutional infirmities of the indictment or prosecution generally. At most, the defendants merely aided the DOJ in its pursuit of Gielata. However, because "liability cannot be imposed for damage caused by inducing legislative, administrative, or judicial action," *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1998)), Counts II-IV, XI, and XV must be

dismissed.

Counts XII and XIII are state law claims for intentional infliction of emotional distress and tortious interference. The court's jurisdiction over those claims is predicated upon 28 U.S.C. § 1367. The court declines to exercise that jurisdiction pursuant to § 1367(c). In Count XIV, Gielata seeks a declaratory judgment regarding the validity of his contractual agreements with PayPal. Because PayPal is not a defendant, the court is unable to grant such relief.

IT IS HEREBY ORDERED THAT:

The defendants' motion to dismiss (D.I. 30) be GRANTED.


Dated: May 19, 2006                          /s/ Gregory M. Sleet
                                             UNITED STATES DISTRICT JUDGE