# EXHIBIT A

## Westlaw.

Not Reported in A.2d                                                                                        Page 1

Not Reported in A.2d, 2006 WL 1174017 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware,Sussex County.
Matthew FERGUSON
v.
TOWN OF DEWEY BEACH, et al.
**C.A. No. 04C-08-004.**

Submitted: March 20, 2006.
Decided April 25, 2006.

Dear Counsel:

T. HENLEY GRAVES, J.

*1 This is the Court's ruling on Plaintiff's motion for partial summary judgment and Defendants' motion for summary judgment.

### Statement of Facts

Matthew Ferguson, Plaintiff, was walking along the sidewalk of Route 1, near Swedes Street, in the town of Dewey Beach, with two friends, Melanie Larrimore and Katherine Clune, between 1:00 a.m. and 2:00 a.m. on August 4, 2002. The group consumed a considerable amount of alcohol at various locations prior to this time. Plaintiff was wearing an outfit that consisted of khaki shorts, and feathered head dress or hat, and no shirt. Plaintiff was carrying a box of chicken wings. He and his friends were eating the chicken wings as they walked. A chicken wing was thrown into the road, striking a Dewey Beach Police vehicle as it passed by someone in the group. Plaintiff and his friends were then stopped by the Dewey Beach Police after this incident.

Officer Frank Fioravaniti, Defendant, along with Officer Joshua Wilson, Defendant, pulled up to Plaintiff and his friends in a marked police vehicle on Route 1. Fioravaniti walked up to the group and ordered them to sit down. Plaintiff's two female friends complied with the order. Plaintiff did not

comply. Defendants testified that Plaintiff continued eating chicken wings, discarding the bones on the ground. Fioravaniti requested identification from the Plaintiff, but Plaintiff replied to Fioravaniti's requests by swearing and/or cursing at him. Officer Mark Hall, Defendant, pulled up approximately as the exchange between Fioravaniti and Plaintiff occurred.

Fioravaniti reached for Plaintiff's right arm, but Plaintiff pulled away. Fioravaniti knocked the box of chicken wings from Plaintiff's hands. Fioravaniti then put his arm around Plaintiff's neck and took him to the ground. Once on the ground, Plaintiff kept both his arms securely under his chest, preventing him from being handcuffed. Officers Hall and Wilson attempted to get Plaintiff's arms free so he could be cuffed while Officer Fioravaniti continued to restrain him on the ground. Plaintiff alleges he was kneed in the back, causing injury. Ultimately, Plaintiff was pepper-sprayed, handcuffed, and taken into custody.

Once in the paddy wagon, Plaintiff came off the metal seat and was on the floor of the van. Plaintiff then began kicking the side door. Fioravaniti opened this door and picked up Plaintiff and placed him back onto the metal seat.

Hall then transported Plaintiff to the police station. Later, Plaintiff requested that he be allowed to wash out his eyes due to the severe irritation from the pepper spray. Plaintiff then had his eyes washed out by a police officer at the police station in an attempt to alleviate the sting from the pepper-spray. Plaintiff's body was soaked while the officer washed Plaintiff's eyes out. Plaintiff was placed in a holding cell and not given the opportunity to dry himself off before or after being returned to the cell. Hall then drew up a warrant, which was approved by the magistrate. Plaintiff was charged with being intoxicated, littering, offensive touching, resisting arrest, and disorderly conduct.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                              Page 2

Not Reported in A.2d, 2006 WL 1174017 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**\*2** After Plaintiff appeared before the magistrate, he was taken to the Sussex County Correctional Facility until he was picked up by his friends. Following his release, Plaintiff went to Beebe Hospital where he was examined. Plaintiff alleges that doctors found that he had multiple contusions, abrasions, a neck injury, spinal injury, and wrist injury. Plaintiff has undergone physical therapy and been told that he will have permanent nerve damage to his wrist. He also claims to suffer from lower back pain that allegedly did not exist prior to the incident.

On August 3, 2004, Plaintiff filed a complaint in Sussex County Superior Court against the Defendants, Town of Dewey Beach, Dewey Beach Police Department, Mark A. Hall, Frank Fioravaniti, and Joshua Wilson. The Complaint asserted violations of 42 U.S.C. § 1983, gross and wanton negligence, false arrest, malicious prosecution, and intentional infliction of emotional distress.

Plaintiff filed a motion for partial summary judgment as to liability on the counts that Defendants violated his civil rights, Defendants were grossly and wantonly negligent, and that Defendants intentionally inflicted emotional distress upon him. Defendants moved for summary judgment in their favor on all counts on the grounds that there is no genuine issue of material fact and that they are entitled to judgment in their favor as a matter of law.

### Standard of Review

Summary judgment shall be granted if it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[FN1] The evidence must be viewed in the light most favorable to the non-moving party.[FN2]

FN1. DE R S CT Rule 56(c).

FN2. *Merrill v. Crothall-American Inc.,* 606 A.2d 96, 99-100 (Del.1992).

### Analysis

*§ 1983 Claims against Town of Dewey Beach and Dewey Beach Police Department*

Defendants argue that Plaintiff's claim for violation of 42 U.S.C. § 1983 should be dismissed on summary judgment because Plaintiff cannot establish that a municipal custom or policy was a moving force behind any alleged Constitutional violation.

Plaintiff seeks partial summary judgment as to liability for his claims because Defendants' failure to follow their own internal policy was the moving force behind the excessive force used against him.

A municipality or local governing body can only be sued under § 1983 for implementing an official policy, ordinance, or regulation.[FN3] Further, no liability exists for § 1983 under respondeat superior theory.[FN4] "A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered."[FN5]

FN3. *Monell v. Dept. of Social Services,* 436 U.S. 658, 690-691 (1978).

FN4. *Id.* at 694.

FN5. *Kranson v. Valley Crest Nursing Home,* 755 F.2d 46, 51 (3d Cir.1985) quoting *Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3d Cir.1984).

"The word 'policy' generally implies a course of action consciously chosen from among various alternatives".[FN6] A policy or custom can be established by government in two ways.[FN7] First, " [p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."[FN8] "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 3

Not Reported in A.2d, 2006 WL 1174017 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

as to virtually constitute law." [FN9] Further, "[m]ore than a single episode of police misconduct is required to trigger an inference of a policy" unless the official policy itself is unconstitutional.[FN10]

> FN6. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985).

> FN7. *Andrews v. City of Philadelphia,* 895 F.2d 1468, 1480 (3d cir.1990).

> FN8. *Id.* citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986).

> FN9. *Id.* citing *Monell,* 436 U.S. at 690 quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-168 (1970)).

> FN10. *Bingham v. City of Pittsburgh,* 658 F.Supp. 655, 658 (W.D.Pa.1987).

**\*3** A plaintiff must show that an affirmative link exists "between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by [city officers] express or otherwise showing their authorization or approval of such misconduct ." [FN11] "[A] sufficient causal relationship [is required to] be present between the challenged policy and the violation." [FN12]

> FN11. *Rizzo v. Goode,* 423 U.S. 362, 371 (1976).

> FN12. *Talbert v. Kelly,* 799 F.2d 62, 67 (3d Cir.1986).

Based on the above precedent, Defendants argue that the record does not establish a viable claim against any of them. Defendants state that Plaintiff has failed to identify a policy, practice, or custom on part of the municipal Defendants and a causal connection between the execution of that policy, custom, or practice in violation of Plaintiff's Constitutional rights or Plaintiff's alleged injury. According to Defendants, the record does not establish a custom, policy, or practice of the Defendants that allows their police officers to use excessive force on suspects.

Defendants argue that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." [FN13] "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality-a 'policy' as defined by our prior cases can a city be liable for such failure under § 1983." [FN14]

> FN13. *City of Canton v. Harris,* 489 U.S. 378, 388 (1989).

> FN14. *Id.* at 389.

Based on the above-cited law, Defendants argue that Plaintiff cannot establish a policy or custom of failure to train, discipline, or control. Defendants point out that there is no evidence in the record of similar past allegedly unlawful conduct. All defense witnesses have testified about their training and supervision as it was relevant. Specifically, Defendants point out that then lieutenant Samuel Mackert reviewed all crime reports to ensure that excessive force was not being used. Finally, Defendants argue that the record does not support a claim of improper training or supervision that rises to the level of a constitutional violation.

Defendants argue that Plaintiff's claim must fail because the alleged custom does not exist and Plaintiff has not pleaded or proven, even if the custom existed, that it caused the use of excessive force. Defendants cite *Tuttle* for "[t]he fact that a municipal 'policy might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a *constitutional* violation." [FN15] Defendants submit that the Dewey Beach Police Department had a policy relating to the use of excessive force, complied with such policy, and therefore, there was no unconstitutional policy custom that could or did cause the alleged excessive use of force on plaintiff. Finally, Defendants state that if Plaintiff would have acted reasonably in responding to the directives of the Defendant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                              Page 4

Not Reported in A.2d, 2006 WL 1174017 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

officers, no force would have been necessary.

FN15. *Tuttle,* 471 U.S. at 824 n. 8.

Plaintiff argues that his § 1983 claim should not be
dismissed on summary judgment because a
municipal custom or policy was the moving force
behind the Defendants' violation of Plaintiff's
Constitutional rights and thus summary judgment
for liability should be granted in his favor. Plaintiff
cites *Fiacco v. Rensselaer* [FN16] for the proposition
that a government entity could be held liable under §
1983 when the entity was knowingly and
deliberately indifferent to the possibility that its
police officers used excessive force.[FN17]

FN16. 783 F.2d 319 (2d Cir.1986).

FN17. *Id.* at 327.

*4 Plaintiff argues that the policies and procedures
that governed Dewey Beach police officers in their
application of force upon a suspect were routinely
and customarily ignored by the officers. Further, he
argues that the Chief of Police knew that such
policies and procedures were ignored, but no
disciplinary action was taken.

Plaintiff goes on to specifically point that Dewey
Beach Police Department had a standard operations
manual, a force continuum, and a use-of-force form
governing the use of force by its officers. Plaintiff
argues that it was typical for officers to ignore the
manual, especially in relation to the sections
relating to an officer's use of force on a suspect.
Defendants Fioravaniti and Hall testified that they
generally rely on their training rather than the
manual. Further, Defendants testified that they were
aware of the use-of-force forms, but had never filled
one out. Finally, Plaintiff states that Defendants
testified that they routinely disregarded the force
continuum.

Plaintiff states that the Dewey Beach Police
Department and the Police Chief knew that the
standard operations manual, the force continuum,
and the use-of-force forms were customarily

ignored. Plaintiff attacks the Town of Dewey
Beach, Dewey Beach Police Department, and the
Police Chief by stating that they were aware that
their officers ignored the manual, force continuum,
and no disciplinary actions were taken against the
officers. Defendants emphasize that the continuum
is a guide and the level of force used depended on
the circumstances as the officer views them.

Plaintiff states that the custom of ignoring the
manual, force continuum, and the use-of-force form,
combined with the failure to discipline its officers
by the Dewey Beach Police Department, was the
moving force behind the violation of Plaintiff's
rights. Thus, Plaintiff argues that Defendants should
be found liable on § 1983 claim and partial
summary judgment should be granted in his favor
and Defendants' motion should be denied.

Defendants raise the fact that Plaintiff never
opposed the argument in Defendants' opening brief
requesting summary judgment in their favor on
Plaintiff's "failure to train" theory. Plaintiff did
provide the facts to oppose Defendants' motion for
summary judgment on the "failure to train"
argument, even if it is not specifically labeled, in
reply to Defendants' argument. Therefore, this
argument does not affect the Court's decision.

Defendants address Plaintiff's argument that Dewey
Beach Police Department customarily ignored the
use-of-force forms. Defendants state that contrary to
Plaintiff's allegations, there was no custom or policy
of ignoring the Dewey Beach Police Department's
use-of-force policy because the crime reports were
reviewed by the lieutenant. However, Defendants
failed to use their internal controls as they were set
up, so they cannot rely on them now as a defense in
relation to this incident.

The aforementioned extensive review of the
competing claims, based on the "facts", evidences
the futility of resolving these issues by summary
judgment. Summary judgment cannot be granted in
favor of Defendants or Plaintiff on the § 1983 claim
because there are genuine issues of material fact [FN18]
when viewing the facts in the light most
favorable to the non-moving party. [FN19]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                    Page 5

Not Reported in A.2d, 2006 WL 1174017 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

FN18. DE R S CT Rule 56(c).

FN19. *Merrill,* 606 A.2d at 99-100.

*§ 1983 Claims against the Defendant Police Officers*

*5 Defendants request summary judgment on the § 1983 claim against the Defendant officers because they did not use excessive force and are protected by the doctrine of qualified immunity. Plaintiff also seeks partial summary judgment for liability on this claim.

A citizen's excessive force claim against a police officer must be "analyzed under the Fourth Amendment's 'objective reasonableness' standard". FN20 The Supreme Court of the United States stated that "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." FN21 "The ' reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." FN22 The Supreme Court points out that when examining the reasonableness of force used, an allowance should be made "for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." FN23 In excessive force cases, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to underlying intent or motivation." FN24 "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." FN25

FN20. *Graham v. Connor,* 490 U.S. 386, 388 (1989).

FN21. *Id.* at 396. See *Terry v. Ohio,* 392 U.S. 1, 22-27 (1968).

FN22. *Id.* See *Terry,* 392 U.S. at 20-22.

FN23. *Id.* at 396-397.

FN24. *Id.* at 397.

FN25. *Saucier v. Katz,* 533 U.S. 194, 205 (2001).

"Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." FN26 "Qualified immunity would be defeated if an official *'knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took action *with the malicious intention* to cause a deprivation of constitutional rights or other injury".FN27 However, "bare allegations of malice should not suffice to subject government officials either to the cost of trial or to the burdens of broad-reaching discovery." FN28 " [T]herefore[,] ... government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." FN29 "Defendants will not be immune if, on objective basis, it is obvious that no reasonably competent officer would have concluded that [the action was lawful]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." FN30

FN26. *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982) citing *Gomez v. Toledo,* 446 U.S. 635 (1980).

FN27. *Id.* quoting *Wood v. Strickland,* 420 U.S. 308, 322 (1975).

FN28. *Id.* at 817-818.

FN29. *Id.* at 818.

FN30. *In re City of Philadelphia Litig.,* 49 F.3d 945, 961-62 quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 6

Not Reported in A.2d, 2006 WL 1174017 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

"The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to legal constraints on particular police conduct." [FN31] An officer may find it difficult to determine how the legal doctrine of excessive force will apply to the factual situation an officer faces. [FN32] "An officer might correctly perceive all of the relevant facts but have mistaken understanding as to whether a particular amount of force is legal in those circumstances." [FN33] However, if a police officer's mistaken understanding is reasonable, the officer can still receive the benefit of the immunity defense. [FN34] Thus, Defendants argue that their actions were reasonable so they are protected by the immunity defense.

FN31. *Saucier,* 533 U.S. at 205.

FN32. *Id.*

FN33. *Id.*

FN34. *Id.*

*6 Defendants state that Plaintiff has not identified the alleged violation of a specific constitutional or statutory right in his complaint. Defendants set out that the first step in a qualified immunity analysis is to determine "whether plaintiff has [alleged] a violation of constitutional right at all." [FN35] Defendants argue that Plaintiff's complaint lacks such an allegation. Further, Defendants contend Plaintiff never articulated a statutory claim against the Defendant officers "except for § 1983 ... which does not provide any rights in and of itself but is simply the vehicle for asserting constitutional rights against those acting under color of state law." [FN36] Thus, Defendants want Plaintiff's § 1983 claim to fail and to the extent Plaintiff purports to allege a right to be free from excessive force, the Defendant officers are entitled to qualified immunity.

FN35. *Samuels v. Hall,* 2004 WL 1635529, *4 (D.Del.) quoting *Larsen v. Senate of the Commonwealth of Pa.,* 154 F.3d 82, 86 (3d Cir.1998).

FN36. *Couden v. Duffey,* 305 F.Supp.2d 379, 390 n. 21 (D. Del 2004) citing *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979)

Defendants cite testimony that reasonable competent officials could objectively conclude that the officers' use of force was lawful to support their motion for summary judgment on the § 1983 claim against Defendant police officers. The Defendant officers testified that they believed that their use of force was appropriate under the circumstances. Specifically, Defendant Fioravaniti sensed that Plaintiff was going to fight and continued to resist by tucking his arms under his body as officers tried to handcuff him. All officers testified that the use-of-force continuum is a guide, but every situation has a different set of circumstances which may require a different level of force. Finally, Defendants state that even if the Defendant officers were mistaken about the level of force needed under the circumstances, the law nonetheless affords them protection from their mistake under the doctrine of qualified immunity.

Plaintiff responds to Defendants' motion by stating that the Defendant officers used excessive force and are not protected by qualified immunity. Plaintiff contends that Defendant officers' treatment of him was unreasonable. Plaintiff puts forth that he only needs to show two elements for a § 1983 cause of action, citing *Gomez v. Toledo:* [FN37] that someone deprived him of a federal right and that this person did so under color of state law. Plaintiff claims to have satisfied both elements. Plaintiff states that a person has a constitutional right to be free from excessive force by police officers under the Fourth Amendment's prohibition under unreasonable seizures of the person.[FN38] Citing *Graham,* Plaintiff states that excessive force allegations against police officers will be analyzed under "reasonableness" standard.[FN39] Reasonableness is to be determined based on the particular facts and circumstances of the particular situation including: 1) the severity of the crime at issue; 2) whether the suspect poses an immediate threat to the safety of the officers or others; and 3) whether the suspect actively resists or attempts to evade arrest by flight. [FN40]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 2006 WL 1174017 (Del.Super.)
(Cite as: Not Reported in A.2d)

FN37. 446 U.S. 635, 640 (1980).

FN38. Plaintiff cited *McGruder v. Heagwood,* 197 F.3d 918 (8th Cir.1999) as an example supporting this theory.

FN39. 490 U.S. at 395.

FN40. *Id.* at 396.

*7 Plaintiff is correct in how an excessive force claim is analyzed. However, Plaintiff fails to state that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." [FN41]

FN41. *Id.* see *Terry,* 392 U.S, at 20-22.

Plaintiff goes on to argue that the severity of the crime at issue did not warrant the use of force. Plaintiff asserts that the amount of force used on him was unwarranted for littering. Plaintiff also provides portions of Defendant Fioravaniti's testimony as support for his proposition that the amount of force used against him was excessive. Plaintiff contends that the Defendants did not follow procedure when they came into contact with him and resorted to force which was not necessary.

Next, Plaintiff maintains that he was not a threat to the safety of the officers or others. Plaintiff includes in his answering brief testimony of the Defendant officers about Plaintiff's physical stature as well as their own. Plaintiff alleges that this is proof that Plaintiff did not pose a threat to anyone's safety. He also refers to the fact that Defendants did not testify to the contrary. Further, Plaintiff asserts that he was not given an opportunity to comply with the Defendant officers' commands before force was used upon him. Plaintiff incorporates testimony by Defendant Fioravaniti in his brief that allegedly supports this version of the incident.

Plaintiff argues that he did not actively resist or attempt to flee. Plaintiff points out that the Defendants have not testified that Plaintiff actively resisted or attempted to flee. Thus, Plaintiff believes

that force used by the Defendant officers was excessive.

Plaintiff states that Defendants are not entitled to qualified immunity. Plaintiff cites the *Harlow* case to set out who may be entitled to qualified immunity. Plaintiff then explains that for Defendants to assert qualified immunity, they must show either that Plaintiff did not have a clearly established right to be free from excessive force; or, that the Defendants acted reasonably in using the amount of force they did on Plaintiff. Plaintiff argues that Defendants can show neither.

Plaintiff claims that he was deprived of a constitutional right, i.e. the right to be free from excessive force as established under the Fourth Amendment's prohibition against unreasonable seizures of person. [FN42] Plaintiff argues that the right to be free from excessive force is a long established right so the Defendants knew that they were violating that right. Plaintiff states that under the *Graham* test, Defendants acted unreasonably. Plaintiff again cites that Plaintiff's crime, Plaintiff's stature in comparison to the Defendant officers, and that alleges that Plaintiff did not resist or flee. Thus, according to Plaintiff, Defendants are not entitled to qualified immunity and he is entitled to partial summary judgment on this claim.

FN42. *McGruder,* 197 F.3d 918.

*8 Plaintiff cited the testimony of Chief Mackert and former Chief Elliot as support for Plaintiff's belief that Defendants acted unreasonably. Specifically, Plaintiff states that a reasonably competent official, like Chief Mackert, concluded that Defendants' actions were not reasonable so there is no disagreement on that point. [FN43]

FN43. Plaintiff cited as *Cf. In re City of Phila. Litig.,* 49 F.3d at 961-962.

Defendants attacks Plaintiff's declaration that " reasonably competent officials, like Chief Mackert, concluded that Defendants' action were *not* reasonable" from his answering brief as false.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 7

Not Reported in A.2d

Page 8

Not Reported in A.2d, 2006 WL 1174017 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Defendants state that Chief Mackert testified that the officers acted appropriately under the circumstances and former Chief Elliot agreed.

Finally, Plaintiff cites *Grant v. City of Pittsburgh* [FN44] that courts are not barred from examining evidence of a defendant's state of mind when evaluating a qualified immunity defense. Here, Plaintiff states that the Defendant officers' state of mind is critical to the qualified immunity analysis. Plaintiff alleges that the Defendant officers were influenced by their personal biases toward Plaintiff and others they perceived to be like him. Plaintiff refers to Defendants' testimony where they expect all suspects to be intoxicated and/or on drugs. Plaintiff contends that the Defendant officers' view of him was unreasonable; and therefore, based on their biases and prejudices, should not be entitled to qualified immunity.

FN44. 98 F.3d 116, 124 (3d Cir.1996).

However, *Graham* [FN45] states that excessive force claims against police officers are analyzed under the Fourth Amendment's "objective reasonableness" standard rather than under the substantive due process standard found in *Grant*. *Graham* specifically states that law enforcement officers' actions are judged "without regard to their underlying intent or motivation". [FN46] The claim in *Grant* was that the defendants had violated plaintiff's substantive due process rights. Thus, the officers' motive and intent will not be considered in this case.

FN45. 490 U.S. at 395.

FN46. *Id.* at 397.

Summary judgment shall be granted if it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [FN47] Again, the Court has cataloged the numerous competing factual and legal viewpoints to illustrate that the case is not ripe for summary judgment. The Court denies summary judgment for both the Defendant

officers and Plaintiff because there are issues of material fact that must be decided by a jury.

FN47. DE R S CT Rule 56(c).

*Malicious Prosecution Claim*

There are six elements required for Plaintiff to sustain a malicious prosecution action. The elements are: 1) prior institution of a criminal proceeding against Plaintiff; 2) institution of the former proceeding by or at the instance of the 3 officers; 3) termination of the former proceeding in favor of Plaintiff; 4) malice by the officers in instituting the former proceeding; 5) lack of probable cause for institution of the former proceeding; and 6) injury or damage to Plaintiff from the former proceeding. [FN48] When a magistrate issues a warrant based on the information supplied by the police and presented to him, it is prima facie evidence of probable cause. [FN49] "The decision to prosecute the violations of Delaware law is left to the discretion of the State: absent some affirmative evidence of malice or want of probable cause, this Court will not entertain a claim for malicious prosecution." [FN50]

FN48. *Megenhardt v. Nolan,* 583 A.2d 660, *1 (Del.1990).

FN49. *Id.* at *2.

FN50. *Wiers v. Barnes,* 925 F.Supp. 1079, 1093 (D.Del.1996).

**\*9** Defendants state that Plaintiff cannot show any malice on behalf of Defendants from the record. Defendants set out that the charges against the Plaintiff were well supported by Plaintiff's own conduct. Here, a warrant was issued, which is prima facie evidence of probable cause. [FN51] Further, Plaintiff plead guilty to the charge of resisting arrest, received **probation before judgment** on that charge, and was sentenced to pay costs, a video phone assessment, a fine, and 18% VCF. Therefore, Defendants argue that summary judgment is warranted because Plaintiff did satisfy the elements

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 9

Not Reported in A.2d, 2006 WL 1174017 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

for a malicious prosecution claim. Plaintiff did not respond to Defendants' motion for summary judgment on this claim.

> FN51. *Megenthardt,* 583 A.2d 660 at *1.

Plaintiff entered a plea of guilty, obtained a sentence of **probation before judgment,** completed the probation satisfactorily, and therefore the adjudication of guilt was withheld. While it may have been ultimately dismissed under these facts, it was not terminated in Plaintiff's favor. Defendant escapes responsibility in pleading guilty and asking for **probation before judgment.** Had he not completed the probation successfully, then the only thing left was sentencing. Therefore, Defendants are entitled to summary judgment on the malicious prosecution claim because Plaintiff did not satisfy the elements to sustain such a claim.

### *False Arrest Claim*

Defendants seek summary judgment on Plaintiff's false arrest claim because the evidence of the record does not establish that a false arrest occurred.

A police officer may arrest a person without a warrant for a misdemeanor if the officer has witnessed the misdemeanor.[FN52] "The law requires for all valid arrests, with or without warrants, that police would warrant a reasonable man in believing that a crime had been committed." [FN53] Statutorily, police officers can make an arrest without a warrant when the crime is committed in their presence or in "where they have 'reasonable ground to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed." ' [FN54] " '[R]easonable ground to believe 'is construed to mean probable cause." [FN55] "Probable cause exists if there is a ' fair probability' that the person committed the crime at issue." [FN56]

> FN52. 11 *Del. C.* § 1904(a)(1).

> FN53. *Thompson v. State,* 539 A.2d 1052,

1056 (Del.1988).

> FN54. *Id.* at 1054-1055 quoting 11 *Del. C.* § 1904(b)(1).

> FN55. *Id.* at 1055.

> FN56. *Wilson v. Russo,* 212 F.3d 781, 789 (3d Cir.2000).

Defendants point out that Officer Hall observed Plaintiff, whom Hall correctly described as wearing an Indian costume over the radio, throwing chicken wings. Further, Defendants observed Plaintiff eat and discard chicken wings on the ground prior to the box of chicken wings being forced out of Plaintiff's hands. Defendants argue that probable cause existed because Hall directly observed the crime, officers' observed Plaintiff continuing to eat and throw chicken wings onto the ground, and that a chicken wing struck the police van which Hall was driving on the night of the incident. Defendants also set out that the issuance of a warrant by a magistrate is prima facie evidence of probable cause. [FN57] In this case, a warrant was issued by a magistrate for Plaintiff. Defendants state that Fioravaniti told Plaintiff that he was under arrest.

> FN57. *Megenthardt,* 583 A.2d 660 at *1.

*10 Plaintiff did not argue that Defendants' motion for summary judgment should not be granted and did not seek summary judgment on this claim either.

Defendants' motion for summary judgment on the false arrest claim is granted because Plaintiff did not produce evidence sufficient to prove a false arrest claim. The evidence presented is that probable cause existed for Plaintiff's arrest. There is no genuine issue of material fact and as a matter of law; Defendants are entitled to summary judgment. [FN58]

> FN58. DE R S CT Rule 56(c).

### *Intentional Infliction of Emotional Distress Claim*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 10

Not Reported in A.2d, 2006 WL 1174017 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Defendants seek summary judgment on the intentional infliction of emotional distress because the evidence of record does not establish Plaintiff's claim. Plaintiff seeks partial summary judgment as to liability on this claim as well.

To sustain this claim, Plaintiff must establish specific conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." [FN59] Liability only exists where the emotional distress caused is "so severe that no reasonable man could be expected to endure it." [FN60]

> FN59. *Mattern v. Hudson,* 532 A.2d 85, 86 (Del.Super.Ct.1987) quoting Restatement (Second) of Torts § 46(1).
>
> FN60. *Id.*

Defendants state that Plaintiff's arrest was based upon probable cause and without excessive force being used. Defendants contend that subduing Plaintiff to the ground without first using pepper spray was reasonable under the circumstances, such as Plaintiff refusing to cooperate, using profanity towards the officers, failing to produce his identification when asked for it, failing to sit down as requested, failing to put his hands behind his back so he could be handcuffed, and pulling away. Defendants argue that the manner in which Plaintiff was subdued, taking in account his resistance, cannot be viewed as outrageous. Further, Defendants point out that Plaintiff has produced no evidence that he suffered severe, or any, emotional distress. Defendants believe that, for the above-stated reasons, they are entitled to summary judgment on this count.

Plaintiff argues that partial summary judgment should be granted in his favor because Defendants intentionally inflicted emotional distress on him. Plaintiff claims that Defendants admitted using excessive force, admitted using pepper spray in a way that violated the standard operations manual, and knowingly or recklessly endangered Plaintiff's

safety. Plaintiff also points out that Defendants allegedly lied in the arrest affidavit. Plaintiff contends that Defendants' actions were extreme and outrageous, resulting in significant permanent physical and neurological injuries.

The Court cannot grant summary judgment for either party in relation to this claim because, when viewing the facts in the light most favorable to the non-moving party,[FN61] issues of material fact exist. [FN62]

> FN61. *Merrill,* 606 A.2d at 99-100.
>
> FN62. DE R S CT Rule 56(c).
>
> *Gross and Wanton Negligence Claim*
>
> A. The Town of Dewey Beach and the Dewey Beach Police Department

Defendants argue that Defendants Town of Dewey Beach and Dewey Beach Police Department cannot be liable for gross and wanton negligence because they are immune from suit under 10 *Del. C.* § 4011. "A local government remains immune under § 4011 and § 4012 even if its employee's conduct is reckless/wanton or willful and malicious." [FN63] Thus, punitive damages cannot be recovered against a municipality "even if [an employee's] conduct is found to have been performed with wanton negligence or with willful and malicious intent." [FN64] Thus, Defendants believe that summary judgment should be granted in their favor and Plaintiff's motion should be denied.

> FN63. *Schueler v. Martin,* 674 A.2d 882, 889 (Del.Super.Ct.1996).
>
> FN64. *Id.*

*11 Plaintiff does not challenge Defendants' argument that the Town of Dewey Beach and the Dewey Beach Police Department are statutorily immune from a tort action. The Court has found no law that cancels a municipality's immunity under §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                      Page 11

Not Reported in A.2d, 2006 WL 1174017 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

4011 as it relates to the incident as is presented here. § 4012 provides specific limited exceptions to the immunity established in § 4011, but none of those exceptions apply here. Therefore, based on statutory and case law, summary judgment is granted for the Town of Dewey Beach and the Dewey Beach Police Department on the gross and wanton negligence claim.

### B. Dewey Beach Police Officers

Defendants contend that the Defendant Officers are not liable under a theory of gross negligence because 10 *Del. C.* § 4011(c) limits personal liability of a government entity's employee only to conduct that is either "wanton negligence or willful and malicious intent." Defendants state that the evidence of record does not establish either wanton negligence or willful and malicious intent by the Defendant officers. Defendants assert that the Defendant officers acted in good faith based upon their beliefs under the circumstances. In addressing Plaintiff's allegation that the Defendant officers acted outside the scope of their employment, Defendants point out that they were on patrol in uniform and using police vehicles so they clearly were acting within the scope of their employment. Thus, Defendants seek summary judgment on this claim because of their claimed immunity.

Plaintiff responds to Defendants' argument for summary judgment on this claim by stating that the Defendant officers acted with wanton negligence by disregarding the police manual and the force continuum and seeks partial summary judgment as to liability. Plaintiff argues that the record provides evidence of wanton negligence, specifically Defendants' testimony. Plaintiff points out that Chief Mackert testified that officers should try to negotiate with a suspect to try and get him to be compliant rather than using force. Further, Chief Mackert testified that it is typical for an officer to discuss, negotiate, and persuade a resisting suspect for up to five minutes before resorting to force.

Plaintiff sets out that Chief Mackert testified that the force continuum exists and is to be followed to protect a suspect from harm. All Defendant officers

testified that they were aware of the force continuum. Plaintiff states that the Defendant officers did not try to discuss the matter with him, negotiate with him, or try to get his compliance prior to using force. Plaintiff argues that the Defendant officers acted with gross and wanton disregard in regard to the Dewey Beach Police Department's guidelines on appropriate force.

Further, Plaintiff attacks the Defendant officers' use of pepper spray as inappropriate. Plaintiff points out that the standard operations manual instructs officers not to use pepper spray on a suspect from less than six feet away and not directly to the suspect's eyes. Plaintiff alleges that he was pepper sprayed twice directly in his eyes only inches from his face, in direct violation of the Department's policy on pepper spray.

**\*12** Plaintiff's above argument mirrors his argument in relation to the § 1983 claim as set out above. In addition, Plaintiff argues that the Defendant officers did not act in good faith, based upon their beliefs under the circumstances, based on the testimony of Fioravaniti that he used force, and based on Plaintiff pulling his arm away. Thus, Plaintiff believes that he is entitled to partial summary judgment for liability on this claim and Defendants' motion should be denied.

"Determining whether [an employee's] conduct constituted negligence or wanton negligence or was performed with willful or malicious intent is a factual issue a jury needs to determine." [FN65] Therefore, summary judgment is denied for both parties.

FN65. *Id.* at 885.

### Conclusion

Summary judgment is not appropriate in this case, as factual disagreements exist as to when, what, and why certain events occurred. It has been a long time since I have seen the number of substantial factual disagreements as contended in these summary judgment motions. Therefore, for the most part, the motions must be denied.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 13 of 13

Not Reported in A.2d                                                                    Page 12

Not Reported in A.2d, 2006 WL 1174017 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Both parties' motions are denied in relation to the §
1983 claim and the intentional infliction of
emotional claim because genuine issues of material
fact exist.

Plaintiff did not satisfy the elements required to
sustain a malicious prosecution claim. Plaintiff did
not produce evidence to establish a false arrest
claim, and probable cause existed for Plaintiff's
arrest. Therefore, Defendants' motion for summary
judgment is granted on the malicious prosecution
and false arrest claims.

Summary judgment is denied to the Defendant
officers and Plaintiff for the gross and wanton
negligence claim because determining whether
conduct is negligent or wantonly negligent is an
issue for a jury.[FN66] However, the Town of Dewey
Beach and the Dewey Beach Police Department are
entitled to summary judgment because of statutory
immunity granted to municipalities under § 4011.
Therefore, the gross and wanton negligence claim
only continues to trial against the Defendant
officers.

        FN66. *Id.*
Del.Super.,2006.
Ferguson v. Town of Dewey Beach
Not Reported in A.2d, 2006 WL 1174017
(Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

- - - - -

| | | |
|---|---|---|
| STATE OF DELAWARE | : | I.D. No. 0506021946 |
| | : | |
| vs. | : | |
| | : | |
| JOSEPH N. GIELATA, | : | Plea & Sentencing |
| | : | Hearing |
| Defendant. | : | May 9, 2006 |

- - - - -

BEFORE:   HONORABLE T. HENLEY GRAVES,   JUDGE

APPEARANCES:

        SEAN P. LUGG, ESQ.
        Deputy Attorney General
        For The State

        JOSEPH N. GIELATA, ESQ.
        Pro Se Defendant

1     Courtroom 6F

2     9:02 a.m.

3                         * * *

4               MR. LUGG:  Sean Lugg on behalf of the State.

5               As the Court is aware, this is *State of*

6     *Delaware versus Joseph Gielata*, whereby Mr. Gielata

7     will be pleading guilty to the amended Count I, a

8     lesser-included offense of Theft Misdemeanor,

9     11 Delaware Code, 841, less than $1,000.

10              Upon sentencing of the defendant, a nolle

11    prosequi will be entered on all remaining charges

12    on this indictment, and I've also referenced case

13    numbers to the two indictments in the case.  All

14    remaining charges should be nolle prossed.

15              As to the sentence, the State recommends

16    immediate sentencing, 1 year at Level V, suspended

17    for Level II.  However, that is deferred for

18    defendant's participation in the "Probation before

19    Judgment, pursuant to 11 Delaware Code, Section

20    4218.  The conditions are specified below.  The

21    conditions being:

22              First, that there be no contact with PayPal;

23              Second, that the defendant not seek any

1    expungement for 5 years, and finally, the defendant

2    complete 300 hours of community service in a

3    non-legal, non-financial capacity.

4            I hand up the Plea Agreement, together with

5    the Immediate Sentencing Form and the Probation

6    Judgment Form, executed both by the State and the

7    defendant.

8            The probation, of course -- I apologize --

9    has been modified in the upper portion to read

10    Superior Court.  This was a Court of Common Pleas

11    Form.

12            On the reverse, indicating the conditions, I

13    have cross-referenced the Plea Agreement and the

14    conditions just read into the record, indicating

15    they are listed in detail on the accompanying Plea

16    Agreement.

17            I believe the plea to be entered knowingly,

18    intelligently and voluntarily by Mr. Gielata, and I

19    present him to the Court.

20            THE COURT:  Thank you.

21            Mr. Gielata.  Mr. Gielata, I want to go

22    through some things I'm sure you understand as a

23    person trained in the law, but just as to colloquy,

1    when you went pro se, I need to cover certain

2    things.

3         I am told that in lieu of going to trial

4    next month, you've have decided to accept a guilty

5    plea to Theft, asking the Court to set that aside,

6    basically on the back burner, to allow you the

7    opportunity to pursue a "Probation before

8    Judgment," which would result in -- if you complete

9    the terms of that -- would result in a dismissal of

10   the case, and the -- as you're aware -- the

11   ultimate expungement of the conviction based upon

12   the conditions in the Plea Agreement though.

13        Is this your voluntary decision to enter

14   into this?

15        THE DEFENDANT:  It is, Your Honor.

16        THE COURT:  Have you had any drugs or

17   alcohol or medication in the last 24 hours?

18        THE DEFENDANT:  I have not.

19        THE COURT:  Has anybody promised you

20   anything, other than what is in the Plea Agreement,

21   and that being a recommendation?

22        THE DEFENDANT:  No, Your Honor.

23        THE COURT:  Do you understand that the Court

1    will consider that recommendation, but it's not

2    bound by it?

3            THE DEFENDANT:  I understand that, Your

4    Honor.

5            THE COURT:  By pleading guilty, there's

6    never going to be a trial, and therefore, you give

7    up the right to be presumed innocent until the

8    State could establish your guilt beyond a

9    reasonable doubt until 12 reach a verdict, whether

10   it be guilty or not guilty.

11           To be a dispositive verdict, it must be

12   unanimous, all 12 jurors must completely agreement.

13           By entering this guilty plea, you give up

14   the right to a speedy and public trial, and you are

15   representing yourself, and you give up the right to

16   force the State to attempt to prove its case by

17   calling witnesses onto the witness stand, having

18   them testify under oath, subject to

19   cross-examination by yourself.  You have the

20   opportunity to present your case in the format that

21   you choose with certain restrictions, as we have

22   been there with the motions.

23           You can call witnesses.  You can testify

1      yourself.  If you do not want to testify, no one

2      can force you to testify.  The jury is instructed

3      that a decision not to testify cannot be used

4      against you at all.  The prosecutor couldn't

5      comment on any decision not to testify before the

6      jury, and if convicted, you would have the right to

7      appeal to the Delaware Supreme Court.  All these

8      rights are given up forever.

9              Do you understand that?

10             THE DEFENDANT:  I understand that.

11             THE COURT:  I am looking at a "Probation

12     before Judgment" proposed order.  Did you read and

13     understand it?

14             THE DEFENDANT:  I reviewed and understood

15     that proposal, Your Honor.

16             THE COURT:  And do you have any questions

17     about the document that -- that is being offered to

18     the Court as a suggested resolution; anything you

19     want to ask me about it?

20             THE DEFENDANT:  My only question, Your

21     Honor, is that once the probationary period

22     expires, should I file a motion to seek discharge

23     of the charges upon fulfillment of the terms and

1    conditions of the agreement?

2         THE COURT:  I'm not going to tell you what

3    happens in New Castle County, because everything

4    happens different, but this is what happens in

5    Sussex County, and should happen the same way.

6         When you've completed the terms and

7    conditions, I usually get a progress report from

8    Probation, and they say he's complied with the

9    terms and conditions, and they recommend that you

10   be discharged from Probation.  That is signed off

11   on by the judge, and the Sentencing Order -- it's

12   usually  a paragraph below in the Sentencing Order.

13   For example, final disposition here, that's pulled,

14   and I sign off on that, and that means that it's

15   closed out, and I'm sure you'll be watching that,

16   okay.  I won't have to --

17        THE DEFENDANT:  That's correct, Your Honor.

18        THE COURT:  Anything else, sir?

19        THE DEFENDANT:  That's it, Your Honor.

20        THE COURT:  Just a summary of the process,

21   so we're all on the same page.

22        What this is, is a guilty plea, whereby, you

23   acknowledged that you have committed the crime of

1    Theft.  That guilty plea is accepted, and then any

2    formal adjudication of the guilt is then deferred;

3    okay?  I accept it, and then I defer it; okay?

4         What that means is that if you don't

5    complete the terms, you come back here for purposes

6    of sentencing, and you can face a year in jail; do

7    you understand that?

8         THE DEFENDANT:  I understand that, Your

9    Honor.

10         THE COURT:  Okay.

11         Now, for the record, I am familiar with the

12    basis, I think you are familiar with the basis, and

13    Mr. Lugg is familiar with the basis of the factual

14    allegations that the State has without having to go

15    through, in great detail, those allegations.  We

16    have certain pleadings that came by way of the

17    State's response to your motion, which basically

18    set forth, in great detail, the State's theory of

19    its case.

20         You understand the theory of the case, and

21    the -- and the allegation that it was -- it was

22    deceptive to have set up a deal as it was with

23    buyer and seller.  You're basically buying your own

1          payment.  Do you understand the State's theory?

2                     THE DEFENDANT:  I understand the State's

3          theory that the transactions were not arm's length.

4                     THE COURT:  Sir, are you guilty of this

5          offense?

6                     THE DEFENDANT:  I am, Your Honor.

7                     THE COURT:  Do you have any questions?

8                     THE DEFENDANT:  No, Your Honor.

9                     THE COURT:  You understand it's over and

10         done with today.  It's like written in granite.  We

11         don't come back and say there's a collateral

12         problem with disciplinary counsel.  This is over

13         and done with today.

14                    THE DEFENDANT:  I understand that, Your

15         Honor.

16                    THE COURT:  All right.

17                    I accept the plea as knowingly, voluntarily

18         and intelligently offered.

19                    The sentencing is now -- adjudication is

20         deferred for purposes of entering a "Probation

21         before Judgment".  That "Probation before Judgment"

22         is pursuant to 11 Delaware Code 4218.  That shall

23         be for a period of 1 year, Level I, and you

1    probably know, I'm from Sussex County, so you have

2    to take all the notes, right?

3         THE PROTHONOTARY:  Yes.

4         THE COURT:  Conditions are pay the costs,

5    complete 300 hours of community service in a

6    non-legal, non-financial capacity.

7         Additional condition that is accepted is

8    that the defendant shall not seek expungement for

9    5 years, and PayPal doesn't want your business, so

10   you and PayPal stay away from each other.  No

11   contact with PayPal.

12        THE DEFENDANT:  I understand that, Your

13   Honor.

14        THE COURT:  That would be a smart thing to

15   do.

16        Do you have any questions?

17        THE DEFENDANT:  One last clarification.

18        Does the 5-year expungement period begin on

19   the date that the terms and conditions of the

20   probation are fulfilled?

21        THE COURT:  I don't have a problem with it

22   starting today.

23        Do you have a problem with it starting

1    today?

2              MR. LUGG:  No, Your Honor.

3              THE COURT:  5 years from today, presuming

4    you get everything done.

5              I think you've done -- made a wise move;

6    okay.

7              This is post-sentencing, has nothing to do

8    with anything.  Sometimes -- sometimes we can do

9    some things that, looking back on it, it's like a

10   Homer Simpson moment.  Learn from it.  You're

11   trained as a lawyer to be zealous, but sometimes

12   when you step in it, you have to back up and not be

13   so zealous and work on, okay, how do I fix things

14   and how do I fix things that work for everybody.

15             So, good luck.  I hope the only time I see

16   anything about this again is when I'm signing off

17   later.

18             MR. LUGG:  Your Honor, two things.

19             One, to finish the discussion we had last

20   week concerning the records, credit card records

21   and the confidentiality, we had not received them

22   as of this morning.  What my intention is, given

23   the closure of the case, is to seal them and return

1    them to Mr. Chen's counsel, Mr. Hurley.  I would

2    hope that's acceptable to counsel.

3         THE DEFENDANT:  That's acceptable to me.

4         THE COURT:  Do you have anything to say

5    about the *Chen* case?

6         MR. LUGG:  Enter a nolle prosequi on the

7    record, based on the resolution of this matter.

8         THE COURT:  All right.

9         You'll need to get some paperwork here in a

10   few minutes and then go out to Probation and sign

11   up for your probation, and it's a Level I where you

12   don't report.

13        You'll need to keep track of your time and

14   report your community service to somebody there.

15   They'll show you how to do the proof of that.

16        Good luck.

17                      *  *  *

18              (Court recessed at 9:14 a.m.)

19                      *  *  *

20

21

22

23

1    STATE OF DELAWARE:

2

3    NEW CASTLE COUNTY:

4

5        I, Michael A. Morgano, Official Court

6    Reporter of the Superior Court, State of

7    Delaware, do hereby certify that the foregoing

8    is an accurate transcript of the proceedings

9    had, as reported by me in the Superior Court of

10    the State of Delaware, in and for New Castle

11    County, in the case therein stated, as the same

12    remains of record in the Office of the

13    Prothonotary at Wilmington, Delaware, and that I

14    am neither counsel nor kin to any party or

15    participant in said action nor interested in the

16    outcome thereof.

17

18        WITNESS my hand this _____ day of

19    _____, 2006.

20

21        _____

22            Michael A. Morgano

23